Christopher Pitoun (SBN 290235)
*christopherp@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150

*Attorneys for Plaintiff  (additional counsel listed below)*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANICE SCHMIDT and JUDY A. VANN-EUBANKS, on behalf of themselves and all others similarly situated. | No. 1:21-cv-01784-JLT-SAB |
| | |
| Plaintiffs, | FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |
| v. | |
| STANDARD INSURANCE COMPANY, PROTECTIVE LIFE INSURANCE COMPANY,  and DOES 1 TO 50, inclusive, | 1.   BREACH OF CONTRACTUAL DUTY TO PAY A COVERED CLAIM |
| Defendants. | 2.   BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING |

**Deleted:** ,

**Deleted:** herself

**Deleted:** LIFE

JANICE SCHMIDT ("Mrs. Schmidt") and Judy A. Vann-Eubanks ("Ms. Eubanks")(collectively "Plaintiffs"), brings this action on behalf of themselves and all others similarly situated, against Defendants Standard Insurance Company ("Standard") and Protective Life Insurance Company ("Protective Life")(together, "Defendants"). Plaintiffs, by and through their attorneys, based on their individual experiences, the investigation of counsel, and information and belief, alleges as follows in support of the claims herein.

## I.     NATURE OF THE CASE

1.     Plaintiffs have filed this class action lawsuit because Defendants knowingly and repeatedly violated California law by failing to provide statutorily mandated annual notices to life insurance policyholders as required by California law.  Due to Defendants' failure, the policies did not lapse and remained in force at the time of the insureds' death, and Defendants then breached their life insurance contracts by refusing to pay the death benefits to the beneficiaries.

2.     Under Sections 10113.71 and 10113.72 of the California Insurance Code ("Statutes"), which became effective January 1, 2013, life insurance companies such as Defendants are required to, among other obligations, a) give their policyholders an opportunity to designate a third party to receive notice of a potential termination of benefits for non-payment of a premium ("Designation Notice Requirement"); and b) provide notice to a policyholder designee of any non-payment of a premium prior to terminating any policy ("Third Party Notice Requirement").

3.     The public policy undergirding these requirements—which were publicly supported by California's Governor, Insurance Commissioner and Department of Insurance—is to provide consumer safeguards from which people who have purchased life insurance coverage, especially seniors, would

**Deleted:** or "Plaintiff"

**Deleted:** herself

**Deleted:** Life

**Deleted:** Life

**Deleted:** s

**Deleted:** '

**Deleted:**

benefit, specifically, to protect consumers from losing insurance coverage due to an uninformed choice about their insurance options or a missed premium payment.

4.     According to the author of the legislation: "Individuals can easily lose the critical protection of life insurance if a single premium is accidentally missed. If an insured individual loses coverage and wants it reinstated, he or she may have to undergo a new physical exam and be underwritten again, risking a significantly more expensive, possibly unaffordable premium if his or her health has changed in the years since purchasing the policy. Therefore, the protections provided by [the Requirements] are intended to make sure that policyholders have sufficient warning that their premium may lapse due to nonpayment."

5.     This is not a mere hypothetical concern. When one is elderly, ill, or in the final stages of life, it is not uncommon for a life insurance holder to miss a premium payment or make an uninformed decision as a result of their condition. The consumer protections of the Statutes were put in place to protect policyholders and their families.

6.     Defendants have repeatedly and intentionally failed to adhere to the Designation Notice Requirements which means that the policies could not have and did not lapse, and Defendants have failed to honor those life insurance policies by refusing to pay beneficiaries the proceeds.  Protective Life's conduct has been particularly egregious as it has had notice that the California Supreme Court (in a case in which it was the named defendant), the Ninth Circuit Court of Appeals and numerous district courts in the Ninth Circuit have enforced the Designation Notice Requirements against life insurance companies in nearly identical circumstances.

7.    The California Supreme Court has unequivocally held—in *McHugh v. Protective Life Ins. Co.*, Cal. Supreme Court Case Number S259215 (Aug. 30, 2021)—that the Statutes apply to <u>all</u> policies that were in force as of January 1, 2013:

> "We conclude that sections 10113.71 and 10113.72 apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued. This interpretation fits the provisions' language, legislative history, and uniform notice scheme, and it protects policy owners — including elderly, hospitalized, or incapacitated ones who may be particularly vulnerable to missing a premium payment — from losing coverage, consistent with the provisions' purpose."

8.    The *McHugh* decision followed multiple rulings from other courts, one dating as far back as 2016, which have likewise applied the Statutes to policies in force as of the Statutes' effective date. *See Bentley v. United of Omaha Life Insurance Co.*, 2:15-CV-07870 (C.D. Cal. Feb. 21, 2019), Dkt. No. 174 at 24-25 ("Jennifer Bentley, as the class representative, has successfully demonstrated that United breached its contractual duty to pay life insurance benefits because: (1) United issued the life insurance policy to Eric Bentley, and Jennifer Bentley is that policy's beneficiary, Jt. Stip. ¶ 15; (2) the Bentley policy was issued, delivered, or renewed in California by United, *id*. ¶¶ 16–17; (3) the Bentley policy renewed after the Effective Date, *id*. ¶¶ 17, 20; (4) United did not provide Eric Bentley with the Offer to Designate or provide Jennifer Bentley with the Designee/30-Day Notice required by the Statutes, *id*. ¶¶ 22–24; (5) the Bentley policy lapsed for non-payment of premium after the Effective Date, *id*. ¶¶ 4–5, 35–36; and (6) to date, United has not paid death

benefits on the Bentley policy. *Id*. ¶ 32. Thus, there is no dispute of material fact that United breached its contractual duty to pay Jennifer Bentley's life insurance claim."); *accord Moriarty v. American General Life Ins. Co.*, 3:17-cv-1709 (S. D. Cal. Oct. 1, 2020); *Siino v. Foresters Life Ins. & Annuity Co.*, 2020 U.S. Dist. Lexis 178709, *14–19 (N.D. Cal. Sep. 1, 2020); *Thomas v. State Farm Insurance Company*, Case No 18-cv-00728 (S.D. Cal. Dec. 10, 2019); *Bentley v. United of Omaha Life Insurance Co* 2016 U.S. Dist. LEXIS 195183 (C.D. Cal. June 22, 2016).

9.     More recently, the Ninth Circuit followed and expanded on the holding in *McHugh*.  In *Thomas v. State Farm Life Ins.*, 2021 U.S. App. LEXIS 30035, *30035 (9th Cir. Oct. 6, 2021), the court, relying on *McHugh*, held that an insurer breaches an insurance policy by lapsing it without providing the statutory notices and then failing to pay the policy proceeds when the policy owner passes away.  2021 U.S. App. LEXIS 30035 at 3-4 ("… State Farm failed to comply with sections 10113.71 and 10113.72, which prevented the policies from lapsing. [citation omitted] Therefore, State Farm breached its contractual obligations by failing to pay benefits to [the beneficiary] under the policies after [the policyholder's] death.").

10.     Despite this longstanding, clear and overwhelming authority, for life insurance policies originally issued prior to January 1, 2013, Defendants have wrongfully terminated polices and refused to pay benefits  despite failing to adhere to the Designation Notice Requirements mandated by law with respect to such policies.

11.     Plaintiffs are one of many beneficiaries that have been damaged by Defendants' unlawful conduct.

12.     Defendants improperly terminated and refused to pay the benefits of a policy issued by Standard to Arthur James Schmidt ("Mr. Schmidt")—Mrs.

Schmidt's husband—who died on January 30, 2018. Protective Life Insurance Company has refused to pay the benefits of a life insurance policy issued by Protective Life Insurance Company to Robert L. Eubanks ("Mr. Eubanks") – Judy Vann Eubanks father – who died on August 1, 2014.

13.     Plaintiffs bring this suit as a class action to hold Defendants accountable for its violations of the law and subsequent breaches of their insurance contracts, which have severely harmed, and will continue to severely harm if not stopped, numerous families such as Mrs. Schmidt's and Ms. Eubanks.

## II.     JURISDICTION AND VENUE

14.     This action is a civil matter of which this Court has jurisdiction under the provisions of 28 U.S.C. § 1332.

15.     Mrs. Schmidt is a citizen and domiciliary of the state of California residing in Chatsworth, California. Ms. Eubanks is a citizen and domiciliary of the State of Washington, residing in Seattle, Washington.

16.     Protective Life Insurance Company has its corporate headquarters in Birmingham, Alabama and is incorporated in the state of Tennessee, Standard Life is an Oregon corporation with its principal place of business in Portland, Oregon.

17.     Upon information and belief, Standard entered into an agreement with Protective Life under which Protective Life assumed the servicing of all individual life insurance policies issued by Standard. This agreement, on information and belief, made Protective Life and Standard mutual obligors of life insurance policies issued by Standard, including, without limitation, the Mrs. Schmidt's husband's policy.

18.     The amount in controversy well exceeds the jurisdictional minimum under 28 U.S.C. § 1332.

**Deleted:** ith

**Deleted:** s

**Deleted:** The Plaintiff i

**Deleted:**

**Deleted:** Life

**Deleted:** Life

**Deleted:**

**Deleted:** Life

**Deleted:** Life

19.     Venue is appropriate in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to claims at issue occurred in this district. Plaintiff Mrs. Schmidt resides in this district and the life insurance policy at issue was issued in this district. Protective Life and Standard have transacted business in this district including the issuance of life insurance policies and was found or had agents in this district.

20.     This Court has personal jurisdiction over Protective Life and Standard because, among other facts, they: a) transacted business in this district; b) issued insurance policies in this district; c) had substantial contacts with this district; and/or d) were engaged in the illegal conduct alleged herein which was directed at and had the intended effect of causing injury to persons residing or located in this district.

### III.    THE PARTIES

21.     Mrs. Schmidt is the sole beneficiary of the insurance policy issued by Standard (and later taken over by Protective Life) to her late-husband Arthur James Schmidt in 1987 that was entered into in Fresno, California. Mrs. Schmidt is a resident of Fresno, California.  Ms. Eubanks is a 50% beneficiary of the life insurance policy issued by Protective Life to her late-father Robert L. Eubanks in 1999 in California.  Ms. Eubanks is a resident of Seattle, Washington.

22.     Standard Insurance Company is an Oregon insurance company based in Portland, Oregon which, on information and belief, entered into an agreement with Protective Life  in or around July 2001 under which Protective Life assumed the servicing of all individual life insurance policies issued by Standard Life.

23.     Protective Life is an insurance company licensed to conduct the business of insurance in California. Protective Life is a Tennessee corporation

Deleted: Life

Deleted: Life

Deleted:  Life

Deleted: Life

Deleted:

and is a unit of Dai-ichi Life Holdings Inc., NAIC Group #0458, a publicly traded corporation headquartered in Tokyo, Japan and listed on the Tokyo Stock Exchange.

## IV.   FACTUAL ALLEGATIONS

24.    In 2012, Assembly Bill 1747 was enacted and created Sections 10113.71 and 10113.72 of the California Insurance Code (the "Statutes").

25.    The Statutes went into effect on January 1, 2013 (the "Effective Date") and established, among other things, notice and designation requirements for life insurance policies.

26.    The mandates of the Statutes included, among other requirements, the Designation Notice Requirement and Third-Party Notice Requirement, which required insurers to give their policyholders an annual opportunity to designate a third party to receive notice of a potential termination of benefits for non-payment of a premium and provide notice to a third party designated by the policyholder of any non-payment of a premium prior to terminating any policy.   The Statutes read in pertinent part:

**Section 10113.71:**

 (b)(1):A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

****

(3) Notice shall be given to the policy owner and to the designee by first-class United States mail within 30 days after a premium is

due and unpaid. However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

*** 

**Section 10113.72:**

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination.

Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

Cal. Ins. Code § 10113.71-72. (emphasis added)

27.     Defendants have chosen to disregard the Statutes with respect to life insurance policies issued or delivered in California prior to January 1, 2013. Upon information and belief, Defendants have adhered to the Statutes for new life insurance policies they issued and delivered in California after January 1, 2013 but not those issued and delivered before January 1, 2013.  In other words, Defendants have set up two separate regulatory schemes to administer their life insurance policies.

28.     In particular, Defendants have disregarded the Designation Notice Requirement for insurance policies issued or delivered in California prior to the Effective Date of the Statutes—January 1, 2013—even if the policies were renewed after the Effective Date.  Upon information and belief, after January 1, 2013 Defendants did start issuing the Designation Notice Requirements for new life insurance policies.   Upon information and belief, as to these new life insurance policies, neither Standard nor Protective Life engaged in any analysis as to whether or not an insured would benefit from the notice—the notices were issued annually to all new life insurance policyholders.

29.     As a result of Defendants' disregard of the Designation Requirement of the Statutes, Defendants have improperly terminated policies in violation of the law.

30.     Subsequently, Defendants then refused to pay out proceeds that are due and owing to the beneficiaries of such improperly terminated policies, breaching those insurance contracts by their failure to pay.

31.     The policies issued by Standard and serviced by Protective Life insuring Mr. Schmidt—for which Mrs. Schmidt is the sole beneficiary— and the policy issued by Protective Life insuring Mr. Eubanks are two examples.

32.     On March 16, 1987, Standard issued a $250,000 "Whole Life Insurance" policy to Mr. Schmidt (Policy No. SDO530951) (the "Schmidt Policy"). Upon information and belief, in or around July 2001, Protective Life assumed the servicing of the Policy from Standard and thereafter became jointly responsible with Standard for the administration of the policy and payment of death benefits. On or around May 25, 1999, Protective Life issued a $100,000 term life insurance policy to Robert L. Eubanks (Policy No. PL 0647591)(the "Eubanks Policy)(collectively the "Policies").

33.     Pursuant to the Schmidt Policy, Mr. Schmidt was able to and had the option to renew the Policy for successive one-year periods by paying the annual renewal premium identified in the Policy on or prior to the anniversary date of March 16th of each year. Pursuant to the Eubanks Policy, Mr. Eubanks was to and the option to renew the Policy for successive one-year periods by paying the annual renewal premium identified in the Policy on or prior to the anniversary date of May 25th of each year.

34.     Protective Life purportedly attempted to lapse the Schmidt Policy for non-payment of premium on or around April 20, 2014. Protective Life purportedly attempted to lapse the Eubanks Policy for non-payment of premium on or around May 25, 2014.

35.     Mr. Schmidt died on January 30, 2018. Mr. Eubanks died on August 1, 2014.

36.     At no time prior to the termination of the Policies did Protective Life or Standard provide Mr. or Mrs. Schmidt or Mr. Eubanks with the opportunity to designate a third party to receive notification of a pending

Deleted: y
Deleted: Life
Deleted: Plaintiff
Deleted: is one example
Deleted: Life
Deleted: Life
Deleted: Life
Formatted: Superscript
Deleted: y
Deleted: Life

termination as mandated by the Designation Notice Requirement of the Statutes.

37.     Having failed to satisfy the Designation Notice Requirement, Protective Life and Standard, by extension, also failed to notify a third-party designee  of the pending termination in violation of the Third-Party Notice Requirement of the Statutes.

38.     After Mr. Schmidt's death, Mrs. Schmidt (the named beneficiary under the Policy and Mr. Schmidt's widow) through counsel contacted Protective Life and submitted a claim for benefits.  Mrs. Eubanks also contacted Protective Life after her husband's death and made a claim for benefits.

39.     Protective Life refused to pay the  death benefits payable on the Policies.

40.     Moreover, on information belief, at the time Protective Life refused to pay Mrs. Schmidt's claim, Protective Life was aware of the district court rulings in *Bentley* and *Thomas*, which had definitively ruled that the Statutes apply to all policies renewed after the Effective Date.

41.      Protective Life has direct knowledge of the California Supreme Court's ruling in *McHugh* as the named defendant in that case and has knowledge of the Ninth Circuit's ruling in *Thomas*, holdings which undeniably establish  that the Statutes apply to all policies in-force as of the Effective Date and that to deny claims based on the purported inapplicability of the Statutes to policies issued before the Effective Date is a breach of contract.

42.      Despite the clear and overwhelming precedent that the Statutes apply to *all* policies, Mrs. Schmidt, Ms. Eubanks and those similarly situated have still not received the insurance proceeds they are rightly owed; this breach has caused Mrs. Schmidt, Ms. Eubanks and those like them to suffer considerable harm in an amount to be proven at the time of trial.

Deleted: Life

Deleted: y

Deleted: r

## V. CLASS ACTION ALLEGATIONS

43. Plaintiffs brings this class action on behalf of themselves, and all persons and entities similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. Specifically, Plaintiffs bring this action on behalf of the following class, which is subject to refinement based on information learned during discovery:

"All beneficiaries who made a claim, or would have been eligible to make a claim, for the payment of benefits on life insurance policies issued or delivered in the State of California that were in force on or after January 1, 2013 or were renewed on or after January 1, 2013, and were lapsed or were terminated by Defendants for the non-payment of premium after January 1, 2013, and as to which policies the notice or notices as described by Sections 10113.72(a) or (b) of the California Insurance Code (the Designation Notice Requirement") were not sent by Defendants prior to lapse or termination." (hereinafter referred to as "Class") As used in the class definition, the "notices described by Sections 10113.72(a) or (b) of the California Insurance Code" are:

    (i) notice to the applicant of the opportunity to designate (with a form to make the designation by name, address and telephone number) at least one person, in addition to the applicant, to receive notice of lapse or termination of an individual life insurance policy for nonpayment of premium;

    (ii) notice to the policy owner annually of the opportunity to change the written designation or designate one or more persons

44. Excluded from the Class are: a) Protective Life and Standard; b) any entity in which Protective Life or Standard has a controlling interest; c) Protective Life's and Standard's officers, directors, and employees; d)

Protective Life's and Standard's legal representatives, successors, and assigns; **Deleted:** Life e) governmental entities; and f) the Court to which this case is assigned.

45.     Members of the Class are so numerous and geographically dispersed, throughout California and likely the United States, that joinder of all members is impracticable. On information and belief, the Class is readily identifiable from information and records in Defendants' possession.

46.     Plaintiffs' claims are typical of the claims of the members of the **Deleted:** ' Class. The Plaintiffs and all members of the Class were damaged by the same wrongful conduct of Defendants, that is, *inter alia*, their failure to satisfy the Designation Notice Requirement and their breach of their insurance policies through the wrongful termination and non-payment of proceeds.

47.     The Plaintiffs will fairly and adequately protect and represent the interests of the Class. Having suffered the same injury from the same conduct of Defendants, Plaintiffs' interests are coincident with, and not antagonistic to, **Deleted:** ' those of the other members of the Class.

48.     Plaintiffs' counsel in this matter are experienced in the prosecution **Deleted:** ' of complex commercial class actions such as this one.

49.     Questions of law and fact common to members of the Class predominate over questions that may affect only individual class members because, among other things, Defendants have acted on grounds generally applicable to the entire Class, thereby making damages with respect to the Class as a whole appropriate.   Such generally applicable conduct is inherent in Defendants' wrongful conduct.

50.     Questions of law and fact common to the Class include, but are not limited to:

- Whether Defendants have failed to satisfy the Designation Notice Requirement;

- Whether beneficiaries of those life insurance policies in which Defendants' failed to satisfy the Designation Notice Requirement have unpaid death benefits;
- Whether Defendants breached their life insurance policies by not paying death benefits to beneficiaries despite not satisfying the Designation Notice Requirement;
- Whether Defendants' continued refusal to pay the death benefits under their life insurance policies constitute bad faith given Defendants' actual notice of the California Supreme Court's ruling in *McHugh*, *Bentley*, and *Thomas*; and
- The quantum of damages sustained by the Class in the aggregate.

51.　Treatment of this dispute as a class action is a superior method for the fair and efficient adjudication of this matter over individual actions. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would require. In addition, class treatment will avoid the risk of inconsistency and varying adjudications.

52.　The many benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably or cost effectively be pursued individually, substantially outweighs potential difficulties—which Plaintiffs do not anticipate—in management of this case as a class action.

# VI.　CAUSES OF ACTION
# FIRST CAUSE OF ACTION
# BREACH OF CONTRACTUAL DUTY TO PAY A COVERED CLAIM
# (ON BEHALF OF THE CLASS)

**Deleted:** ure

**Deleted:** results in an invalid lapse of the life insurance policies…

**Deleted:** claims

**Deleted:** es

53. Plaintiffs refers to all preceding paragraphs and incorporates them as though set forth in full in this cause of action.

54. Defendants issued, delivered, administered and controlled payments on life insurance policies, which were binding contracts, to the policyholders identified in the Class.

55. Defendants failed to timely invite the policyholders identified in the Class— including Mr. and Mrs. Schmidt and Mr. Eubanks—to designate a third party to receive termination notices for non-payment of a premium as required by the Designation Notice Requirement of the Statutes and because of this failure the policies did not lapse;

56. The polices—including the policy Mr. Schmidt purchased and Plaintiff Mrs. Schmidt, as beneficiary, and the policy Mr. Eubanks purchased and Plaintiff Ms. Eubanks, as beneficiary, has the right to enforce—were still in effect at the time the beneficiaries made their claim or would have been eligible to make a claim. Defendants breached by their contractual duty under the policies by refusing to pay benefits to the Class members—including Plaintiffs—despite not satisfying the Designation Notice Requirements of the Statutes.

57. As a result of Defendants' violations of the law and breaches of their life insurance policies, the Class—including Plaintiffs—have sustained direct damages, as well as other foreseeable and incidental damages, in an amount to be determined according to proof at the time of trial, plus interest.

**SECOND CAUSE OF ACTION –**
**BAD FAITH BREACH OF THE IMPLIED COVENANT OF GOOD**
**FAITH AND FAIR DEALING IN INSURANCE POLICY**
**(ON BEHALF OF THE CLASS)**

58. Plaintiffs refers to all preceding paragraphs and incorporates them as if set forth in full in this cause of action.

Deleted: s

Deleted: 5

59. In every insurance policy there exists an implied duty of good faith and fair dealing that the insurance company will not do anything to injure the right of the insured to receive the full benefit of the policy.

60. Defendants breached the duty of good faith and fair dealing they owed to the policyholders identified in the Class, including their policy with Mr. and Mrs. Schmidt and Mr. Eubanks, which Plaintiffs have the right to enforce.

61. Defendants breached their duty of good faith and fair dealing and engaged in bad faith by, *inter alia*, the following acts and/or omissions:

    a. Failing to timely invite the policyholders identified in the Class—including Mr. and Mrs. Schmidt and Mr. Eubanks—to designate a third party to receive termination notices for non-payment of a premium as required by the Designation Requirement of the Statutes;

    b. Failing to abide by the Statutes at all times after the Effective Date;

    c. Failing to abide by the Statutes and resolve life insurance claims after becoming aware of the precedential rulings in California state and federal courts;

    d. Failing to fulfill their ongoing duty to pay claims once liability became clear; and

    e. Improperly terminating or lapsing the respective policies and unreasonably refusing, without proper cause, to pay benefits to the Class members—including Plaintiffs—despite not satisfying the Designation and Third-Party Notice Requirements of the Statutes.

Deleted: 6

Deleted: 57

Deleted: s

Deleted: 58

62. As a direct and proximate result of Defendants' breaches of their duty of good faith and fair dealing, Plaintiffs and the Class have sustained direct damages, as well as other foreseeable and incidental damages, in an amount to be determined according to proof at the time of trial, plus interest.

63. As a further direct and proximate result of the unreasonable, bad faith conduct of Defendants, Plaintiffs were compelled to retain legal counsel to institute litigation to obtain the full and fair benefit of the insurance of which they and their fellow putative class members are beneficiaries, making Defendants liable for those attorney fees, witness fees and litigation costs reasonably incurred in order to obtain the full benefit.

64. In addition, Defendants' conduct described herein was intended to and did cause injury and/or was conduct carried out with a willful and conscious disregard of the rights of the Class, including Plaintiffs, to delay and deny benefits.

65. Defendants' conduct constitutes malice, oppression or fraud and was unreasonable under California Civil Code section 3294 and/or California Insurance Code Unfair Practices Act section 790.03 because Defendants' continued unwillingness to fully satisfy its contractual and statutory obligations was done and is being done with full knowledge that the courts, including the California Supreme court, based on, *inter alia*, the language and purpose of the Statutes, the legislative history and/or long-standing Renewal Principle, have ruled that the Statutes cover all policies in force as of the Effective Date.

66. Defendants' decision to deny coverage and continued unwillingness to fully satisfy its contractual and statutory obligations was done with full knowledge that the courts, based on, *inter alia,* the language and purpose of the Statutes, the legislative history and   long-standing Renewal

Principle, had ruled that its legal position was not a justification to deny payment, thereby entitling the Class, including Plaintiffs, to punitive damages in an amount appropriate to punish Defendants and deter this type of knowingly wrongful conduct.

67. As the California Supreme Court has held, "…the Legislature enacted the [the Statutes] not only to provide protections to people in the future, but also to ensure that existing policy owners don't lose the life insurance coverage that they may have spent years paying for and on which their loved ones depend". The Designation and Third-Party Notice Requirements of the Statutes are very important consumer protections that provided policy owners the ability to make an informed choice about whether to lapse or cancel or renew important life insurance benefits. When insurance companies fail to provide these notices they deprive the consumer of the opportunity to make informed decisions.

### PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and each Class member, prays for relief and judgment as follows:

A. For certification of this matter as a Class Action pursuant to Federal Rule of Civil Procedure 23, and appointment of Plaintiffs as a Class Representative and their counsel of record as Class Counsel;

B. For economic and foreseeable consequential damages, plus prejudgment interest, against Defendants for breach of contract and bad faith;

C. For punitive damages based on Defendants' ongoing bad faith;

D. For an award of attorneys' fees and costs of suit pursuant to, *inter alia,* the Public Benefit Doctrine and California Code of Civil

Procedure Section 1021.5 on the basis that private enforcement of these rights is necessary, and the interests Plaintiff seeks to protect significantly benefit the general public and/or pursuant to California Civil Code section 3294;

E.   Prejudgment pursuant to § 3289(b) of the California Insurance Code at a rate of 10% and applicable post judgment interest; and

F.   All other and further relief as this Honorable court deems just and proper.

**JURY DEMAND**

Plaintiffs, on behalf of the Class, hereby demand a jury trial on all causes of action that can be heard by a jury

Respectfully submitted,

September 28, 2022     HAGENS BERMAN SOBOL SHAPIRO LLP

BY:  */s/ Christopher Pitoun*
Christopher Pitoun (SBN 290235)
christopherp@hbsslaw.com
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150

David S. Klevatt (admitted *Pro Hac Vice*)
dklevatt@insurancelawyer.com
Timothy M. Howe (admitted *Pro Hac Vice*)
KLEVATT & ASSOCIATES, LLC
77 West Wacker Drive, Suite 4500
Chicago, IL 60601
Telephone: (312) 782-9090

Joseph M. Vanek (admitted *Pro Hac Vice*)
jvanek@sperling-law.com
Mitch Macknin (Admitted *Pro Hac Vice*)
mhmacknin@sperling-law.com

First Amended Complaint and Jury Demand                    - 20 -

1
2
3
4
5

John P. Bjork (admitted *Pro Hac Vice*)
jbjork@sperling-law.com
SPERLING & SLATER, P.C.
55 W. Monroe Street, Suite 3500
Chicago, IL 60603
Telephone: (312) 641-3200

6
7
8

*Attorneys for JANICE SCHMIDT and*
*JUDY A. VANN- EUBANKS, on behalf of*
*themselves and all others similarly situated*

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28