1  Christopher R. Pitoun (SBN 290235)
   *christopherp@hbsslaw.com*
2  Abigail D. Pershing (SBN 346467)
   *abigailp@hbsslaw.com*
3  HAGENS BERMAN SOBOL SHAPIRO LLP
4  301 North Lake Avenue, Suite 920
   Pasadena, CA 91101
5  T: (213) 330-7150

6  David S. Klevatt (*pro hac vice*)
   *dklevatt@insurancelawyer.com*
7  KLEVATT & ASSOCIATES, LLC
8  77 West Wacker Drive, Suite 4500
   Chicago, IL 60601-1604
9  T: (312) 782-9090

10 *Attorney for Plaintiffs and Proposed Class*
   *(Additional counsel listed below)*
11

12              UNITED STATES DISTRICT COURT

13            EASTERN DISTRICT OF CALIFORNIA

14
   JANICE SCHMIDT and JUDY A. VANN-          Case No. 1:21-cv-01784-JLT-CDB
15 EUBANKS, on behalf of themselves and all
   others similarly situated,                **MEMORANDUM OF POINTS AND**
16                                            **AUTHORITIES IN SUPPORT OF**
                                 Plaintiffs,  **PLAINTIFF JUDY VANN-EUBANKS'S**
17                                            **MOTION FOR CLASS CERTIFICATION,**
                                              **APPOINTMENT OF CLASS**
18      v.                                    **REPRESENTATIVE AND CLASS**
                                              **COUNSEL**
19 STANDARD INSURANCE COMPANY,
   PROTECTIVE LIFE INSURANCE                  **REDACTED PUBLIC VERSION**
20 COMPANY, and DOES 1 TO 50, inclusive,
21                               Defendants.  Hearing Date:   September 18, 2023
                                              Time:           9:00 a.m.
22                                            Courtroom:      4
                                              Judge:          Hon. Jennifer L. Thurston
23                                            Mag. Judge:     Hon. Christopher D. Baker
                                              Complaint filed: 12/17/2021
24

25

26

27

28
   ───────────────────────────────────────────────────────────
   MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
       APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL
   011069-11/2322640 V2

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.   FACTS COMMON TO THE CLASS.....................................................................3

      A.    Protective Life was required to provide the Third-Party
            Designation Notices to all class members. ...................................................3

      B.    Protective Life failed to follow the Statutes in its treatment of Mr.
            Eubanks. ........................................................................................................6

      C.    The Putative Class ........................................................................................7

III.  ARGUMENT .........................................................................................................9

      A.    The class meets the prerequisites of Rule 23(a). .........................................9

            1.    Numerosity is undisputed. .................................................................9

            2.    The claims of Plaintiff and other members of the class
                  share common questions of fact and law.........................................10

            3.    Plaintiff's claims are typical of those of the class. ........................13

            4.    Plaintiff is an adequate representative because her claims
                  reflect those of the class, they have shared objectives, and
                  she has retained competent counsel.................................................15

      B.    The Class Should be Certified Pursuant to Rule 23(b)(3) Because
            Common Issues of Fact and Law Predominate, and a Class Action
            is the Superior Method of Adjudication. ....................................................17

            1.    The material legal and factual issues common to the class
                  predominate over any individual inquiries.......................................17

            2.    There are no issues of policy owner intent or "causation"
                  that predominate over the common issues........................................19

            3.    Class adjudication of the claims is plainly superior to
                  individual lawsuits............................................................................22

IV.   CONCLUSION ....................................................................................................24

MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL
011069-11/2322640 V2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Hawaii State Dept. of Educ.,*
    30 F.4th 828 (9th Cir. 2022) ................................................................................................. 9

*Amchem Prod., Inc. v. Windsor,*
    521 U.S. 591 (1997) ........................................................................................................... 17

*Bentley v. United of Omaha Life Ins. Co.,*
    2018 WL 3357458 (C.D. Cal. May 1, 2018) ............................................................... *passim*

*Briseno v. ConAgra Foods, Inc.,*
    844 F.3d 1121 (9th Cir. 2017) ............................................................................................. 9

*Coburn v. City of Sacramento,*
    2020 WL 7425345 (E.D. Cal. Dec. 18, 2020) ................................................................... 23

*Collins v. Cargill Meat Sols. Corp.,*
    274 F.R.D. 294 (E.D. Cal. 2011) ................................................................................... 9, 12

*Durant v. State Farm Mut. Auto. Ins. Co.,*
    2017 WL 950588 (W.D. Wash. Mar. 9, 2017) ............................................................ 13, 18

*Edwards v. First Am. Corp.,*
    798 F.3d 1172 (9th Cir. 2015) ..................................................................................... 17, 22

*Farley v. Lincoln Benefit Life Co.,*
    2023 WL 3007413 (E.D. Cal. Apr. 18, 2023) ............................................................. *passim*

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ........................................................................................... 13

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ............................................................................................. 13

*In re Hyundai & Kia Fuel Econ. Litig.,*
    926 F.3d 539 (9th Cir. 2019) ............................................................................................. 17

*Johnson v. Harford Cas. Ins. Co.,*
    2017 WL 2224828 (N.D. Cal. May 22, 2017) .................................................... 13, 18, 23, 24

*Kotlar v. Hartford Fire Ins. Co.,*
    83 Cal. App. 4th 1116 (2000) .............................................................................................. 5

*Leyva v. Medline Indus., Inc.,*
    716 F.3d 510 (9th Cir. 2013) ............................................................................................. 12

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ........................................................................... 15

*Mackey v. Bristol W. Ins. Servs. of Cal., Inc.*,
  105 Cal. App. 4th 1247 (2003) ............................................................................. 5

*McHugh v. Protective Life Ins. Co.*,
  12 Cal. 5th 213 (2021) ....................................................................... 3, 5, 6, 11

*Miletak v. Allstate Ins. Co.*,
  2010 WL 809579 (N.D. Cal. Mar. 5, 2010) .................................................... 19

*Moriarty v. Am. Gen. Life*,
  2022 WL 6584150 (S.D. Cal. Sept 27, 2022) ................................................. 15

*Nieves v. United of Omaha Life Ins. Co.*,
  2023 WL 2705836 (S.D. Cal. March 28, 2023) .............................................. 15

*Oasis W. Realty, LLC v. Goldman*,
  250 P.3d 1115 (Cal. 2011) .................................................................................. 17

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ............................................................................. 13

*Pitt v. Metro. Tower Life Ins. Co.*,
  2022 WL 17972167 (S.D. Cal. Dec. 1, 2022) ................................................. 15

*Rannis v. Recchia*,
  380 Fed. Appx. 646 (9th Cir. 2010) ..................................................................... 9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ............................................................................................. 9

*Siino v. Foresters Life Ins. & Annuity Co.*,
  2023 WL 4410948 (N.D. Cal. July 7, 2023) ............................................. 4, 5, 19

*Siino v. Foresters Life Ins. & Annuity Co.*,
  340 F.R.D. 157 (N.D. Cal. 2022) ...................................................................... 15

*Small v. Allianz Life Ins. Co. of N.A.*,
  2023 WL 4042593 (C.D. Cal. May 23, 2023) ........................................... passim

*Snipes v. Dollar Tree Distribution, Inc.*,
  2017 WL 5754894 (E.D. Cal. Nov. 28, 2017) ................................................ 14

*Steen v. Am. Nat'l Ins. Co.*,
  2023 WL 4004192 (C.D. Cal. June 14, 2023) ................................................. 15

*Thomas v. State Farm Ins.*,
  2021 WL 4596286 (9th Cir. Oct. 6, 2021) ...................................................... 21

MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL
011069-11/2322640 V2

*Turnette v. Fulton, Friedman & Gullace, LLP*,
   2013 WL 12222361 (S.D. Cal. June 27, 2013) ........................................................ 23

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) .............................................................................................. 17

*Vaquero v. Ashley Furniture Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016) ........................................................................... 10, 12

*Wal–Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ....................................................................................... 10, 11, 12

*Walker v. Life Ins. Co. of the Southwest*,
   953 F.3d 624 (9th Cir. 2020) .................................................................................... 17

*Wilson v. 21st Century Ins. Co.*,
   42 Cal. 4th 713 (Cal. 2007) ....................................................................................... 18

*Wolin v. Jaguar Land Rover North Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ...................................................................... 13, 22, 23

*Zinser v. Accufix Resch. Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ............................................................................ 23, 24


**Statutes**

Cal. Civ. Code § 3289 .................................................................................................. 11

Cal. Ins. Code § 10111 ................................................................................................. 11

Cal. Ins. Code § 10112.71(b)(1) ................................................................................... 1

Cal. Ins. Code § 10113.71 ................................................................................... *passim*

Cal. Ins. Code § 10113.72 ................................................................................... *passim*

Cal. Ins. Code, § 10508(c)(7) ...................................................................................... 19


**Federal Rules**

Fed. R. Civ. P. 23 ........................................................................................................... 9

Fed. R. Civ. P. 23(a) ................................................................................................... 2, 9

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 10

MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL
011069-11/2322640 V2

Fed. R. Civ. P. 23(a)(3) ................................................................................................. 13

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 15, 16, 17

Fed. R. Civ. P. 23(b) .............................................................................................. 9, 15, 17

Fed. R. Civ. P. 23(b)(3) ................................................................................. 2, 17, 18, 22

Fed. R. Civ. P. 23 (g) ........................................................................................... 16, 17


**Other Authorities**

7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    1778 (3d ed. 1998) ...................................................................................... 17

7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and
    Procedure*, § 1779 (3d ed. 2005) ............................................................... 22

MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL
011069-11/2322640 V2

# I.    INTRODUCTION

Plaintiff Judy Vann-Eubanks and the putative class are beneficiaries to life insurance policies that Defendant Protective Life Insurance Company ("Protective Life") breached by failing to pay the death benefits provided for in the policies. Protective Life asserts it had no obligation to pay because the policies supposedly had lapsed for nonpayment of premium. But that is directly contrary to the California Insurance Code, which states that a nonpayment lapse "shall not be effective" if the insurer failed to first provide required statutory notices. Moreover, California law has long held that insurers must strictly comply with statutory provisions applicable to cancellation. Because Protective Life failed to provide the notices, the class policies remained in effect and were later breached when Protective Life failed to pay the death benefits upon the death of the policy owners. As a result, Plaintiff seeks to certify a class of beneficiaries wrongfully denied those benefits.

The notice requirements arose in 2012, when §§ 10113.71 and 10113.72 of the California Insurance Code (the "Statutes") were enacted to protect policy owners and their beneficiaries from lapses in their life insurance coverage for missed premium payments, which is of heightened concern as policy owners age. Effective January 1, 2013, the Statutes created procedural safeguards requiring insurers to both notify policy owners of their right to designate another person to receive notice of a pending payment lapse and provide policy owners a form to make that designation (together, "Designation Notices"). If insurers fail to provide policy owners either of these, the Statutes establish an unconditional rule: policy lapses or terminations for nonpayment of premium "shall not be effective." Cal. Ins. Code § 10112.71(b)(1).

The Statutes apply to all policies in force as of January 1, 2013, but Protective Life never provided its policy owners the Designation Notices. That failure triggered the statutory anti-termination rule, but Protective Life still purported to terminate the policies when premiums were missed. Worse, it later used that purported termination as the reason not to pay death benefits when the policy owners died, in breach of the policies.

Plaintiff, Judy Vann-Eubanks, ("Plaintiff") was one of these beneficiaries. Her late father, Robert Eubanks, diligently paid premiums on his life insurance policy for 15 years only to have Protective Life purportedly terminate it for nonpayment mere weeks before he died in 2014.

MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

Plaintiff moves to certify a class of beneficiaries who made a claim, or would have been eligible to make a claim, for death benefits on life insurance policies that Protective Life issued or delivered in California and, on or after January 1, 2013, purported to lapse or terminate for nonpayment of premium without first providing the Designation Notices.[1] Just this year, a similar class was certified in this District by Chief Judge Mueller. *Farley v. Lincoln Benefit Life Co.*, 2023 WL 3007413, at *9 (E.D. Cal. Apr. 18, 2023). And essentially the same class has been certified twice in a sister District. *See Small v. Allianz Life Ins. Co. of N.A.*, 2023 WL 4042593, at *4 (C.D. Cal. May 23, 2023); *Bentley v. United of Omaha Life Ins. Co.*, 2018 WL 3357458, at *12 (C.D. Cal. May 1, 2018).

The putative class satisfies the elements of Federal Rule of Civil Procedure 23(a). The class is undoubtedly numerous. Classes in excess of 40 members meet the requirement, and Protective Life has stipulated that the putative class exceeds that total (and likely by a substantial number, with over a thousand beneficiaries). *See infra* § III.A.1. There are both common questions of law and fact, such as whether Protective Life's policy terminations for nonpayment of premium were ineffective under the Statutes (so the policies remained in force at the time of the owners' deaths), whether Protective Life later breached the policies by failing to pay the death benefits, and whether the class was harmed as a result of that breach. *See infra* § III.A.2.

Having been denied the death benefit under her late father's policy, Plaintiff's claims are typical of the absent class members, all of whom suffered the same contract breach and injury. *See infra* § III.A.3. Plaintiff is also sufficiently committed to this litigation and will continue to adequately represent the class. *See infra* § III.A.4.

Class certification is also warranted under Rule 23(b)(3) as common questions predominate, and class treatment offers a superior method of resolution. *See infra* § III.B. Common evidence will prove that Protective Life adopted a blanket practice to lapse or terminate policies in force as of January 1, 2013, for nonpayment of premium without first providing the Designation Notices, and to later breach these policies by failing to pay the death benefits to the beneficiaries. Plaintiff will rely on

---

[1] Plaintiff does not seek the appointment of plaintiff Janice Schmidt as a class representative or to certify a class against Standard Life Insurance Company. Ms. Schmidt's claims against Standard Life Insurance Company continue on an individual basis.

MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL
011069-11/2322640 V2

common evidence to prove that Protective Life's failure to pay constitutes a breach of contract on a class-wide basis. *See infra* § III.B.1. Given Plaintiff's reliance on a common course of conduct, causing class-wide damage, class adjudication is superior to adjudicating hundreds of individual lawsuits. Further, because the class members are not the policy owners, but their beneficiaries, many are likely unaware they even have claims. *See infra* § III.B.2.

All of the relevant factors clearly establish that class certification is warranted.

## II.   FACTS COMMON TO THE CLASS

### A.   Protective Life was required to provide the Third-Party Designation Notices to all class members.

As they reach the end of their lives, life insurance policy owners frequently face a myriad of issues and may be unable to ensure that their insurance premiums are kept current. Policies whose premiums have been faithfully paid for many years can lapse due to an uninformed missed payment, precisely when the policy benefits may be needed most. To help ensure that coverage is not lost due to mere oversight or for ill-advised reasons, the California legislature passed a bill to add specific procedural safeguards to its insurance code. These safeguards include requiring insurers to provide policy owners the right to designate another person to aid them in their decision-making. The bill was strongly supported by the California Insurance Commissioner and Department of Insurance, along with a coalition of senior groups, including the California Alliance of Retired Americans, California Advocates for Nursing Home Reform, Congress of California Seniors, with no opposition. *See* 2011 Legis. Bill Hist. CA A.B. 1747, Bill Analysis, June 13, 2012, at 3.

Effective January 1, 2013, insurers were required to provide the Designation Notices. *See* Cal. Ins. Code §§ 10113.71-72. These procedural safeguards require life insurers to provide policy owners each of the following: (i) notice of the right to designate another person to receive notice of pending lapse of the policy for non-payment of premium (§ 10113.72(a)); (ii) a form to make their designation (§ 10113.72(a)); and (iii) annual notice of the right to change or supplement their designation (§ 10113.72(b)). "The Legislature enacted the sections … to ensure that existing policy owners don't lose the life insurance coverage that they may have spent years paying for and on which their loved ones depend." *McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 220 (2021).

To give teeth to these crucial procedural safeguards, the legislature decided to include an unconditional rule for insurers who fail to provide the Designation Notices: any purported policy lapse or termination for nonpayment of premium "shall not be effective." *See* § 10113.71(b)(1): "A notice of pending lapse and termination … shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72… and a known … other person having an interest in the individual life insurance policy…"; *see also* § 10113.72(c): "No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer … gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a)." *See* Ex. 1 (Cal. Ins. Code §§ 10113.71-72 with the controlling passages highlighted).[2] These anti-termination provisions likewise render unenforceable any policy provision that allows termination for nonpayment. *See Siino v. Foresters Life Ins. & Annuity Co.*, 2023 WL 4410948, at *6 (N.D. Cal. July 7, 2023). Policies that remain in force due to this anti-termination rule are no less enforceable than any other in-force policy.

By making the anti-termination rule unconditional for insurers that fail to provide the Designation Notices, beneficiaries claiming death benefits are not required to show that this failure caused the payment lapse.[3] Beneficiaries are thereby spared from having to make the often impossible showing from the grave that the deceased policy owner did not intend to terminate the policy by lapsing premium payments; to say nothing of having to identify the person who would have been designated and what they would or would not have done. Had the legislature included such conditions, the statutory protections would be rendered illusory. To that end, just last year, insurers sought to amend the Statutes specifically to add such a requirement. The proposed § 10113.73 would have provided: "No insurer shall be liable for failure to [provide the Designation Notices] unless an alleged policy

---

[2] All exhibits cited herein are attached to the August 14, 2023, Declaration of Christopher R. Pitoun filed concurrently with this memorandum, unless otherwise indicated. Exhibits will be referred to with the shorthand "Ex.__" followed by a short description.

[3] Ex. 1 (Cal. Ins. Code §§ 10113.71-72).

MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL
011069-11/2322640 V2

lapse occurred as a result of that failure."[4] However, the proposed amendment "died" and never became part of the California Insurance Code.[5]

The unconditional nature of the rule is also consistent with California common law: "Termination of coverage can only be accomplished by strict compliance with the terms of any statutory provisions applicable to cancellation." *Mackey v. Bristol W. Ins. Servs. of Cal., Inc.,* 105 Cal. App. 4th 1247, 1258 (2003). "If a cancellation is defective, the policy remains in effect even if the premiums are not paid." *Siino*, 2023 WL 4410948, at *7 (quoting *Kotlar v. Hartford Fire Ins. Co.*, 83 Cal. App. 4th 1116, 1121 (2000)).

Insurers were required to provide the Designation notices for all policies in force as of January 1, 2013, *McHugh*, 12 Cal. 5th at 220, but Protective Life failed to provide them. That failure triggered the statutory anti-termination rule, but Protective Life still purported to terminate the policies when premiums were missed. Worse, it used these purported terminations to avoid paying death benefits when the policy owners later died, in breach of its contractual obligations.[6]

Protective Life used this ruse and disregarded its contractual death-benefit obligation even after the California Supreme Court unanimously confirmed that these very policies were covered by the Statutes (i.e., those in force as of January 1, 2013). *McHugh*, 283 Cal. 5th at 221-22. Protective Life's

---

[4] Ex. 2 (SB-1320 (Proposed Amendment to the Statutes)).

[5] Ex. 3 (Bill Status of SB-1320 (Proposed Amendment to the Statutes)).

[6] For such policies, Protective Life never provided the designation notice and form required by § 10113.72(a), the absence of which alone precluded termination of the policies for nonpayment of premium. Ex. 4, Deposition of Protective Life Rule 30(b)(6) designee Scott Creutzmann, at 22:23-23:3, 24:12-17, 25:8-26:1. Protective Life also failed to provide the annual notice required by § 10113.72(b) prior to December 2021. *Id.* at 35:6-22.

Even for policies issued after January 1, 2013, Protective Life failed to provide the annual notices required by § 10113.72(b) until sometime in 2016 – a failure its Rule 30(b)(6) representative was unable to explain. *Id.* at 31:14-32:11, 34:3-35:1. In the process of beginning to send such annual notices regarding policies issued after January 1, 2013, for a brief period in 2016, and due to an "internal error," Protective Life sent those annual notices even for some policies issued prior to 2013. *Id.* at 32:12-33:20; Ex. 5, Rebholz Dep., at 44:21-46:5, 51:13-22, 58:8-59:2. It was not Protective Life's intent to send annual notices for such policies at that time, and it quickly discontinued doing so. Ex. 4, Creutzmann Dep., at 32:12-33:20. This one-time notice to some of the owners of pre-2013-issued policies did not cure Protective Life's breach even regarding those polices because, *inter alia*, (i) it never sent the policyowners the form required by § 10113.72(a), and (ii) it failed to send notices annually, as required by § 10113.72(b).

flouting of the law was particularly egregious because it was the defendant insurer in *McHugh*. It has been nearly two years since the California Supreme Court weighed in, and Protective Life has yet to pay the hundreds of beneficiaries their death benefits.[7]

There was no excuse for Protective Life's non-compliance, as the cost of sending the Designation Notices was "minimal." *McHugh*, 12 Cal. 5th at 233. The only reason an insurer would not send the Designation Notices is that they "prevent inadvertent defaults"—which represent a "windfall" to the insurer and is exactly what the Statutes were designed to prevent. *Id.*

## B.   Protective Life failed to follow the Statutes in its treatment of Mr. Eubanks.

Protective Life issued Policy No. PL 0647591, in the amount of $100,000, to Robert Eubanks on May 25, 1999.[8] For 15 years, Mr. Eubanks paid his premiums and enjoyed uninterrupted coverage.[9] Mr. Eubanks' daughter, Plaintiff Judy Vann-Eubanks ("Ms. Vann-Eubanks"), is a 50% contingent beneficiary of the policy.[10]

In and around 2013 and 2014, Mr. Eubanks was in declining health suffering from both Parkinson's Disease and dementia.[11] Protective Life purported to lapse the policy for nonpayment on or around May 25, 2014, just ten weeks prior to Mr. Eubanks' death on August 1, 2014.[12] Protective Life never provided Mr. Eubanks the Designation Notices.[13]  As a result, the policy termination was ineffective, and the policy remained in force.

After Mr. Eubanks died, his daughter (Plaintiff) contacted Protective Life on behalf of her mother (the primary beneficiary), Violet Eubanks ("Mrs. Eubanks"), and inquired regarding benefits

---

[7] There was one potential exception. Ex. 5, Rebholz Dep., at 115:16-116:3.

[8] Defendant Protective Life Insurance Company's Answer to Amended Class Action Complaint and Demand for Jury Trial ("Answer"), ECF No. 43, ¶ 32.

[9] Ex. 5, Deposition of Protective Life Rule 30(b)(6) designee Michael Rebholz, at 141:17-142:1, 168:15-169:20.

[10] *Id.* at 141:11-16; Ex. 6 at Protective 1113 ("If there are no surviving primary beneficiary(s), then the proceeds will be paid to the contingent beneficiary(s).").

[11] Ex. 7, Deposition of Judy Vann-Eubanks, at 82:2-22.

[12] *Id.* at 142:14-18, 161:12-163:24; Ex. 8, Second Notice of Payment Due (Protective 1172); Ex. 9, Last Notice of Payment Due (Protective 1174).

[13] Ex. 5, Rebholz Dep., at 32:14-35:6, 142:2-8.

under the policy.[14] Protective Life stated that the policy had lapsed and therefore Mrs. Eubanks was not eligible to make a claim.[15] Mrs. Eubanks subsequently died (without any benefit having been paid), leaving Plaintiff Ms. Vann-Eubanks as a 50% beneficiary.[16] Hence, the first claim for benefits on the policy was made by filing this action.[17] Plaintiff Ms. Vann-Eubanks has not received the benefits due under the policy.[18]

## C.    The Putative Class

Mr. Eubanks and his beneficiaries were not alone. Protective Life applied a uniform company practice not to provide the Designation Notices regarding policies issued prior to January 1, 2013.[19] Since then, many of these policies purportedly terminated for nonpayment of premium, the policy owner died, and Protective Life uniformly breached its contracts by refusing to pay the death benefits to the beneficiaries.[20]

In response to Plaintiff's interrogatory seeking identification of the beneficiaries of such policies, Protective Life provided a list (Ex. 11, the "Policy List") that, in its words:

> [I]dentif[ies] deaths on terminated Protective Life policies that were issued or delivered in California during the relevant time frame, for which the policy owner may not have been sent a notice prior to termination under 10113.72. This list includes policies issued or delivered in California and which were in force on January 1, 2013, or which were issued or delivered in California after this date without .72 annual notices.[21]

---

[14] Ex. 7, Vann-Eubanks Dep., at 28:3-19.

[15] *Id.* at 28:20-25.

[16] Ex. 7, Vann-Eubanks Dep., at 67:8-23; Ex. 10, Acknowledgment of Policy Change (Protective 1124).

[17] Ex. 7, Vann-Eubanks Dep. at 110:24-111:15; 125:9-14; Ex. 5, Rebholz Dep., at 142:19-143:22, 186:22-25.

[18] Ex. 7, Vann-Eubanks Dep., at 110:24-111:18.

[19] Ex. 4, Creutzmann Dep., at 25:8-26:1.

[20] Ex. 5, Rebholz Dep., at 115:16-116:17; Ex. 11, Policy List.

[21] Ex. 12, Defendant Protective Life Insurance Company's Supplemental Responses to Plaintiff's Interrogatory No. 2 and Supplemental Responses to Plaintiff's Interrogatories ("Supp. Rog. Resp.") Nos. 3-6, at 7.

1        The Policy List identifies more than ███ policies matching this description.[22] The Policy List

2   reveals ████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████

5   ████[23]

6        Accordingly, the putative class would comprise:

7           All beneficiaries who made a claim, or would have been eligible to make
    a claim, for the payment of benefits on life insurance policies issued or

8           delivered by Protective Life in the State of California that lapsed or were
    terminated by Protective Life for the non-payment of premium after

9           January 1, 2013, and as to which policies one or more of the notices

10          described by Sections 10113.72(a) and (b) of the California Insurance
    Code were not sent by Protective Life prior to lapse or termination.[24]

11

12  As used in the class definition, the "notices described by Sections 10113.72(a) and 10113.72(b) of the

13  California Insurance Code" are:

14          (i) notice to the applicant of the opportunity to designate (with a form to
    make the designation by name, address, and telephone number) at least

15          one person, in addition to the applicant, to receive notice of lapse or
    termination of an individual life insurance policy for nonpayment of

16          premium; and

17          (ii) notice to the policy owner annually of the opportunity to change the
    written designation or designate one or more persons.

18

19  Excluded from the class would be: (i) Protective Life; (ii) any entity in which Protective Life has a

20  controlling interest; (iii) Protective Life's officers, directors, and employees; (iv) Protective Life's

21  legal representatives, successors, and assigns; (v) governmental entities; and (vi) this Court.

22

23  ───────────────────

     [22] Ex. 11, Policy List.

24       [23] Protective Life asserts the list is overinclusive in minor respects. For example, six of the more than ███

25  policies were not issued pre-2013, one was paid, and a few were terminated in accordance with the policy terms
    (and thus, were effectively terminated because it was not lapsed for nonpayment of premium). Ex. 12, Supp.

26  Rog. Resp., at 7-8; Ex. 5, Rebholz Dep., at 81:13-82:10, 100:13-22.

     [24] As defined, the class does not include beneficiaries of policies that were terminated by the policy owner

27  in accordance with the policy terms. Such policy terminations were not for nonpayment of premium and, thus,
    not within the class definition.

28

MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL
011069-11/2322640 V2

# III.   ARGUMENT

The putative class should be certified because it meets both the prerequisites set forth in Rule 23(a) and the requirements of Rule 23(b) of the Federal Rules of Civil Procedure. *See A.B. v. Hawaii State Dept. of Educ.*, 30 F.4th 828, 834 (9th Cir. 2022). If these elements are met, certification is mandatory. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (Rule 23 creates "a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue [her] claim as a class action.").

## A.   The class meets the prerequisites of Rule 23(a).

There are four prerequisites to certification of a class pursuant to Rule 23(a): (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy. Fed. R. Civ. P. 23(a); *A.B.*, 30 F.4th at 834.[25]

### 1.   Numerosity is undisputed.

A putative class is eligible for certification if it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Joinder need not be impossible; it is enough if putative class members would suffer a strong litigation hardship or inconvenience were joinder required. *Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010). This hardship is generally presumed, and numerosity met, when a class includes at least 40 members. *Id.* at 651. *See also Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.").

This threshold is well exceeded here, and Protective Life has stipulated that, "[f]or purposes of class certification … at least 40 policies on the [Policy] List lapsed for non-payment of premium."[26] Protective Life has also stipulated that "the class members on the [Policy] List are geographically

---

[25] Some federal courts have also imposed a separate requirement that the class be "ascertainable" or "administratively feasible," i.e., that the plaintiff must show that class members are easily identifiable, But the Ninth Circuit has rejected this "additional hurdle into the class certification process delineated in the enacted Rule." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-26 & n. 4 (9th Cir. 2017) ("[Defendant] cites no other precedent to support the notion that our court has adopted an 'ascertainability' requirement. This is not surprising because we have not.").

[26] Ex. 13, Apr. 3, 2023, Joint Stipulation Resolving Discovery Dispute, at 4.

MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL
011069-11/2322640 V2

dispersed throughout California and the United States,"[27] which is to be expected, since they are not

the purchasers of the California policies but their beneficiaries. *See Bentley*, 2018 WL 3357458, at *7

(finding the geographical diversity factor "especially important because class members are scattered

around the country").

### 2.    The claims of Plaintiff and other members of the class share common questions of fact and law.

The commonality requirement is met if "there are questions of law or fact common to the

class." Fed. R. Civ. P. 23(a)(2). "The requirement of 'commonality' means that the class members'

claims 'must depend upon a common contention' and that the 'common contention, moreover, must

be of such a nature that it is capable of classwide resolution—which means that determination of its

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

stroke.'" *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1153 (9th Cir. 2016) (quoting *Wal–

Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "A single common question is enough." *Bentley*,

2018 WL 3357458, at *8 (citing *Dukes*, 564 U.S. at 359).

Commonality is satisfied here because the core factual and legal issues are the same for all

class members, including Plaintiff. As stated in *Farley v. Lincoln Benefit Life Co.*, "the overarching

common question of law and fact raised in plaintiff's complaint is whether defendant violated

California Insurance Code sections 10113.71 and 10113.72 by not providing the statutes' required

procedural safeguards prior to lapsing and/or terminating life insurance policies." 2023 WL 3007413,

at *4 (E.D. Cal. Apr. 18, 2023); *see also Small*, 2023 WL 4042593, at *2 ("Here, there is at least one

class-wide common question—whether all class members were harmed by Allianz's alleged failure to

comply with the Statutes. Therefore, commonality is satisfied.").

Factually, Protective Life applied a uniform, company-wide practice to not pay the contractual

death benefits due on policies it had purportedly terminated for nonpayment of premium without first

providing the Designation Notices. Because Protective Life failed to provide the Designation Notices,

the policy terminations were ineffective, and the policies remained in force when their owners died.

---

[27] *Id.*

The proof of this business practice, which Protective Life uniformly applied to every class member, will be shown via common, class-wide evidence. *See Small*, 2023 WL 4042593, at *4 ("The central issue, here, is whether Allianz had a corporate policy to terminate life insurance policies for non-payment of premiums without first complying with the Statutes. The answer 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'") (quoting *Dukes*, 564 U.S. at 350).

Protective Life's bad faith likewise arises out of common factual nexus shared by the class. Protective Life did not determine on a case-by-case basis whether to pay the death benefits regarding policies issued prior to 2013. Its failure to pay was pre-determined by its uniform practice of failing to pay benefits on any pre-2013 policy it had "terminated" for nonpayment of premium, whether or not it was required to provide the Designation Notices for such policies. This is shown by the fact that its uniform practice continued unabated, even after it lost the *McHugh* case and the California Supreme Court held that the Statutes applied to those very policies.

The legal issues are likewise subject to common determination. Each class member's claim turns on whether Protective Life was required to provide the Designation Notices for policies issued prior to January 1, 2013 (*McHugh* answered in the affirmative), whether Protective Life's policy terminations for nonpayment of premium were ineffective under the Statutes so the policies remained in force at the time of the owners' deaths, whether Protective Life later breached the policies by failing to pay the death benefits, and whether the class was harmed as a result of that contract breach. These core determinations are the same for all putative class members and will determine each claim. The bad faith determination will also be common, given that Protective Life withheld benefits for each class member on the same basis,

Even the legal assessment of damages is uniform across the class, as their nature and calculation are set by California statute—including the face amount of the policy and the amount of interest accrued from the date of death of the policy owner. *See Bentley*, 2018 WL 3357458, at *10 ("The legal issues will be straightforward because damages are set by California statutes."); Cal. Ins. Code § 10111 ("In life or disability insurance, the only measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto"); Cal. Civ. Code § 3289

(prejudgment interest).[28] Plaintiff's accounting expert Kent Barrett will rely exclusively on common evidence to provide a straightforward methodology to calculate class wide damages.[29]

When a single-actor defendant has applied a uniform practice to all putative class members, without individual determinations, and the legality of that policy is at issue, this is the quintessential "'common contention' that easily 'is capable of class-wide resolution.'" *Vaquero*, 824 F.3d at 1154 (quoting, and distinguishing, *Dukes*, 564 U.S. at 350). Hence, it is not surprising that a court in a sister District has found commonality—and certified the class—for the same claims and class definition against another insurer that likewise uniformly failed to provide the Designation Notices for policies issued prior to January 1, 2013, and later breached the policies by failing to pay the death benefits:

> The Court concludes that Plaintiff has satisfied the commonality prong. Factually, Defendant has admitted that it does not give designees notice if the policy was purchased before 2013. …All the class members have suffered the same alleged injury: they are beneficiaries of policies that United canceled before providing statutorily required notice. And the legal issues can be resolved in "one stroke." *Dukes*, 544 U.S. at 350…. If the Court determines that United violated the Statutes by not providing adequate notice, then Plaintiff and class members will prevail. Otherwise, United will win. Because the facts are similar and the legal issues can be resolved by answering one question, commonality is met.

*Bentley*, 2018 WL 3357458, at *8; *see also Farley*, 2023 WL 3007413, at *4 ("[T]he injury alleged here is the same among all putative class members: the deprivation of procedural safeguards guaranteed by the [S]tatutes. Commonality is satisfied here."); *Small*, 2023 WL 4042593, at *2.

*Bentley, Farley,* and *Small* were not outliers. Courts routinely find commonality when the claims are based on the application of a uniform policy to the putative class members. *See, e.g., Vaquero*, 824 F.3d at 1154 (affirming finding of commonality because the putative class alleged defendant's uniform violation of California's minimum wage law); *Collins*, 274 F.R.D. at 300-01 (commonality because putative class alleged uniform policies in violation of California's labor and

---

[28] In any event, individualized damages determinations – which are not necessary here – do not defeat predominance or class certification. *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (abuse of discretion to find that individual questions predominated, and deny class certification, due to individualized damage determinations).

[29] Ex. 14, Barrett Expert Report Secs. 3, 5, 6.

wage laws); *Johnson v. Harford Cas. Ins. Co.*, 2017 WL 2224828, *13 (N.D. Cal. May 22, 2017) (commonality because the putative class alleged defendant insurer's uniform violation of California's Insurance Code (depreciation of insured property)); *Durant v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 950588, *4 (W.D. Wash. Mar. 9, 2017) (commonality because of defendant insurer's uniform policy interpretation to deny class-member policyholders' claims).

The commonality requirement is satisfied here. As the court concluded in *Bentley*, "Liability in this case can be decided in one stroke because the legal and factual issues are identical." 2018 WL 3357458, at *8.

### 3. Plaintiff's claims are typical of those of the class.

The typicality requirement is met if "the claims … of the representative parties are typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). The purpose of the typicality requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175-1176 (9th Cir. 2010). The representative claims need not be "substantially identical" to the claims of the class (*Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)), but "reasonably co-extensive with those of absent class members" (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Bentley*, 2018 WL 3357458, at *9 (quoting *Wolin*, 617 F.3d at 1175, and *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Here, Plaintiff's interests are aligned with those of the class. The conduct that caused Plaintiff's injuries is not just "reasonably co-extensive" with that of her putative class; it is identical. Specifically, because of its uniform, company-wide practice, Protective Life did not provide the Designation Notices to Mr. Eubanks, just like it did not provide the Designation Notices to every other owner of the policies at issue in this case. As a result, Mr. Eubanks's policy was still in force when he died, just like every other policy at issue in this case remained in force when the owner died. Protective Life breached Mr. Eubanks's policy by failing the pay Plaintiff the death benefit due and owing under the

policy, just like it breached every other policy at issue in this case when it failed to pay the beneficiary their death benefits due and owing under their policy.

In short, identical for Plaintiff and each putative class member are: the defendant (Protective Life), the Statutes (Cal. Ins. Code §§ 10133.71-1013.72), the wrongful conduct (failure to pay death benefits on polices that were ineffectively terminated for nonpayment of premium due to the failure to provide the Designation Notices), the causes of action (breach of contract and bad faith), the injury (loss of policy proceeds), and the remedy (the amount due on the policy, plus statutory interest, and an award for bad faith). Damages differ only in amount depending on the face value of the policy and the amount of interest (which varies only by date of death).[30]

The typicality requirement is plainly met. *See Small*, 2023 WL 4042593, at *2 ("Small's claims are reasonably co-extensive with those of the class because she alleged that Allianz committed the same misconduct against all class members—namely, Allianz failed to apply the Statutes to life insurance policies that were issued before 2013 and terminated in or after 2013."); *Farley*, 2023 WL 3007413, at *5-6 ("Here, the claims of all the putative class members, including plaintiff are the same, they were denied a procedural right in violation of the [S]tatutes."); *Bentley*, 2018 WL 3357458, at *9 ("Bentley and the class members suffered the same injury because they were subjected to the same blanket policy"); *see also Snipes v. Dollar Tree Distribution, Inc.*, 2017 WL 5754894, *3 (E.D. Cal. Nov. 28, 2017) ("[G]iven the fact that Plaintiff['s] claims are predicated on allegedly uniform policies and practices that applied equally to all proposed class members, it would appear that Plaintiff's claims and injuries are typical of those suffered by the purported classes.").[31]

---

[30] Ex. 14, Barrett Expert Report Secs. 3, 6.

[31] In both *Farley* and *Small*, the putative class comprised not only vested beneficiaries of policies whose owners had died (the limited putative class here), but also still-living policy owners whose policies were purportedly terminated for nonpayment of premium even though the insurer failed to first provide Designation Notices. The vested beneficiaries sought the death benefits the insurers failed to pay, while the living policy owners sought equitable relief in the form of reinstatement of their policies. In *Farley*, the named plaintiff was a living policy owner, and therefore her equitable claims were not typical of the claims of the beneficiaries of deceased policy owners, who sought monetary relief for the failure to pay death benefits. As a result, the court certified only the class of living policy owners and invited a beneficiary representative to certify a beneficiary class like the putative class here. 2023 WL 3007413, at *9.

The cases often relied upon by life insurers where class certification was denied turned on issues of typicality not present here. In those cases, unlike here, the putative class included living policy owners seeking reinstatement of their policies for the insurer's failure to provide Designation Notices, and not just beneficiaries seeking monetary damages for the insurer's contract breach for failure to pay death benefits. The equitable claim of a living policy owner is not representative of the damages claim of a beneficiary, and vice versa. *See, e.g.*, *Nieves v. United of Omaha Life Ins. Co.*, 2023 WL 2705836, at *5 (S.D. Cal. March 28, 2023) (claims of a living policyowner were not typical of the putative class members who "are vested beneficiaries of coverage"); *Pitt v. Metro. Tower Life Ins. Co.*, 2022 WL 17972167, *5 (S.D. Cal. Dec. 1, 2022) (beneficiary plaintiff was "not typical of the vast majority of the class," 97% of whom were living policy owners); *Moriarty v. Am. Gen. Life*, 2022 WL 6584150, at *3 (S.D. Cal. Sept 27, 2022) ("Plaintiff has failed to satisfy Rule 23(b) because the relief she is seeking—damages—is fundamentally different than the equitable relief the proposed class members would be seeking."); *Siino v. Foresters Life Ins. & Annuity Co.*, 340 F.R.D. 157, 163-164 (N.D. Cal. 2022) (living policy owner plaintiff offered damage model only for tiny minority of putative class members who were beneficiaries).

There are other distinctions from the present case, too. *See, e.g.*, *Nieves*, 2023 WL 2705836, at *5 (unlike here, the named plaintiff had been provided the Designation Notices, her policy was lapsed for a different reason and had been reinstated, and her policy was issued after January 1, 2013). In *Steen v. Am. Nat'l Ins. Co.*, the class representatives admitted in their depositions that they intended to allow their policies to terminate and did not want them reinstated. 2023 WL 4004192, at *7-8 (C.D. Cal. June 14, 2023).

**4.      Plaintiff is an adequate representative because her claims reflect those of the class, they have shared objectives, and she has retained competent counsel.**

The Court must determine that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). It is satisfied if the plaintiff shows that her interests are not antagonistic to those of the class, and she is able to prosecute the action vigorously via qualified and competent counsel. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). For the same reasons that Plaintiff's claims are typical, she is an adequate representative: her claims are

identical to those of other class members and so are certainly not antagonistic to them. *See Small*, 2023 WL 4042593, at *3 ("Small is an adequate representative because she shares the same interests as the other putative class members in showing that Allianz failed to comply with the Statutes."); *Bentley*, 2018 WL 3357458, at *10 ("Plaintiff shares the same goal as the absent class members: to show that the Statutes apply to the policies affecting the class members, and that [defendant] violated the Statutes by not providing the policyholders' designees with appropriate notice before allowing policies to lapse.").

By her knowledge of the case, extensive litigation efforts to date (including responding to written discovery and being deposed), and attested willingness to do what is necessary going forward, Plaintiff has demonstrated that she will competently fulfill her obligations as a class representative.[32] *See also Bentley*, 2018 WL 3357458, at *10 ("Plaintiff has shown that she will prosecute this case because she has educated herself about her responsibilities as class representative and participated in discovery—including appearing for a four-hour deposition.").

Finally, Plaintiff's counsel is qualified and competent to represent the class. They have many years' collective experience in class action litigation—including extensive background in insurance coverage and complex commercial litigation—with successful resolution of many class actions.[33] They also possess the human and financial resources to effectively litigate this matter to conclusion. *Id.* Indeed, for an identical class, they were found to be "skilled and experienced class action litigators [who] will adequately prosecute this action." *Bentley*, 2018 WL 3357458, at *10 (appointing as class counsel attorneys from Vanek, Vickers & Mansini (now with Sperling & Slater LLC) and Hagens Berman Sobol & Shapiro LLP).

Accordingly, the adequacy requirement of Rule 23(a)(4) is satisfied and Plaintiff requests, pursuant to Rule 23(g), the Court appoint as class counsel her attorneys, Christopher R. Pitoun of Hagens Berman Sobol & Shapiro LLP, David S. Klevatt of Klevatt & Associates, LLC, and Joseph

---

[32] Ex. 7, Vann-Eubanks Dep., at 109:20-110:23, 113:2-114:6, 117:22-119:16, 127:16-21; Ex. 15, Declaration of Judy Vann-Eubanks.

[33] *See* Ex. 16, firm and attorney resume of Christopher R. Pitoun; Ex. 17, attorney resume of David S. Klevatt; Ex. 18, attorney resume of Joseph M. Vanek.

1   M. Vanek of Sperling & Slater, LLC. *See Bentley*, 2018 WL 3357458, at \*10 n.5 ("Because the Court

2   concludes that Bentley's counsel is adequate under Rule 23(a)(4), it also concludes that Bentley's

3   counsel meets Rule 23(g)'s requirements.")

**B.**    **The Class Should be Certified Pursuant to Rule 23(b)(3) Because Common Issues of Fact and Law Predominate, and a Class Action is the Superior Method of Adjudication.**

A putative class action must meet one of the qualifications per Rule 23(b). The class here qualifies pursuant to Rule 23(b)(3) because "the questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.**    **The material legal and factual issues common to the class predominate over any individual inquiries.**

The "predominance" prong of the Rule 23(b)(3) standard "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "Common issues predominate over individual issues when the common issues 'represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *Id.* (quoting 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 1998)). "[E]ven if just one common question predominates, 'the action may be considered proper under rule 23(b)(3) even though other important matters will have to be tried separately.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). Here, nearly every material legal and factual issue is common to the class.

The predominance assessment begins with the elements of the underlying cause of action. *Walker v. Life Ins. Co. of the Southwest*, 953 F.3d 624, 630 (9th Cir. 2020) (quotations omitted). The first cause of action is for breach of contract, the elements of which are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011). The second cause of action, bad faith, is based on the principle that California law "implies in every

1  contract, including insurance policies, a covenant of good faith and fair dealing." *Wilson v. 21st*
2  *Century Ins. Co.*, 42 Cal. 4th 713, 720 (Cal. 2007). An insurer is liable in tort for bad faith if it
3  "unreasonably and in bad faith withholds payment of the claim of its insured." *Id.* (quotation omitted).

4         The facts underlying both claims will be proven on a common basis. As noted above, summary
5  records (and testimony) from Protective Life itself establish that: (i) it issued life insurance policies to
6  the policy owners prior to January 1, 2013; (ii) the policies were in force as of that date; (iii) it did not
7  provide the Designation Notices to the policy owners; (iv) it purported to lapse or terminate the policies
8  for nonpayment of premium; (v) each of the policy owners is deceased; (vi) each of the policies was
9  in force at the time of the policy owner's death; (vii) each class member is a beneficiary of those
10  policies; and (viii) Protective Life failed to pay the death benefits due and owing under the policies.[34]
11  Because common issues predominate both Plaintiff's bad faith and Plaintiff's contract claim, including
12  Protective Life's uniform business practices at the heart of this case, Rule 23(b)(3)  is easily satisfied.

13         Courts routinely hold that common questions predominate when breach of contract claims are
14  based on the defendant's uniform conduct towards all class members—including claims identical to
15  those at issue here. *See Small*, 2023 WL 4042593, at *4 ("Class claims that depend on proof of uniform
16  corporate policies have long been held to satisfy the predominance requirement."); *Bentley*, 2018 WL
17  3357458, at *11 ("The Court finds that common issues predominate here [because] … United has a
18  uniform practice of not providing notice to policyholders and their designees if they purchased their
19  policies before [January 1, 2013]."). *See also Johnson*, 2017 WL 2224828, at *15 (common issues
20  predominate in class claims for breach of insurance contracts because "[plaintiff's] claims revolve
21  around [defendant's] alleged failure to pay the amount it owes under its insurance contracts to the
22  insured… These questions, which pertain to every class member, can be resolved through the
23  interpretation of one statute, Section 2051, and the same factual determinations"); *Durant*, 2017 WL
24  950588, at *5 (common issues predominate in class claims for breach of insurance contracts because
25  defendant had applied a uniform standard to deny coverage and determination of its propriety "will

26
27  [34] *See, e.g.*, Ex. 11, Policy List; Ex. 4, Creutzmann Dep., at 22:23-23:3, 24:12-17, 25:8-26:1, 35:6-36:23;
28  Ex. 5, Rebholz Dep., at 96:15-98:14, 99:4-20, 101:10-102:15.

MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL
011069-11/2322640 V2

resolve most of the elements of the causes of action"); *Miletak v. Allstate Ins. Co.*, 2010 WL 809579, *13 (N.D. Cal. Mar. 5, 2010) (common issues predominate because "the claims are based on identical statements received during a common time period and allege a uniform type of harm").

**2.    There are no issues of policy owner intent or "causation" that predominate over the common issues.**

To the extent Protective Life asserts that a policy owner on the Policy List terminated their policy pursuant to a written request,[35] their individualized termination facts are immaterial to class certification, much less predominate. The beneficiary would not even be a class member to begin with, because the policy termination was not for nonpayment of premium (a condition of the class definition) but in accordance with the policy terms. The putative class includes beneficiaries of only those policies that were terminated for nonpayment of premium (for which the Designated Notices were not provided). That is because the statutory anti-termination provisions render ineffective only terminations for nonpayment of premium (and also render unenforceable any policy provision that allows termination for nonpayment, *Siino*, 2023 WL 4410948, at *6).

Nor should Protective Life have any difficulty identifying policy owners who terminated their policies pursuant to a written request in accord with its policy terms. It maintains records of its policy terminations,[36] as required by the California Insurance Code. And those records must include a "statement of reasons" for each termination and "be readily available." *See* Cal. Ins. Code, §§ 10508(c)(7) ("The records required to be maintained [include] a statement of reasons or other written communications, if any, pertaining to the … termination … of a policy") and 10508.5 ("The records shall be kept in an orderly manner so that the information therein is readily available"). Protective Life should be able to easily determine whether the policies were terminated for nonpayment of premium (in which case their beneficiaries are part of the class) or terminated in accord with its policy terms (in which case their beneficiaries would not be part of the class). *See Farley*, 2023 WL 3007413, at *5. In

---

[35] Ex. 5, Rebholz Dep., at 81:22-82:10. Policy termination at the request of the policy owner requires a written request from the owner. *See* Ex. 19, Protective Specimen Policy (Protective 1179). Also, as shown above, policy provisions that allow termination for unpaid premium are unenforceable under the statutory anti-termination provisions. *See Siino,* 2023 WL 4410948, at *6.

[36] Ex. 5, Rebholz Dep., at 88:23-89:3.

MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL
011069-11/2322640 V2

1   short, any individualized facts regarding intent to terminate could not predominate. *See Small*, 2023

2   WL 4042593, at *3-4.

3          Likewise off base would be any argument that the "causation" element of Plaintiff's contract

4   claim creates individual issues that defeat predominance and/or typicality. The causal connection

5   between Protective Life's contract breach and damages is straightforward and uniform across the class.

6          The breach is Protective Life's failure to meet its contractual obligation to pay the death benefit

7   due and owing upon the death of the policy owner.[37] Causation is shown if Protective Life's failure to

8   pay resulted in Plaintiff's and the class's damages (i.e., the amount of benefits they each should have

9   received plus interest accrued from the date of the policy owner's death). That causation linkage is

10  apparent, which should be the end of the issue. The failure to pay directly caused every class member's

11  damages.

12         To manufacture a lack-of-causation argument, insurers have tried to misdirect to a different

13  breach: their failure to provide Designation Notices. Living policy owners must rely on that statutory

14  breach in order to seek equitable relief (reinstatement of their policy) because no death benefits were

15  otherwise due and owing. But that is not the breach for which Plaintiff and class seeks death benefits.

16  The policy owners died, the class members are the beneficiaries entitled to the benefit, and Protective

17  Life breached its contract by failing to pay—for which each class member seeks damages, not

18  reinstatement of the policy. The illogic of the misdirection is borne out by an insurer that might violate

19  the Statutes by not providing the notices, but nonetheless not breach its obligation to pay death benefits

20  if it chooses to later pay them.

21         Protective Life's blanket purported policy terminations were ineffective under the Statutes, as

22  if they never happened, so that the policies remained in force and later breached when Protective Life

23  did not pay the death benefit. Policies that remain in force due to the anti-termination rule are no less

24

---

25  [37] First Amended Class Action Complaint and Demand for Jury Trial, ECF No. 39-1, ¶¶ 1, 30. *See* Ex. 19

26  Protective Specimen Policy, Rebholz Dep. Ex. 14, Protective 1176 ("The Company will, subject to the terms of this policy, pay the Death Benefit (see the Death Benefit Section of this policy) to the Beneficiary after receipt

27  at its Home Office of due proof of the insured's death before the Expiry date while this policy is in force."); *see also* Ex. 20, Protective Life Search at Protective 1128, 1132 (Protective Life confirming through its own search

28  that Mr. Eubanks died on August 1, 2014).

enforceable for the failure to pay benefits than any other in-force policy, and subject to no different causation standards.

The Ninth Circuit's ruling in *Thomas v. State Farm Ins*. is directly on point. It held that the policy beneficiary, for her breach of contract claim based on the insurer's failure to pay the death benefit, did not have to show that the failure to provide the Designation Notices caused the lapse:

> State Farm argues that Thomas failed to establish causation because she did not offer any evidence that the policies would not have lapsed even had Sate Farm [provided the Designation Notices]. But this evidence is not necessary for Thomas to prevail. *** Because State Farm failed to bring forward any evidence indicating that it sent Flynn notice of the right to designate, there is no genuine dispute of fact about whether it did so. [citations] Accordingly, based on this record, State Farm failed to comply with sections 10113.71 and 10113.72, which prevented the policies from lapsing. *Therefore, State Farm breached its contractual obligations by failing to pay benefits to Thomas under the policies after Flynn's death.*

2021 WL 4596286, at *1 (9th Cir. Oct. 6, 2021) (emphasis added).

Even if the breach were Protective Life's failure to provide the Designation Notices (and not its failure to pay the death benefit), the class still would not need to show that the failure to provide the notices caused the policy lapse. The Statues themselves provide the remedy for not providing the notices—a policy cannot lapse for nonpayment. This anti-termination remedy is unconditional and includes no causation element. If Protective Life failed to provide the notices, then its policy terminations for nonpayment of premium "shall not be effective"—period. *See* § 10113.71(b)(1). "Questions of causation, i.e., whether the policy would have lapsed even if defendant had complied with the statutes, are not relevant to whether there was a violation of a procedural right." *Farley v. Lincoln Benefit Life Co*., 2023 WL 3007413, at *4 (citing *Thomas*, 2021 WL 4596286, at *1 (causation is not necessary for plaintiff to prevail because "[a]n insurer's failure to comply with these statutory requirements means that the policy cannot lapse")); *see also Bentley*, 2018 WL 3357458 at *2 ("[I]f an insurer fails to give a policyholder an opportunity to name a designee, the notice [of lapse or termination] to the policyholder is not effective.").

Protective Life knows that the anti-termination provisions as written include no causation element. Insurers just last year sought to amend the Statutes specifically to add such a requirement. The proposed § 10113.73 would have provided: "No insurer shall be liable for failure to [provide the

1  Designation Notices] unless an alleged policy lapse occurred as a result of that failure."[38] No

2  amendment would be necessary if the Statutes already included a causation element. The proposed

3  amendment died and never became part of the California Insurance Code.[39]

4  Insurers also like to confuse the reason for the Statutes with their actual language. The purpose

5  of the Statutes is preventing inadvertent payment lapses by policy owners and provide them the right

6  to designate third-party counsel, particularly as they reach the end of their lives and often face a myriad

7  of issues hindering their ability to keep their payments current. The legislature determined that the

8  anti-termination rule as written best effects that purpose. The statutory notice requirements would be

9  rendered illusory had the rule required beneficiaries to show that the failure to provide the notices

10  caused the deceased policy owner's payment lapse. Any trade-off (such as a policyowner who might

11  have intended to terminate by payment lapse) was the balance struck by the legislature.[40]

12  This balancing imposed no undue burden on insurers. It gave them exclusive control over

13  making their terminations effective. All Protective Life had to do was provide the Designation Notices.

14  **3.**  **Class adjudication of the claims is plainly superior to individual lawsuits.**

15  "[T]he purpose of the superiority requirement is to assure that the class action is the most

16  efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (quoting 7AA

17  Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1779 at 174 (3d

18  ed. 2005)). "Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of

19  this litigation as a class action is efficient and whether it is fair. …Underlying [the] test[] is a concern

20  for judicial economy." *Wolin*, 617 F.3d at 1175-76. The test is met here for numerous reasons.

21  First, as discussed above, the questions of law and fact are not only predominantly common

22  but are essentially exclusively common. Once the common determinations are made (regarding

23  Protective Life's blanket practice of not providing Designation Notices for policies issued prior to

---

[38] Ex. 2 (SB-1320 (Proposed Amendment to the Statutes)).

[39] Ex. 3 (Bill Status of SB-1320 (Proposed Amendment to the Statutes)).

[40] In actuality, it mattered not one iota to Protective Life whether a policyowner intended or not to lapse their policy. Protective Life uniformly terminated any policy that wasn't current (even though it failed to provide the Designation Notices) and failed to pay death benefits. The circumstances of any individual policyowner didn't factor.

MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL
011069-11/2322640 V2

January 1, 2013, and failing to pay benefits for such policies), all that remains are the ministerial determinations such as the face value of each policy and, for the calculation of interest due, the date of the policy owner's death. Resolving these dispositive issues in a single proceeding is far more efficient than in hundreds of individual actions, in which the same conduct of Protective Life would be adjudicated over and over, resulting in a massive waste of resources. *See Wolin*, 617 F.3d at 1176 ("It is far more efficient to litigate this—the [common] basis for their claim—on a classwide basis rather than in thousands of individual and overlapping lawsuits."); *Small*, 2023 WL 4042593, at *4 (finding class adjudication superior because, *inter alia*, it "will reduce litigation costs, and will promote judicial efficiency, by resolving the claims in one stroke").

Second, a single class adjudication in a single forum "will allow this Court to resolve the issues raised in a consistent manner, and avoid inconsistent judgments from courts across the country." *Bentley*, 2018 WL 3357458, at *11; *see also Johnson*, 2017 WL 2224828, at *17 ("A situation in which numerous lawsuits surrounding the same question of what items are 'normally' depreciated, in which each court must make a determination, would produce confusion and uneven and inequitable results.").

Third, absent class certification, few putative class members would likely bring claims. The putative class members are not the policy owners but their beneficiaries and thus, are likely unaware of Protective Life's failure to provide the Designation Notices to the policy owner, much less the statutory mandates. Their likely ignorance weighs strongly in favor of the superiority of class certification. *See Small*, 2023 WL 4042593, at *4 ("[C]lass adjudication, here, is superior to individual claim adjudication because it will provide notice to class members who, otherwise, would not know that they have a claim…."); *Coburn v. City of Sacramento*, 2020 WL 7425345, *5 (E.D. Cal. Dec. 18, 2020) ("[E]ach class member is not likely to pursue their individual claims given the fact that they may be ignorant of their rights."); *Turnette v. Fulton, Friedman & Gullace, LLP*, 2013 WL 12222361, *5 (S.D. Cal. June 27, 2013) ("[B]ecause individuals are most likely unaware of their rights under the [statute], the likelihood of individual claims is remote and class action is superior.").

Fourth, many class members have claims that amount to just a few thousand dollars, which would not justify the substantial legal fees and costs of litigating against a formidable defendant insurer like Protective Life. *See Zinser v. Accufix Resch. Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001) ("We

- 23 -

1    recognize that a party with a claim of $50,000 might have a difficult time alone pursuing a complex
2    … case."); *Johnson*, 2017 WL 2224828, at *16 ("The *Zinser* court acknowledged that if only $50,000
3    in damages was sought, that amount would support certification."). Other class members have co-
4    beneficiaries with whom they must share the policy's face value.
5        Whether because of the value of the policies, daunting challenge of litigating against a well-
6    heeled insurer, or lack of knowledge of the claims, putative class members have brought few individual
7    actions to enforce their rights. This further demonstrates that class certification is a superior method of
8    adjudicating these claims. *See Johnson*, 2017 WL 2224828, at *17 ("No other suits have been brought
9    involving the same subject matter as the present action. This indicates that individual parties are either
10   unable or unwilling to seek individual litigation on their own behalf and supports certification.").

11                                **IV.   CONCLUSION**

12       For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order certifying
13   her proposed class, appointing her as class representative, and appointing as class counsel Christopher
14   R. Pitoun of Hagens Berman Sobol & Shapiro LLP, David S. Klevatt of Klevatt & Associates, LLC,
15   and Joseph M. Vanek of Sperling & Slater, LLC.

16

17   Dated: August 14, 2023                          Respectfully submitted,

18                                                   HAGENS BERMAN SOBOL SHAPIRO LLP

19                                                   By /s/ *Christopher Pitoun*
20                                                      Christopher R. Pitoun (SBN 290235)
                                                     Abigail D. Pershing (SBN 346467)
21                                                   301 North Lake Avenue, Suite 920
                                                     Pasadena, CA 91101
22                                                   Telephone: (213) 330-7150
                                                     christopherp@hbsslaw.com
23                                                   abigailp@hbsslaw.com

24
                                                     David S. Klevatt (*pro hac vice*)
25                                                   KLEVATT & ASSOCIATES, LLC
                                                     77 West Wacker Drive, Suite 4500
26                                                   Chicago, IL 60601-1604
                                                     Telephone: (312) 782-9090
27                                                   dklevatt@insurancelawyer.com

28

MEMO OF POINTS AND AUTHS ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

Joseph M. Vanek (*pro hac vice*)
John P. Bjork (*pro hac vice*)
SPERLING & SLATER, LLC
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: (312) 224-1500
jvanek@sperling-law.com
jbjork@sperling-law.com

*Attorney for Plaintiffs and Proposed Class*
*(Additional counsel listed below)*

- 25 -