1  Cindy M. Rucker (SBN 272465)
   crucker@maynardnexsen.com
2  MAYNARD NEXSEN PC
   10100 Santa Monica Blvd, Suite 550
3  Los Angeles, CA 90067
   Tel. (323) 987-3356
4

5  Michael D. Mulvaney (Pro Hac Vice)
   mmulvaney@maynardnexsen.com
6  Katharine A. Weber (Pro hac Vice)
   kweber@maynardnexsen.com
7  Edward M Holt (Pro Hac Vice)
   tholt@maynardnexsen.com
8  MAYNARD NEXSEN PC
   1901 Sixth Avenue North, Suite 1700
9  Birmingham, AL 35203
   Tel. (205) 254-1000
10 Fax (205) 254-1999

11 Attorneys for Defendants

12              **UNITED STATES DISTRICT COURT**

13             **EASTERN DISTRICT OF CALIFORNIA**

14 JUDY A. VANN-EUBANKS, on behalf of
   themselves and all others similarly situated.     Case No. 1:21-cv-01784-JLT-CBD
15

16      Plaintiffs,

17      v.                                            **DECLARATION OF SCOTT
                                                      CREUTZMANN IN SUPPORT OF
18 PROTECTIVE LIFE INSURANCE                          PROTECTIVE LIFE INSURANCE
   COMPANY, and DOES 1 TO 50,                         COMPANY'S OPPOSITION TO
19 inclusive,                                         PLAINTIFF'S MOTION FOR CLASS
                                                      CERTIFICATION**
20      Defendants.

21

22      I, Scott Creutzmann, declare as follows:

23      1.      I am over the age of twenty-one, and am competent to make this Declaration.  I am

24 Senior Vice President, Chief Compliance Officer at Protective Life Insurance Company

25 ("Protective").  The statements made herein are based upon my personal knowledge and are true.

26 If called as a witness, I could and would competently testify to the following matters.

27      2.      I submit this Declaration in support of Protective's Opposition to Plaintiff's Motion

28 for Class Certification.

3.      I have been in the insurance industry for more than twenty-five years, including the last six years with Protective.  I am currently Senior Vice President, Chief Compliance Officer at Protective.  In that role I oversee a team of approximately seventy employees charged with ensuring that Protective conducts business in accordance with applicable laws, rules and regulations that includes maintaining reasonably designed controls, policies, procedures and business practices.  This includes ensuring Protective is complying with the California Insurance Code.   Since joining Protective in 2017, I have held a series of senior positions within the Legal Department to support and lead its compliance program.

4.      Prior to joining Protective in 2017, I worked for Ameriprise Financial for almost ten years.  I held two positions during my tenure at Ameriprise.  For approximately the first five and a half years, I was Vice President, Group Counsel.  In that role, I led a team that provided legal and compliance support to Ameriprise's insurance divisions, including the life insurance and annuity companies (RiverSource being the primary underwriting company), and its property and casualty companies (Ameriprise Auto and Home being the primary underwriting company). My team also provided legal support for product distribution (Ameriprise Financial Services), corporate insurance and the producers' errors and omissions program.  For the final four years or so at Ameriprise, I was Vice President, Chief Compliance Officer for RiverSource, Ameriprise Auto and Home, and led a team that provided compliance support for much of Ameriprise Financial Services.

5.      Prior to Ameriprise, I led in-house legal teams within Nationwide Insurance, Great West Casualty Company, and a regional retail chain.

6.      I obtained an undergraduate degree in business and economics in 1992 from Bradley University in Peoria, Illinois.  I obtained my law degree from Drake University in Des Moines, Iowa in 1994.  I am licensed to practice law in Minnesota, Nebraska, and Iowa.

7.      In my capacity as Senior Vice President, Chief Compliance Officer for Protective, I have access to and have reviewed Protective's business records.   I have also reviewed a copy of the Complaint on this matter.

**<u>How Protective monitors changes in applicable laws, rules, and regulations generally</u>**

8.      Protective, like every life insurance company I have worked for or otherwise have become familiar with through industry organizations and over twenty-five years of professional networking, employs a robust procedure for monitoring new laws, rules, and regulations that may affect its business.  Currently, I oversee a team of cross-functional employees who, among other things, monitors state, federal, and in some instances, local, legislative, regulatory, and judicial changes in the law and oversees implementation of any resulting adjustments to Protective's business practices, policies, and procedures.  Ameriprise employed a similar framework during my time there in 2007 – 2017.

9.      Since joining Protective, I have reviewed its business and compliance processes related to monitoring and implementing new laws, rules, and regulations.  Like most business processes, those efforts have evolved over the last decade, but the core processes that exist today existed in 2012 and 2013.  That is, Protective relied on a team of compliance officers that supported the Company's product development, product filing, and contracting teams as well as other compliance analysts to monitor changes in the law affecting Protective's business and to assist the business in modifying its business practices, including related modifications to controls, policies and procedures to comply with such new laws, rules, or regulations.

**<u>Protective's Implementation of the Statutes and the CDI's Interpretation of the Statutes</u>**

10.      I have reviewed Protective's documentation regarding the Company's implementation of California Insurance Code Sections 10113.71 and 10113.72 (the "Statutes").  As the documentation indicates, Protective primarily relied on guidance from the American Council of Life Insurers ("ACLI") and the Association of California Life & Health Insurance Companies ("ACLHIC") in determining how to implement the Statutes.  The ACLI is one of the industry's leading trade organizations that monitors legislative, regulatory, and other changes affecting the life insurance industry on behalf of its member companies, including Protective.  ACLHIC is the largest life and health insurance trade organization in California.

DECLARATION OF SCOTT CREUTZMANN IN SUPPORT OF PROTECTIVE LIFE INSURANCE
COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 1:21-cv-01784-JLT-CBD

11.     Protective's earliest record of having received information from the ACLI regarding the Statutes is a February 23, 2012 "Legislative Bulletin". A copy of that bulletin was produced during discovery as Protective 007341–007351 and is attached to my Declaration as Exhibit "A". Protective received similar Legislative Bulletins and other communications from the ACLI containing updates on the Statutes (which until signed into law in August 2012 were referred to by their legislative bill number AB1747) throughout the remainder of 2012, first tracking the bill's progress and then addressing implementation and interpretation of the Statutes. Copies of those Legislative Bulletins were produced during discovery as Protective 007320–007365; 007381–007383; 007388–007395 and are attached to my Declaration collectively as Exhibit "B".

12.     For example, on September 27, 2012, the ACLI informed its members, including Protective, that representatives from the ACLI and ACLHIC would be meeting with representatives of and the California Department of Insurance ("CDI") to discuss compliance questions and concerns in connection with the Statutes (which were to become effective on January 1, 2013). A copy of the ACLI's September 27, 2012 State News Weekly bulletin, was produced during discovery as Protective 007366–007369 and is attached to my Declaration as Exhibit "C".

13.     The day after the meeting referenced in the prior paragraph, one of my former colleagues (who was then Second Vice President, Compliance for Protective and involved in the implementation of the Statutes), Keith Kirkley, circulated additional information within Protective's compliance, IT, and operations departments regarding the Statutes and the ACLI's October 12th meeting with the CDI. A copy of Keith Kirkley's October 13, 2012 email was produced during discovery as Protective 007398 and is attached to my Declaration as Exhibit "D".

14.     Two weeks after meeting with representatives from the CDI's Legislative Office, Policy Approval Bureau, and Financial Analysis Division, the ACLI updated its members with the CDI's interpretation of the Statutes. A copy of Keith Kirkley's October 23, 2012 email containing the ACLI's update was produced during discovery as Protective 007414 and is attached to my Declaration as Exhibit "E". The ACLI indicated, among other things, that "[t]he CDI agreed that the 60-day grace period and alternate designee provisions will be applied prospectively, and will

1    only apply to those policies issued or delivered on or after January 1, 2013".  *Id.*

2         15.    The ACLI circulated further guidance regarding the CDI's interpretation of the

3    Statutes a few weeks later.  *See* Keith Kirkley's October 25, 2012 and November 2, 2012 emails

4    referencing the ACLI and ACHLIC's October 24, 2012 meeting with the Policy Approval Bureau

5    of the CDI, attached to my Declaration as Exhibit "F".  [Protective 007418].  As the ACLI's

6    October 23, 2012 Webdirect- ACLI Digest email indicates, during the October 12th meeting, the

7    CDI's representatives "empahsiz[ed] the prospective nature of the bill[.]  . . . CDI agreed  that the

8    60-day grace period and the alternate designee provisions will be applied prospectively, and will

9    only apply to those policies issued or delivered on or after January 1, 2013".  A copy of the

10   Webdirect- ALCI Digest was produced during discovery as Protective 007374–007377 and is

11   attached to my Declaration as Exhibit "G" at 3.

12        16.    Based on the guidance received from the CDI (via the ACLI), Protective began the

13   process of updating its administrative systems and processes to comply with the Statutes consistent

14   with the CDI's interpretation.  *See e.g.,* October 13, 2012 email exchange amongst Keith Kirkley,

15   Nancy Cunningham, and Sallie Bryant, attached to my Declaration as Exhibit "D" and October

16   23, 2012 email exchange between Keith Kirkley and Cindy McGill, which was produced during

17   discovery as Protective 007414–007416 and is attached to my Declaration as Exhibit "H".

18        **The CDI's SERFF Instructions**

19        17.    One of the functions that my compliance team oversees on behalf of Protective is

20   the submission of insurance product filings through the System for Electronic Rate and Form

21   Filing ("SERFF").  My team at Ameriprise also performed this function for Riversource.  SERFF

22   is an internet-based system that enables insurance companies, including Protective, to submit rate

23   and form filings to regulators, including the CDI, for approval of newly developed insurance

24   products and changes to existing products.  SERFF also contains instructions from regulators

25   regarding legislation potentially impacting various rate and form filings, including the enactment

26   of the Statutes.  Attached as Exhibit "I" (Protective 007864- 007864) to my Declaration is a copy

27   of the CDI's "Instructions for Complying with AB1747", which were uploaded to SERFF by the

28

CDI on November 5, 2012, and available to insurers, including Protective.  I visited the SERFF's website on September 8, 2023.  The same instructions attached as Exhibit I were available on SERFF's site on September 8, 2023.  The CDI has not updated or modified its instructions related to compliance with the Statutes since November 2012.

18.    The Instructions provide, in part, that "Life insurance policy forms approved by the Department before 1/1/13 must be revised to contain a grace period of at least 60 days before they are used to issue or deliver a new policy **on or after 1/1/13**".  *Id.* (emphasis added).  The SERFF Instructions do not require any modification to policy forms or grace periods for policies issued prior to 1/1/13.

19.    The SERFF Instruction also state that:

> If the grace period is the only change being made, instead of revising and refiling the entire policy form, the Department encourages insurers to revise these policy forms by: endorsement, rider, insert page, text cell insert, or (if the grace period was previously marked as a variable) a statement of variability that specifies the new grace period for policies **issued or delivered on or after 1/1/13**.

*Id.* (emphasis added).  Again, the SERFF Instructions do not require insurers to file endorsements, riders, or insert pages related to grace periods on policies issued or delivered in California prior to 1/1/13.

**The CDI's Interpretation of the Statutes Remained Consistent at least through September 2019**

20.    In 2017, Protective received notification that in February 2018 that the CDI would be conducting a "rating and underwriting based market conduct exam" of Protective's records, policies, and procedures.  A copy of the CDI's December 4, 2017 letter to Laura Bagby, Director Market Conduct Examinations for Protective, was produced during discovery as Protective 007178–007197 and is attached to my Declaration as Exhibit "J". I have participated in a number of market conduct exams during my career (at Protective and previous insurance companies) and this was a *routine examination* conducted by the CDI to evaluate an insurers' compliance with the California Insurance Code.

21.     In connection with the market conduct exam, the CDI indicated it would be reviewing, among other things, "[a] sample of [Protective's] policy files [] which were issued, renewed or terminated during the period of October 1, 2017 through December 31, 2017". *See* Ex. J at 2.  The CDI provided Protective with a detailed list of information the CDI expected Protective to gather prior to the examination's February 26, 2018 start date. *Id*.  That list included, among other things,

17. <u>Policy Form Compliance  –Individual Life Insurance and Individual Annuities</u>: Identify the Company's top two grossing products for Individual Life and top two grossing products for Individual Annuities during the **most recent calendar year**. Provide the forms associated with those products and highlight the sections of the forms which comply with the following California Insurance Code provisions

g. <u>60-day Grace Period - CIC §§10113.71(a) and 10295.14(a)</u>:  Every individual life policy issued or delivered on or after January 1, 2013, and every Accelerated Death Benefit shall contain a provision for a grace period of not less than 60-days from the premium due date.

*             *             *

23. <u>Additional Designees</u>: For any individual life insurance policy issued on or after January 1, 2013:
    a. Does the Company give the applicant the option to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for non-payment of premium? [CIC §10113.72(a)]
    b. Provide a copy of the form that is given to an applicant to make the designation allowed above. [CIC §10113.72(a)]
    c. Does the Company notify the policy owner on an annual basis of the right to change or add a designee? [CIC §10113.72(b)]  Explain how this is communicated and provide a sample(s).
    d. Is a notice of lapse sent to the policy owner and any additional designees 30-days prior to the effective date of the lapse or termination and within 30-days after a premium is due and unpaid? [CIC §10113.72(c)]

*Id.* at 8–10.

22.     The CDI concluded its December 4, 2017 letter by stating that after the exam has been conducted, the CDI:

DECLARATION OF SCOTT CREUTZMANN IN SUPPORT OF PROTECTIVE LIFE INSURANCE
COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 1:21-cv-01784-JLT-CBD

will provide you with information on issues we have noted during our review, and will provide you with an accounting of those items for which we are expecting a response from your company along with  due dates and instructions for getting responses to us.  Once we have received answers to all of our questions, we will provide you the opportunity to meet with us to discuss all issues we have identified, either in person or via a teleconference, before a draft report is sent to the Company.

*Id.* at 2.

23.      Also, one excerpt of the Coordinator's Guide the CDI provided Protective in its December 4, 2017 letter included an "EXAMINATION CHRONOLOGY", setting out the steps of the market conduct exam from initial notification through assessment of penalties (if any). *Id.* at 16. That chronology indicated that "[i]f the examination develops criticisms which require legal action to be resolved, the following steps may be taken", being formally advised the Company violated California law, a formal public hearing (with final regulatory action to be determined by the Commissioner of Insurance), and/or the CDI levying fines or other penalties consistent with the California Insurance Code.  *Id.*

24.      In response to item No. 23 (related to the right to designate an additional party to receive notices of pending lapse) requested by the CDI, Protective indicated that a form was generated and mailed to policy owners on the anniversary date of policies issued in California on or after January 1, 2013.  A copy of Protective's response to No. 23 was produced during discovery as Protective 007198–007199 and is attached to my Declaration as Exhibit "K".

25.      As noted above, the CDI requested a number of randomly selected policies that were issued, renewed, or terminated between October 1, 2017 and December 31, 2017.  Protective produced to the CDI's examiners policy records for 136 life insurance policies, including records related to 43 life insurance policies that lapsed during that period. *See* the CDI's September 17, 2019 final report of the market conduct exam at 12 and 13, produced during discovery as Protective 007302–007319, and attached to my Declaration as Exhibit "L".  After reviewing those records, the CDI sent Protective several follow up questions called "Audit Response[s]" specific to each policy.  For example, a copy of the Audit Response and Protective's response to the Audit Response related to Policy No. B00858709 was produced during discovery as Protective 007201–

1   007204 and is attached to my Declaration as Exhibit "M".  In that Audit Response, the CDI asked:

2   "CIC 10113.72 requires that that the applicant be given the right to designated [*sic*] at least one

3   person to receive notice of lapse, but I don't see that on the application anywhere, is there a separate

4   form that is missing?"  *See* Ex. M at 1.  Keith Kirkley responded on behalf of Protective that the

5   Notification to Name a Secondary Addressee is printed with the application packet and provided

6   a copy to instructions and form generated with the application packet.  *Id.*

7       26.     In another Audit Response, the CDI indicated that "[t]he annual right to appoint an

8   additional designee pursuant to 10113.72(b) was not attached to the file".  A copy of the Audit

9   Response (and Protective's response) related to Policy No. T0003258 was produced during

10  discovery as Protective 007209 and is attached to my Declaration as Exhibit "N".  Mr. Kirkley

11  responded to that request by pointing out that Policy No. T0003258 was issued in 2002, which was

12  prior to the effective date of 10113.72(b).  *Id.*

13      27.     In connection with the market conduct exam, Protective received several identical

14  Audit Responses, *i.e.*, asking why the annual reminder of the right to designate was not included

15  in the policy file.  Copies of those Audit Responses (including Protective's responses) were

16  produced during discovery Bates labeled Protective 007234, 007218, 007228, 007234–007235,

17  007254–007255, and 007285, and are attached collectively to my Declaration as Exhibit "O".  In

18  each instance, Protective explained that the annual reminder notices were not included in the policy

19  files because those policies were issued prior to the effective date of 10113.72(b).  *Id.*

20      28.     On September 17, 2019, the CDI adopted its final report of the market conduct

21  exam. Ex. L.  Under the "Scope of Examination" section of the final report, the CDI indicated that

22  the purpose of the examination was "discovery, in general, if [rating, underwriting] and other

23  operating procedures of PLIC conform to provisions of the California Insurance Code (CIC), the

24  California Code of Regulations (CCR), and other applicable insurance law".  *Id.* at 4.  Notably,

25  the CDI's final report indicated that there was no evidence of "non-compliant practices" in

26  connection with Protective's lapsing of policies, nor did the final report contain any criticisms of

27  Protective's application of the Statutes.  *Id*. at 15.

28

DECLARATION OF SCOTT CREUTZMANN IN SUPPORT OF PROTECTIVE LIFE INSURANCE
COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 1:21-cv-01784-JLT-CBD

29. Since receiving the CDI's final market conduct report in September 2019, Protective has received no further direct communication from the CDI regarding its lapse practices in California.

Further affiant sayeth not.

Dated: September 8, 2023

Scott Creutzmann

DECLARATION OF SCOTT CREUTZMANN IN SUPPORT OF PROTECTIVE LIFE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Case No. 1:21-cv-01784-JLT-CBD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MAYNARD NEXSEN PC

DATED:  September 18, 2023

By: _____

KATHARINE A. WEBER
One of the Attorneys for Defendant
PROTECTIVE LIFE INSURANCE COMPANY

DECLARATION OF SCOTT CREUTZMANN IN SUPPORT OF PROTECTIVE LIFE INSURANCE
COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 1:21-cv-01784-JLT-CBD

# EXHIBIT A

**To:**     Kirkley, Keith[Keith.Kirkley@protective.com]
**From:**   publications@acli.com
**Sent:**   Thur 2/23/2012 8:52:34 PM
**Subject:** Webdirect - Legislative Bulletin

---

**New ACLI Program, *InFocus*, To Shed Light on PBR; February 27 at Noon EST**
ACLI will brief members on principle-based reserves on Feb. 27, 12:00 Noon (EST). Learn more about *InFocus*, download
the PBR issue brief, and access dial-in information online.

2/23/2012

This Bulletin contains information on the following states:
Alabama, California, Colorado, Connecticut, Florida, Hawaii, Idaho, Iowa, Kansas, Maryland, Massachusetts, Minnesota,
Mississippi, Missouri, New Jersey, New Mexico, New York, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina,
South Dakota, Tennessee, Vermont, Virginia, West Virginia, Wisconsin, Wyoming

## ALABAMA

### New Introductions

S. 106 PRODUCER LICENSING: VARIABLE LIFE AND VARIABLE ANNUITY - Would provide for exceptions to prelicensing for
applicants of the variable life and variable annuity lines of authority. (Same as H. 113). Position: MONITOR

S. 117 DEPARTMENT OF INSURANCE: SUNSET PROVISIONS - Would continue the existence and functioning of the
Department of Insurance until October 1, 2014. Position: MONITOR

S. 164 DOMESTIC INSURERS: ASSET ALLOCATION: COMMUNITY INVESTMENT - Would provide handling of the funds of the
insurer and would require domestic insurers to maintain assets in financial institutions conducting business in Alabama.
Would allow domestic insurers to deposit assets outside the state for purposes of safekeeping. (Same as H. 189). Position:
MONITOR

H. 78 GENETIC INFORMATION PRIVACY ACT: DNA INFORMATION - Would create the Genetic Information Privacy Act
providing for informed consent to obtain, access, analyze, and disclose genetic information. Position: MONITOR

H. 113 PRODUCER LICENSING: PRELICENSING FOR VARIABLE LIFE AND ANNUITIES - Same as S. 106. Position: SUPPORT

H. 126 UNCLAIMED PROPERTY: NCOIL MODEL - Would establish the Unclaimed Life Insurance Benefits Act. Closely tracks
the NCOIL Model. Would require insurers to search the death master file and would require that no fee is to be charged
associated with the search. Would require notification of State Treasurer, and for insurers to submit to unclaimed life
insurance benefits or retained asset accounts plus interest to the State Treasurer. Position: NEUTRAL

H. 189 DOMESTIC INSURERS: HANDLING OF FUNDS: RECORDKEEPING - Same as S. 164. Position: MONITOR

H. 245 ALABAMA HEALTH INSURANCE EXCHANGE - Would create the Alabama Health Insurance Exchange. Position:
MONITOR

## CALIFORNIA

### New Introductions

S. 1140 DEFINITION OF MARRIAGE - Would define the term marriage as a personal relation arising out of a civil contract
between a man and a woman, established pursuant to a state marriage license issued by the county clerk. Would specify
that no priest, minister, rabbi, or authorized person of any religious denomination be required to solemnize a marriage that
is contrary to the tenants of his, her, or its faith. Would state that any refusal to solemnize a marriage under this provision
will not affect the tax exempt status of any entity. Position: MONITOR

S. 1170 ADVERTISEMENT: SENIORS: SENIOR DESIGNATIONS - Would change the definition of advertisement, as it relates
to advertisements directed at persons 65 years or older, to include worksheets, questionnaires, or other materials designed

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007341

to collect personal or financial information about a prospective insured or annuitant. Would also add veterans organizations and the U.S. Department of Veterans Affairs to the list of those entities that cannot be used in specified deceptive or misleading advertising practices. Would add "veteran" to those words deemed a senior designation. Position: MONITOR

S. 1212 PLACEHOLDER BILL: LIFE INSURANCE POLICY: DISABILITY INCOME POLICY - Would make a technical, non-substantive change to existing law relating to every policy of life, disability, or life and disability insurance. Position: MONITOR

A. 1747 LIFE INSURANCE: NONPAYMENT OF PREMIUM: GRACE PERIOD - Would require that every life insurance policy issued or delivered in the state contain a provision for a grace period of not less than 60 days from the premium due date that provides that where the premium owed is fully paid within the grace period the policy shall remain in force. Would require every life insurance policy issued or delivered in the state, except for group life insurance, to contain a provision that the policy shall be reinstated at any time within two years from the date of default, upon the written application of the insured and evidence of insurability. A notice of cancellation shall not be effective unless mailed by the insurer to the named insured, a designee, an assignee or additional interest, at least 30 days prior to the effective date of cancellation due to nonpayment. Position: OPPOSE

**COLORADO**
**New Introductions**

H. 1309 E-VERIFY ELECTRONIC VERIFICATION PROGRAM: PUBLIC EMPLOYEES: NEW EMPLOYEES - Would require employers doing business in Colorado to participate in the federal E-Verify Program where by January 1, 2013 all newly hired employees must verify their work eligibility. Position: MONITOR

**CONNECTICUT**
**New Introductions**

S. 96 PREMIUM TAX EXEMPTION: MUNICIPALITY PAID HEALTH INSURANCE PREMIUMS - Would exempt direct health insurance premiums paid by a municipality from the state premium tax. Position: MONITOR

S. 133 ESTATE TAX PHASE OUT - Would phase out the estate tax over a five year period. Position: MONITOR

S. 178 PERSONAL INCOME TAX DEDUCTION FOR LONG-TERM CARE INSURANCE PREMIUMS - Would provide for a personal income tax deduction for long-term care insurance premiums. Position: SUPPORT

H. 5089 TELEMARKETING: PROHIBITION ON MISLEADING CALLER IDENTIFICATION INFORMATION - Would prohibit telemarketing calls from transmitting inaccurate or misleading caller identification information. Position: MONITOR

H. 5107 CAPTIVE INSURERS: DEPOSIT OF CAPTIVE FEES AND ASSESSMENTS INTO INSURANCE FUND - Would eliminate the existing "captive insurance regulatory and supervision account" within the Insurance Fund and provide for all fees and assessments relating to captive insurance companies be redirected into the Insurance Fund. Position: MONITOR

H. 5177 STATE PENSION PLAN MODIFICATIONS - Would modify state pension plans with cost of living adjustment caps, contribution amount increases, pension calculation modifications and enrollment of new hires into a defined contribution plan. Position: MONITOR

H. 5183 UNCLAIMED PROPERTY: AMENDMENTS TO REQUIREMENTS FOR FUNDS HELD IN INACTIVE BANK ACCOUNTS - Would amend existing unclaimed property statutes with regard to handling of funds remaining in an inactive bank account. Position: MONITOR

H. 5189 INDIVIDUAL INCOME TAX EXEMPTION: PENSION AND SOCIAL SECURITY INCOME - Would provide for a income tax exemption for up to $50,000 in pension and Social Security income for individuals, and $100,000 for joint filers. Position: MONITOR

H. 5192 ESTATE TAX: PHASE OUT - Would phase our the estate tax over a five year period. Position: MONITOR

H. 5226 LIFE INSURANCE PREMIUM PAYMENT SCHEDULES - Would require life insurers provide (at least annually) their applicants and insureds the option of quarterly, semiannual, or annual premium payment schedules. Position: MONITOR

**FLORIDA**

## Legislative Developments

H. 1065 SUITABILITY IN ANNUITY TRANSACTIONS - (Reported in Bulletins 11-099, 12-009.) - Placed on House Special Order Calendar on February 20, 2012 on Second Reading. Position: SUPPORT ACTIVELY

**HAWAII**

## New Introductions

SCR. 42 LONG-TERM CARE INSURANCE STUDY - Would request an auditor to conduct a study to determine ways, other than tax incentives, to encourage employers to provide and pay for long-term care insurance and for individuals to purchase long-term care insurance. Position: MONITOR

SCR. 44 LONG-TERM CARE FINANCING TASK FORCE: LEGISLATIVE STUDY: ACCELERATED DEATH BENEFITS: VIATICAL SETTLEMENTS - Would establish a Long-Term Care Financing Task Force to conduct the feasibility study on the viability of using accelerated death benefits and viatical settlements as sources of funding for long-term care needs. Position: MONITOR

H. 2569 CIVIL UNIONS - Would relate to civil unions. House Draft 1 adopted as amended in the House Committee on Judiciary on February 16, 2012. As amended, would add two new sections relating to "the transition from reciprocal beneficiary relationship to civil union; uninterrupted rights" and a section on the "use of religious facility for solemnization of civil unions". Would amend Section 9 (Section 572C-7) by adding in part (1) and part (2) relating to the reciprocal beneficiary relationship. Finally, would make the bill retroactive to January 1, 2012. Position: MONITOR

**IDAHO**

## Legislative Developments

SCR. 119 ADMINISTRATIVE PROCEDURE: GROUP INSURANCE: REPEALER - (Reported in Bulletins 12-011.) - Passed the Senate and sent to the House without amendments on February 15, 2012. Position: MONITOR

**IOWA**

## New Introductions

S. 2205 MODIFICATIONS TO ADMINISTRATIVE RULEMAKING PROCESS - Would modify administrative rulemaking process with various requirements aimed at providing citizens with increased and a more transparent process. Position: MONITOR

S. 2211 PREMIUM TAX CREDIT: EMPLOYMENT OF QUALIFIED INDIVIDUALS - Would provide for a premium tax credit for taxpayers who hire certain qualified individuals on a full time basis. Would set forth various qualifying requirements. The credit would be equal to $2,000 per qualified hired. Position: MONITOR

H. 2267 PREMIUM TAX CREDIT: AMENDMENTS TO BROWNFIELD REDEVELOPMENT PROGRAM - Would amend the existing brownfield redevelopment credit to provide a definition of "brownfield site generation facility" and provide priority status to an application to the economic development authority board, for financial assistance in connection with a brownfield site generation facility. Position: MONITOR

H. 2271 PROHIBITED POLITICAL CONTRIBUTIONS BY INSURANCE COMPANIES - Would prohibit an insurance company from directly or indirectly contributing to a committee or to advocate for the election or defeat a individual seeking public office. Would establish situations under which an insurance company may contribute money to the political process. Position: MONITOR

HSB. 638 IDENTITY THEFT PROVISIONS AND PENALTIES: HIRING PRACTICES - Would provide for additional provisions and penalties concerning identity theft, applicable to insurers. Would provide that a person commits the offense of knowingly accepting the identity of another person if the person, in hiring an employee, knowingly accepts any identification information of another person with knowledge that the other person is not the actual person identified by that information, or uses the information for the purpose of determining whether the person who presented the information has the legal right or authorization under federal law to work in the United States. Position: MONITOR

HSB. 645 PREMIUM TAX CREDITS: REPEAL OF FILM, TELEVISION AND VIDEO TAX CREDITS - Would repeal the tax credits (applicable to premium tax liabilities) associated with the film, television, and video project promotion program within the

economic development authority. Would take immediate effect and apply retroactively to January 1, 2012, for tax years beginning on or after that date. Repeal would not impact existing contracts or agreements entered into on or before the effective date the bill. Position: OPPOSE

HSB. 648 PREMIUM TAX CREDIT: INNOVATION FUND: INCREASE IN ALLOWABLE AMOUNT AND TRANSFERABILITY - Would increase the amount allowable as an innovation fund investment tax credit from the current amount of 20 percent of a taxpayer's equity investment, to 100 percent, for investments in fiscal years beginning July 1, 2011, July 1, 2012, and July 1, 2013. Would provide for 75 percent for the fiscal year beginning July 1, 2014, 50 percent for the fiscal year beginning July 1, 2015, and 20 percent for fiscal years beginning on or after July 1, 2016. Would also make the tax credit transferable and set would set forth related procedures. Position: MONITOR

## KANSAS

## Legislative Developments

H. 2485 INSURER ANTI-FRAUD PLAN REQUIREMENTS - (Reported in Bulletins 12-007.) - Passed the House and sent to the Senate on February 22, 2012. As amended in the House Committee on Insurance, would amend Section 40-2,118 (d) (1) relating to when insurers should submit an antifraud plan to the commissioner "no later than January 1, 2014". Position: MONITOR

## MARYLAND

## New Introductions

S. 456 HEALTH BENEFIT PLAN: PREMIUM RATE REVIEW - Would prohibit a carrier that issues or delivers a health benefit plan in the state from charging a premium to certain persons or changing a premium before the rate or rate change is filed with the insurance commissioner. Disability income and long-term care insurance are excluded from the definition of "health benefit plan". (Same as H. 465). Position: MONITOR

S. 703 TAXATION: INHERITANCE TAXES: REPEAL - Would repeal the inheritance and estate tax for decedents dying on or after January 1, 2012. Would provide that the comptroller retains full authority to audit, administer and enforce the estate tax and inheritance tax related to decedents dying before January 1, 2012. Position: MONITOR

S. 811 FRAUD: INSURANCE - Would provide that a specified fine imposed for specified fraud violations is mandatory and not subject to suspension. Would authorize the insurance commissioner to impose an administrative penalty not to exceed $25,000 for each act of insurance fraud and to order restitution to an insurer or self-insured employer of any insurance proceeds paid relating to a fraudulent insurance claim. Would require the commissioner to consider specified factors in determining the penalty amount. (Same as H. 1094). Position: SUPPORT

S. 1003 GUARANTY ASSOCIATION - Would revise the Life and Health Insurance Guaranty Corporation Act. Would provide that the contractual obligations of specified impaired or insolvent insurers for which the Corporation may become liable are, with respect to any one life: $300,00 in life insurance death benefits; $100,000 in health insurance benefits; $500,00 for basic hospital, medical, and surgical insurance; $300,000 for disability income and $300,000 for long-term care insurance. Would authorize the Corporation to elect to succeed to the rights and obligations of specified insolvent insurers relating to specified reinsurance contracts within 180 days after the date of an order of liquidation. (Same as H. 1340). Position: SUPPORT ACTIVELY

H. 463 EVIDENCE OF INSURANCE - Would prohibit a person from preparing or issuing or requiring the preparation or issuance of a certificate of insurance unless the certificate of insurance form has been filed with and approved by the commissioner. However, would provide an exception for any standard certificate of insurance form adopted the Association of Cooperative Operations Research and Development (ACORD) or the Insurance Services Office (ISO) that otherwise complies with the requirements in this section. Would require the commissioner to disapprove, or withdraw approval of, a certificate of insurance form filed with the commissioner under specified circumstances. Would prohibit a person from altering or modifying a certificate of insurance. Would require the commissioner to adopt regulations to carry out this section, including regulations that establish an approval process for certificate of insurance forms. [Note: Does not repeal the existing carve out language for lenders adopted in 2011.] (Same as S. 297). Position: MONITOR

H. 465 HEALTH BENEFIT PLAN: PREMIUM RATE REVIEW - Same as S. 456. Position: MONITOR

H. 474 CIVIL UNIONS: STATE CONSTITUTION - Would add a new section to the state constitution to establish that only a marriage between one man and one woman be the only domestic legal union valid or recognized in the state. Would submit

the amendment to the voters of the state for adoption or rejection. Position: MONITOR

H. 682 ESTATES AND TRUSTS - Would repeal existing law relating to trusts and adopt new law entitled "Maryland Trust Act". Position: MONITOR

H. 1094 FRAUD: INSURANCE - Same as S. 811. Position: SUPPORT

H. 1239 CIVIL UNIONS - Would require one question with three options be placed on the ballot at the November 2012 election to determine the sense of voters on the legal definition of marriage. Would provide that the vote on the question is advisory only. Position: MONITOR

H. 1295 LONG-TERM CARE: TAX INCENTIVES: INCREASE - Would increase the tax credit for employer provided long-term care insurance from $5,000 to $15,000 for each employer and from $100 to $300 for each employee covered by long-term care insurance under the employee benefit package. Would take effect on July 1, 2012 and apply to taxable years beginning after December 31, 2011. Position: SUPPORT ACTIVELY

H. 1340 GUARANTY ASSOCIATIONS - Same as S. 1003. Position: SUPPORT ACTIVELY

### Legislative Developments

S. 241 CIVIL UNIONS - Would alter a provision of law to establish that only a marriage between two individuals who are not otherwise prohibited from marrying is valid in the state. (Same as H. 438). Position: MONITOR

H. 301 INSURANCE FRAUD: CLAIM FORMS - (Reported in Bulletins 12-009.) - As amended in the House Committee on Economic Matters, would provide for a delayed effective date of January 1, 2013. Position: MONITOR

H. 438 CIVIL UNIONS - As passed in the House on February 17, 2012, would alter a provision of law to establish that only a marriage between two individuals who are not otherwise prohibited from marrying is valid in the state. Reported favorably from Senate Committee on Judicial Proceedings on February 22, 2012. (Same as S. 241). Position: MONITOR

### MASSACHUSETTS
### LEGISLATIVE DEVELOPMENTS

H. 3659 GROUP LIFE PROCEEDS: DISBURSEMENTS TO BENEFICIARIES OF MEMBERS OF THE ARMED FORCES - Heard on February 15, 2012 in the Joint Committee on Veterans and Federal Affairs. Proposal would require insurers participating in the Servicemembers' Group Life Insurance (SGLI) program pay benefits by lump sum unless the beneficiary has agreed to another form of payment. Proposal would prohibit the use of a retained asset account unless a proscribed disclosure was made to the beneficiary with payment. Elements of the proposal are similar to the NCOIL Beneficiaries' Bill of Rights Model with some derivations. Position: OPPOSE

### MINNESOTA
### New Introductions

H. 2211 AGENCY RULEMAKING MORATORIUM - Would provide for a two-year moratorium on state agency rulemaking with certain exceptions. (Same as S. 1631) Position: MONITOR

H. 2254 LIFE INSURANCE POLICIES: ACCELERATED BENEFITS: LONG-TERM CARE EXPENSES - Would allow life insurance policy owners in long-term care facilities to keep their policies and add accelerated benefit riders to pay for long-term care expenses. Position: OPPOSE

H. 2334 PUBLIC EMPLOYEES: GROUP LONG-TERM CARE INSURANCE PROGRAM: EXPANDED ELIGIBILITY - Would expand eligibility to participate in the public employees group long-term care insurance program, to public employees of a local unit of government. Position: MONITOR

### Legislative Developments

S. 247 PUBLIC EMPLOYEE INSURANCE PROGRAM: WITHDRAWAL OR PARTICIPATION BY LOCAL GOVERNMENT EMPLOYEES - (Reported in Bulletins 11-008, 11-024, 11-043.) - Passed the House on February 16, 2012, and sent to the Senate for concurrence. Position: MONITOR

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*

Protective_007345

## MISSISSIPPI
### New Introductions

S. 2442 ESCHEAT: UNCLAIMED FUNDS - Would enact the Mississippi Uniform Unclaimed Property Act. Position: MONITOR

H. 1037 PRODUCER COMPENSATION - Would prohibit an insurance company from paying extra compensation to a producer based on claim history. Position: MONITOR

H. 1039 LIFE INSURANCE: RETAINED ASSET ACCOUNTS - Would prohibit any life insurance company from paying a beneficiary by depositing the proceeds into a checking account controlled by the insurer. Position: OPPOSE

H. 1044 UNFAIR TRADE PRACTICES: CLAIMS - Would create the Unfair Claims Settlement Practices Act. Would set standards for the investigation and disposition of claims. Position: MONITOR

H. 1053 FRAUD: INSURANCE - Would create the False Claims Act. Would prohibit any person from knowingly presenting a false or fraudulent claim to any employee, officer or agent of the state. Position: MONITOR

## MISSOURI
### New Introductions

S. 697 FRAUD IMMUNITY - Would expand the civil immunity provided to insurers for furnishing information related to insurance fraud investigations. Position: SUPPORT

S. 790 PREMIUM TAX: CREDITS - Would prohibit the Department of Revenue from allowing or redeeming any tax credit issued under the Low-Income Housing tax credit program and the Historic Preservation tax credit program, both of which may be used against the premium tax, from the effective date of the act until after June 30, 2013. Position: OPPOSE

H. 1349 LIFE INSURANCE TRUSTS - Would allow banks to transfer irrevocable life insurance trusts under certain circumstances. Position: MONITOR

## NEW JERSEY
### New Introductions

S. 1562 PREMIUM TAX CREDITS: URBAN TRANSIT HUB AMD GROW NEW JERSEY TAX CREDITS: INCREASE IN TOTAL ALLOWABLE CREDITS - Would increase the maximum amount of tax credits eligible to be issued under the Urban Transit Hub Tax and Grow New Jersey tax credit programs (both applicable to premium tax liabilities). (Same as A. 2442). Position: MONITOR

A. 2442 PREMIUM TAX CREDITS: URBAN TRANSIT HUB AMD GROW NEW JERSEY TAX CREDITS: INCREASE IN TOTAL ALLOWABLE CREDITS - Same as S. 1562. Position: MONITOR

## NEW MEXICO
### Legislative Developments

S. 9 TAXATION: COMBINED REPORTING REQUIREMENT AND REDUCED CORPORATE INCOME TAX RATES - (Reported in Bulletins 11-099, 12-011.) - Passed the House on February 15, 2012 and is now eligible for the governor's desk. Position: MONITOR

S. 47 GUARANTY ASSOCIATION: CURRENT LAW UPDATE (CHANGES TRACK REVISED NAIC MODEL) - (Reported in Bulletins 12-005, 12-011.) - Passed the House on February 16, 2012, and is now eligible for the governor's desk. Position: SUPPORT ACTIVELY

S. 212 TAXATION: PASS-THROUGH ENTITY WITHHOLDING: INSURER EXEMPTION - (Reported in Bulletins 12-009, 12-011.) - Passed the House on February 15, 2012 and is now eligible for the governor's desk. Position: MONITOR

HJR. 17 CONSTITUTIONAL AMENDMENT: OFFICE OF INSURANCE COMMISSIONER: NOMINATING PROCESS MODIFICATION - (Reported in Bulletins 12-007, 12-010.) - As amended in the Senate would delete new language which would have provided that the superintendent of insurance would be appointed by the governor with the consent of the Senate, and for a term of

four years. Would also delete new language which would have set forth specific membership requirements for the insurance nominating committee. Passed the Senate and the House concurred in the Senate amendments on February 16, 2012. Position: MONITOR

## NEW YORK
## New Introductions

S. 6507 GUARANTY ASSOCIATION INSURER ASSESSMENT - The proposal would raise the cap on guaranty association assessments to life insurers from $500,000,000 to $575,000,000. Position: DO NOT OPPOSE

## OKLAHOMA
## Legislative Developments

S. 1152 UNFAIR METHODS OF COMPETITION OR DECEPTIVE ACTS: LIMIT ON VALUE OF PROPERTY USED AS AN INDUCEMENT - (Reported in Bulletins 12-005.) - Voted favorably from Senate Retirement and Insurance Committee on February 16, 2012. Position: OPPOSE CONDITIONALLY

S. 1371 THIRD PARTY ADMINISTRATORS: INSURANCE DEPARTMENT EXAMINATIONS: CONFIDENTIALITY PROVISIONS - (Reported in Bulletins 12-009.) - Voted favorably from the Senate Retirement and Insurance Committee on February 16, 2012. Position: MONITOR

S. 1439 INSURANCE FRAUD: PENALTIES AND INSURANCE DEPARTMENT FUNDING: IMMUNITY FROM CIVIL OR CRIMINAL CAUSE OF ACTION FOR FRAUD REPORTING - (Reported in Bulletins 12-009.) - As amended, would remove sections 4, 5, and 7 from the introduced language, concerning the Revolving Fund and the fees involved. Voted favorably from the Senate Retirement and Insurance Committee as amended on February 16, 2012. Position: MONITOR

S. 1463 INDEFINITE SUSPENSION OF SPECIFIC PREMIUM TAX CREDITS - (Reported in Bulletins 12-009.) - Title stricken in Senate Finance Committee on February 21, 2012. Position: OPPOSE

S. 1477 TAXATION: PREMIUM TAXES: PROHIBITS THE TRANSFERABILITY OF CERTAIN TAX CREDITS ON OR AFTER JANUARY 1, 2013 - (Reported in Bulletins 12-009.) - Title stricken in Senate Finance Committee on February 21, 2012. Position: OPPOSE

S. 1511 INSURANCE DEPARTMENT: SWITCH TO NON-APPROPRIATED AGENCY STATUS: PROMULGATION OF RULES BY COMMISSIONER FOR FEES - (Reported in Bulletins 12-007.) - Voted favorably from Senate Appropriations Subcommittee on Natural Resources, on February 15, 2012, and re-referred to the Senate Appropriations Committee on February 20. Position: MONITOR

S. 1623 LIMITATION ON TAX CREDIT CLAIMS AND ELIMINATION OF SPECIFIC PREMIUM TAX CREDITS - (Reported in Bulletins 12-009.) - Title stricken and voted favorably from the Senate Finance Committee on February 21, 2012. Position: OPPOSE

S. 1884 FRAUD: INSURANCE: RICO ACT: EXTENDS TO FRAUDULENT STATEMENTS FILED WITH THE INSURANCE COMMISSIONER - (Reported in Bulletins 12-009.) - Voted favorably from the Senate Committee on Public Safety on February 16, 2012. Position: MONITOR

SJR. 52 CONSTITUTIONAL AMENDMENT: AD VALOREM TAXATION: EXEMPTION OF ALL INTANGIBLE PERSONAL PROPERTY - (Reported in Bulletins 12-011.) - Title stricken and voted favorably from the Senate Finance Committee on February 21, 2012. Position: MONITOR

H. 2318 FREQUENCY OF FINANCIAL AND MARKET CONDUCT EXAMINATIONS - (Reported in Bulletins 12-007.) - Voted favorably from the House Insurance Committee on February 16, 2012. Position: MONITOR

H. 2751 INSURANCE DEPARTMENT FUNDING: ANTI-FRAUD REVOLVING FUND - (Reported in Bulletins 12-007, 12-011.) - Amended to strike title of the bill and was voted favorably from House Committee on Appropriations and Budget on February 15, 2012. Position: MONITOR

H. 2976 EXTENDED MORATORIUM ON UTILIZATION OF TAX CREDITS (INCLUDES SPECIFIC PREMIUM TAX CREDITS) - (Reported in Bulletins 12-009.) - Amended to strike title of the bill and was voted favorably from House Appropriations and

Budget Subcommittee on Revenue and Taxation on February 20, 2012. Position: OPPOSE

H. 2978 TAX CREDIT PROGRAMS: REQUIRED FEATURES AND APPROVAL PROCESS - (Reported in Bulletins 12-009.) - Amended to strike title of the bill and was voted favorably from the House Appropriations and Budget Subcommittee on Revenue and Taxation on February 20, 2012. Position: MONITOR

H. 2984 UNFAIR METHODS OF COMPETITION OR DECEPTIVE ACTS: LIMIT ON VALUE OF PROPERTY USED AS AN INDUCEMENT - (Reported in Bulletins 12-007, 12-011.) - Voted favorably from the House Appropriations and Budget Committee on February 15, 2012. Position: OPPOSE CONDITIONALLY

H. 3008 STATE EMPLOYEES DEFERRED SAVINGS INCENTIVE PLAN FUND: INCREASE IN CONTRIBUTIONS FROM $25 TO $50 TO THE SECTION 401(a) PLAN - (Reported in Bulletins 12-009.) - Amended to strike title of the bill and was voted favorably from the House Appropriations and Budget Committee on February 15, 2012. Position: MONITOR

**OREGON**
**Legislative Developments**

S. 1531 CORPORATE NET INCOME TAX: FEDERAL TAX CONFORMITY - (Reported in Bulletins 12-010, 12-011.) - Approved by the House Revenue Committee on February 17. Passed by the House on February 21, 2012. To the governor. Position: SUPPORT

H. 4046 PREMIUM TAXES: HEALTH INSURANCE: EXEMPTION FOR ACCIDENT ONLY AND SPECIFIED DISEASE POLICIES - (Reported in Bulletins 12-009, 12-010, 12-011.) - Approved by the General Government, Consumer and Small Business Protection Committee on February 20. Passed by the the full Senate on February 21, 2012. To the governor. Position: SUPPORT ACTIVELY

**PUERTO RICO**
**Legislative Developments**

H. 3479 HOLDING COMPANIES: DOMESTIC INSURERS: REGISTRATION OF INSURERS: EXAMINATION OF INSURERS: INFORMATION CONFIDENTIALITY - (Reported in Bulletins 11-038, 11-071.) - Passed the Senate and sent to the House with amendments on February 21, 2012. (Text of amendments not available) Position: MONITOR

**RHODE ISLAND**
**New Introductions**

S. 2198 STATE RETIREMENT SYSTEM: DIVESTMENT OF IRAN INVESTMENTS - Would require Rhode Island, under certain circumstances, to divest itself of state pension fund investments in companies meeting certain criteria gauged to be related to support of the current regime in Iran. Position: MONITOR

H. 7422 STATE RETIREMENT SYSTEM: DIVESTMENT OF IRAN INVESTMENTS - Would require Rhode Island, under certain circumstances, to divest itself of state pension fund investments in companies meeting certain criteria gauged to be related to support of the current regime in Iran. Position: MONITOR

H. 7481 MUTUAL HOLDING COMPANY LAW UPDATE AND AMENDMENT TO REHABILITATION OR LIQUIDATION PROVISIONS TO COMPLY WITH DODD-FRANK - Would substantially revise the domestic mutual holding company laws. Would also amend the liquidation and rehabilitation law by expanding the ability of the commissioner to file a complaint for liquidation or rehabilitation in conformance with Dodd-Frank. Position: PENDING

**SOUTH CAROLINA**
**New Introductions**

H. 4763 PRENEED FUNERAL CONTRACTS: LICENSING AND PENALTIES - Would provide for new provisions concerning license renewals and renewal fees. Would also provide for additional penalty provisions for violations of preneed funeral contract laws. Position: MONITOR

**SOUTH DAKOTA**
**Legislative Developments**

CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER

S. 29 ROTH IRA: PUBLIC EMPLOYEES: DEFERRED COMPENSATION - (Reported in Bulletins 12-003, 12-007.) - Passed the House without amendments on February 21, 2012. Position: MONITOR

S. 32 ANNUITY SUITABILITY: CONFORMING PROVISIONS WITH THAT OF THE NAIC MODEL - (Reported in Bulletins 12-003, 12-007.) - Passed the House without amendments on February 15, 2012. Position: SUPPORT

S. 33 CONTINUED EDUCATION: EXEMPTIONS - (Reported in Bulletins 12-003, 12-007, 12-011.) - Signed by the governor on February 21, 2012. Revises exemptions for insurance agents relating to continued education. Effective July 1, 2012. (ACLI edited text of law will be available through Council's Advanced Law Service) Position: MONITOR

H. 1033 INSURANCE EXAMINATION REQUIREMENTS: TECHNICAL AMENDMENTS - (Reported in Bulletins 12-003, 12-009.) - Passed the Senate without amendments on February 15, 2012. Position: MONITOR

H. 1034 LIFE AND HEALTH INSURANCE: APPLICATION ALTERATIONS - (Reported in Bulletins 12-003, 12-007.) - Passed the Senate without amendments on February 15, 2012. Position: MONITOR

H. 1035 DISCLOSURE OF INSURANCE INVESTIGATIONS AND EXAMINATIONS: CONFIDENTIALITY & DISCLOSURE: PREMIUM TAX DISCLOSURE & CONFIDENTIALITY - (Reported in Bulletins 12-003, 12-010.) - Passed the Senate without amendments on February 15, 2012. Position: MONITOR

H. 1071 INSURANCE GUARANTY ASSOCIATION: INCREASE OF ANNUITIES COVERAGE - (Reported in Bulletins 12-007, 12-009.) - Passed the Senate and sent to the House for concurrence on February 16, 2012. As amended in the Senate Committee on Commerce and Energy, would provide for retroactive application and declare for an emergency clause to be added to the bill. Position: SUPPORT

**TENNESSEE**
**Legislative Developments**

S. 465 INSURANCE CODE DEFINITION: STATUTORY REFERENCE TO NAIC - (Reported in Bulletins 11-028, 11-049.) - Eligible for the governor's desk on February 17, 2012. As substituted on the House floor, would now incorporate H. 500 by defining the NAIC. Position: MONITOR

S. 551 PRODUCER LICENSING: DENIAL, SUSPENSION OR REVOCATION OF LICENSE FOR FAILURE TO PAY STUDENT LOANS - (Reported in Bulletins 11-009, 11-023, 11-049.) - Bill was substituted for House Bill 740 on February 2. Senate concurred on House Amendment No. 2 that would require the bill to "take effect immediately upon its approval for rulemaking purposes and January 1, 2013 for all other purposes". Bill was sent to the governor on February 14. Position: MONITOR

S. 2319 INTERSTATE INSURANCE PRODUCT REGULATION COMPACT: EXTENSION: SAME AS H. 2510 - (Reported in Bulletins 12-005.) - Substituted on the House floor for House Bill 2510 on February 13, 2012. Sent to the governor on February 16, 2012. Position: SUPPORT

S. 2320 LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION: EXTENSION: SAME AS H. 2533 - (Reported in Bulletins 12-005.) - Substituted on the House floor for House Bill 2533 on February 13, 2012. Sent to the governor on February 16, 2012. Position: SUPPORT

H. 740 PRODUCER LICENSING: DENIAL, SUSPENSION OR REVOCATION OF LICENSE FOR FAILURE TO PAY STUDENT LOANS - (Reported in Bulletins 11-009, 11-049.) - Substituted on the House floor by Senate Bill 551 on February 2, 2012. Position: MONITOR

H. 2510 INTERSTATE INSURANCE PRODUCT REGULATION COMPACT: EXTENSION: SAME AS S. 2319 - (Reported in Bulletins 12-005.) - Substituted on House floor by Senate Bill 2319 on February 13, 2012. Position: SUPPORT

H. 2533 LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION: EXTENSION: SAME AS S. 2320 - (Reported in Bulletins 12-005.) - Substituted on the House floor by Senate Bill 2320 on February 23, 2012. Position: SUPPORT

**VERMONT**
**Legislative Developments**

H. 512 SECURITIES: CAPTIVES - (Reported in Bulletins 12-003.) - Passed the House and sent to the Senate on February 17,

CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER

2012. As amended in the House Committee on Ways and Means, would make some technical corrections of no great importance but would also delete Section 42 and replace it with a study regarding the conversion of nonprofit hospitals. Position: MONITOR

## VIRGINIA
## Legislative Developments

S. 47 CERTIFICATES OF INSURANCE - (Reported in Bulletins 12-005, 12-007.) - Amended in the House to include certain amendments requested by the life insurance industry and now tracks H. 867. Passed out of the House on February 21, 2012 and sent to the Senate for concurrence. Position: MONITOR

S. 120 RISK-BASED CAPITAL ACT: INCREASES LIFE AND HEALTH INSURER TREND FROM 2.5 TO 3.0 - (Reported in Bulletins 12-005, 12-007.) - Passed the House on February 21, 2012. Eligible for governor's signature. Position: MONITOR

S. 646 LIFE INSURANCE AND ACCIDENT AND SICKNESS DEFINED TO INCLUDE ADDITIONAL BENEFITS - (Reported in Bulletins 12-007, 12-010.) - Passed the House Commerce and Labor Committee on February 21, 2012. Position: SUPPORT ACTIVELY

H. 282 DECREE OF DIVORCE OR ANNULMENT NOTICE REGARDING BENEFICIARY DESIGNATIONS - (Reported in Bulletins 12-005, 12-007, 12-009.) - Amended at the request of the life insurance industry to clarify that beneficiary designations may be revoked as provided for under federal or state law. Passed out of the Senate Courts of Justice Committee on February 20, 2012. Position: MONITOR

H. 283 COURT ORDERED LIFE INSURANCE IN DIVORCE, ANNULMENT AND SEPARATIONS - (Reported in Bulletins 12-005, 12-007, 12-009.) - Passed by indefinitely by the Senate Courts of Justice Committee and thus will not be considered again in 2012. Position: MONITOR

H. 386 STATE RETIREMENT SYSTEM: DIVESTMENT OF IRAN INVESTMENTS - (Reported in Bulletins 12-005.) - Left in Committee on February 20, 2012 and thus will not be considered again in 2012. Position: MONITOR

H. 402 CREATES THE VIRGINIA HEALTH BENEFITS EXCHANGE AUTHORITY - (Reported in Bulletins 12-005, 12-011.) - Left in Committee on February 14, 2012 and thus will not be considered again in 2012. Position: MONITOR

H. 867 CERTIFICATE OF INSURANCE - (Reported in Bulletins 12-005, 12-010.) - Passed out of the Senate Commerce and Labor Committee on February 20, 2012. Position: MONITOR

H. 1139 CREDIT FOR REINSURANCE: ADOPTION OF NAIC PROVISIONS - (Reported in Bulletins 12-009.) - Passed out of the Senate Commerce and Labor Committee on February 20, 2012. Position: MONITOR

H. 1206 PRENEED FUNERAL CONTRACT: ELIMINATION OF MANDATORY 5% GROWTH FOR 15 YEARS AND CPI - (Reported in Bulletins 12-007.) - Left in committee on February 14, 2012 and thus will not be considered again in 2012. Position: SUPPORT

## WEST VIRGINIA
## New Introductions

S. 598 UNFAIR TRADE PRACTICES: THIRD PARTY COMPLAINTS - Would require the filing of an administrative claim prior to a third-party bad faith action. Position: MONITOR

S. 607 UNFAIR TRADE PRACTICES - THIRD PARTY COMPLAINTS - Would require a third-party claimant to to file certain written notices, prior to any third-party bad faith actions. Position: MONITOR

H. 4390 UNIFORM POWER OF ATTORNEY - Would create the Uniform Power of Attorney Act and repeal the Uniform Durable Power of Attorney Act. Position: MONITOR

H. 4544 CORPORATE NET INCOME TAX: WATER'S EDGE REPORTING - Would amend the corporate net income tax law to make a technical corrections to clarify which entities are to be included in a water's edge group. Position: MONITOR

H. 4573 PUBLIC EMPLOYEES RETIREMENT ACT: ANNUITY CHOICE OF OPTION - Would amend the annuity option election

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

process of the West Virginia Public Employees Retirement Act. Specifically, would include new language that provides that prior to retirement a member may elect and receive an annuity in accordance with any of the annuity options is the member provide evidence that the spouse has approved of the choice of option. Otherwise, Option B is the default. Position: MONITOR

H. 4612 AUTOMATIC REVOCATION OF WILL UPON LEGAL SEPARATION - Would allow for the automatic revocation of a will upon legal separation and exclude from the definition of surviving spouse a person who is a named party to a legal separation. Position: MONITOR

### Legislative Developments

S. 521 PUBLIC EMPLOYEES INSURANCE ACT: RIGHT OF SUBROGATION INCLUDES LIFE INSURANCE - (Reported in Bulletins 12-011.) - Amended to remove the assignment of life insurance death benefits. Passed the Senate Judiciary Committee on February 15, 2012 and was sent to the Senate Finance Committee. Position: OPPOSE CONDITIONALLY

### WISCONSIN
### Legislative Developments

S. 185 DIRECT RESPONSE: TELEMARKETING: TEXT MESSAGES - (Reported in Bulletins 11-083, 11-090, 12-006.) - Passed the Assembly on February 21, 2012. Position: MONITOR

A. 418 UNCLAIMED PROPERTY - (Reported in Bulletins 11-099, 12-006.) - Passed the Assembly and sent to the Senate on February 16, 2012. Position: MONITOR

### WYOMING
### New Introductions

H. 91 DEFINED CONTRIBUTION PLANS: CREATION OF A NEW PLAN - Would close the current defined benefit plan for new state employees and would create a defined contribution plan for employees hired after September 1, 2013. Would allow certain members of the defined benefit plan to elect to terminate their membership and elect to become members of the defined contribution plan. Would provide for definitions, administration and funding and would make conforming amendments. Position: MONITOR

### Legislative Developments

H. 5 LIFE AND HEALTH GUARANTY ASSOCIATION: INCREASE IN DISABILITY INCOME, LONG-TERM CARE AND ANNUITY COVERAGE LIMITS - (Reported in Bulletins 12-003.) - Passed House on February 22, 2012. To Senate. Position: SUPPORT ACTIVELY

---

contact: Lisha Hanna, 202-624-2047

posted: 2/23/2012
identifier: LB12-013

**Issues** | **Take Action** | **Compliance** | **Committees** | **Research & Publications** | **Newsroom** | **Events** | **About ACLI**

**Personalize** your ACLI WebDirect e-mail.
**Questions** and comments are welcome at webadmin@acli.com
**Unsubscribe** ACLI WebDirect e-mail
**Privacy** information regarding ACLI Web services is available at Privacy Statement.

**Copyright American Council of Life Insurers, 101 Constitution Avenue, NW, Washington, DC 20001-2133**

# EXHIBIT B

**To:**       Kirkley, Keith[Keith.Kirkley@protective.com]
**From:**     publications@acli.com
**Sent:**     Wed 5/2/2012 6:55:38 PM
**Subject:**  Webdirect - Legislative Bulletin

5/2/2012

This Bulletin contains information on the following states:
California, Connecticut, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Michigan, Minnesota, Oklahoma, Pennsylvania, South Carolina, Tennessee, Vermont

### CALIFORNIA

### Legislative Developments

S. 1140 MARRIAGE SOLEMNIZATION - (Reported in Bulletins 12-013, 12-015, 12-022, 12-025.) - Passed Senate Committee on Judiciary on May 1, 2012. Position: MONITOR

S. 1170 ADVERTISEMENT: SENIORS: SENIOR DESIGNATIONS - (Reported in Bulletins 12-013, 12-015, 12-023.) - Read second time in Senate and amended on May 1, 2012. To third reading. Position: NEUTRAL

S. 1184 SENIOR INSURANCE: VETERANS BENEFITS - (Reported in Bulletins 12-014, 12-015, 12-022.) - Read second time in Senate on May 1, 2012. To third reading. Position: MONITOR

S. 1208 CORPORATE GOVERNANCE: PUBLICLY TRADED COMPANIES: RETIRED EXECUTIVE BENEFITS - (Reported in Bulletins 12-014, 12-015, 12-021, 12-022.) - As amended in the Senate on May 1, 2012, would impose specified sanctions for a publicly traded corporation that fails to timely file its annual information statement. Re-referred to Committee on Appropriations. Position: MONITOR

S. 1216 CERTIFICATE OF AUTHORITY TO TRANSACT REINSURANCE: CREDIT FOR REINSURANCE FOR FOREIGN CEDING INSURER - (Reported in Bulletins 12-014, 12-015, 12-021.) - Read second time and amended in Senate on April 30, 2012. Re-referred to Committee on Appropriations. Position: SUPPORT

S. 1267 RISK CLASSIFICATION: GENETIC INFORMATION/TESTING - (Reported in Bulletins 12-021, 12-022.) - As amended in the Senate on May 1, 2012, would require a separate written authorization for each separate disclosure of an individual's genetic information. The written authorization would be required to be written in plain language in a typeface no small that 14-point; be dated and signed by the individual to whom the information pertains or a person authorized to act on behalf of the individual; and be a separate document, not attached to any other document, and not more than one page. Would exempt specified individuals from obtaining, analyzing, or disclosing genetic information without the written authorization of an individual. Would permit the use of disaggregated and anonymized data, as specified, if the written authorization is obtained and the date is used for purpose authorized by the individual to whom the information pertains. Re-referred to Committee on Appropriations. Position: OPPOSE

S. 1438 STATEWIDE LONG-TERM CARE INSURANCE PROGRAM: TASK FORCE - (Reported in Bulletins 12-021, 12-022.) - As amended in the Senate on May 1, 2012, would require the task force to recommend options for establishing the statewide long-term care insurance program in a report submitted to the commissioner, the governor, and the legislature by July 1, 2014. Re-referred to Committee on Appropriations on May 1, 2012. Position: MONITOR

S. 1448 HOLDING COMPANIES - (Reported in Bulletins 12-014, 12-018, 12-023.) - Amended in the Senate on May 1, 2012. Re-referred to Committee on Appropriations. Position: SUPPORT CONDITIONALLY

S. 1449 LIFE INSURANCE: ACCELERATED DEATH BENEFITS: DISABILITY INSURANCE: ANNUITIES: SURRENDER CHARGES - (Reported in Bulletins 12-015, 12-018, 12-021, 12-025.) - Read second time in Senate on May 1, 2012. To third reading. Position: SUPPORT ACTIVELY

A. 1747 LIFE INSURANCE: NONPAYMENT OF PREMIUM: GRACE PERIOD - (Reported in Bulletins 12-013, 12-015.) - As amended in the Assembly on April 26, 2012, would delete language that would have required every life insurance policy

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007320

issued or delivered in the state, except for group life insurance, to contain a provision that the policy shall be reinstated at any time within two years from the date of default, upon the written application of the insured and evidence of insurability. Would prohibit a notice pending lapse and termination from being effective unless mailed by the insurer to the named insured, a named designee, and a known assignee, or other person having an interest in the policy at least 30 days prior to the effective date of termination if termination is for nonpayment of premium. Re-referred to Committee on Insurance on April 26, 2012. Position: OPPOSE

A. 1874 LEGISLATOR'S RETIREMENT SYSTEM: INSURANCE COMMISSIONER - (Reported in Bulletins 12-014.) - As amended in the Assembly on April 30, 2012, would also prohibit anyone who first becomes the Insurance Commissioner, among others, on or after January 1, 2013 from becoming a member of the Public Employees Retirement System, which provides a defined benefit to its members based on age at retirement, service credit, and final compensation. Re-referred to Assembly Committee on Rules for Interim Study. Position: MONITOR

A. 1949 DEFERRED COMPENSATION: 403(B) PLANS - (Reported in Bulletins 12-014, 12-017.) - As amended in the Assembly on April 25, 2012, would authorize a school district, a community college district, a county office of education, or a charter school to select specific 403(b) products offered by four or more vendors of tax-deferred retirement investment products described in Section 403(b) of the Internal Revenue Code, a due diligence and competitive review process, either individually or as part of a joint bidding and procurement process. Re-referred to Committee on Insurance on April 25, 2012. Position: MONITOR

A. 1963 PERSONAL INCOME TAX: STATE SALES AND USE TAX REDUCTION - (Reported in Bulletins 12-023.) - As amended in the Assembly on April 25, 2012, would require the Legislative Analyst's Office to assess the changes to the tax laws as proposed in the introduced version of the bill and make specified recommendations. Re-referred to Committee on Revenue and Taxation. Position: OPPOSE

A. 2010 REVERSE MORTGAGES: COUNSELING - (Reported in Bulletins 12-015, 12-016, 12-025.) - Passed Assembly Committee on Banking and Finance on April 30, 2012. Position: MONITOR

A. 2081 SECURITIES TRANSACTIONS: QUALIFICATION REQUIREMENTS: EXEMPTIONS - (Reported in Bulletins 12-015, 12-025.) - Passed Assembly Committee on Banking and Finance on April 26, 2012. To Committee on Appropriations. Position: MONITOR

A. 2160 FOREIGN INVESTMENTS: ENERGY SECTOR OF IRAN - (Reported in Bulletins 12-014, 12-017.) - As amended in the Assembly on April 30, 2012, would require a domestic insurer doing business in California that has investments in any companies that are invested in or engaged in business operations with entities involved in the defense or nuclear sectors of, or in the development of petroleum or natural gas resources of, Iran to provide a list of those investments on an annual basis to the Insurance Commissioner. Would require that the investments be treated as nonadmitted assets on the financial statements of the domestic insurer that are filed with the commissioner. Would authorize insurers to utilize the list developed for purposes of the Iran Contracting Act of 2010 to comply with these requirements. Position: OPPOSE

A. 2264 FRAUD: INSURANCE: RELEASE OF INFORMATION - (Reported in Bulletins 12-014, 12-016.) - As amended in the Assembly on April 26, 2012, would provide that no insurer, or agent authorized by that insurer, would be subject to civil liability by virtue of providing information about an unlawful activity not related to insurance fraud that is uncovered when investigating an allegation of insurance fraud. Re-referred to Committee on Insurance on April 26, 2012. Position: MONITOR

A. 2578 TAX REFUND DIRECT DEPOSIT: TAX-ADVANTAGED SAVINGS PLANS - (Reported in Bulletins 12-021, 12-022, 12-025.) - As amended in the Assembly on May 1, 2012, would require the Franchise Tax Board to include information on its Internet web site, and taxpayer form instructions, and publications, as defined, stating that on those tax returns, the individual taxpayer has the ability or option to directly deposit all or a portion of a tax refund into an account under specified tax-advantaged savings plans. Re-referred to the Committee on Appropriations. Position: OPPOSE

A. 2625 EXCESS TAX LIABILITY: CREDIT TO COLLEGE SAVINGS PROGRAM - (Reported in Bulletins 12-021, 12-022, 12-023, 12-025.) - As amended in the Assembly on May 1, 2012, would remove language that would have required the Franchise Tax Board to revise the taxpayer return form to allow an individual to request information about qualified tuition programs. Would require the Franchise Tax Board to revise the taxpayer return form to allow an individual to request information about the Scholarshare qualified tuition program, as provided. Re-referred to Committee on Appropriations. Position: OPPOSE

**CONNECTICUT**

**Legislative Developments**

S. 285 STATE TREASURER: INVESTMENTS IN NORTHERN IRELAND: DIVESTITURE REQUIREMENTS - (Reported in Bulletins 12-015.) - Passed the Senate on April 25, 2012 and sent to the House. Position: NEUTRAL

H. 5431 PRIVACY: ANTITRUST INVESTIGATIONS: USE OF CONFIDENTIAL MATERIAL BY ATTORNEY GENERAL - (Reported in Bulletins 12-015.) - As amended in the House would expand on the limits on the use of confidential material gathered during an antitrust investigation by setting forth that the Attorney General must "reasonably determine that it is necessary to disclose confidential material to a person providing oral testimony in order to adduce evidence of a suspected violation of a provision of this chapter and reasonably believes that the person providing oral testimony: 1) Is an author or recipient of the confidential material, 2) has read the confidential material, or 3) is otherwise aware of the substance of the confidential material." Would exclude the subsection's provisions from investigations of proposed mergers or acquisitions. Would define "confidential material". Passed the House as amended on April 30, 2012 and sent to the Senate. Position: NEUTRAL

### DELAWARE

### Legislative Developments

S. 203 RISK RETENTION GROUPS: REINSURANCE - (Reported in Bulletins 12-023.) - Reported without recommendation from Senate Committee on Insurance on April 25, 2012. Position: MONITOR

H. 223 INSURANCE: ELECTRONIC NOTICES - (Reported in Bulletins 11-040, 11-077.) - Passed House and sent to Senate. Reported without recommendation from Senate Committee on Insurance on April 25, 2012. Position: MONITOR

### FLORIDA

### Legislative Developments

H. 401 ANNULMENT OR DISSOLUTION OF MARRIAGE: DISPOSITION OF ASSETS UPON DEATH OF DECEDENT - (Reported in Bulletins 12-017, 12-025.) - Signed by the governor on April 24, 2012. Provides that a designation made by or on behalf of decedent providing for payment or transfer at death of interest in asset to or for benefit of decedent's former spouse becomes void if marriage dissolved or declared invalid before decedent's death, if designation was before dissolution or order. Provides for disposition of assets. Specifies assets subject to provisions. Provides for exceptions. Effective July 1, 2012. (ACLI edited text of law available through Council's Advance Law Service.) Position: NEUTRAL

H. 1101 OMNIBUS INSURANCE ACT: CAPTIVES: ALIEN INSURERS - (Reported in Bulletins 12-017, 12-025.) - Signed by the governor on April 24, 2012. Florida law currently provides for the creation of a captive insurance company but none exist in the state. Creates new provisions relating to formation, incorporation, coverage, capital and surplus, licensure, reporting, and reinsurance. Provides for the creation of pure captive insurance companies, association captive insurance companies, industrial insured captive insurance companies, special purpose captive insurance companies, and captive reinsurance companies. Allows captive insurance companies to provide any and all insurance under the Florida Insurance Code, except for workers' compensation and employer's liability, life, health insurance, personal motor vehicle insurance, and personal residential property insurance. Passed as part of the larger insurance "omnibus bill."   Also allows alien life insurers, under certain circumstances, to issue policies to foreign nonresidents of Florida. Restores a law which, in the old F.S. 624.402(8), had provided an exception from Certificate of Authority requirements for life insurance and annuity contracts issued by qualifying alien insurers to foreign non-residents in Florida, subject to certain market conduct standards. Various effective dates. Provisions relating to formation, incorporation, coverage, capital and surplus, licensure, reporting, and reinsurance are effective upon this act becoming a law, April 24, 2012. (ACLI edited text of law available through Council's Advance Law Service.) Position: SUPPORT ACTIVELY

### GEORGIA

### Legislative Developments

H. 786 LIFE AND HEALTH GUARANTY ASSOCIATION: INSOLVENCY: REINSURANCE: STRUCTURED SETTLEMENTS: ANNUITIES - Eligible for the governor's desk and sent to the governor on April 10, 2012. Would relate to numerous aspects of insurance including, but not limited to insolvency; reinsurance; structured settlements; life and health guaranty association; and insurance rate filings to name a few. Position: MONITOR

### HAWAII
### Legislative Developments

S. 2768 INSURANCE PRODUCER LICENSING: ANNUITIES: REINSURANCE - (Reported in Bulletins 12-009, 12-016, 12-023.) -

CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER

Signed by the governor on April 24, 2012. Amends the producer training requirements for the sale of annuities. The bill also amends various provisions of the reinsurance intermediary law. Effective January 1, 2012 for sections 6, 13, and 14. Effective July 1, 2012 for all other sections. (ACLI edited text of law will be available through Council's Advance Law Service.) Position: MONITOR

SCR. 42 LONG-TERM CARE INSURANCE STUDY - (Reported in Bulletins 12-013.) - Passed the Senate and sent to the House on April 13, 2012. As amended under SD2, would request the Legislative Reference Bureau to conduct a study to determine ways, other than tax incentives, to encourage employers to provide and pay for Long-Term Care Insurance and individuals to purchase Long-Term Care Insurance. Would also require that the Legislative Reference Bureau submit its findings and recommendations, including any proposed legislation, to the Legislature no later than 20 days prior to the convening of the 2013 Regular Session. Would further require that certified copies of the Concurrent Resolution be transmitted to the Director of the Legislative Reference Bureau and the Director of Health. Position: MONITOR

SCR. 44 LONG-TERM CARE FINANCING TASK FORCE: LEGISLATIVE STUDY: ACCELERATED DEATH BENEFITS: VIATICAL SETTLEMENTS - (Reported in Bulletins 12-013.) - Passed the Senate and sent to the House on April 13, 2012. As amended under SD2, would change the overall direction of the bill from the creation of a task force, to requesting the insurance commissioner to conduct a fact-finding study on the viability of using accelerated death benefits and viatical settlements as a source of funding for Long-Term Care needs. Would also provide for the necessary procedures to carry out such a study. Position: MONITOR

## IOWA
### New Introductions

H. 2473 PREMIUM TAX CREDITS: REPEAL OF FILM TAX CREDIT PROGRAM - Among other things, would repeal the film tax credit program which is applicable to premium tax liabilities. (Previously H. 2418.) Position: OPPOSE

## LOUISIANA
### Legislative Developments

S. 744 HEALTH INSURANCE EXCHANGE - (Reported in Bulletins 12-021.) - Ordered Engrossed on April 26, 2012. As amended in the Senate Committee on Insurance, would require the budget of the exchange to be subject to the approval by the Joint Legislative Committee on the Budget and would change the effective date of the bill to January 1, 2013. Position: MONITOR

H. 771 AUTISM COVERAGE: HEALTH INSURANCE: RISK CLASSIFICATION - (Reported in Bulletins 12-015, 12-025.) - Passed the House and sent to the Senate on May 1, 2012. Position: MONITOR

## MICHIGAN
### New Introductions

S. 1102 UNIFORM TRUST CODE: INSURABLE INTEREST AMENDMENTS (NCCUSL MODEL) - Would provide for insurable interest amendments to the Uniform Trust Code which are consistent with the NCCUSL Model, concerning trusts and life insurance policies. Position: SUPPORT

S. 1104 CHARITABLE GIFT ANNUITY INCOME TAX WITHHOLDING REQUIREMENTS: INCOME TAX WITHHOLDING REQUIREMENTS FOR FLOW-THROUGH ENTITIES - Would clarify that a person who disburses annuity payments pursuant to the terms of a qualified charitable gift annuity is not required to deduct and withhold tax on those payments. Would provide for various new provisions concerning withholdings on the business income of a flow-through entity. Position: MONITOR

### Legislative Developments

S. 1103 UNIFORM TRUST CODE: INSURABLE INTEREST AMENDMENTS (NCCUSL MODEL) - Would provide for insurable interest amendments to the Uniform Trust Code which are consistent with the NCCUSL Model, concerning trusts and life insurance policies. Position: SUPPORT

H. 5479 STATE SPONSOR OF TERROR LINKED INVESTMENTS: STATE PROCUREMENT - (Reported in Bulletins 12-018.) - As amended in the House, would broaden the scope of the bill from Iran to state sponsors of terror. Would delete the definitions and references to "Iran" and "Iran linked business" and replace them with definitions and references to "State

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007323

sponsor of terror" and "State sponsor of terror linked business". The definition of "State sponsor of terror linked business" would be limited to direct investments in a state sponsor of terror or contracts with a state sponsor of terror or a political subdivision of a state sponsor of terror. Would remove $2,500 trigger amount for contracts with a public entity. Passed the House as amended on April 25, 2012 and sent to the Senate. Position: MONITOR

H. 5577 UNCLAIMED PROPERTY: LOOK BACK PERIOD MODIFICATION - Would amend Uniform Unclaimed Property Act to reduce the look-back period from 10 years to 5 years. Position: MONITOR

## MINNESOTA

### Legislative Developments

H. 1134 ANNUITY SUITABILITY: ADOPTION OF REVISED NAIC MODEL - (Reported in Bulletins 11-014, 11-043, 12-021.) - Vetoed by the governor on April 30, 2012. Prior to the governor's veto, the bill was amended and passed out of the Senate to include language drafted by the Minnesota Insurance and Financial Services Council (MIFSC) to address the attorney general and governor's concerns with an overly narrow definition of "recommendation" and the lack of a requirement for insurers to complete an elevated review in certain circumstances. The House concurred in these Senate amendments. Position: SUPPORT

H. 2294 HUMAN SERVICES OMNIBUS BILL: FINANCIAL LITERACY TASK FORCE - (Reported in Bulletins 12-021, 12-022.) - Signed by the governor on April 28, 2012. Human services omnibus bill which, among other things, amends provisions authorizing a financial literacy task force. Financial literacy provision effective April 29, 2012. See text of law for other various effective dates. (ACLI edited text of law available through Council's Advance Law Service.) Position: MONITOR

H. 2690 TAXATION: MODIFICATIONS TO STATUTES ON RETALIATORY TAXES, PREMIUM TAX, ESTATE TAX AND COMBINED UNITARY REPORTING - (Reported in Bulletins 12-016.) - Substituted for Senate Bill 2136. Passed the House on April 24, 2012. Position: MONITOR

## OKLAHOMA

### Legislative Developments

S. 1060 INSURERS: INSURANCE FRAUD REPORTING REQUIREMENT: WORKERS' COMPENSATION AND INSURANCE FRAUD UNIT OF THE OFFICE OF THE ATTORNEY GENERAL - (Reported in Bulletins 12-014, 12-017, 12-022.) - Amended in the House to restore the title to the bill. Passed the House as amended, on April 24, 2012 and signed by the governor on May 1, 2012. Amends existing insurance fraud reporting provision to require that an insurer who suspects a person or entity has or is engaging in an act or practice of insurance fraud, immediately notify the Workers' Compensation and Insurance Fraud Unit of the Office of the Attorney General. Effective May 1, 2012. (ACLI edited text of law available through Council's Advance Law Service.) Position: MONITOR

S. 1152 UNFAIR METHODS OF COMPETITION OR DECEPTIVE ACTS: LIMIT ON VALUE OF PROPERTY USED AS AN INDUCEMENT - (Reported in Bulletins 12-005, 12-013, 12-015, 12-023, 12-025.) - Signed by the governor on April 25, 2012. Increases from $25 to $100 the allowable aggregate value of inducements offered in connection with any insurance transaction. Effective November 1, 2012. (ACLI edited text of law available through Council's Advance Law Service.) Position: OPPOSE CONDITIONALLY

S. 1352 PROHIBITION ON PUBLIC INVESTMENTS OR PURCHASES FROM IRAN - (Reported in Bulletins 12-021.) - Dead pursuant to the rules. Position: MONITOR

S. 1371 THIRD PARTY ADMINISTRATORS: INSURANCE DEPARTMENT EXAMINATIONS: CONFIDENTIALITY PROVISIONS - (Reported in Bulletins 12-009, 12-013, 12-017, 12-022, 12-025.) - Signed by the governor on April 25, 2012. Among other things, amends provisions contained in the Third Party Administrator Act to treat all work papers, recorded information, documents and copies produced or obtained by or disclosed to the commissioner as confidential by the commissioner and provide that they may not be made public by the commissioner or any other person who obtained the information in the course of the examination, audit and inspection. Further amends these provisions to extend the confidentiality and protection from discovery by subpoena to identical, similar or other related documents or information or to work papers not deemed to be in the possession, custody or control of the commissioner. Effective November 1, 2012. (ACLI edited text of law available through Council's Advance Law Service.) Position: MONITOR

S. 1439 INSURANCE FRAUD: PENALTIES: IMMUNITY FROM CIVIL OR CRIMINAL CAUSE OF ACTION FOR FRAUD REPORTING - (Reported in Bulletins 12-009, 12-013, 12-015, 12-017, 12-021.) - Passed the House on April 25, 2012 and sent to the

Senate for concurrence. Position: MONITOR

S. 1474 NCOIL SELF-EVALUATIVE PRIVILEGE MODEL ACT - (Reported in Bulletins 12-009, 12-014, 12-017, 12-022.) - As amended on the House floor would: Include a new provision stating that the privilege shall not apply "If the insurance compliance self-evaluative audit document shows evidence of noncompliance with applicable state or federal laws, rules, regulations or orders and appropriate efforts to achieve compliance with such laws, rules, regulations or orders were not initiated within a reasonable time and pursued with reasonable diligence upon discovery of noncompliance." Would also provide that any audit, once started, shall be completed in a reasonable amount of time and set forth that the self-evaluative privilege shall apply to all audits performed or commissioned after the effective date of the act. Passed the House as amended on April 26, 2012, and sent to the Senate for concurrence. Position: MONITOR

S. 1511 INSURANCE DEPARTMENT: SWITCH TO NON-APPROPRIATED AGENCY STATUS: PROMULGATION OF RULES BY COMMISSIONER FOR FEES - (Reported in Bulletins 12-007, 12-013, 12-014, 12-017, 12-021, 12-023.) - Dead pursuant to the rules. Position: MONITOR

S. 1571 INDIVIDUAL INCOME TAX PHASE OUT: PRESERVES CERTAIN RETIREMENT INCOME CREDITS, DEDUCTIONS AND EXEMPTIONS - (Reported in Bulletins 12-017, 12-018, 12-022.) - Dead pursuant to the rules. Position: MONITOR

S. 1623 LIMITATION ON TAX CREDIT CLAIMS AND ELIMINATION OF SPECIFIC PREMIUM TAX CREDITS - (Reported in Bulletins 12-009, 12-013, 12-017, 12-021.) - Dead pursuant to the rules. Position: OPPOSE

S. 1884 FRAUD: INSURANCE: RICO ACT: EXTENDS TO FRAUDULENT STATEMENTS FILED WITH THE INSURANCE COMMISSIONER - (Reported in Bulletins 12-009, 12-013, 12-017, 12-021.) - Dead pursuant to the rules. Position: MONITOR

SJR. 52 CONSTITUTIONAL AMENDMENT: AD VALOREM TAXATION: EXEMPTION OF ALL INTANGIBLE PERSONAL PROPERTY - (Reported in Bulletins 12-011, 12-013, 12-017, 12-021.) - Passed the House on April 25, 2012 and sent to the Senate for concurrence. Position: MONITOR

H. 2257 TRUST ACT: DEFINITION OF TRUSTEE ADVISOR PROVIDED - (Reported in Bulletins 12-025.) - Signed by the governor on April 25, 2012. Amends the Trust Act to provide for a definition of trustee advisor. Effective November 1, 2012. Position: MONITOR

H. 2318 FREQUENCY OF FINANCIAL AND MARKET CONDUCT EXAMINATIONS - (Reported in Bulletins 12-007, 12-013, 12-014, 12-021, 12-025.) - Signed by the governor on April 27, 2012. Increases the time frame within which the Insurance Commissioner must conduct a financial examination of every domestic insurer licensed in the state from "not less than once every three years" to "not less than once every five years". Provides for the Commissioner to adopt rules setting forth criteria and factors which may require an examination prior to the end of the five year examination requirement. Effective November 1, 2012. (ACLI edited text of law available through Council's Advance Law Service.) Position: MONITOR

H. 2621 ELIMINATION OF SPECIFIC PREMIUM TAX CREDITS: PROVISION FOR MAKING CERTAIN TAX CREDITS NON TRANSFERRABLE - (Reported in Bulletins 12-009, 12-011, 12-014, 12-017, 12-022, 12-025.) - House refused to concur in Senate amendments and appointed a conference committee on April 25, 2012. Position: OPPOSE

H. 2751 INSURANCE DEPARTMENT FUNDING: ANTI-FRAUD REVOLVING FUND - (Reported in Bulletins 12-007, 12-011, 12-013, 12-017, 12-021, 12-022, 12-023.) - House refused to concur in Senate amendment and appointed a conference committee on April 30, 2012. Position: MONITOR

H. 3038 PERSONAL INCOME TAX PHASE OUT AND ELIMINATION OF CERTAIN CREDITS, DEDUCTIONS, EXEMPTIONS AND EXCLUSIONS - (Reported in Bulletins 12-011, 12-015, 12-017, 12-022, 12-025.) - House refused to concur in Senate amendment and appointed a conference committee on April 30, 2012. Position: MONITOR

H. 3053 STATE EMPLOYEES BENEFITS: CONSOLIDATION OF RELATED AGENCIES: STUDY OF STATE EMPLOYEE INSURANCE AND BENEFITS PLAN STRUCTURE - (Reported in Bulletins 12-025.) - House refused to concur in Senate amendments on April 25 and appointed a conference committee. Position: MONITOR

H. 3061 TAX REDUCTION AND SIMPLIFICATION ACT (GOVERNOR'S TAX PLAN): REPEAL OF CERTAIN PREMIUM TAX CREDITS - (Reported in Bulletins 12-015, 12-017, 12-022.) - As amended in the Senate would delete Sections 7 and 8 of the Senate floor version. Passed the Senate as amended on April 25, 2012 and sent to the House for concurrence. Position: MONITOR

**PENNSYLVANIA**

**Legislative Developments**

S. 672 PUBLIC EMPLOYEE PENSIONS: POST-RETIREMENT ADJUSTMENTS - Would require municipal retirement systems to pay annual postretirement adjustments to certain retired municipal employees. (No activity in 2012.) Position: MONITOR

**SOUTH CAROLINA**

**Legislative Developments**

H. 4082 TAXATION: PREMIUM TAX: TRANSFER OF REVENUE TO SOUTH CAROLINA FORESTRY COMMISSION - (Reported in Bulletins 11-021, 11-053.) - Amended in the House to reduce the percentage of revenue that would be transferred to 2.25%. Passed the House on April 27, 2012 and sent to the Senate. Position: MONITOR

H. 4687 DEATH CERTIFICATES: ELECTRONIC TRANSMISSION, FILING, AND SIGNATURE REQUIREMENTS - (Reported in Bulletins 12-009.) - As amended in the House would provide an exemption for "an individual who acts, without compensation, as a funeral director on behalf of a deceased family member or friend, physicians certifying fewer than twelve deaths per year, and funeral homes that perform fewer than twelve funerals per year are exempt from this requirement." Passed the House as amended on April 25, 2012 and sent to the Senate. Position: MONITOR

**TENNESSEE**

**Legislative Developments**

S. 1878 STATE AGENCY RULES: EFFECTIVE DATE REQUIREMENT FOR NEW FEES OR FEE INCREASES - (Reported in Bulletins 11-010, 11-023, 11-049.) - Substituted on the House floor for H. 1384 and passed the House and sent to the Senate for concurrence on April 27, 2012. As amended, would delete all existing language after the enacting clause and replace it with new language. Would add new sections relating to fee increases promulgated by state agency rule; would relate to emergency rules; would declare what the bill does not apply to; and would change the effective date of this Act to July 1, 2013. Position: MONITOR

S. 2212 STATE INSURANCE PLANS: CLARIFICATION - (Reported in Bulletins 12-003, 12-022.) - Substituted on the House floor for its companion - H. 2350 on May 1, 2012. Position: MONITOR

S. 2271 EVIDENCE OF INSURANCE - (Reported in Bulletins 12-005.) - Passed the Senate and sent to the House on April 18, 2012. Substituted on the House floor for its companion bill - H. 2454 on April 19, 2012. Passed the House on April 24, 2012. As amended, would delete all of the original text and would no longer relate to evidence of insurance. Would now relate to insurance contracts, premiums and agreements. Position: MONITOR

S. 2777 INHERITANCE TAXES: ELIMINATES THE GIFT TAX BY 2013 - (Reported in Bulletins 12-007.) - Substituted on the House floor for its companion - H. 2840 on May 1, 2012. As amended and then passed by the House, would amend Section 1(a)(2) by removing the first reference of "January 1, 2013" and replacing it with "October 1, 2012". Would also delete the language "January 1, 2013" in Sections 2, 3 and 4 and substitute instead the language "October 1, 2012". Position: MONITOR

S. 3762 INHERITANCE GIFT TAXES: INCREASE IN THE EXEMPTION - (Reported in Bulletins 12-009.) - Substituted on the Senate floor by its companion bill - H. 3760. Position: MONITOR

H. 1384 STATE AGENCY RULES: EFFECTIVE DATE REQUIREMENT FOR NEW FEES OR FEE INCREASES - (Reported in Bulletins 11-010, 11-049.) - Substituted on the House floor by its companion - S. 1878 on April 27, 2012. Position: MONITOR

H. 2350 STATE INSURANCE PLANS: CLARIFICATION - (Reported in Bulletins 12-003.) - Substituted on the House floor for its companion - S. 2212 on May 1, 2012. Position: MONITOR

H. 2840 INHERITANCE GIFT TAX: ELIMINATION OF TAX BY 2013 - (Reported in Bulletins 12-007.) - Substituted on the House floor by its companion - S. 2777 on May 1, 2012. Position: MONITOR

H. 3760 INHERITANCE GIFT TAXES: INCREASE IN THE EXEMPTION: SAME AS SB 3762 - (Reported in Bulletins 12-009, 12-023.) - Substituted on the Senate floor for S. 3762 and passed the Senate on April 27, 2012. Position: MONITOR

**VERMONT**

**Legislative Developments**

S. 223 HEALTH INSURANCE: RISK CLASSIFICATION: EARLY CHILDHOOD DEVELOPMENTAL DISORDERS: AUTISM SPECTRUM DISORDERS: DOES NOT SPECIFICALLY EXCLUDE LONG-TERM CARE AND DISABILITY INCOME INSURANCE - (Reported in Bulletins 11-099, 12-021.) - Passed the House and sent to the Senate for concurrence on April 25, 2012. As amended in the House Committee on Health Care, would among other things, amend the definition of "Treatment for Early Developmental Disorders" under Section 1 (14) to provide for a "licensed health care provider or a licensed psychologist". Would also add in section (h) relating to the intent of the general assembly. Furthermore, would amend Section 2 relating to the report that must be given by the agency of human services. Position: OPPOSE CONDITIONALLY

H. 533 INSURANCE BUSINESS TRANSFER ACT: REINSURANCE: COMMERCIAL INSURANCE POLICIES - (Reported in Bulletins 12-005.) - Passed the House and sent to the Senate on April 17, 2012. As amended in the House Committee on Commerce and Economic Development, would delete all the existing language from the introduced version of the bill and provide all new language to the bill. Would among other things, amend definitions under Chapter 147 related to Insurance Business Transfers; would amend V.S.A. 7115 relating to Plan Review; would amend V.S.A. 7116 relating to Order; would amend V.S.A. 7117 relating to Fees and Costs; would amend V.S.A. 7118 relating to Applicable Laws; would amend V.S.A. 7119 relating to Assuming Insurers; would amend V.S.A. 7121 relating to the Regulation of Insurers and Service Providers; would amend a section relating to Insurance Business Transfers; Reports; and would change the effective date of this act. Position: MONITOR

H. 730 STRUCTURED SETTLEMENT TRANSFERS: DISCLOSURES: ANNUITIES - (Reported in Bulletins 12-010, 12-018.) - Passed the Senate and sent to the House for concurrence on April 26, 2012. As amended in the Senate Committee on Economic Development and Housing and General Affairs, would among other things, replace the words "Consumer Fraud" and replace them with "Consumer Protection" throughout the bill. Would make other technical amendments throughout the bill. The House refused to concur with Senate amendments so the bill will go to Conference Committee on April 30. Position: MONITOR

*ACLI's position on bills included in the Legislative Bulletin is a benefit that is used to help our members distinguish between those bills we are actively lobbying versus those we are not. Below are a list and an explanation of each of the options used in our Legislative Tracking System:*

- *Support Actively - ACLI strongly supports, and is actively seeking enactment of the legislation.*
- *Support - ACLI supports the legislation.*
- *Support Conditionally - ACLI supports the legislation on the condition that certain provisions are amended to address ACLI's concerns.*
- *Do Not Oppose – ACLI does not oppose the legislation. We do not support, but certain standards are met and we are not in opposition.*
- *Monitor - ACLI is monitoring this legislation because of its general interest to member companies.*
- *Neutral - ACLI has reviewed the legislation and has determined to remain neutral.*
- *Pending - ACLI's position is yet to be ascertained. Once a position is determined, it is changed accordingly in LTS.*
- *Oppose - ACLI opposes the legislation.*
- *Oppose Conditionally - ACLI opposes the legislation unless and until certain provisions are amended to address ACLI's concerns.*
- *Oppose Actively - ACLI strongly opposes, and is actively seeking defeat of the legislation.*

---

contact: Lisha Hanna, 202-624-2047

posted: 5/2/2012
identifier: LB12-029

**Issues** | **Take Action** | **Compliance** | **Committees** | **Research & Publications** | **Newsroom** | **Events** | **About ACLI**

**Follow** ACLI on Twitter
**Like** us on Facebook

**Personalize** your ACLI WebDirect e-mail.
**Questions** and comments are welcome at webadmin@acli.com
**Unsubscribe** ACLI WebDirect e-mail
**Privacy** information regarding ACLI Web services is available at Privacy Statement.

Copyright American Council of Life Insurers, 101 Constitution Avenue, NW, Washington, DC 20001-2133

CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER

*Schmidt v. Protective*
Protective_007328

**To:** Kirkley, Keith[Keith.Kirkley@protective.com]
**From:** publications@acli.com
**Sent:** Wed 6/27/2012 7:31:52 PM
**Subject:** Webdirect - Legislative Bulletin

6/27/2012

This Bulletin contains information on the following states:
California, District Of Columbia, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, Puerto Rico, Rhode Island, South Carolina

### CALIFORNIA

### Legislative Developments

S. 1140 MARRIAGE SOLEMNIZATION - (Reported in Bulletins 12-013, 12-015, 12-022, 12-025, 12-029.) - As amended in the Assembly, would state that any refusal to solemnize a marriage under this subdivision, either by an individual or by a religious denomination, shall not affect the tax-exempt status of any entity. Read second time on June 20, 2012. To third reading. Position: MONITOR

S. 1212 ACCELERATED BENEFITS - (Reported in Bulletins 12-013, 12-015, 12-018, 12-034.) - As amended in the Assembly on June 21, 2012, would strike original language and bill would now apply to accelerated death benefits. Would specify that the term "special benefit" for purposes of those provisions includes an accelerated death benefit if some or all of the death benefit of a life insurance contract is paid to the insured upon the occurrence of specified qualifying events, including if the insured requires continuous confinement in an eligible institution. Would require a life insurance contract or supplemental contract that includes an accelerated death benefit that is submitted for approval by the insurance commissioner to be submitted for approval with specified additional information, including a statement of the types of policy forms with which the benefit will be offered. Re-referred to Committee on Insurance. Position: SUPPORT

S. 1449 LIFE INSURANCE: ACCELERATED DEATH BENEFITS: DISABILITY INSURANCE: ANNUITIES: SURRENDER CHARGES - (Reported in Bulletins 12-015, 12-018, 12-021, 12-025, 12-029, 12-041.) - As amended in the Assembly on June 21, 2012, would make provisions of existing law regarding disability insurance contracts inapplicable to provisions and supplemental contracts that operate to safeguard against lapse, or give special surrender value, benefit, or annuity, if the owner, insured, annuitant, or beneficiary meets certain benefit triggers. Would provide that if a supplemental contract is an integral part of an annuity contract, the entire contract is required to be submitted to the commissioner for approval. Would prohibit the commissioner from approving a contract or supplemental contract if it contains any provision that the products constitute long-term care or disability insurance or provide long-term care coverage or disability benefits. Would require the department of insurance to report to the legislature by January 1, 2014, the number and type of contracts and supplemental contracts approved or disapproved. Would require that the report not include the identity of any insurer, specific contract language, or any proprietary language. Re-referred to Committee on Insurance. Position: SUPPORT ACTIVELY

A. 1747 LIFE INSURANCE: NONPAYMENT OF PREMIUM: GRACE PERIOD - (Reported in Bulletins 12-013, 12-015, 12-029, 12-034.) - As amended in the Senate on June 19, 2012, would provide that the 60-day grace period shall not run concurrently with the period of paid coverage and that the policy shall remain in force during the grace period. Position: OPPOSE

A. 2301 GUARANTY ASSOCIATION: DEFINITION OF COVERED CLAIMS - (Reported in Bulletins 12-014, 12-022, 12-031, 12-034.) - Passed Senate on June 18, 2012. Enrolled on June 21, 2012. Position: MONITOR

### DISTRICT OF COLUMBIA

### New Introductions

B. 19-799 TAXATION: WITHHOLDING AND INFORMATION REPORTING: TAXATION GENERALLY: PENSIONS: ANNUITIES - Would increase from $10,000 to $20,000 the amount of retirement income excluded from the computation of income from pensions, military retired pay or annuities that is otherwise subject to taxation. Position: MONITOR

### NEW HAMPSHIRE

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007329

**Legislative Developments**

H. 158 SOCIAL SECURITY NUMBER PROTECTION - (Reported in Bulletins 11-005, 11-017, 11-084, 12-046.) - Signed by the governor on June 18, 2012. Creates a cause of action against persons who misuse Social Security numbers including: the person who misused the number; any individual who supplied or aided in obtaining false social security documentation; and, any employer who knows or should have known the documentation is false. Deems anyone who received verification of one's eligibility to work from a reputable organization providing verification or the Social Security Administration as having exercised reasonable care. Effective August 17, 2012. Position: MONITOR

H. 1221 TAXATION: BUSINESS PROFITS TAX CREDIT - (Reported in Bulletins 11-101, 12-007, 12-010, 12-031, 12-034.) - Signed by the governor on June 18, 2012. Permits taxpayers to apply the business enterprise tax credit to the business profits tax on a quarterly basis when making an estimated tax payment. Effective July 1, 2012. (ACLI edited text of law will be available through Council's Advance Law Service.) Position: MONITOR

H. 1418 TAXATION: BUSINESS ENTERPRISE TAX - (Reported in Bulletins 12-001, 12-041, 12-044.) - Became law without the governor's signature on June 21, 2012. Increases the business enterprise tax threshold for businesses with gross business receipts in excess of $200,000 during the taxable period or the enterprise value tax base of greater than $100,000. Is adjusted biennially for inflation using the Consumer Price Index, Northeast Region. Effective December 31, 2013. (ACLI edited text of law will be available through Council's Advance Law Service.) Position: MONITOR

## NEW JERSEY

### New Introductions

A. 3154 PREMIUM TAX CREDITS: URBAN TRANSIT HUB AND GROW NEW JERSEY TAX CREDITS: INCREASE IN TOTAL ALLOWABLE CREDITS - Would increase the maximum amount of tax credits eligible to be issued under the Urban Transit Hub Tax and Grow New Jersey tax credit programs (both applicable to premium tax liabilities). (Same as S. 1562) Position: MONITOR

### Legislative Developments

S. 1304 STATE AND LOCAL CONTRACTS: PROHIBITION ON IRANIAN INVESTMENTS - (Reported in Bulletins 12-010, 12-046.) - Passed the Senate on June 25, 2012 and sent to the Assembly. Position: MONITOR

A. 2878 EMPLOYERS: SOCIAL MEDIA PRIVACY - (Reported in Bulletins 12-034.) - As amended in Assembly, would provide for a definition of "personal account" which would exclude "any account, service or profile created, maintained, used or accessed by a current or prospective employee for business purposes of the employer or to engage in business related communications". Passed the Assembly on June 25, 2012 and sent to the Senate. Position: MONITOR

A. 3078 PRIVACY: SECURITY BREACH REPORTING REQUIREMENT: MONETARY PENALTIES FOR FAILURE TO REPORT - (Reported in Bulletins 12-046.) - As amended in the Assembly, with regard to penalties, would add new language stating that the new penalties are in effect "for each such breach of computerized records that is discovered by the business or public entity and is not disclosed upon discovery in accordance with this section.". Passed the Assembly on June 21, 2012 and sent to the Senate. Position: MONITOR

## NEW YORK

### Legislative Developments

S. 2704 PRODUCER LICENSING: TERM OF LICENSE FOR NEW APPLICANTS - (Reported in Bulletins 12-021.) - Passed both chambers. Would permit the Superintendent to issue an insurance license to a new applicant for period longer than 24 months. Licenses currently expire on a producer's birthday which may mean that the license is issued for more or less than 24 months. License fees would be prorated according to the term of the license. Continuing education requirements follow the biennial licensing cycle. (Substituted for A. 6435.) Position: SUPPORT

A. 6435 PRODUCER LICENSING: TERM OF LICENSE FOR NEW PRODUCERS - (Reported in Bulletins 12-021.) - Substituted by S. 2704 which passed both chambers. Would permit the Superintendent to issue an insurance license to a new applicant for period longer than 24 months. Licenses currently expire on a producer's birthday which may mean that the license is issued for more or less than 24 months. License fees would be prorated according to the term of the license. Continuing education requirements follow the biennial licensing cycle. (Substituted by S. 2704.) Position: SUPPORT

**NORTH CAROLINA**

**Legislative Developments**

H. 462 UNCLAIMED PROPERTY: ALLOWANCE FOR CONTINGENT FEE BASIS AUDITS OF LIFE INSURERS - As amended, Section 3 of the bill would explicitly permit the Treasurer to contract with an outside party on a contingent fee basis, to conduct an audit of life insurance companies with the purpose of identifying unclaimed death benefits. In House Committee on Commerce and Job Development for concurrence in the Senate committee substitute. Position: OPPOSE CONDITIONALLY

**PENNSYLVANIA**

**New Introductions**

S. 1524 REINSURANCE CREDITS - Would amend the Insurance Company Law of 1921 providing for reinsurance credits. Position: MONITOR

**Legislative Developments**

S. 1464 INSURER HOLDING COMPANIES: EXAMINATIONS: MERGERS AND REGISTRATION: INTERNATIONAL INSURANCE GROUPS - (Reported in Bulletins 12-023.) - Passed House on June 20, 2012. Has passed both Houses and is eligible for governor's signature. Position: NEUTRAL

**PUERTO RICO**

**Legislative Developments**

H. 3710 HEALTH INSURANCE: DISCLOSURE OF MEDICAL INFORMATION - (Reported in Bulletins 11-091, 12-034.) - Passed the Senate and sent to the House for concurrence on June 20, 2012. (Amended text of the bill not currently available.) Position: MONITOR

**RHODE ISLAND**

**Legislative Developments**

S. 2598 MUTUAL HOLDING COMPANY LAW UPDATE AND AMENDMENT TO REHABILITATION OR LIQUIDATION PROVISIONS TO COMPLY WITH DODD-FRANK - (Reported in Bulletins 12-015, 12-017, 12-044.) - Signed by the governor on June 20, 2012. Revises the domestic mutual holding company laws. Amends the liquidation and rehabilitation law by expanding the ability of the commissioner to file a complaint for liquidation or rehabilitation in conformance with Dodd-Frank. (Same as H. 7481.) Effective June 20, 2012. Position: MONITOR

S. 2749 LIFE INSURANCE: CENTRAL DATABASE: UNFAIR TRADE PRACTICES: GUARANTY ASSOCIATION - (Reported in Bulletins 12-016, 12-017, 12-044.) - Signed by the governor on June 20, 2012. Requires the Department of Business Regulation to develop a central database of electronic contact information for companies who have policies in force in Rhode Island. Develops a procedure for "any member of the immediate family of a decedent" to contact the department requesting all insurers to conduct a search for life insurance policies covering a decedent. All requests must include a copy of the decedent's death certificate. Defines "twisting" and "churning" as unfair methods of competition. Amends the Life and Health Guaranty Association Act, by clarifying coverage limits. Declares the Commissioner shall have full and complete access to all documents received by, created by or otherwise obtained by the association and shall be invited to be present at all association meetings. Adds the Commissioner or their designee as a non-voting member to the Board of Directors. The Commissioner shall not participate in the association's adjudication of a protest by an insurer. (Same as H. 7775.) Section 1 and 2 effective January 1, 2013. Section 3 effective June 20, 2012. Position: MONITOR

S. 2887 ACCIDENT AND SICKNESS INSURANCE: HEALTH INSURANCE: PPACA: DISABILITY INSURANCE EXCLUDED: LONG-TERM CARE INSURANCE EXCLUDED - Signed by the governor on June 18, 2012. Implements health insurance standards consistent with the Patient Protection and Affordable Care Act of 2010. Excludes disability income insurance and benefits for long-term care from the definition of "health plan" and "health benefit plan" of the Accident and Sickness Insurance Policies statutes. (Same as H. 7909.) Effective June 18, 2012. (ACLI edited text of law will be available through Council's Advance Law Service.) Position: MONITOR

H. 7481 MUTUAL HOLDING COMPANY LAW UPDATE AND AMENDMENT TO REHABILITATION OR LIQUIDATION PROVISIONS TO COMPLY WITH DODD-FRANK - (Reported in Bulletins 12-013, 12-017, 12-031, 12-041.) - Signed by the governor on June 20, 2012. Revises the domestic mutual holding company laws. Amends the liquidation and rehabilitation law by

expanding the ability of the commissioner to file a complaint for liquidation or rehabilitation in conformance with Dodd-Frank. (Same as S. 2598.) Effective June 20, 2012. (ACLI edited text of law will be available through Council's Advance Law Service.) Position: SUPPORT

H. 7775 LIFE INSURANCE: CENTRAL DATABASE: UNFAIR TRADE PRACTICES: GUARANTY ASSOCIATION - (Reported in Bulletins 12-014, 12-016, 12-034.) - Signed by the governor on June 20, 2012. Requires the Department of Business Regulation to develop a central database of electronic contact information for companies who have policies in force in Rhode Island. Develops a procedure for "any member of the immediate family of a decedent" to contact the department requesting all insurers to conduct a search for life insurance policies covering a decedent. All requests must include a copy of the decedent's death certificate. Defines "twisting" and "churning" as unfair methods of competition. Amends the Life and Health Guaranty Association Act, by clarifying coverage limits. Declares the Commissioner shall have full and complete access to all documents received by, created by or otherwise obtained by the association and shall be invited to be present at all association meetings. Adds the Commissioner or their designee as a non-voting member to the Board of Directors. The Commissioner shall not participate in the association's adjudication of a protest by an insurer. (Same as S. 2749.) Section 1 and 2 effective January 1, 2013. Section 3 effective June 20, 2012. (ACLI edited text of law will be available through Council's Advance Law Service.) Position: MONITOR

H. 7909 ACCIDENT AND SICKNESS INSURANCE: HEALTH INSURANCE: PPACA: DISABILITY INSURANCE EXCLUDED: LONG-TERM CARE INSURANCE EXCLUDED - Signed by the governor on June 18, 2012. Implements health insurance standards consistent with the Patient Protection and Affordable Care Act of 2010. Excludes disability income insurance and benefits for long-term care from the definition of "health plan" and "health benefit plan" of the Accident and Sickness Insurance Policies statutes. (Same as S. 2887.) Effective June 18, 2012. (ACLI edited text of law will be available through Council's Advance Law Service.) Position: MONITOR

## SOUTH CAROLINA
### Legislative Developments

H. 4082 TAXATION: PREMIUM TAX: TRANSFER OF REVENUE TO SOUTH CAROLINA FORESTRY COMMISSION - (Reported in Bulletins 11-021, 11-053, 12-029, 12-043.) - Vetoed by the governor on June 18 and the governor's veto was overridden by the House on June 19, 2012. Provides that effective July 1, 2013, through June 30, 2017, 2.25 percent of the total premium tax revenue collected, must be transferred to the South Carolina Forestry Commission. The remaining insurance premium tax revenue will be deposited in the State's general fund. Effective July 1, 2013. (ACLI edited text of law available through Council's Advance Law Service.) Position: MONITOR

H. 4763 PRENEED FUNERAL CONTRACTS: LICENSING AND PENALTIES - (Reported in Bulletins 12-013, 12-018, 12-041.) - Signed by the governor on June 18, 2012. Provides for a number of amendments to existing code on preneed funeral contracts. In particular, the bill amends existing sections on the transfer of contracts, application and renewal fees and their use, and penalty provisions for violations of preneed funeral contract laws. Effective June 18, 2012. (ACLI edited text of law available through Council's Advance Law Service.) Position: MONITOR

*ACLI's position on bills included in the Legislative Bulletin is a benefit that is used to help our members distinguish between those bills we are actively lobbying versus those we are not. Below are a list and an explanation of each of the options used in our Legislative Tracking System:*

- *Support Actively - ACLI strongly supports, and is actively seeking enactment of the legislation.*
- *Support - ACLI supports the legislation.*
- *Support Conditionally - ACLI supports the legislation on the condition that certain provisions are amended to address ACLI's concerns.*
- *Do Not Oppose - ACLI does not oppose the legislation. We do not support, but certain standards are met and we are not in opposition.*
- *Monitor - ACLI is monitoring this legislation because of its general interest to member companies.*
- *Neutral - ACLI has reviewed the legislation and has determined to remain neutral.*
- *Pending - ACLI's position is yet to be ascertained. Once a position is determined, it is changed accordingly in LTS.*
- *Oppose - ACLI opposes the legislation.*
- *Oppose Conditionally - ACLI opposes the legislation unless and until certain provisions are amended to address ACLI's concerns.*
- *Oppose Actively - ACLI strongly opposes, and is actively seeking defeat of the legislation.*

contact: Lisha Hanna, 202-624-2047

posted: 6/27/2012
identifier: LB12-049


**Issues** | **Take Action** | **Compliance** | **Committees** | **Research & Publications** | **Newsroom** | **Events** | **About ACLI**

**Follow** ACLI on Twitter
**Like** us on Facebook


**Personalize** your ACLI WebDirect e-mail.
**Questions** and comments are welcome at webadmin@acli.com
**Unsubscribe** ACLI WebDirect e-mail
**Privacy** information regarding ACLI Web services is available at Privacy Statement.


**Copyright American Council of Life Insurers, 101 Constitution Avenue, NW, Washington, DC 20001-2133**

CONFIDENTIAL -- SUBJECT TO PROTECTIVE
ORDER

*Schmidt v. Protective*
Protective_007333

**To:**       Kirkley, Keith[Keith.Kirkley@protective.com]
**From:**     publications@acli.com
**Sent:**     Wed 5/16/2012 7:22:18 PM
**Subject:**  Webdirect - Legislative Bulletin

---

5/16/2012

This Bulletin contains information on the following states:
Alabama, Arizona, California, Colorado, Connecticut, Delaware, Florida, Illinois, Iowa, Louisiana, Michigan, Minnesota, New Hampshire, New Jersey, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee

## ALABAMA

### Legislative Developments

H. 113 PRODUCER LICENSING: PRELICENSING FOR VARIABLE LIFE AND ANNUITIES - (Reported in Bulletins 12-013.) - Signed by the governor on May 10, 2012. Provides for exceptions to the prelicensing course of study for applicants with a college insurance degree and for applicants for the variable life and variable annuity line of authority. (Same as companion bill S. 106) This act shall become effective on January 1, 2013. (ACLI edited text of law available through Council's Advance Law Service.) Position: SUPPORT

H. 126 UNCLAIMED PROPERTY: NCOIL MODEL - (Reported in Bulletins 12-013, 12-022.) - Passed Senate on May 10, 2012. To governor. Position: NEUTRAL

H. 403 GUARANTY ASSOCIATION: STRUCTURED SETTLEMENT ANNUITIES: LIMITS OF COVERAGE - (Reported in Bulletins 12-023, 12-031.) - Signed by the governor on May 10, 2012. Provides for the scope and purpose of the Alabama Life and Disability Insurance Guaranty Association. Provides payees under a structured settlement annuity be covered based on residency of the payee and not the contract owner. Specifies the limits of coverage for life insurance policies. Effective January 1, 2013. (ACLI edited text of law available through Council's Advance Law Service.) Position: SUPPORT ACTIVELY

## ARIZONA

### Legislative Developments

H. 2713 LONG-TERM CARE: STATE LTC TRUST - (Reported in Bulletins 12-010, 12-023.) - Signed by the governor on May 14, 2012. Provides for subtraction from adjusted gross income for long-term care insurance premium costs. Provides for long-term health care savings accounts, account withdrawals, and administrators and expenses for nursing care, home health care, and supportive services. Effective 90 days after the legislature adjourns sine die. (ACLI edited text of law available through Council's Advance Law Service.) Position: MONITOR

## CALIFORNIA

### Legislative Developments

S. 1184 SENIOR INSURANCE: VETERANS BENEFITS - (Reported in Bulletins 12-014, 12-015, 12-022, 12-029.) - Passed Senate on May 3, 2012. To Assembly Committee on Finance on May 10, 2012. Position: MONITOR

S. 1212 LIFE INSURANCE POLICY: STOLI EXCLUSION - (Reported in Bulletins 12-013, 12-015, 12-018.) - Passed Senate on May 14, 2012. To Assembly. Position: OPPOSE

S. 1451 INSURER LOANS: PROHIBITION - (Reported in Bulletins 12-014, 12-018.) - As amended in the Senate Committee on Insurance on May 2, 2012, would add a section to the code and except from fraternal benefit society loan prohibitions, loans made by a fraternal benefit society to a member of the society under certain conditions and loans made to a life licensee, as defined, appointed by the fraternal benefit society, under specified conditions, including that the loan is not made to an officer or director of the society, that the loan is secured in accordance with insurance industry practices for that loan, and that no officer, director, agent, or employee of the society, other than the life licensee, receives consideration due to the making of the loan. Passed as amended on May 9, 2012. Position: MONITOR

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007334

A. 1248 PUBLIC EMPLOYEES: DEFINED BENEFIT PLANS - (Reported in Bulletins 11-009, 11-018, 11-020, 11-028, 11-038, 11-071, 11-100.) - From Inactive File and amended in the Senate on May 10, 2012. As amended, would define "projected benefits" to mean the projection of benefits, including any disability and death benefits, that have been accrued and will likely be accrued in the future by an employee based on the actuarial assumptions of the loan. Read second time in Senate on May 14, 2012. To third reading. Position: MONITOR

A. 1747 LIFE INSURANCE: NONPAYMENT OF PREMIUM: GRACE PERIOD - (Reported in Bulletins 12-013, 12-015, 12-029.) - As amended in the Assembly on May 9, 2012, would require an insurer to provide each applicant with a form, as specified, to make a designation. Would require the insurer to notify the insured annually of the right to change the written designation or designate one or more persons. Passed Assembly on May 14, 2012. To Senate. Position: OPPOSE

A. 2010 REVERSE MORTGAGES: COUNSELING - (Reported in Bulletins 12-015, 12-016, 12-025, 12-029.) - Passed Assembly on May 10, 2012. To Senate. Position: MONITOR

A. 2160 FOREIGN INVESTMENTS: ENERGY SECTOR OF IRAN - (Reported in Bulletins 12-014, 12-017, 12-029.) - As amended in the Assembly on May 9, 2012, would require that investments from or located in foreign jurisdictions designated as state sponsors of terrorism by a domestic insurer in companies that are included on the list maintained by the Department of General Services, be treated as nonadmitted assets on the financial statements of the domestic insurer. Would deem the use of the list developed for purposes of the Iran Contracting Act of 2010 as automatic compliance. Would require the insurer to provide the department with specified information, on an annual basis, including a list of the investments the insurer has in companies included on the list and a detailed summary of the business operations the listed company has in Iran. To third reading in on May 10, 2012. Position: OPPOSE

A. 2301 GUARANTY ASSOCIATION: DEFINITION OF COVERED CLAIMS - (Reported in Bulletins 12-014, 12-022, 12-031.) - Passed Assembly on May 10, 2012. To Senate. Position: MONITOR

A. 2374 CREDIT REPORTS: SECURITY FREEZE - (Reported in Bulletins 12-021, 12-023.) - As amended in the Assembly on May 14, 2012, would allow a consumer credit reporting agency to charge a consumer 65 years of age or older a fee not to exceed five dollars for the removal of the freeze. Position: MONITOR

## COLORADO

### Legislative Developments

H. 1036 OPEN RECORDS: CONFIDENTIALITY - (Reported in Bulletins 12-005, 12-015, 12-031.) - House refused to concur in Senate amendments and sent to conference committee on May 9, 2012. Conference committee report adopted by the Senate and the House on May 9, 2012. Position: MONITOR

## CONNECTICUT

### Legislative Developments

S. 285 STATE TREASURER: INVESTMENTS IN NORTHERN IRELAND: DIVESTITURE REQUIREMENTS - (Reported in Bulletins 12-015, 12-029.) - Passed the House on May 9, 2012. Position: NEUTRAL

H. 5011 TECHNICAL AMENDMENTS TO INSURANCE CODE - (Reported in Bulletins 12-11a, 12-023.) - Passed the Senate on May 9, 2012. Position: MONITOR

H. 5498 FUNERAL SERVICE CONTRACT FUNDING: ASSIGNMENT OF DEATH BENEFITS - (Reported in Bulletins 12-025, 12-031.) - Signed by the governor on May 14, 2012. Provides for the assignment of a death benefit payable under an individual or group life insurance policy for the purpose of funding a funeral service contract. Section 1 and 2 effective October 1, 2012. Sections 3 - 8 effective May 14, 2012. (ACLI edited text of law available through Council's Advance Law Service.) Position: SUPPORT

H. 5556 CORPORATE CAMPAIGN FINANCE: REQUIRED BOARD VOTE FOR CERTAIN EXPENDITURES: PUBLIC DISCLOSURE REQUIREMENTS - Would amend existing campaign finance laws. Section 10 would enact new language which would require a company to have a board vote on campaign expenditures of more than $4,000. Individual board member votes and the details of such expenditures would be required to be disclosed to the public on the entity's Internet web site not later than forty-eight hours after the vote and filed electronically with the State Elections Enforcement Commission. In the event such a campaign expenditure is made, would also require that an entity carry out one of the following: (1) If the entity submits regular, periodic reports to its shareholders, members or donors, on the entity's finances or activities, include in each such

report (A) the identity of the individual making any campaign-related disbursement and the business address of such individual, (B) the amount and date of each such disbursement and the identity of the individual to whom such disbursement was made, (C) the candidate or candidates or ballot issue to which such disbursements are related, and (D) the identity of any individual who made a donation in excess of one thousand dollars to the entity, for any campaign-related disbursements made by the entity during the period such report covers, or (2) provide on the entity's Internet web site a link to the entity's filed disclosure reports under said section 9-612. Passed the House and the Senate on May 8, 2012. Position: OPPOSE

## DELAWARE

### New Introductions

S. 220 LIFE INSURANCE: RESCISSION - Would provide that in any instance in which a life insurance contract is rescinded, voided or otherwise terminated or extinguished in accordance with law because such insurance contract was procured by an individual or a person not having an insurable interest pursuant to specified sections of the code, or was issued in violation of specified sections, the insurer shall pay to the owner of the insurance contract at the time such contract was rescinded, voided or otherwise terminated or extinguished an amount equal to the total premiums paid with interest at an interest rate no lower than that specified in the contract for calculating cash surrender values at the time such contract is rescinded, voided, or otherwise terminated or extinguished. Position: OPPOSE ACTIVELY

### Legislative Developments

H. 223 INSURANCE: ELECTRONIC NOTICES - (Reported in Bulletins 11-040, 11-077, 12-029.) - Passed Senate on May 15, 2012. Position: MONITOR

## FLORIDA

### Legislative Developments

H. 725 INSURANCE AGENTS & ADJUSTERS: LICENSING: CONTINUING EDUCATION: APPOINTMENTS - (Reported in Bulletins 12-001, 12-005, 12-014, 12-017, 12-031.) - Signed by the governor on May 4, 2012. This omnibus insurance bill among other things: limits the number of times an applicant make take an exam for the same license type (5 times in 12 months); deletes the title insurer administrative surcharge for a licensed title insurance agency; revises definitions of "adjuster" and "home state" and provisions relating to who may bind insurance coverage; provides that an applicant is responsible for information in an application even if completed by third party; provides that any person licensed by DFS must notify the agency of any name, address, phone or e-mail change within 30 days of the change (previously 60 days); allows DFS to deny an application for, suspend, revoke, or refuse to renew or continue a license for a licensee who does not comply with any civil, criminal or administrative action to determine paternity or relating to child support; provides a military waiver (upon request) for continuing education requirements for licensees who are unable to complete required CE requirements due to active duty in the military; Section 11 requires that starting October 1, 2014, five hours of the current 24 hour CE requirement be an update course specific to the licensee's license and cover insurance law updates, premium discounts, ethics, disciplinary trends, industry trends and determining suitability of insurance products; Section 11 also removes the current two hour mandatory ethics CE requirement but requires ethics to be taught in the new five hour update course required for all licensees. Effective October 1, 2012, except for Section 11 which is effective October 1, 2014. (ACLI edited text of law available through Council's Advance Law Service.) Position: DO NOT OPPOSE

## ILLINOIS

### Legislative Developments

H. 4443 GUARANTY ASSOCIATION: SEPARATE ACCOUNTS - Would amend the Insurance Code concerning the Life and Health Insurance Guaranty Association in provisions related to separate accounts. Position: MONITOR

## IOWA

### New Introductions

S. 2345 PREMIUM TAX CREDIT: INNOVATION FUND TAX CREDIT: MODIFICATION OF ALLOWABLE AMOUNTS - Would modify the amounts allowed as an innovation fund investment tax credit (applicable to premium tax liabilities). Position: MONITOR

### Legislative Developments

S. 2313 INSURANCE DEPARTMENT APPROPRIATIONS - (Reported in Bulletins 12-016, 12-018.) - Passed out of conference committee on May 7, 2012 and is now eligible for the governor's desk. Position: MONITOR

H. 2473 HIGH QUALITY JOB CREATION AND INNOVATION FUND TAX CREDIT PROGRAM - (Reported in Bulletins 12-029.) - As amended, would remove introduced provision which would have repealed the film tax credit program (applicable to premium tax). Would provide for numerous changes to the High Quality Job Creation and Innovation Fund tax credit programs (applicable to premium tax). Passed the House and the Senate on May 8, 2012. Position: OPPOSE

## LOUISIANA

### New Introductions

S. 765 INSURANCE FRAUD PREVENTION ACT - Would create the Insurance Fraud Prevention Act. Position: MONITOR

SCR. 104 LIFE INSURANCE: WORKING GROUP: LONG-TERM CARE: ANNUITIES: DEPARTMENT OF INSURANCE - Would establish an advisory working group, within the Department of Insurance in order to examine options to allow an insured under a life insurance policy or the contract holder of an annuity to fund long-term care benefits. Passed the Senate and sent to the House on May 10, 2012. Position: MONITOR

## MICHIGAN

### New Introductions

H. 5623 EMPLOYERS: SOCIAL MEDIA PRIVACY - Would, among other things, prohibit an employer from requesting that an employee or applicant for employment: disclose access info to their personal data storage account, authorize full or partial access to the account by various stated methods, or waive any right under the act. Would also prohibit an employer from discharging, disciplining, failing to hire, or otherwise discriminating against an employee or applicant for employment for his or her lack of a personal data storage account, failure to authorize friending or shoulder surfing, or failure to disclose access information for the employee's or applicant's personal data storage account. Would also provide for both criminal and civil penalties for violations of the act by the employer or agents of the employer. Position: MONITOR

### Legislative Developments

H. 5154 TRUSTS: UNIFORM AND PRINCIPAL INCOME ACT: SEPARATE FUNDS - (Reported in Bulletins 11-093, 12-020.) - Passed the House on May 15, 2012 and sent to the Senate. Position: MONITOR

H. 5237 AMENDMENTS TO ESTATES AND PROTECTED INDIVIDUALS CODE - (Reported in Bulletins 11-099, 12-020.) - Passed the House on May 15, 2012, and sent to the Senate. Position: MONITOR

## MINNESOTA

### Legislative Developments

H. 247 OMNIBUS TAX BILL - Vetoed by the governor on May 14, 2012. Position: MONITOR

## NEW HAMPSHIRE

### New Introductions

S. 399 PREMIUM TAX REVENUE - Language from H. 1652 was amended to S. 399, which would require the transfer of $1.5 million of insurance premium tax revenue received, from an unanticipated surplus for the fiscal year ending June 30, 2011, to the Department of Health and Human Services, for the purpose of providing services to the developmentally disabled. Position: OPPOSE

### Legislative Developments

S. 222 CANCELLATION OF POLICIES: CERTIFICATE OF INSURANCE - (Reported in Bulletins 12-018, 12-021.) - As amended in the Senate and passed by the full House on May 9, 2012, would amend the certificates of insurance law adopted during the 2011 legislative session. If passed, would: allow a deviation from the disclaimer language in the certificate of insurance statute; permit umbrella liability limits to be shown on the certificate of insurance; clarify the fees permitted under the statue; and, eliminate the statutory reference to the ability of the commissioner to promulgate regulations regarding certificates of insurance. The bill also provides clarifying language concerning the cancelation or termination of insurance

*Schmidt v. Protective*
Protective_007337

policies which would prohibit cancelation if a premium payment is received by the agent before the date and time of cancelation stated in the policy. Current law requires that the premium payment be received by the insurer. Lastly, S. 222 would permit the commissioner to share confidential information with the Bank for International Settlements (BIS) and the International Association of Insurance Supervisors (IAIS). Position: MONITOR

H. 1209 TAXATION: BUSINESS PROFITS TAX AND COMBINED UNITARY REPORTING - (Reported in Bulletins 11-101.) - As amended on the Senate floor and passed by the Senate on May 9, 2012, would establish a committee to study administration of the business profits tax and the business enterprize tax. The committee study would include the following specific issues, as well as other related matters as determined by the committee: 1) the step up in basis under the business profits tax for certain sales of business interests; 2) the statutory references for the applicable Internal Revenue Code; 3) the apportionment of business profits taxation based on costs of performance; 4) the definition of an overseas business organization for purposes of the business profits tax; 5) a uniform filing schedule for returns under the business profits tax and the business enterprize tax; and, 6) a combined filing by a taxpayer of a return for both the business profits tax and the business enterprize tax. The committee would be mandated to report its findings and any recommendations for proposed legislation on or before November 1, 2012. Position: MONITOR

H. 1221 TAXATION: BUSINESS PROFITS TAX CREDIT - (Reported in Bulletins 11-101, 12-007, 12-010, 12-031.) - The House refused to concur with the Senate amendments and has been transmitted to Conference Committee. Position: MONITOR

H. 1652 PREMIUM TAX REVENUE - (Reported in Bulletins 12-031.) - The House refused to concur with the Senate amendments, with no request for a committee of conference, effectively killing the bill. However, the legislative language has subsequently been amended to S. 399. Position: OPPOSE

**NEW JERSEY**

**New Introductions**

S. 1915 EMPLOYERS: SOCIAL MEDIA PRIVACY - Would prohibit employers from requiring current or prospective employees to provide their log-in information for social networking websites as a condition of employment or acceptance. Position: MONITOR

S. 1920 WORLDWIDE SOURCING: RELOCATION OF CALL CENTER TO FOREIGN COUNTRY: PRIOR NOTICE REQUIREMENT - Would require that any employer relocating a call center, or "transferring one or more facilities or operating units comprising at least 30 percent of a call center's total operating volume of telephone calls, e-mails, or other electronic communications when measured against the previous 12 month average volume of those operations", from the state to one or more foreign countries, shall notify the Commissioner of Labor and Workforce Development, at least 120 days prior to the relocation or transfer of operations. Would provide for civil penalties for violations of this requirement. Would task the commissioner with creating and maintaining a list of employers that have provided notification and require that the list be made available to the public via the internet. Would set forth that any employer on the list would be ineligible to receive state grants, guaranteed loans, tax benefits or any other financial support for three years following the date they are added to the list. Act would apply to transfers or relocations occurring after the effective date. (Same as A. 2651.) Position: MONITOR

A. 2651 WORLDWIDE SOURCING: RELOCATION OF CALL CENTER TO FOREIGN COUNTRY: PRIOR NOTICE REQUIREMENT - Same as S. 1920 Position: MONITOR

A. 2752 INDIVIDUAL INCOME TAX EXCLUSION AMOUNT INCREASE: RETIREMENT INCOME - Would double the amount of specific retirement income an individual 62 years or older or a disabled individual, may exclude from taxable income. Excludable pension income includes certain annuity, endowment or life insurance contract payments, pension, disability or retirement benefit payments from private or public plans, and IRA withdrawals. (Same as A. 2752.) Position: MONITOR

A. 2803 FINANCIAL INSTITUTIONS: THIRD PARTY EFT NOTIFICATION - Would require a financial institution to notify an account holder when information related to an electronic fund transfer (EFT) is shared with a third party. Position: OPPOSE CONDITIONALLY

A. 2878 EMPLOYERS: SOCIAL MEDIA PRIVACY - Would prohibit employers from requiring current or prospective employees to provide their log-in information for social networking websites as a condition of employment or acceptance. Position: MONITOR

A. 2901 LOCAL PUBLIC AND PUBLIC SCHOOL INSURANCE CONTRACTS: ELIMINATION OF PUBLIC ADVERTISING AND

BIDDING REQUIREMENT EXEMPTION - With regard to local public and public school contracts, would provide for public advertising and bidding requirements for contracts involving common insurance, such as health, life, and accident. Under current law, all types of insurance contracts are exempt from the public advertising and bidding requirements for local public and public school contracts. Position: MONITOR

## Legislative Developments

S. 1891 PRODUCERS: COMMISSION SHARING AND DISCLOSURE REQUIREMENTS FOR PUBLIC CONTRACTS - Would amend the Producer Licensing Model Act, to include provisions concerning producer commission sharing and disclosure requirements for public contracts. Would prohibit an insurance producer from sharing a commission or fee in connection with insurance coverages placed or other insurance services rendered for a public entity unless: (i) the insurance producer with whom the commission or fee is shared actually rendered a bona fide insurance service for the public entity ("bona fide insurance service" is defined); (ii) the insurance producer that shares the commission or fee provides specific disclosures in writing to the Commissioner of Banking and Insurance and to the most senior official of the public entity involved; and (iii) the sharing of the commission or fee is approved by the public entity. Position: MONITOR

A. 2171 HEALTH INSURANCE: HEALTH BENEFIT EXCHANGE ACT (FUNDING MECHANISMS) - (Reported in Bulletins 12-011, 12-017.) - Vetoed by the governor on May 10, 2012. Position: MONITOR

## OKLAHOMA
## Legislative Developments

S. 1230 INCOME TAX RATE REDUCTION: ELIMINATION OF NUMEROUS PREMIUM TAX CREDITS - As substituted by Republicans in conference committee, would provide for a individual income tax rate reduction and eliminate a number of premium tax credits (Oklahoma Mined Coal / Thin Seam Coal Credit, Small Wind Turbines Credit, Qualified Rehabilitation Of Certified Historic Structures Credit, Recycling Facility Credit). Position: MONITOR

S. 1439 INSURANCE FRAUD: PENALTIES: IMMUNITY FROM CIVIL OR CRIMINAL CAUSE OF ACTION FOR FRAUD REPORTING - (Reported in Bulletins 12-009, 12-013, 12-015, 12-017, 12-021, 12-029, 12-031.) - Signed by the governor on May 10, 2012. Toughens insurance fraud laws by making insurance fraud a felony, allowing prosecutors to combine multiple smaller thefts together and press charges for a more serious crime, raises the punishment for insurance fraud to as much as five years in prison and provides that offenders may have to pay back twice the amount of money stolen. Also, allows for officials to seize any property obtained with the illegal funds. Provides that no civil or criminal cause of action shall exist against a person or entity by virtue of filing of reports or other information, concerning suspected, anticipated or completed fraudulent insurance acts to the Anti-Fraud Division of the Insurance Department. Expands this immunity to providing or receiving information to or from law enforcement officials, the NAIC, any state department of insurance, any federal or state agency established to detect and prevent insurance fraud. Effective July 1, 2012. (ACLI edited text of law available through Council's Advance Law Service.) Position: MONITOR

S. 1474 NCOIL SELF-EVALUATIVE PRIVILEGE MODEL ACT - (Reported in Bulletins 12-009, 12-014, 12-017, 12-022, 12-029.) - Signed by the governor on May 15, 2012. Adopts a similar version of the NCOIL Self-Evaluative Privilege Model Act. Establishes that an insurance compliance self-evaluative audit is privileged information and is not discoverable, or admissible as evidence in any legal action in any civil, criminal, or administrative proceeding. Makes any company, person, or entity that performed or directed the performance of an insurance compliance audit exempted from examination in any civil, criminal or administrative proceeding. Allows a company to voluntarily submit audit documents to the insurance commissioner as a confidential document, however the provisions of the Insurance Code that allow the commissioner to make confidential documents public and grant access to documents to the National Association of Insurance Commissioners (NAIC) would not apply to the audit document. Sets forth various other provisions regarding treatment of the audit document in civil, criminal and administrative proceedings. Effective November 1, 2012. (ACLI edited text of law available through Council's Advance Law Service.) Position: MONITOR

S. 1618 INSURER DISCLOSURE REQUIREMENT: POLICY INFORMATION TO PRODUCER WHOSE APPOINTMENT HAS BEEN TERMINATED - (Reported in Bulletins 12-018, 12-023, 12-025.) - Senate refused to concur in House amendments on May 9, 2012. Position: MONITOR

## PENNSYLVANIA
## Legislative Developments

H. 2134 RISK-BASED CAPITAL: FRATERNAL BENEFIT SOCIETY: HEALTH ORGANIZATION - Would amend the Insurance

Department Act of 1921 providing for filing of a risk-based capital (RBC) report that indicates the health organization's total adjusted capital is greater than or equal to its company action level RBC but less than the product of it's authorized control level RBC and 3.0. (Passed House on February 14, 2012. Passed Senate on May 7, 2012). Expected to go to the governor for his signature. Position: MONITOR

**PUERTO RICO**

**Legislative Developments**

H. 3710 HEALTH INSURANCE: DISCLOSURE OF MEDICAL INFORMATION - (Reported in Bulletins 11-091.) - Passed the House and sent to the Senate on May 10, 2012. (Amended text of the bill not currently available) Position: MONITOR

**RHODE ISLAND**

**Legislative Developments**

H. 7775 LIFE INSURANCE: CENTRAL DATABASE: UNFAIR TRADE PRACTICES: GUARANTY ASSOCIATION - (Reported in Bulletins 12-014, 12-016.) - As amended in the House Committee on Corporations on May 8, 2012 and passed by the House on May 15, 2012, would not include the introduced suitability language. Would continue to include language requiring the Department of Business Regulation to develop a central database of electronic contact information for company having policies in force in Rhode Island. Would develop a procedure for "any member of the immediate family of a decedent" to contact the department requesting all insurers to conduct a search for life insurance policies covering a decedent. All requests must include a copy of the decedent's death certificate. Would define "twisting" and "churning" as unfair methods of competition. Would amend the Life and Health Guaranty Association Act. Position: MONITOR

**SOUTH CAROLINA**

**Legislative Developments**

S. 271 INDIVIDUAL RETIREMENT ACCOUNTS: BANKRUPTCY EXEMPTION - (Reported in Bulletins 11-001, 11-017, 11-053, 12-031.) - Signed by the governor on May 14, 2012. Exempts an individual's interest (participant, beneficiary, contingent annuitant, alternate payee, or otherwise) in a retirement plan from creditors up to the extent provided under federal bankruptcy law. Effective May 14, 2012. (ACLI edited text of law available through Council's Advance Law Service.) Position: MONITOR

**TENNESSEE**

**Legislative Developments**

S. 2271 INSURANCE CONTRACTS: PREMIUMS: AGREEMENTS - (Reported in Bulletins 12-005, 12-029.) - Signed by the governor on May 10, 2012. As enacted, the bill would add a new section to the insurance code by creating a rebuttable presumption concerning signatures on contracts. Effective May 10, 2012. (ACLI edited text of law will be available through Council's Advance Law service.) Position: MONITOR

---

contact: Lisha Hanna, 202-624-2047

posted: 5/16/2012
identifier: LB12-034

Issues | Take Action | Compliance | Committees | Research & Publications | Newsroom | Events | About ACLI

**Follow** ACLI on Twitter
**Like** us on Facebook

**Personalize** your ACLI WebDirect e-mail.
**Questions** and comments are welcome at webadmin@acli.com
**Unsubscribe** ACLI WebDirect e-mail
**Privacy** information regarding ACLI Web services is available at Privacy Statement.

**Copyright American Council of Life Insurers, 101 Constitution Avenue, NW, Washington, DC 20001-2133**

**To:** Kirkley, Keith[Keith.Kirkley@protective.com]
**From:** publications@acli.com
**Sent:** Thur 2/23/2012 8:52:34 PM
**Subject:** Webdirect - Legislative Bulletin

---

**New ACLI Program, *InFocus*, To Shed Light on PBR; February 27 at Noon EST**
ACLI will brief members on principle-based reserves on Feb. 27, 12:00 Noon (EST). Learn more about *InFocus*, download the PBR issue brief, and access dial-in information online.

2/23/2012

This Bulletin contains information on the following states:
Alabama, California, Colorado, Connecticut, Florida, Hawaii, Idaho, Iowa, Kansas, Maryland, Massachusetts, Minnesota, Mississippi, Missouri, New Jersey, New Mexico, New York, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Vermont, Virginia, West Virginia, Wisconsin, Wyoming

### ALABAMA

### New Introductions

S. 106 PRODUCER LICENSING: VARIABLE LIFE AND VARIABLE ANNUITY - Would provide for exceptions to prelicensing for applicants of the variable life and variable annuity lines of authority. (Same as H. 113). Position: MONITOR

S. 117 DEPARTMENT OF INSURANCE: SUNSET PROVISIONS - Would continue the existence and functioning of the Department of Insurance until October 1, 2014. Position: MONITOR

S. 164 DOMESTIC INSURERS: ASSET ALLOCATION: COMMUNITY INVESTMENT - Would provide handling of the funds of the insurer and would require domestic insurers to maintain assets in financial institutions conducting business in Alabama. Would allow domestic insurers to deposit assets outside the state for purposes of safekeeping. (Same as H. 189). Position: MONITOR

H. 78 GENETIC INFORMATION PRIVACY ACT: DNA INFORMATION - Would create the Genetic Information Privacy Act providing for informed consent to obtain, access, analyze, and disclose genetic information. Position: MONITOR

H. 113 PRODUCER LICENSING: PRELICENSING FOR VARIABLE LIFE AND ANNUITIES - Same as S. 106. Position: SUPPORT

H. 126 UNCLAIMED PROPERTY: NCOIL MODEL - Would establish the Unclaimed Life Insurance Benefits Act. Closely tracks the NCOIL Model. Would require insurers to search the death master file and would require that no fee is to be charged associated with the search. Would require notification of State Treasurer, and for insurers to submit to unclaimed life insurance benefits or retained asset accounts plus interest to the State Treasurer. Position: NEUTRAL

H. 189 DOMESTIC INSURERS: HANDLING OF FUNDS: RECORDKEEPING - Same as S. 164. Position: MONITOR

H. 245 ALABAMA HEALTH INSURANCE EXCHANGE - Would create the Alabama Health Insurance Exchange. Position: MONITOR

### CALIFORNIA

### New Introductions

S. 1140 DEFINITION OF MARRIAGE - Would define the term marriage as a personal relation arising out of a civil contract between a man and a woman, established pursuant to a state marriage license issued by the county clerk. Would specify that no priest, minister, rabbi, or authorized person of any religious denomination be required to solemnize a marriage that is contrary to the tenants of his, her, or its faith. Would state that any refusal to solemnize a marriage under this provision will not affect the tax exempt status of any entity. Position: MONITOR

S. 1170 ADVERTISEMENT: SENIORS: SENIOR DESIGNATIONS - Would change the definition of advertisement, as it relates to advertisements directed at persons 65 years or older, to include worksheets, questionnaires, or other materials designed

*Schmidt v. Protective*
Protective_007341

to collect personal or financial information about a prospective insured or annuitant. Would also add veterans organizations and the U.S. Department of Veterans Affairs to the list of those entities that cannot be used in specified deceptive or misleading advertising practices. Would add "veteran" to those words deemed a senior designation. Position: MONITOR

S. 1212 PLACEHOLDER BILL: LIFE INSURANCE POLICY: DISABILITY INCOME POLICY - Would make a technical, non-substantive change to existing law relating to every policy of life, disability, or life and disability insurance. Position: MONITOR

A. 1747 LIFE INSURANCE: NONPAYMENT OF PREMIUM: GRACE PERIOD - Would require that every life insurance policy issued or delivered in the state contain a provision for a grace period of not less than 60 days from the premium due date that provides that where the premium owed is fully paid within the grace period the policy shall remain in force. Would require every life insurance policy issued or delivered in the state, except for group life insurance, to contain a provision that the policy shall be reinstated at any time within two years from the date of default, upon the written application of the insured and evidence of insurability. A notice of cancellation shall not be effective unless mailed by the insurer to the named insured, a designee, an assignee or additional interest, at least 30 days prior to the effective date of cancellation due to nonpayment. Position: OPPOSE

### COLORADO
### New Introductions

H. 1309 E-VERIFY ELECTRONIC VERIFICATION PROGRAM: PUBLIC EMPLOYEES: NEW EMPLOYEES - Would require employers doing business in Colorado to participate in the federal E-Verify Program where by January 1, 2013 all newly hired employees must verify their work eligibility. Position: MONITOR

### CONNECTICUT
### New Introductions

S. 96 PREMIUM TAX EXEMPTION: MUNICIPALITY PAID HEALTH INSURANCE PREMIUMS - Would exempt direct health insurance premiums paid by a municipality from the state premium tax. Position: MONITOR

S. 133 ESTATE TAX PHASE OUT - Would phase out the estate tax over a five year period. Position: MONITOR

S. 178 PERSONAL INCOME TAX DEDUCTION FOR LONG-TERM CARE INSURANCE PREMIUMS - Would provide for a personal income tax deduction for long-term care insurance premiums. Position: SUPPORT

H. 5089 TELEMARKETING: PROHIBITION ON MISLEADING CALLER IDENTIFICATION INFORMATION - Would prohibit telemarketing calls from transmitting inaccurate or misleading caller identification information. Position: MONITOR

H. 5107 CAPTIVE INSURERS: DEPOSIT OF CAPTIVE FEES AND ASSESSMENTS INTO INSURANCE FUND - Would eliminate the existing "captive insurance regulatory and supervision account" within the Insurance Fund and provide for all fees and assessments relating to captive insurance companies be redirected into the Insurance Fund. Position: MONITOR

H. 5177 STATE PENSION PLAN MODIFICATIONS - Would modify state pension plans with cost of living adjustment caps, contribution amount increases, pension calculation modifications and enrollment of new hires into a defined contribution plan. Position: MONITOR

H. 5183 UNCLAIMED PROPERTY: AMENDMENTS TO REQUIREMENTS FOR FUNDS HELD IN INACTIVE BANK ACCOUNTS - Would amend existing unclaimed property statutes with regard to handling of funds remaining in an inactive bank account. Position: MONITOR

H. 5189 INDIVIDUAL INCOME TAX EXEMPTION: PENSION AND SOCIAL SECURITY INCOME - Would provide for a income tax exemption for up to $50,000 in pension and Social Security income for individuals, and $100,000 for joint filers. Position: MONITOR

H. 5192 ESTATE TAX: PHASE OUT - Would phase our the estate tax over a five year period. Position: MONITOR

H. 5226 LIFE INSURANCE PREMIUM PAYMENT SCHEDULES - Would require life insurers provide (at least annually) their applicants and insureds the option of quarterly, semiannual, or annual premium payment schedules. Position: MONITOR

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

**FLORIDA**

**Legislative Developments**

H. 1065 SUITABILITY IN ANNUITY TRANSACTIONS - (Reported in Bulletins 11-099, 12-009.) - Placed on House Special Order Calendar on February 20, 2012 on Second Reading. Position: SUPPORT ACTIVELY

**HAWAII**

**New Introductions**

SCR. 42 LONG-TERM CARE INSURANCE STUDY - Would request an auditor to conduct a study to determine ways, other than tax incentives, to encourage employers to provide and pay for long-term care insurance and for individuals to purchase long-term care insurance. Position: MONITOR

SCR. 44 LONG-TERM CARE FINANCING TASK FORCE: LEGISLATIVE STUDY: ACCELERATED DEATH BENEFITS: VIATICAL SETTLEMENTS - Would establish a Long-Term Care Financing Task Force to conduct the feasibility study on the viability of using accelerated death benefits and viatical settlements as sources of funding for long-term care needs. Position: MONITOR

H. 2569 CIVIL UNIONS - Would relate to civil unions. House Draft 1 adopted as amended in the House Committee on Judiciary on February 16, 2012. As amended, would add two new sections relating to "the transition from reciprocal beneficiary relationship to civil union; uninterrupted rights" and a section on the "use of religious facility for solemnization of civil unions". Would amend Section 9 (Section 572C-7) by adding in part (1) and part (2) relating to the reciprocal beneficiary relationship. Finally, would make the bill retroactive to January 1, 2012. Position: MONITOR

**IDAHO**

**Legislative Developments**

SCR. 119 ADMINISTRATIVE PROCEDURE: GROUP INSURANCE: REPEALER - (Reported in Bulletins 12-011.) - Passed the Senate and sent to the House without amendments on February 15, 2012. Position: MONITOR

**IOWA**

**New Introductions**

S. 2205 MODIFICATIONS TO ADMINISTRATIVE RULEMAKING PROCESS - Would modify administrative rulemaking process with various requirements aimed at providing citizens with increased and a more transparent process. Position: MONITOR

S. 2211 PREMIUM TAX CREDIT: EMPLOYMENT OF QUALIFIED INDIVIDUALS - Would provide for a premium tax credit for taxpayers who hire certain qualified individuals on a full time basis. Would set forth various qualifying requirements. The credit would be equal to $2,000 per qualified hired. Position: MONITOR

H. 2267 PREMIUM TAX CREDIT: AMENDMENTS TO BROWNFIELD REDEVELOPMENT PROGRAM - Would amend the existing brownfield redevelopment credit to provide a definition of "brownfield site generation facility" and provide priority status to an application to the economic development authority board, for financial assistance in connection with a brownfield site generation facility. Position: MONITOR

H. 2271 PROHIBITED POLITICAL CONTRIBUTIONS BY INSURANCE COMPANIES - Would prohibit an insurance company from directly or indirectly contributing to a committee or to advocate for the election or defeat a individual seeking public office. Would establish situations under which an insurance company may contribute money to the political process. Position: MONITOR

HSB. 638 IDENTITY THEFT PROVISIONS AND PENALTIES: HIRING PRACTICES - Would provide for additional provisions and penalties concerning identity theft, applicable to insurers. Would provide that a person commits the offense of knowingly accepting the identity of another person if the person, in hiring an employee, knowingly accepts any identification information of another person with knowledge that the other person is not the actual person identified by that information, or uses the information for the purpose of determining whether the person who presented the information has the legal right or authorization under federal law to work in the United States. Position: MONITOR

HSB. 645 PREMIUM TAX CREDITS: REPEAL OF FILM, TELEVISION AND VIDEO TAX CREDITS - Would repeal the tax credits (applicable to premium tax liabilities) associated with the film, television, and video project promotion program within the

economic development authority. Would take immediate effect and apply retroactively to January 1, 2012, for tax years beginning on or after that date. Repeal would not impact existing contracts or agreements entered into on or before the effective date the bill. Position: OPPOSE

HSB. 648 PREMIUM TAX CREDIT: INNOVATION FUND: INCREASE IN ALLOWABLE AMOUNT AND TRANSFERABILITY - Would increase the amount allowable as an innovation fund investment tax credit from the current amount of 20 percent of a taxpayer's equity investment, to 100 percent, for investments in fiscal years beginning July 1, 2011, July 1, 2012, and July 1, 2013. Would provide for 75 percent for the fiscal year beginning July 1, 2014, 50 percent for the fiscal year beginning July 1, 2015, and 20 percent for fiscal years beginning on or after July 1, 2016. Would also make the tax credit transferable and set would set forth related procedures. Position: MONITOR

## KANSAS

### Legislative Developments

H. 2485 INSURER ANTI-FRAUD PLAN REQUIREMENTS - (Reported in Bulletins 12-007.) - Passed the House and sent to the Senate on February 22, 2012. As amended in the House Committee on Insurance, would amend Section 40-2,118 (d) (1) relating to when insurers should submit an antifraud plan to the commissioner "no later than January 1, 2014". Position: MONITOR

## MARYLAND

### New Introductions

S. 456 HEALTH BENEFIT PLAN: PREMIUM RATE REVIEW - Would prohibit a carrier that issues or delivers a health benefit plan in the state from charging a premium to certain persons or changing a premium before the rate or rate change is filed with the insurance commissioner. Disability income and long-term care insurance are excluded from the definition of "health benefit plan". (Same as H. 465). Position: MONITOR

S. 703 TAXATION: INHERITANCE TAXES: REPEAL - Would repeal the inheritance and estate tax for decedents dying on or after January 1, 2012. Would provide that the comptroller retains full authority to audit, administer and enforce the estate tax and inheritance tax related to decedents dying before January 1, 2012. Position: MONITOR

S. 811 FRAUD: INSURANCE - Would provide that a specified fine imposed for specified fraud violations is mandatory and not subject to suspension. Would authorize the insurance commissioner to impose an administrative penalty not to exceed $25,000 for each act of insurance fraud and to order restitution to an insurer or self-insured employer of any insurance proceeds paid relating to a fraudulent insurance claim. Would require the commissioner to consider specified factors in determining the penalty amount. (Same as H. 1094). Position: SUPPORT

S. 1003 GUARANTY ASSOCIATION - Would revise the Life and Health Insurance Guaranty Corporation Act. Would provide that the contractual obligations of specified impaired or insolvent insurers for which the Corporation may become liable are, with respect to any one life: $300,00 in life insurance death benefits; $100,000 in health insurance benefits; $500,00 for basic hospital, medical, and surgical insurance; $300,000 for disability income and $300,000 for long-term care insurance. Would authorize the Corporation to elect to succeed to the rights and obligations of specified insolvent insurers relating to specified reinsurance contracts within 180 days after the date of an order of liquidation. (Same as H. 1340). Position: SUPPORT ACTIVELY

H. 463 EVIDENCE OF INSURANCE - Would prohibit a person from preparing or issuing or requiring the preparation or issuance of a certificate of insurance unless the certificate of insurance form has been filed with and approved by the commissioner. However, would provide an exception for any standard certificate of insurance form adopted the Association of Cooperative Operations Research and Development (ACORD) or the Insurance Services Office (ISO) that otherwise complies with the requirements in this section. Would require the commissioner to disapprove, or withdraw approval of, a certificate of insurance form filed with the commissioner under specified circumstances. Would prohibit a person from altering or modifying a certificate of insurance. Would require the commissioner to adopt regulations to carry out this section, including regulations that establish an approval process for certificate of insurance forms. [Note: Does not repeal the existing carve out language for lenders adopted in 2011.] (Same as S. 297). Position: MONITOR

H. 465 HEALTH BENEFIT PLAN: PREMIUM RATE REVIEW – Same as S. 456. Position: MONITOR

H. 474 CIVIL UNIONS: STATE CONSTITUTION - Would add a new section to the state constitution to establish that only a marriage between one man and one woman be the only domestic legal union valid or recognized in the state. Would submit

CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER

the amendment to the voters of the state for adoption or rejection. Position: MONITOR

H. 682 ESTATES AND TRUSTS - Would repeal existing law relating to trusts and adopt new law entitled "Maryland Trust Act". Position: MONITOR

H. 1094 FRAUD: INSURANCE - Same as S. 811. Position: SUPPORT

H. 1239 CIVIL UNIONS - Would require one question with three options be placed on the ballot at the November 2012 election to determine the sense of voters on the legal definition of marriage. Would provide that the vote on the question is advisory only. Position: MONITOR

H. 1295 LONG-TERM CARE: TAX INCENTIVES: INCREASE - Would increase the tax credit for employer provided long-term care insurance from $5,000 to $15,000 for each employer and from $100 to $300 for each employee covered by long-term care insurance under the employee benefit package. Would take effect on July 1, 2012 and apply to taxable years beginning after December 31, 2011. Position: SUPPORT ACTIVELY

H. 1340 GUARANTY ASSOCIATIONS - Same as S. 1003. Position: SUPPORT ACTIVELY

## Legislative Developments

S. 241 CIVIL UNIONS - Would alter a provision of law to establish that only a marriage between two individuals who are not otherwise prohibited from marrying is valid in the state. (Same as H. 438). Position: MONITOR

H. 301 INSURANCE FRAUD: CLAIM FORMS - (Reported in Bulletins 12-009.) - As amended in the House Committee on Economic Matters, would provide for a delayed effective date of January 1, 2013. Position: MONITOR

H. 438 CIVIL UNIONS - As passed in the House on February 17, 2012, would alter a provision of law to establish that only a marriage between two individuals who are not otherwise prohibited from marrying is valid in the state. Reported favorably from Senate Committee on Judicial Proceedings on February 22, 2012. (Same as S. 241). Position: MONITOR

## MASSACHUSETTS
### LEGISLATIVE DEVELOPMENTS

H. 3659 GROUP LIFE PROCEEDS: DISBURSEMENTS TO BENEFICIARIES OF MEMBERS OF THE ARMED FORCES - Heard on February 15, 2012 in the Joint Committee on Veterans and Federal Affairs. Proposal would require insurers participating in the Servicemembers' Group Life Insurance (SGLI) program pay benefits by lump sum unless the beneficiary has agreed to another form of payment. Proposal would prohibit the use of a retained asset account unless a proscribed disclosure was made to the beneficiary with payment. Elements of the proposal are similar to the NCOIL Beneficiaries' Bill of Rights Model with some derivations. Position: OPPOSE

## MINNESOTA
### New Introductions

H. 2211 AGENCY RULEMAKING MORATORIUM - Would provide for a two-year moratorium on state agency rulemaking with certain exceptions. (Same as S. 1631) Position: MONITOR

H. 2254 LIFE INSURANCE POLICIES: ACCELERATED BENEFITS: LONG-TERM CARE EXPENSES - Would allow life insurance policy owners in long-term care facilities to keep their policies and add accelerated benefit riders to pay for long-term care expenses. Position: OPPOSE

H. 2334 PUBLIC EMPLOYEES: GROUP LONG-TERM CARE INSURANCE PROGRAM: EXPANDED ELIGIBILITY - Would expand eligibility to participate in the public employees group long-term care insurance program, to public employees of a local unit of government. Position: MONITOR

## Legislative Developments

S. 247 PUBLIC EMPLOYEE INSURANCE PROGRAM: WITHDRAWAL OR PARTICIPATION BY LOCAL GOVERNMENT EMPLOYEES - (Reported in Bulletins 11-008, 11-024, 11-043.) - Passed the House on February 16, 2012, and sent to the Senate for concurrence. Position: MONITOR

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007345

## MISSISSIPPI

### New Introductions

S. 2442 ESCHEAT: UNCLAIMED FUNDS – Would enact the Mississippi Uniform Unclaimed Property Act. Position: MONITOR

H. 1037 PRODUCER COMPENSATION – Would prohibit an insurance company from paying extra compensation to a producer based on claim history. Position: MONITOR

H. 1039 LIFE INSURANCE: RETAINED ASSET ACCOUNTS – Would prohibit any life insurance company from paying a beneficiary by depositing the proceeds into a checking account controlled by the insurer. Position: OPPOSE

H. 1044 UNFAIR TRADE PRACTICES: CLAIMS – Would create the Unfair Claims Settlement Practices Act. Would set standards for the investigation and disposition of claims. Position: MONITOR

H. 1053 FRAUD: INSURANCE – Would create the False Claims Act. Would prohibit any person from knowingly presenting a false or fraudulent claim to any employee, officer or agent of the state. Position: MONITOR

## MISSOURI

### New Introductions

S. 697 FRAUD IMMUNITY – Would expand the civil immunity provided to insurers for furnishing information related to insurance fraud investigations. Position: SUPPORT

S. 790 PREMIUM TAX: CREDITS – Would prohibit the Department of Revenue from allowing or redeeming any tax credit issued under the Low-Income Housing tax credit program and the Historic Preservation tax credit program, both of which may be used against the premium tax, from the effective date of the act until after June 30, 2013. Position: OPPOSE

H. 1349 LIFE INSURANCE TRUSTS – Would allow banks to transfer irrevocable life insurance trusts under certain circumstances. Position: MONITOR

## NEW JERSEY

### New Introductions

S. 1562 PREMIUM TAX CREDITS: URBAN TRANSIT HUB AMD GROW NEW JERSEY TAX CREDITS: INCREASE IN TOTAL ALLOWABLE CREDITS – Would increase the maximum amount of tax credits eligible to be issued under the Urban Transit Hub Tax and Grow New Jersey tax credit programs (both applicable to premium tax liabilities). (Same as A. 2442). Position: MONITOR

A. 2442 PREMIUM TAX CREDITS: URBAN TRANSIT HUB AMD GROW NEW JERSEY TAX CREDITS: INCREASE IN TOTAL ALLOWABLE CREDITS – Same as S. 1562. Position: MONITOR

## NEW MEXICO

### Legislative Developments

S. 9 TAXATION: COMBINED REPORTING REQUIREMENT AND REDUCED CORPORATE INCOME TAX RATES – (Reported in Bulletins 11-099, 12-011.) – Passed the House on February 15, 2012 and is now eligible for the governor's desk. Position: MONITOR

S. 47 GUARANTY ASSOCIATION: CURRENT LAW UPDATE (CHANGES TRACK REVISED NAIC MODEL) – (Reported in Bulletins 12-005, 12-011.) – Passed the House on February 16, 2012, and is now eligible for the governor's desk. Position: SUPPORT ACTIVELY

S. 212 TAXATION: PASS-THROUGH ENTITY WITHHOLDING: INSURER EXEMPTION – (Reported in Bulletins 12-009, 12-011.) – Passed the House on February 15, 2012 and is now eligible for the governor's desk. Position: MONITOR

HJR. 17 CONSTITUTIONAL AMENDMENT: OFFICE OF INSURANCE COMMISSIONER: NOMINATING PROCESS MODIFICATION – (Reported in Bulletins 12-007, 12-010.) – As amended in the Senate would delete new language which would have provided that the superintendent of insurance would be appointed by the governor with the consent of the Senate, and for a term of

four years. Would also delete new language which would have set forth specific membership requirements for the insurance nominating committee. Passed the Senate and the House concurred in the Senate amendments on February 16, 2012. Position: MONITOR

## NEW YORK
### New Introductions

S. 6507 GUARANTY ASSOCIATION INSURER ASSESSMENT - The proposal would raise the cap on guaranty association assessments to life insurers from $500,000,000 to $575,000,000. Position: DO NOT OPPOSE

## OKLAHOMA
### Legislative Developments

S. 1152 UNFAIR METHODS OF COMPETITION OR DECEPTIVE ACTS: LIMIT ON VALUE OF PROPERTY USED AS AN INDUCEMENT - (Reported in Bulletins 12-005.) - Voted favorably from Senate Retirement and Insurance Committee on February 16, 2012. Position: OPPOSE CONDITIONALLY

S. 1371 THIRD PARTY ADMINISTRATORS: INSURANCE DEPARTMENT EXAMINATIONS: CONFIDENTIALITY PROVISIONS - (Reported in Bulletins 12-009.) - Voted favorably from the Senate Retirement and Insurance Committee on February 16, 2012. Position: MONITOR

S. 1439 INSURANCE FRAUD: PENALTIES AND INSURANCE DEPARTMENT FUNDING: IMMUNITY FROM CIVIL OR CRIMINAL CAUSE OF ACTION FOR FRAUD REPORTING - (Reported in Bulletins 12-009.) - As amended, would remove sections 4, 5, and 7 from the introduced language, concerning the Revolving Fund and the fees involved. Voted favorably from the Senate Retirement and Insurance Committee as amended on February 16, 2012. Position: MONITOR

S. 1463 INDEFINITE SUSPENSION OF SPECIFIC PREMIUM TAX CREDITS - (Reported in Bulletins 12-009.) - Title stricken in Senate Finance Committee on February 21, 2012. Position: OPPOSE

S. 1477 TAXATION: PREMIUM TAXES: PROHIBITS THE TRANSFERABILITY OF CERTAIN TAX CREDITS ON OR AFTER JANUARY 1, 2013 - (Reported in Bulletins 12-009.) - Title stricken in Senate Finance Committee on February 21, 2012. Position: OPPOSE

S. 1511 INSURANCE DEPARTMENT: SWITCH TO NON-APPROPRIATED AGENCY STATUS: PROMULGATION OF RULES BY COMMISSIONER FOR FEES - (Reported in Bulletins 12-007.) - Voted favorably from Senate Appropriations Subcommittee on Natural Resources, on February 15, 2012, and re-referred to the Senate Appropriations Committee on February 20. Position: MONITOR

S. 1623 LIMITATION ON TAX CREDIT CLAIMS AND ELIMINATION OF SPECIFIC PREMIUM TAX CREDITS - (Reported in Bulletins 12-009.) - Title stricken and voted favorably from the Senate Finance Committee on February 21, 2012. Position: OPPOSE

S. 1884 FRAUD: INSURANCE: RICO ACT: EXTENDS TO FRAUDULENT STATEMENTS FILED WITH THE INSURANCE COMMISSIONER - (Reported in Bulletins 12-009.) - Voted favorably from the Senate Committee on Public Safety on February 16, 2012. Position: MONITOR

SJR. 52 CONSTITUTIONAL AMENDMENT: AD VALOREM TAXATION: EXEMPTION OF ALL INTANGIBLE PERSONAL PROPERTY - (Reported in Bulletins 12-011.) - Title stricken and voted favorably from the Senate Finance Committee on February 21, 2012. Position: MONITOR

H. 2318 FREQUENCY OF FINANCIAL AND MARKET CONDUCT EXAMINATIONS - (Reported in Bulletins 12-007.) - Voted favorably from the House Insurance Committee on February 16, 2012. Position: MONITOR

H. 2751 INSURANCE DEPARTMENT FUNDING: ANTI-FRAUD REVOLVING FUND - (Reported in Bulletins 12-007, 12-011.) - Amended to strike title of the bill and was voted favorably from House Committee on Appropriations and Budget on February 15, 2012. Position: MONITOR

H. 2976 EXTENDED MORATORIUM ON UTILIZATION OF TAX CREDITS (INCLUDES SPECIFIC PREMIUM TAX CREDITS) - (Reported in Bulletins 12-009.) - Amended to strike title of the bill and was voted favorably from House Appropriations and

Budget Subcommittee on Revenue and Taxation on February 20, 2012. Position: OPPOSE

H. 2978 TAX CREDIT PROGRAMS: REQUIRED FEATURES AND APPROVAL PROCESS - (Reported in Bulletins 12-009.) - Amended to strike title of the bill and was voted favorably from the House Appropriations and Budget Subcommittee on Revenue and Taxation on February 20, 2012. Position: MONITOR

H. 2984 UNFAIR METHODS OF COMPETITION OR DECEPTIVE ACTS: LIMIT ON VALUE OF PROPERTY USED AS AN INDUCEMENT - (Reported in Bulletins 12-007, 12-011.) - Voted favorably from the House Appropriations and Budget Committee on February 15, 2012. Position: OPPOSE CONDITIONALLY

H. 3008 STATE EMPLOYEES DEFERRED SAVINGS INCENTIVE PLAN FUND: INCREASE IN CONTRIBUTIONS FROM $25 TO $50 TO THE SECTION 401(a) PLAN - (Reported in Bulletins 12-009.) - Amended to strike title of the bill and was voted favorably from the House Appropriations and Budget Committee on February 15, 2012. Position: MONITOR

### OREGON

### Legislative Developments

S. 1531 CORPORATE NET INCOME TAX: FEDERAL TAX CONFORMITY - (Reported in Bulletins 12-010, 12-011.) - Approved by the House Revenue Committee on February 17. Passed by the House on February 21, 2012. To the governor. Position: SUPPORT

H. 4046 PREMIUM TAXES: HEALTH INSURANCE: EXEMPTION FOR ACCIDENT ONLY AND SPECIFIED DISEASE POLICIES - (Reported in Bulletins 12-009, 12-010, 12-011.) - Approved by the General Government, Consumer and Small Business Protection Committee on February 20. Passed by the the full Senate on February 21, 2012. To the governor. Position: SUPPORT ACTIVELY

### PUERTO RICO

### Legislative Developments

H. 3479 HOLDING COMPANIES: DOMESTIC INSURERS: REGISTRATION OF INSURERS: EXAMINATION OF INSURERS: INFORMATION CONFIDENTIALITY - (Reported in Bulletins 11-038, 11-071.) - Passed the Senate and sent to the House with amendments on February 21, 2012. (Text of amendments not available) Position: MONITOR

### RHODE ISLAND

### New Introductions

S. 2198 STATE RETIREMENT SYSTEM: DIVESTMENT OF IRAN INVESTMENTS - Would require Rhode Island, under certain circumstances, to divest itself of state pension fund investments in companies meeting certain criteria gauged to be related to support of the current regime in Iran. Position: MONITOR

H. 7422 STATE RETIREMENT SYSTEM: DIVESTMENT OF IRAN INVESTMENTS - Would require Rhode Island, under certain circumstances, to divest itself of state pension fund investments in companies meeting certain criteria gauged to be related to support of the current regime in Iran. Position: MONITOR

H. 7481 MUTUAL HOLDING COMPANY LAW UPDATE AND AMENDMENT TO REHABILITATION OR LIQUIDATION PROVISIONS TO COMPLY WITH DODD-FRANK - Would substantially revise the domestic mutual holding company laws. Would also amend the liquidation and rehabilitation law by expanding the ability of the commissioner to file a complaint for liquidation or rehabilitation in conformance with Dodd-Frank. Position: PENDING

### SOUTH CAROLINA

### New Introductions

H. 4763 PRENEED FUNERAL CONTRACTS: LICENSING AND PENALTIES - Would provide for new provisions concerning license renewals and renewal fees. Would also provide for additional penalty provisions for violations of preneed funeral contract laws. Position: MONITOR

### SOUTH DAKOTA

### Legislative Developments

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*

Protective_007348

S. 29 ROTH IRA: PUBLIC EMPLOYEES: DEFERRED COMPENSATION - (Reported in Bulletins 12-003, 12-007.) - Passed the House without amendments on February 21, 2012. Position: MONITOR

S. 32 ANNUITY SUITABILITY: CONFORMING PROVISIONS WITH THAT OF THE NAIC MODEL - (Reported in Bulletins 12-003, 12-007.) - Passed the House without amendments on February 15, 2012. Position: SUPPORT

S. 33 CONTINUED EDUCATION: EXEMPTIONS - (Reported in Bulletins 12-003, 12-007, 12-011.) - Signed by the governor on February 21, 2012. Revises exemptions for insurance agents relating to continued education. Effective July 1, 2012. (ACLI edited text of law will be available through Council's Advanced Law Service) Position: MONITOR

H. 1033 INSURANCE EXAMINATION REQUIREMENTS: TECHNICAL AMENDMENTS - (Reported in Bulletins 12-003, 12-009.) - Passed the Senate without amendments on February 15, 2012. Position: MONITOR

H. 1034 LIFE AND HEALTH INSURANCE: APPLICATION ALTERATIONS - (Reported in Bulletins 12-003, 12-007.) - Passed the Senate without amendments on February 15, 2012. Position: MONITOR

H. 1035 DISCLOSURE OF INSURANCE INVESTIGATIONS AND EXAMINATIONS: CONFIDENTIALITY & DISCLOSURE: PREMIUM TAX DISCLOSURE & CONFIDENTIALITY - (Reported in Bulletins 12-003, 12-010.) - Passed the Senate without amendments on February 15, 2012. Position: MONITOR

H. 1071 INSURANCE GUARANTY ASSOCIATION: INCREASE OF ANNUITIES COVERAGE - (Reported in Bulletins 12-007, 12-009.) - Passed the Senate and sent to the House for concurrence on February 16, 2012. As amended in the Senate Committee on Commerce and Energy, would provide for retroactive application and declare for an emergency clause to be added to the bill. Position: SUPPORT

## TENNESSEE

### Legislative Developments

S. 465 INSURANCE CODE DEFINITION: STATUTORY REFERENCE TO NAIC - (Reported in Bulletins 11-028, 11-049.) - Eligible for the governor's desk on February 17, 2012. As substituted on the House floor, would now incorporate H. 500 by defining the NAIC. Position: MONITOR

S. 551 PRODUCER LICENSING: DENIAL, SUSPENSION OR REVOCATION OF LICENSE FOR FAILURE TO PAY STUDENT LOANS - (Reported in Bulletins 11-009, 11-023, 11-049.) - Bill was substituted for House Bill 740 on February 2. Senate concurred on House Amendment No. 2 that would require the bill to "take effect immediately upon its approval for rulemaking purposes and January 1, 2013 for all other purposes". Bill was sent to the governor on February 14. Position: MONITOR

S. 2319 INTERSTATE INSURANCE PRODUCT REGULATION COMPACT: EXTENSION: SAME AS H. 2510 - (Reported in Bulletins 12-005.) - Substituted on the House floor for House Bill 2510 on February 13, 2012. Sent to the governor on February 16, 2012. Position: SUPPORT

S. 2320 LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION: EXTENSION: SAME AS H. 2533 - (Reported in Bulletins 12-005.) - Substituted on the House floor for House Bill 2533 on February 13, 2012. Sent to the governor on February 16, 2012. Position: SUPPORT

H. 740 PRODUCER LICENSING: DENIAL, SUSPENSION OR REVOCATION OF LICENSE FOR FAILURE TO PAY STUDENT LOANS - (Reported in Bulletins 11-009, 11-049.) - Substituted on the House floor by Senate Bill 551 on February 2, 2012. Position: MONITOR

H. 2510 INTERSTATE INSURANCE PRODUCT REGULATION COMPACT: EXTENSION: SAME AS S. 2319 - (Reported in Bulletins 12-005.) - Substituted on House floor by Senate Bill 2319 on February 13, 2012. Position: SUPPORT

H. 2533 LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION: EXTENSION: SAME AS S. 2320 - (Reported in Bulletins 12-005.) - Substituted on the House floor by Senate Bill 2320 on February 23, 2012. Position: SUPPORT

## VERMONT

### Legislative Developments

H. 512 SECURITIES: CAPTIVES - (Reported in Bulletins 12-003.) - Passed the House and sent to the Senate on February 17,

2012. As amended in the House Committee on Ways and Means, would make some technical corrections of no great importance but would also delete Section 42 and replace it with a study regarding the conversion of nonprofit hospitals. Position: MONITOR

**VIRGINIA**

## Legislative Developments

S. 47 CERTIFICATES OF INSURANCE - (Reported in Bulletins 12-005, 12-007.) - Amended in the House to include certain amendments requested by the life insurance industry and now tracks H. 867. Passed out of the House on February 21, 2012 and sent to the Senate for concurrence. Position: MONITOR

S. 120 RISK-BASED CAPITAL ACT: INCREASES LIFE AND HEALTH INSURER TREND FROM 2.5 TO 3.0 - (Reported in Bulletins 12-005, 12-007.) - Passed the House on February 21, 2012. Eligible for governor's signature. Position: MONITOR

S. 646 LIFE INSURANCE AND ACCIDENT AND SICKNESS DEFINED TO INCLUDE ADDITIONAL BENEFITS - (Reported in Bulletins 12-007, 12-010.) - Passed the House Commerce and Labor Committee on February 21, 2012. Position: SUPPORT ACTIVELY

H. 282 DECREE OF DIVORCE OR ANNULMENT NOTICE REGARDING BENEFICIARY DESIGNATIONS - (Reported in Bulletins 12-005, 12-007, 12-009.) - Amended at the request of the life insurance industry to clarify that beneficiary designations may be revoked as provided for under federal or state law. Passed out of the Senate Courts of Justice Committee on February 20, 2012. Position: MONITOR

H. 283 COURT ORDERED LIFE INSURANCE IN DIVORCE, ANNULMENT AND SEPARATIONS - (Reported in Bulletins 12-005, 12-007, 12-009.) - Passed by indefinitely by the Senate Courts of Justice Committee and thus will not be considered again in 2012. Position: MONITOR

H. 386 STATE RETIREMENT SYSTEM: DIVESTMENT OF IRAN INVESTMENTS - (Reported in Bulletins 12-005.) - Left in Committee on February 20, 2012 and thus will not be considered again in 2012. Position: MONITOR

H. 402 CREATES THE VIRGINIA HEALTH BENEFITS EXCHANGE AUTHORITY - (Reported in Bulletins 12-005, 12-011.) - Left in Committee on February 14, 2012 and thus will not be considered again in 2012. Position: MONITOR

H. 867 CERTIFICATE OF INSURANCE - (Reported in Bulletins 12-005, 12-010.) - Passed out of the Senate Commerce and Labor Committee on February 20, 2012. Position: MONITOR

H. 1139 CREDIT FOR REINSURANCE: ADOPTION OF NAIC PROVISIONS - (Reported in Bulletins 12-009.) - Passed out of the Senate Commerce and Labor Committee on February 20, 2012. Position: MONITOR

H. 1206 PRENEED FUNERAL CONTRACT: ELIMINATION OF MANDATORY 5% GROWTH FOR 15 YEARS AND CPI - (Reported in Bulletins 12-007.) - Left in committee on February 14, 2012 and thus will not be considered again in 2012. Position: SUPPORT

**WEST VIRGINIA**

## New Introductions

S. 598 UNFAIR TRADE PRACTICES: THIRD PARTY COMPLAINTS - Would require the filing of an administrative claim prior to a third-party bad faith action. Position: MONITOR

S. 607 UNFAIR TRADE PRACTICES - THIRD PARTY COMPLAINTS - Would require a third-party claimant to to file certain written notices, prior to any third-party bad faith actions. Position: MONITOR

H. 4390 UNIFORM POWER OF ATTORNEY - Would create the Uniform Power of Attorney Act and repeal the Uniform Durable Power of Attorney Act. Position: MONITOR

H. 4544 CORPORATE NET INCOME TAX: WATER'S EDGE REPORTING - Would amend the corporate net income tax law to make a technical corrections to clarify which entities are to be included in a water's edge group. Position: MONITOR

H. 4573 PUBLIC EMPLOYEES RETIREMENT ACT: ANNUITY CHOICE OF OPTION - Would amend the annuity option election

*Schmidt v. Protective*
Protective_007350

process of the West Virginia Public Employees Retirement Act. Specifically, would include new language that provides that prior to retirement a member may elect and receive an annuity in accordance with any of the annuity options is the member provide evidence that the spouse has approved of the choice of option. Otherwise, Option B is the default. Position: MONITOR

H. 4612 AUTOMATIC REVOCATION OF WILL UPON LEGAL SEPARATION - Would allow for the automatic revocation of a will upon legal separation and exclude from the definition of surviving spouse a person who is a named party to a legal separation. Position: MONITOR

### Legislative Developments

S. 521 PUBLIC EMPLOYEES INSURANCE ACT: RIGHT OF SUBROGATION INCLUDES LIFE INSURANCE - (Reported in Bulletins 12-011.) - Amended to remove the assignment of life insurance death benefits. Passed the Senate Judiciary Committee on February 15, 2012 and was sent to the Senate Finance Committee. Position: OPPOSE CONDITIONALLY

### WISCONSIN
### Legislative Developments

S. 185 DIRECT RESPONSE: TELEMARKETING: TEXT MESSAGES - (Reported in Bulletins 11-083, 11-090, 12-006.) - Passed the Assembly on February 21, 2012. Position: MONITOR

A. 418 UNCLAIMED PROPERTY - (Reported in Bulletins 11-099, 12-006.) - Passed the Assembly and sent to the Senate on February 16, 2012. Position: MONITOR

### WYOMING
### New Introductions

H. 91 DEFINED CONTRIBUTION PLANS: CREATION OF A NEW PLAN - Would close the current defined benefit plan for new state employees and would create a defined contribution plan for employees hired after September 1, 2013. Would allow certain members of the defined benefit plan to elect to terminate their membership and elect to become members of the defined contribution plan. Would provide for definitions, administration and funding and would make conforming amendments. Position: MONITOR

### Legislative Developments

H. 5 LIFE AND HEALTH GUARANTY ASSOCIATION: INCREASE IN DISABILITY INCOME, LONG-TERM CARE AND ANNUITY COVERAGE LIMITS - (Reported in Bulletins 12-003.) - Passed House on February 22, 2012. To Senate. Position: SUPPORT ACTIVELY

---

contact: Lisha Hanna, 202-624-2047

posted: 2/23/2012
identifier: LB12-013

Issues | Take Action | Compliance | Committees | Research & Publications | Newsroom | Events | About ACLI

**Personalize** your ACLI WebDirect e-mail.
**Questions** and comments are welcome at webadmin@acli.com
**Unsubscribe** ACLI WebDirect e-mail
**Privacy** information regarding ACLI Web services is available at Privacy Statement.

**Copyright American Council of Life Insurers, 101 Constitution Avenue, NW, Washington, DC 20001-2133**

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*

Protective_007351

**To:**      Kirkley, Keith[Keith.Kirkley@protective.com]
**From:**    publications@acli.com
**Sent:**    Wed 3/7/2012 8:38:22 PM
**Subject:** Webdirect - Legislative Bulletin

---

3/7/2012

This Bulletin contains information on the following states:
Alaska, Arizona, California, Colorado, Connecticut, Georgia, Idaho, Illinois, Iowa, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Missouri, New Jersey, New Mexico, Ohio, Oklahoma, Rhode Island, South Dakota, Tennessee, Utah, Virginia, Washington, West Virginia, Wyoming

### ALASKA

### Legislative Developments

H. 2 RESTRICTING INVESTMENTS IN IRAN: RETIREMENT SYSTEMS: SUPPLEMENTAL ANNUITY PLAN: DEFERRED COMPENSATION: STATE EMPLOYEES - (Reported in Bulletins 11-002, 11-062, 12-009.) - Was substituted on February 29 and voted favorably from House State Affairs Committee. As substituted, would add the word "gas" to read throughout the bill as "oil or gas". Was referred to the House Finance Committee for consideration. Position: MONITOR

### ARIZONA

### Legislative Developments

H. 2371 ESCHEAT: UNCLAIMED PROPERTY - (Reported in Bulletins 12-009.) - Passed the House and sent to the Senate without amendments on March 1, 2012. Position: MONITOR

### CALIFORNIA

### New Introductions

S. 1242 INSURERS: FINANCIAL STATEMENTS - Would make a technical, nonsubstantive change to existing law that requires every insurer doing business in the state to make and file with the insurance commissioner, in the number, form, and by the methods prescribed by the commissioner, statements exhibiting its condition and affairs as of the previous December 31. Position: MONITOR

S. 1449 INTERSTATE INSURANCE REGULATION COMPACT: NAIC MODEL - Would enact the NAIC Interstate Insurance Regulation Compact. Position: SUPPORT ACTIVELY

SJR. 21 RETIREMENT FUNDS: FEDERAL TAX EXEMPTIONS: PAYMENT FOR LONG-TERM CARE PREMIUMS - Would urge the United States Congress and the President to amend the Internal Revenue Code to allow all retirees who have contributed to a qualified plan, the option to treat funds from those plans used to pay medical and long-term care premiums as tax-free rollovers. Would also urge Congress and the President to create parity among all workers by presenting qualified retirement plan participants with the same option given to public safety members under the Pension Protection Act of 2006. Position: MONITOR

A. 2010 REVERSE MORTGAGES: COUNSELING - Would amend existing law that defines and regulates reverse mortgage loans by requiring a prospective borrower to receive reverse mortgage loan counseling in person. Position: MONITOR

A. 2081 SECURITIES TRANSACTIONS: QUALIFICATION REQUIREMENTS: EXEMPTIONS - Would amend the Corporate Securities Law of 1968 by exempting from qualification offerings or sales of securities using a general solicitation or general advertising, provided the transaction meets specified requirements, including a requirement that the sales are made to accredited investors. Position: MONITOR

A. 2138 INSURANCE FRAUD: ANNUAL ASSESSMENT - Would authorize the commissioner to increase the annual fee paid by disability and health insurers to investigate fraud. Would increase the fee from $.10 to $.20 per year for each insured under an individual or group insurance policy it issues in the state. Would require that 30% of the funds collected go to the Fraud

*Schmidt v. Protective*
Protective_007352

Division of the department and 70% go to the local district attorneys. Would require the commissioner to adopt regulations to implement the provisions. Position: MONITOR

A. 2141 PRIVACY: IDENTITY THEFT - Would make a technical, nonsubstantive change to existing law that provides that every person who willfully obtains personal identifying information, as defined, of another person, and uses that information for an unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense. Position: MONITOR

## Legislative Developments

S. 1140 DEFINITION OF MARRIAGE - (Reported in Bulletins 12-013.) - To Senate Committee on Judiciary on March 1, 2012. Position: MONITOR

S. 1170 ADVERTISEMENT: SENIORS: SENIOR DESIGNATIONS - (Reported in Bulletins 12-013.) - To Senate Committees on Insurance and Judiciary on March 1, 2012. Position: MONITOR

S. 1184 SENIOR INSURANCE: VETERANS BENEFITS - (Reported in Bulletins 12-014.) - To Senate Committee on Insurance on March 1, 2012. Position: MONITOR

S. 1208 CORPORATE GOVERNANCE: PUBLICLY TRADED COMPANIES: RETIRED EXECUTIVE BENEFITS - (Reported in Bulletins 12-014.) - To Senate Committee on Rules on March 1, 2012. Position: MONITOR

S. 1212 PLACEHOLDER BILL: LIFE INSURANCE POLICY: DISABILITY INCOME POLICY - (Reported in Bulletins 12-013.) - To Senate Committee on Rules on March 1, 2012. Position: MONITOR

S. 1216 CERTIFICATE OF AUTHORITY TO TRANSACT REINSURANCE: CREDIT FOR REINSURANCE FOR FOREIGN CEDING INSURER - (Reported in Bulletins 12-014.) - To Senate Committee on Insurance on March 1, 2012. Position: MONITOR

A. 1747 LIFE INSURANCE: NONPAYMENT OF PREMIUM: GRACE PERIOD - (Reported in Bulletins 12-013.) - To Assembly Committee on Insurance on March 1, 2012. Position: OPPOSE

## COLORADO

## Legislative Developments

S. 42 DATA MATCH; CHILD SUPPORT - (Reported in Bulletins 12-005, 12-011.) - Passed the House without amendments on March 5, 2012. Position: MONITOR

H. 1036 OPEN RECORDS CONFIDENTIALITY - (Reported in Bulletins 12-005.) - Passed the House and sent to the Senate on March 5, 2012. As amended in the House, would add on to Section 1 by further expanding upon the law enforcement purpose. Would then create a new Section 2 relating to applicability and add a Section 3 relating to a safety clause. Position: MONITOR

## CONNECTICUT

## New Introductions

S. 285 STATE TREASURER: INVESTMENTS IN NORTHERN IRELAND: DIVESTITURE REQUIREMENTS - Would amend existing statute to give the State Treasurer greater discretion in divesting investments in companies doing business in Northern Ireland that fail to adopt the MacBride principles. Would require the Treasurer to, at least once per fiscal year, provide a report to the Investment Advisory Council on actions taken by the Treasurer. Would sunset the divesture requirement on January 1, 2020. Position: NEUTRAL

S. 305 PUBLIC SCHOOL CURRICULUM: PERSONAL FINANCIAL MANAGEMENT - Would amend the public school curriculum to include personal financial management as a prescribed course of study. Position: NEUTRAL

S. 307 PROHIBITED CLAIMS TO A DECEDENT'S LIFE INSURANCE AND ANNUITY POLICY - Would prohibit a person found not guilty by reason of mental disease or defect of causing the death of a decedent from benefiting from the decedent's life insurance policy or annuity. Position: NEUTRAL

S. 315 PRIVACY: PROHIBITED COLLECTION AND USE OF SOCIAL SECURITY NUMBERS - Would provide exceptions for a

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007353

"transaction regulated by the Gramm-Leach-Bliley Financial Modernization Act" and a "transaction regulated by the Fair Credit Reporting Act, for a purpose authorized by such act". Would provide for civil penalties for violations. Position: OPPOSE

H. 5386 INSURANCE DEPARTMENT OMNIBUS BILL - Insurance Department omnibus bill which would among other things: (Sec. 1) Add the Federal Insurance Office (FIO) and BIS (European regulator) to the list of entities that the Commissioner may share confidential information with; (Sec. 2) add a filing fee of $2500 for statements of acquisition of control of a domestic; (Sec. 4) provide for numerous technical changes to examination statutes and also require the commissioner to submit the exam report to the entity (entity would then be required to provide a copy of the examination report to each of its directors and must certify to the commissioner that the exam has been so delivered); (Sec. 5) allow for the waiver of the late filing fee for a delinquent annual statement under certain circumstance, such as a declaration of emergency by the governor of the state of domicile; (Sec. 10) modify life insurance replacement statutes with provisions relating to free look. Position: NEUTRAL

H. 5427 PRIVACY: DATA SECURITY BREACH: MANDATED REPORT TO THE ATTORNEY GENERAL - Would require an immediate report be made to the Attorney General of any security breach, regardless of a determination that there is no harm or an investigation that suspends an obligation to report to the consumer. Position: OPPOSE

H. 5431 PRIVACY: ANTITRUST INVESTIGATIONS: USE OF CONFIDENTIAL MATERIAL BY ATTORNEY GENERAL - Would enable the Attorney General to use confidential material gathered during an antitrust investigation for limited purposes. Position: OPPOSE

## Legislative Developments

S. 20 STUDY: INSURANCE DEPARTMENT FUNDING: ASSESSMENT METHODOLOGY - (Reported in Bulletins 12-11a.) - As substituted and reported out of the Joint Committee on Insurance and Real Estate would provide for a study of the assessment methodology used by the Insurance Department and the Office of the Healthcare Advocate pursuant to sections 38a-47 and 38a-48 of the general statutes for the funding purposes. Would require that the study consider 1) the effects of expanding such assessment methodology to include alien and foreign insurance companies doing business in this state, on such insurance companies and on domestic insurance companies, and 2) funding mechanisms used by other states to fund their insurance regulatory agencies. Would require a report by January 1, 2013. Position: NEUTRAL

## GEORGIA

## Legislative Developments

H. 513 GROUP LIFE INSURANCE - (Reported in Bulletins 11-014, 11-042.) - Passed the House and sent to the Senate without amendments on February 29, 2012. Position: SUPPORT ACTIVELY

## IDAHO

## New Introductions

S. 1363 ESCHEAT: UNCLAIMED PROPERTY - Would amend the Unclaimed Property Act by allowing for donations of any property, proceeds, interest and other sums payable under the property act to certain accounts and funds under the Unclaimed Property Law. Position: MONITOR

## Legislative Developments

H. 421 DEPARTMENT OF INSURANCE: NOTICES AND ORDERS - (Reported in Bulletins 12-009.) - Passed the House and sent to the Senate without amendments on March 1, 2012. Position: MONITOR

H. 591 ESCHEAT: UNCLAIMED PROPERTY: UNCLAIMED ASSETS - (Reported in Bulletins 12-014.) - Passed the House and sent to the Senate without amendments on March 6, 2012. Position: MONITOR

## ILLINOIS

## New Introductions

H. 229 FUNERAL TRUST FUNDS: PRE-NEED - Would amend the Funeral or Burial Funds Act providing for persons holding less than $500,000 in trust funds to continue to act as the trustee after the funds are deposited. Provides that a pre-need contract must if funded by a trust, clearly identify the trustee's name and address and the primary state or federal regulator of the trustee. Position: MONITOR

*Schmidt v. Protective*
Protective_007354

H. 311 UNIVERSAL CARE: HEALTH INSURANCE - Would provide that all individuals residing in the state are covered under the Health Services Program for health insurance. Would include funding for long-term care and mental health services. Position: MONITOR

H. 1424 GENDER RATING: PREMIUM RATING: HMO'S - Would amend the Insurance Code providing that no company may determine the premium rate or underwriting through a method that is in any way based upon the gender of any person. Would provide that health maintenance organizations shall be subject to the provisions of the Insurance Code prohibiting gender rating. Position: MONITOR

## Legislative Developments

H. 19 UNCLAIMED PROPERTY: NOTICE - Would amend the Uniform Disposition of Unclaimed Property Act providing for sending a first class mail letter to the owner including steps necessary to prevent abandonment of the property from being presumed. Would also provide if property exceeds a specified sum, a copy of the letter shall be sent first by first class mail, then by certified mail. (Passed house on April 6, 2012, to Senate.) Position: MONITOR

H. 1501 HEALTH INSURANCE: PREMIUM RATING - (Reported in Bulletins 11-008.) - Rereferred to House Committee on Rules March 17, 2011 with Amendments 1 & 2. Position: MONITOR

H. 1577 HEALTH BENEFIT EXCHANGE: STUDY - Would create an Illinois Health Benefits Exchange Legislative Study Committee within the Commission on Government Forecasting and Accountability to conduct a study regarding State implementation and establishment of the Illinois Health Benefits Exchange. (Rereferred to the House Committee on Rules as H. 1577b in January, 2012.) Position: MONITOR

H. 1669 DEPARTMENT OF INSURANCE: RE-ENACTMENT OF INSURANCE CO. ACT - Would amend the Insurance Code to re-enact provisions of Public Act 94-677 which was declared unconstitutional. Would include severability provisions, and re-establish the Department of Insurance as a separate department under supervision of the Director of Insurance among other things. Position: MONITOR

H. 1672 ILLINOIS AUTOMATIC IRA ACT - Would create the Automatic IRA Program Act providing that the program shall be administered by the State Treasurer and would allow employees of certain employers not offered a qualified retirement plan for two years to set aside a percentage of their wages to be deposited into an IRA trust fund administered by the State. Position: MONITOR

H. 1701 HEALTH INSURANCE EXCHANGE ACT - Would create the Health Insurance Exchange Act. Provides only for a short title currently. Position: MONITOR

H. 1870 GUARANTY ASSOCIATION: LIFE AND HEALTH: SEPARATE ACCOUNTS - Would amend the Insurance code providing for the Life and Health Guaranty Association that assets of any separate account equal to the reserves and other liabilities may not be charged with liabilities arising out of any other business the company may conduct. Would provide that no distribution to stockholders of an impaired or insolvent organization may be made until the total amount of valid claims have been recovered by the Association. Position: MONITOR

## IOWA

### New Introductions

S. 2293 DIVISION OF INSURANCE OMNIBUS BILL - Division of Insurance omnibus bill which would among other things: 1) increase penalties for violations of the Uniform Securities Act; 2) enable the Insurance Commissioner to asses insurers the costs of examinations; 3) require that a plan for the voluntary dissolution of a domestic mutual insurance company be presented to the for approval not less than 90 days prior to notice of the plan to policyholders; 4) allow the Commissioner to release confidential documents and materials to the International Association of Insurance Supervisors (IAIS) and the Bank for International Settlements, provided written certification that they will be kept confidential; 5) adopt provisions relating to insurer supervision, rehabilitation and liquidation in accordance with Dodd-Frank; 6) allow the Commissioner to share documents with local, state, federal, and international law enforcement authorities relating to insurance fraud, provided they agree to maintain the confidentiality of the documents; 7) expand what life insurance company is able to include in its legal reserve; 8) provide that the gross amount of premiums received by a life insurance company or association for an employer-owned life insurance contract shall be allocated to the state for purposes of calculating the premium tax, provided the contract is issued or delivered in Iowa or the company or association is domiciled in the state; and 9) provide that the policy owner of an insurance contract insuring the policy owner's own life, not the insured, who designates the beneficiary of the

*Schmidt v. Protective*
Protective_007355

policy and is authorized to make changes in that designation upon the dissolution of marriage, annulment, or separate maintenance. (Previously SSB 3066.) Position: MONITOR

S. 2308 REPEAL OF FILM TAX CREDIT PROGRAM - Among other things, would end the film tax credit program, which is applicable to premium tax liabilities. (Previously SSB 3110.) Position: OPPOSE

SSB. 3117 MODIFICATION OF SALES TAX EXEMPTION: COMPUTERS USED IN PROCESSING OR STORAGE OF DATE BY AN INSURANCE COMPANY - Would amend the sales tax exemption in Code section 423.3 for computers used in the processing or storage of data or information by an insurance company, financial institution, or commercial enterprise, to apply only to computers directly and primarily used in processing or storage of data by an insurance company, financial institution, or commercial enterprise. Position: MONITOR

H. 2382 PREMIUM TAX CREDIT: INNOVATION FUND: INCREASE IN ALLOWABLE AMOUNT AND TRANSFERABILITY - Would increase the amount allowable as an innovation fund investment tax credit from the current amount of 20 percent of a taxpayer's equity investment, to 100 percent, for investments in fiscal years beginning July 1, 2011, July 1, 2012, and July 1, 2013. Would provide for 75 percent for the fiscal year beginning July 1, 2014, 50 percent for the fiscal year beginning July 1, 2015, and 20 percent for fiscal years beginning on or after July 1, 2016. Would also make the tax credit transferable and set would set forth related procedures. (Previously HSB 648.) Position: MONITOR

H. 2407 HEALTH AND ACCIDENT INSURANCE: DEVELOPMENT OF UNIFORM APPLICATION FORM BY INSURANCE COMMISSIONER - Would require the Commissioner of Insurance, by rule, to establish a uniform application for use in applying for new health insurance coverage under individual policies or contracts of accident and health insurance. (Previously H. 2105.) Position: MONITOR

H. 2429 IDENTITY THEFT PROVISIONS AND PENALTIES: HIRING PRACTICES - Would provide for additional provisions and penalties concerning identity theft, applicable to insurers. Would provide that a person commits the offense of knowingly accepting the identity of another person if the person, in hiring an employee, knowingly accepts any identification information of another person with knowledge that the other person is not the actual person identified by that information, or uses the information for the purpose of determining whether the person who presented the information has the legal right or authorization under federal law to work in the United States. (Previously HSB 638.) Position: MONITOR

H. 2434 PREMIUM TAX CREDITS: REPEAL OF FILM, TELEVISION AND VIDEO TAX CREDITS - Would repeal the tax credits (applicable to premium tax liabilities) associated with the film, television, and video project promotion program within the economic development authority. Would take immediate effect and apply retroactively to January 1, 2012, for tax years beginning on or after that date. Repeal would not impact existing contracts or agreements entered into on or before the effective date the bill. (Previously HSB 645.) Position: OPPOSE

## KENTUCKY

### New Introductions

H. 424 KENTUCKY TEACHERS' RETIREMENT SYSTEM: CONTRACT WITH INVESTMENT CONSULTANTS - Would allow the Board of the Kentucky Teachers' Retirement System to contract with one or more general investment consultants as well as specialized investment consultants. Definition of investment consultant or money manager would include "an insurance company qualified to perform investment services under the laws of more than one state". Would also provide for numerous modifications to the System. Position: MONITOR

H. 452 PREMIUM TAX CREDIT: MODIFICATION TO NEW MARKETS DEVELOPMENT TAX CREDIT PROGRAM - Would modify the New Markets Development Program tax credit (applicable to premium tax liabilities) by amending the definition of long-term debt security to provide for the computation of the interest payment limitation prior to allowing the effect of the interest expense. Position: MONITOR

H. 453 PREMIUM TAX CREDIT: MODIFICATION TO NEW MARKETS DEVELOPMENT TAX CREDIT PROGRAM: CAP INCREASE - Would modify the New Markets Development Program tax credit (applicable to premium tax liabilities) by amending the definition of long-term debt security to provide for the computation of the interest payment limitation prior to allowing the effect of the interest expense. Would also increase the annual cap on the tax credit from $5 million to $13 million. Position: MONITOR

H. 497 GROUP LIFE INSURANCE MODERNIZATION: DISCRETIONARY GROUPS - Would among other things, provide that an employee group life insurance policy may be paid for entirely by the insured employees. Would provide that the premium

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007356

for a group life insurance policy issued to a credit union, may be paid for partly from the credit union's funds and partly from funds contributed by an insured member specifically for the member's insurance. Would enact the discretionary group language contained in the NAIC Group Life Insurance Standard Provisions Model Act. Would provide standards by which an employee's child over the age of eighteen may meet and still be considered a dependent under a group life insurance policy. Position: SUPPORT CONDITIONALLY

### Legislative Developments

H. 135 UNCLAIMED PROPERTY: NCOIL UNCLAIMED LIFE INSURANCE BENEFITS ACT - (Reported in Bulletins 12-001, 12-010, 12-014.) - As amended in the Senate Banking and Insurance Committee would exempt a governmental plan as defined by 29 USC 1002 (32) and a church plan as defined by 29 USC 1002 (33). The bill has now been sent to Consent Orders in the Senate where the bill will go to the Senate floor for a voice vote only. Position: MONITOR

### LOUISIANA

### New Introductions

S. 230 RISK-BASED CAPITAL: DOMESTIC INSURERS: SECURITIES: MODEL ALIGNMENT - Would clarify some definitions and company-action level events relative to risk-based capital for domestic insurers by aligning them with the Risk-Based Capital For Insurers Model Act. Position: SUPPORT

S. 232 COMMISSIONER AUTHORITY: SUSPENSION OR REVOCATION OF INSURERS' LICENSES: ORDERS - Would authorize the Commissioner of Insurance to issue cease and desist orders for Insurance Code violations. Position: MONITOR

S. 283 GROUP HEALTH INFORMATION: HEALTH INSURANCE: RELEASE OF INFORMATION - Would provide for release of certain group information to the group policyholder or his agent prior to renewal of a group policy. Position: MONITOR

S. 297 DISCONTINUATION OF POLICY FORMS: INSURANCE GENERALLY - Would discontinue all insurance policy forms every five years. Position: MONITOR

H. 537 ESCHEAT: UNCLAIMED PROPERTY ACT - Would provide for the Uniform Unclaimed Property Act. Position: MONITOR

H. 564 LONG-TERM CARE INSURANCE CLAIMS: PAYMENTS - Would provide for the prompt payment of Long-Term Care insurance claims. Position: MONITOR

H. 569 INSURANCE FRAUD: DUTIES AND REPORTING - Would clarify terms related to duties when reporting insurance fraud. Position: MONITOR

H. 595 INSURANCE CODE RECODIFICATION: TECHNICAL CHANGES - Would make numerous technical recodification of certain provisions of the state Insurance Code. Position: MONITOR

H. 771 AUTISM COVERAGE: HEALTH INSURANCE: RISK CLASSIFICATION - Would provide a mandate for the coverage of diagnoses and treatment of autism. Position: MONITOR

H. 868 CONTINUATION OF COVERAGE: DEPENDENTS: HEALTH INSURANCE - Would provide relative to continuation of coverage for spouses and dependents. Position: MONITOR

H. 908 HEALTH INSURANCE: RATE REVIEW & APPROVAL: RATE FILING: PREMIUM RATES - Would provide relative to health insurance rate review and approval. Position: MONITOR

### MARYLAND

### New Introductions

S. 1081 HEALTH INSURANCE: COVERAGE FOR AUTISM SPECTRUM DISORDERS - Would require insurers and nonprofit health service plans that provide hospital, medical, or surgical benefits to individuals or groups on an expense-incurred basis under health insurance policies that are issued or delivered in the state to provide coverage for the diagnosis and certain treatment of autism spectrum disorders. Would not include disability income or long-term care insurers. (Same as H. 1434.) Position: MONITOR

H. 1434 HEALTH INSURANCE: COVERAGE FOR AUTISM SPECTRUM DISORDERS - Same as S. 1081. Position: MONITOR

*Schmidt v. Protective*
Protective_007357

**Legislative Developments**

S. 77 ESCHEAT: UNCLAIMED FUNDS: DEATH MASTER FILE CROSS-CHECK: NCOIL MODEL - (Reported in Bulletins 12-005.) - As amended in the Senate Committee on Finance on March 1, 2012, would now more closely track the NCOIL Model Unclaimed Life Insurance Benefits Act. Would define "death master file match" to mean a match, resulting from a search of a death master file, of a Social Security number or a name and date of birth of an individual on the death master file with the Social Security number or the name and date of birth of an insurance, annuitant, or retained asset account holder. Would provide an exemption for a pre-need insurance contract, a policy or certificate of credit life insurance or a policy or certificate of accidental death and dismemberment insurance. Would now require that an insurer that issues, delivers, or renews a life insurance policy or an annuity contract in the state to perform a comparison against the latest version of a death master file on at least a semiannual basis instead of quarterly. Would take out specified criteria regarding the insurance commissioner's ability to adopt regulations to implement the legislation. Passed Senate on March 5, 2012. To House. Position: SUPPORT

H. 438 CIVIL UNIONS - (Reported in Bulletins 12-013, 12-014.) - Signed by the governor on March 1, 2012. Alters a provision of law to establish that only a marriage between two individuals who are not otherwise prohibited from marrying is valid in the state. Provides that if a petition to refer this to the people for a vote is filed with the Secretary of State in accordance with the Maryland Constitution and Title 6 of the Election Law Article, and a dispute arises as to the validity or sufficiency of the signatures required to complete the referendum petition as provided under Title 6 of the Election Law Article, this Act shall not take effect until the resolution of any litigation resulting from the dispute. Effective January 1, 2013. Position: MONITOR

### MICHIGAN
### New Introductions

S. 985 PREPAYMENT OF PREMIUM TAX LIABILITIES: ESTABLISHMENT OF PROGRAM - Would create and provide for the Treasury Department to administer, a program for the prepayment of premium tax liabilities. The Department would have the authority to authorize a manager (defined as a person or subcontractor) to arrange for the sale of the PTP certificates. Would define the PTP certificates offered under the program as "an instrument issued by the department or the manager that is issued in exchange for the prepayment of premium taxes by the purchaser, which certificate expires, except as otherwise provided in section 9, 1 business day after the tenth annual premium tax return date following the fund allocation date and provides a tax offset equal to 10% per year of the face amount of the certificate." A purchaser would be able transfer the certificate to another insurer provided notice is given to the Department of Treasury and a purchaser would be able to treat a certificate as an admitted asset. (See S. 986 and S. 987.) Position: MONITOR

S. 986 PREMIUM TAX CREDIT: PREPAYMENT OF PREMIUM TAX LIABILITIES - Would set forth requirements for claiming tax credits pursuant to the sale of premium tax prepayment certificates as would be created by S. 985. Would provide for unused credits to be carried forward for up to ten years and would cap the amount of credits issued at $900,000,000. (See S. 985 and S. 987.) Position: MONITOR

S. 987 PREMIUM TAX CREDIT: PREPAYMENT OF PREMIUM TAX LIABILITIES - Would establish guidelines for the use of premium tax credits created through the use of premium tax prepayment certificates as would be provided for by S. 985. (See S. 985 and S. 986.) Position: MONITOR

**Legislative Developments**

H. 5416 PUBLIC EMPLOYEE RETIREMENT SYSTEM: INVESTMENTS: REGULATION OF FIDUCIARIES AND INVESTMENT SERVICE PROVIDERS - Would clarify standards for the investment of public employee retirement system assets. Would set forth the various disclosures (i.e. fees and compensation) an investment service provider would be required to make to the investment fiduciary of the system. Would prohibit an investment fiduciary from making a payment from the assets of the system to a service provider if the provider or a covered associate made a certain contribution to an official of a governmental entity during the preceding 24 month period. Position: MONITOR

### MINNESOTA
### New Introductions

S. 1793 DISABILITY INCOME AND LONG TERM CARE INSURANCE CARVE OUT: DEFINITION OF HEALTH PLAN COMPANY - Would provide a carve out for disability income and long-term care insurance from the term "health plan company" or "health plan companies", except in sections 3.7394; 62A.021; 62J.80; 72A.139; and 72A.20 of the Minnesota statutes.

*Schmidt v. Protective*
Protective_007358

(Same as H. 1998.) Position: MONITOR

S. 1881 PREMIUM TAX CREDITS: HISTORIC PRESERVATION CREDIT: EXTENSION OF SUNSET DATES - Would expand the various sunset dates associated with the historic structure rehabilitation premium tax credit, by six years. (Same as H. 2358.) Position: MONITOR

S. 2142 LIFE INSURANCE POLICIES: ACCELERATED BENEFITS: LONG TERM CARE EXPENSES - Would allow life insurance policy owners in long term care facilities to keep their policies and add accelerated benefit riders to pay for long term care expenses. (Same as H. 2254.) Position: SUPPORT

H. 2349 MODIFICATION TO DEFINITION OF PRODUCER AND LICENSURE REQUIREMENTS - Would modify the definition of "insurance producer" and licensure requirement provisions to provide for a new definition of "facilitate enrollment", which "means to provide counsel, advice, direction, education, or otherwise direct any individual or entity toward the purchase of a health plan as defined in section 62A.011, subdivision 3." The existing definition of "health plan" referenced to specifically excludes DI and LTC. Position: MONITOR

H. 2358 PREMIUM TAX CREDITS: HISTORIC PRESERVATION CREDIT: EXTENSION OF SUNSET DATES - Same as S. 1881. Position: MONITOR

## MISSOURI

### New Introductions

H. 1770 PRE-NEED: LICENSING - Would change the requirements for preneed agent registrations applied for after August 28, 2015, by requiring applicants to be licensed funeral directors. Position: OPPOSE

H. 1816 HEALTH INSURERS: INTERNET INFORMATION - Would require health carriers to provide Internet access to its standard fee schedules, prohibits carriers from refusing to contract with any Willing providers, and changes the requirements for provider referrals. Long-term care and disability income providers are not specifically excluded from the definition of health carriers. Position: MONITOR

## NEW JERSEY

### New Introductions

S. 1528 INHERITANCE TAX PHASE OUT - Would phase out the inheritance tax over a two year period. Position: MONITOR

A. 2553 REDUCTION OF MALPRACTICE STATUTE OF LIMITATIONS PERIOD: INSURANCE PRODUCERS - Would reduce the statute of limitations period for professional malpractice actions against certain licensed persons, including insurance producers (C.17:22A-26 et seq). Would require that certain civil actions must be brought within two years after the cause of action occurs, instead of the existing six years. Position: MONITOR

A. 2604 ESTATE TAX FILING THRESHOLD AND EXCLUSION AMOUNT INCREASE - Would increase the estate tax filing threshold and exclusion amount to $1 million. Position: MONITOR

## NEW MEXICO

### Legislative Developments

S. 9 TAXATION: COMBINED REPORTING REQUIREMENT AND REDUCED CORPORATE INCOME TAX RATES - (Reported in Bulletins 11-099, 12-011, 12-013.) - Vetoed by the governor on March 6, 2012. Position: MONITOR

S. 47 GUARANTY ASSOCIATION: CURRENT LAW UPDATE (CHANGES TRACK REVISED NAIC MODEL) - (Reported in Bulletins 12-005, 12-011, 12-013.) - Signed by the Governor on February 29, 2012. Amends the Life and Health Insurance Guaranty Law to track the revised NAIC Guaranty Association Model Act. Changes include adopting the reinsurance provisions contained in Section 8(N) of the Model, updating coverage limits ($300,000 for Life, LTC and DI, $250,000 for annuities), and providing for a coverage exclusion for Medicare Part C & D plans. Includes compromise language agreed upon last session by the ACLI and the American Insurance Association (AIA), concerning the state guaranty association's subrogation rights with regard to structured settlement annuity benefits. Also, adopts provisions regarding recovery from affiliates contained within the NAIC Insurer Receivership Model Act and provisions related to advertising prohibitions of guaranty association coverage. Effective July 1, 2012. (ACLI edited text of law available through Council's Advance Law Service.) Position: SUPPORT ACTIVELY

S. 212 TAXATION: PASS-THROUGH ENTITY WITHHOLDING: INSURER EXEMPTION - (Reported in Bulletins 12-009, 12-011, 12-013.) - Signed by the governor on March 5, 2012. Provides a specific exemption from the withholding provisions contained in the Oil and Gas Proceeds and Pass-Through Entity Withholding Tax Act, for insurance companies subject to the premium tax. The provisions of this act apply to taxable years beginning on or after January 1, 2012. (ACLI edited text of law available through Council's Advance Law Service.) Position: MONITOR

## OHIO

### New Introductions

S. 308 PRIVACY: RELEASE OF INFORMATION - Would require life insurers to disclose to funeral home personal information of an insured person who is deceased. Position: MONITOR

## OKLAHOMA

### Legislative Developments

S. 997 PREPAID FUNERAL TRUSTS AND ACCOUNTS: FINANCIAL EXAMINATIONS: GROUNDS FOR PAYMENT OR NONPAYMENT OF EXAMINATION COSTS - (Reported in Bulletins 11-098.) - Dead pursuant to the rules. Position: OPPOSE

S. 1005 INSURANCE DEPARTMENT: ESTABLISHMENT OF A HEALTH CARE DATABASE: (DOES NOT SPECIFICALLY EXCLUDE LONG TERM CARE OR DISABILITY INCOME INSURANCE) - (Reported in Bulletins 11-099.) - Dead pursuant to the rules. Position: MONITOR

S. 1063 VICTIMS OF CRIMES: PROHIBITION ON OFFENDERS RECEIVING CERTAIN INHERITANCE OR BENEFITS (INCLUDES INSURANCE POLICY PROCEEDS) - (Reported in Bulletins 12-003.) - Dead pursuant to the rules. Position: MONITOR

S. 1152 UNFAIR METHODS OF COMPETITION OR DECEPTIVE ACTS: LIMIT ON VALUE OF PROPERTY USED AS AN INDUCEMENT - (Reported in Bulletins 12-005, 12-013.) - Passed the Senate on February 29, 2012 and sent to the House. Position: OPPOSE CONDITIONALLY

S. 1159 PREMIUM TAX CREDITS: REDUCTION IN TOTAL AMOUNT OF CREDITS AUTHORIZED FOR ISSUANCE BY OKLAHOMA CAPITAL INVESTMENT BOARD - (Reported in Bulletins 12-005, 12-011.) - Passed the Senate on February 29, 2012 and sent to the House. Position: OPPOSE

S. 1303 ANTITRUST REFORM ACT: DIRECT OR INDIRECT INJURIES - (Reported in Bulletins 12-009.) - Dead pursuant to the rules. Position: MONITOR

S. 1370 INSURANCE DEPARTMENT: ANNUAL REPORT FILING REQUIREMENT FOR PREVIOUSLY EXEMPTED ENTITIES: FRATERNAL BENEFIT SOCIETIES - (Reported in Bulletins 12-007.) - Dead pursuant to the rules. Position: MONITOR

S. 1439 INSURANCE FRAUD: PENALTIES: IMMUNITY FROM CIVIL OR CRIMINAL CAUSE OF ACTION FOR FRAUD REPORTING - (Reported in Bulletins 12-009, 12-013.) - Title stricken and voted favorably from the Senate Appropriations Committee on February 29, 2012. Position: MONITOR

S. 1463 INDEFINITE SUSPENSION OF SPECIFIC PREMIUM TAX CREDITS - (Reported in Bulletins 12-009, 12-013.) - Dead pursuant to the rules. Position: OPPOSE

S. 1477 TAXATION: PREMIUM TAXES: PROHIBITS THE TRANSFERABILITY OF CERTAIN TAX CREDITS ON OR AFTER JANUARY 1, 2013 - (Reported in Bulletins 12-009, 12-013.) - Dead pursuant to the rules. Position: OPPOSE

S. 1562 TAXATION: AFFILIATED GROUPS: CONSOLIDATED RETURN REQUIREMENT (INSURERS NOT SPECIFICALLY EXCLUDED FROM REQUIREMENT) - (Reported in Bulletins 12-009.) - Dead pursuant to the rules. Position: OPPOSE CONDITIONALLY

S. 1597 INSURANCE DEPARTMENT FUNDING: ANTI-FRAUD REVOLVING FUND - (Reported in Bulletins 12-007.) - Dead pursuant to the rules. Position: MONITOR

S. 1599 PROHIBITION ON SALE OF GUARANTEED PRENEED FUNERAL CONTRACTS - (Reported in Bulletins 12-007.) - Dead pursuant to the rules. Position: OPPOSE ACTIVELY

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007360

S. 1631 PREMIUM TAX CREDIT: QUALIFIED LOW INCOME HOUSING PROJECTS - (Reported in Bulletins 12-009.) - Dead pursuant to the rules. Position: SUPPORT

S. 1675 STATE AND EDUCATION EMPLOYEES GROUP INSURANCE ACT: PERMITTED ASSIGNMENT OF LIFE INSURANCE POLICY - (Reported in Bulletins 12-009.) - Dead pursuant to the rules. Position: MONITOR

S. 1715 PREMIUM TAX CREDIT: REGIONAL HOME OFFICE CREDIT: LIMITATION ON AMOUNT OF CREDITS ISSUED PER FISCAL YEAR - (Reported in Bulletins 12-009, 12-011.) - Passed the Senate on February 29, 2012, with title stricken and sent to the House. Position: OPPOSE

H. 2293 TAX CREDITS: JOB CREATION: REPAYMENT OF INCENTIVE PAYMENTS OR TAX LIABILITY REDUCTION - (Reported in Bulletins 12-007.) - Dead pursuant to the rules. Position: OPPOSE

H. 2453 OMNIBUS BILL: PRODUCER LICENSING: INVESTMENTS AND DEPOSITS - (Reported in Bulletins 12-009.) - As substituted in the House Insurance Committee, would remove: Section 2 of the introduced version of the bill which would have amended 36 OS 1464 to only offer the license of a resident life or accident and health Insurance broker to existing licensees and would have deleted current law relating to nonresident life or accident and health insurance brokers. Would have further deleted the license requirement to have no Insurance Code violations or record with the Insurance Commissioner or an insurance regulatory body of another state and not to have been convicted, or pleaded guilty or nolo contendere to any felony or to a misdemeanor involving moral turpitude or dishonesty. The enterprise risk reporting requirements contained in Section 8 and 9 of the introduced version of the bill. Section 13 of the introduced text which would have amended 36 OS 4030.9 Maturity Date of Contract. Voted favorably as substituted from the House Insurance Committee on March 1, 2012. Position: MONITOR

H. 2529 HEALTH INSURANCE: NICK'S LAW: AUTISM SPECTRUM DISORDER: MANDATED BENEFIT: SPECIFICALLY EXCLUDES LONG-TERM CARE INSURANCE: REQUIRES CLEAN-UP LANGUAGE - (Reported in Bulletins 12-009.) - Dead pursuant to the rules. Position: OPPOSE CONDITIONALLY

H. 2667 NCOIL SELF-EVALUATIVE PRIVILEGE MODEL ACT - (Reported in Bulletins 12-009.) - Dead pursuant to the rules. Position: MONITOR

H. 2853 PRIVACY: PROHIBITION ON SHARING OR SELLING CLIENT'S PERSONAL INFORMATION - (Reported in Bulletins 12-010.) - Dead pursuant to the rules. Position: OPPOSE ACTIVELY

H. 2976 EXTENDED MORATORIUM ON UTILIZATION OF TAX CREDITS (INCLUDES SPECIFIC PREMIUM TAX CREDITS) - (Reported in Bulletins 12-009, 12-013.) - Dead pursuant to the rules. Position: OPPOSE

H. 2978 TAX CREDIT PROGRAMS: REQUIRED FEATURES AND APPROVAL PROCESS - (Reported in Bulletins 12-009, 12-013.) - As amended in the House Appropriations and Budget Committee, would remove provision setting forth that the Legislature shall not pass any measure that creates or allows to be created a tax credit that may be transferred to any person or entity. Title stricken and voted favorably as amended from the House Appropriations and Budget Committee on February 29, 2012. Position: MONITOR

H. 2979 ELIMINATION OF SPECIFIC PREMIUM TAX CREDITS: DELETION OF LANGUAGE CONCERNING TRANSFERABLE TAX CREDITS - (Reported in Bulletins 12-009, 12-014.) - Dead pursuant to the rules. Position: OPPOSE

H. 2980 STRATEGIC INDUSTRIES INCENTIVE PAYMENT FUND (COMPANIES WHO RECEIVE INCENTIVE PAYMENTS UNDER PROGRAM WOULD BE INELIGIBLE TO RECEIVE REGIONAL HOME OFFICE AND RECYCLING FACILITY TAX CREDIT) - (Reported in Bulletins 12-014.) - Voted favorably from the House Appropriations and Budget Committee on February 29. Position: MONITOR

H. 3038 PERSONAL INCOME TAX PHASE OUT: ELIMINATION OF INDIVIDUAL INCOME TAX EXEMPTIONS (INCLUDES CERTAIN RETIREMENT BENEFITS) - (Reported in Bulletins 12-011.) - Title stricken and voted favorably from the House Appropriation and Budget Committee on February 29, 2012. Position: MONITOR

H. 3061 TAX REDUCTION AND SIMPLIFICATION ACT (GOVERNOR'S TAX PLAN): ELIMINATION OF CERTAIN PREMIUM TAX CREDITS - As substituted in the House Appropriations and Budget Committee, would provide for broad tax reform, including the elimination of certain premium tax credits. Eliminated premium tax credits would include Coal Production Credit (68 O.S. 2357.11), Small Wind Turbine Manufacturers Credit (68 O.S. 2357.32B), Historic Rehabilitation Expenditures Credit (68 O.S.

2357.41), Qualified Recycling Facilities Credit (68 O.S. 2357.59), Qualified Ethanol Facilities (68 O.S. 2357.66). Title stricken and voted favorably from the House Appropriations and Budget Committee on February 29, 2012. Position: MONITOR

## RHODE ISLAND

### New Introductions

S. 2389 PRODUCER LICENSING: MODIFYING OR REVOKING PRODUCER'S CONTRACT - Would require a company to provide a year's notice to a producer when canceling for modifying the contract between the company and producer. Currently it is 180 days. Would eliminate "referee" provisions currently in statute. Would require a company to make a reasonable attempt to rehabilitate the producer's "book of business" before canceling or modifying the contract between the company and producer. (Same as H. 7793.) Position: OPPOSE

S. 2539 STATE CONTRACTING: DODD-FRANK ACT: DEMOCRATIC REPUBLIC OF CONGO - Would prohibit a scrutinized company (not adhering to section 1502 of the Dodd-Frank Wall Street Reform Act) from eligibility to contract with the state of Rhode Island for goods or services. Scrutinized companies are defined as companies which included financial institutions and holding companies which have not exercised due-diligence on the source and chain of custody of certain metals causing extreme levels of violence and contributing to an emergency humanitarian situation, in the Democratic Republic of Congo. (Same as H. 7695.) Position: MONITOR

S. 2598 MUTUAL HOLDING COMPANY LAW UPDATE AND AMENDMENT TO REHABILITATION OR LIQUIDATION PROVISIONS TO COMPLY WITH DODD-FRANK - The proposal would substantially revise the domestic mutual holding company laws. Would also amend the liquidation and rehabilitation law by expanding the ability of the commissioner to file a complaint for liquidation or rehabilitation in conformance with Dodd-Frank. Position: PENDING

S. 2600 DISCRETIONARY AUTHORITY: LIFE INSURANCE: DISABILITY INSURANCE: LONG-TERM CARE INSURANCE - Would require the Department of Business Regulation to not approve of any life insurance, disability insurance, or long-term care insurance policy that includes a provision reserving discretionary authority to the insurer or agent of insurer. Would define "discretionary authority" to mean any policy provision granting discretion on an insurer in determining eligibility for benefits or coverage. Would take effect upon passage. (Similar to H. 7779.) Position: OPPOSE

S. 2622 TAXATION: PERSONAL INCOME - Would increase the personal income tax on individuals earning more than $250,000. Position: MONITOR

H. 7695 STATE CONTRACTING: DODD-FRANK ACT: DEMOCRATIC REPUBLIC OF CONGO - Same as S. 2539. Position: MONITOR

H. 7779 DISCRETIONARY AUTHORITY: LIFE INSURANCE: DISABILITY INSURANCE: LONG-TERM CARE INSURANCE - Would require the Department of Business Regulation to not approve of any life insurance, disability insurance, or long-term care insurance policy that includes a provision reserving discretionary authority to the insurer or agent of insurer. Would define "discretionary authority" to mean any policy provision granting discretion on an insurer in determining eligibility for benefits or coverage. Would take effect upon passage. Position: OPPOSE

H. 7793 PRODUCER LICENSING: MODIFYING OR REVOKING PRODUCER'S CONTRACT - Same as S. 2389. Position: OPPOSE

H. 7822 RESOLUTION: LONG-TERM CARE INSURANCE - Urges the state secretary of the office of health and human services to undertake all actions necessary to double the levels of assets which shall be free from recovery from the state if an individual purchases the long-term care insurance presently offered by the state. Position: MONITOR

## SOUTH DAKOTA

### Legislative Developments

S. 29 ROTH IRA: PUBLIC EMPLOYEES: DEFERRED COMPENSATION - (Reported in Bulletins 12-003, 12-007, 12-013.) - Signed by the governor on February 29, 2012. Establishes a designated Roth contribution program for public employees. Effective July 1, 2012. (ACLI edited text of law will be available through Council's Advanced Law Service) Position: MONITOR

H. 1071 INSURANCE GUARANTY ASSOCIATION: INCREASE OF ANNUITIES COVERAGE - (Reported in Bulletins 12-007, 12-009, 12-013.) - Signed by the governor on March 1, 2012. Provides for benefits of coverage for annuities up to $250,000 under the state's Guaranty Association. Effective January 1, 2012. (ACLI edited text of law will be available through Council's Advance Law Service) Position: SUPPORT

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007362

H. 1270 ESCHEAT: UNCLAIMED PROPERTY: DECREASE IN TIME PERIOD FOR WHICH UNCLAIMED PROPERTY IS PRESUMED ABANDONED: PUBLICATION CHANGES - (Reported in Bulletins 12-009, 12-011, 12-014.) - Signed by the governor on March 2, 2012. Decreases the period for which unclaimed property is presumed abandoned; from four years to three years. Also revises the publication notice for the unclaimed property. Effective July 1, 2012. (ACLI edited text of law will be available through Council's Advance Law Service) Position: MONITOR

**TENNESSEE**

**Legislative Developments**

S. 2202 OPERATION OF INSURANCE COMPANIES: SECURITIES: AGENTS: COMPANION TO H. 2340 - (Reported in Bulletins 12-003.) - Passed the Senate and sent to the House on February 23, 2012. As amended on the Senate floor, would among other things, clarify that securities qualified for a deposit under the general requirements for doing business in an insurance company in Tennessee may be deposited with a clearing corporation under this bill; would authorize the Commissioner to promulgate emergency rules; and would change the effective date of the bill upon becoming law for rulemaking purposes and July 1, 2012 for all other purposes. Position: MONITOR

**UTAH**

**Legislative Developments**

H. 272 PUBLIC EMPLOYEES BENEFIT AND INSURANCE PROGRAM ACT: HEALTH INSURANCE COVERAGE FOR AUTISM SPECTRUM DISORDERS - (Reported in Bulletins 12-005.) - Passed the House and sent to the Senate on February 29, 2012. As substituted and then amended on the House floor, would make numerous additions including but not limited to; providing for funding to the Medicaid waiver; providing a Medicaid waiver for services for children between the ages of 2 and 6; requiring the department to measure the cost and effectiveness of the treatments and services for autism; requiring the department to report to the Legislative Health and Human Services Interim Committee by November 30, 2013; amending terminology relating to autism treatment options; providing for appropriations; and amending provisions related to the Autism Treatment Account. Position: MONITOR

**VIRGINIA**

**Legislative Developments**

S. 110 IRREVOCABLE TRUSTS: POWER TO APPOINT ASSETS INTO SECOND TRUST - (Reported in Bulletins 12-005, 12-007.) - Passed the House on March 1, 2012. Eligible for governor's signature. Position: MONITOR

S. 646 LIFE INSURANCE AND ACCIDENT AND SICKNESS DEFINED TO INCLUDE ADDITIONAL BENEFITS - (Reported in Bulletins 12-007, 12-010, 12-013.) - Passed the House on February 24, 2012. To the governor on February 29, 2012. Position: SUPPORT ACTIVELY

H. 127 PROPERTY/CASUALTY FORMS AND ENDORSEMENTS - (Reported in Bulletins 12-005, 12-007.) - Passed the Senate on February 23, 2012. To the governor on February 29, 2012. Position: MONITOR

H. 133 PROPERTY CASUALTY FORMS MAY BE POSTED ON INSURER'S WEBSITE - (Reported in Bulletins 12-005, 12-007.) - Senate amended on February 23, 2012. House concurred with Senate amendments on February 27, 2012 and bill was sent to the governor for signature on March 2, 2012. Position: MONITOR

H. 209 INSURANCE AGENTS: REQUIRES THREE HOURS OF CE CREDITS IN ETHICS - (Reported in Bulletins 12-005, 12-009.) - Passed the Senate on February 23, 2012. To the governor on February 29, 2012. Position: MONITOR

H. 246 NEW TAX CREDITS TO HAVE FIVE YEAR EXPIRATION - (Reported in Bulletins 12-005, 12-011.) - Passed the Senate on February 23, 2012. To the governor on February 29, 2012. Position: MONITOR

H. 282 DECREE OF DIVORCE OR ANNULMENT NOTICE REGARDING BENEFICIARY DESIGNATIONS - (Reported in Bulletins 12-005, 12-007, 12-009, 12-013.) - Passed the Senate as amended on February 22, 2012 and sent to House for concurrence. Passed the House on February 24, 2012. To the governor on March 3, 2012. Position: MONITOR

H. 313 COMMISSION TO ANNUALLY REVIEW LIFE AND ANNUITY AGENT LICENSE RESULTS - (Reported in Bulletins 12-005, 12-010.) - Passed the Senate on March 1, 2012. Eligible for governor's signature. Position: SUPPORT

H. 343 ALL PAYER CLAIMS DATABASE - (Reported in Bulletins 12-005, 12-011.) - Amended and passed in the Senate on March 5, 2012. To the House for concurrence. Position: MONITOR

H. 871 LIMITED BURIAL INSURANCE AUTHORITY - (Reported in Bulletins 12-005, 12-009.) - Passed the Senate on February 23, 2012. To the governor on March 1, 2012. Position: SUPPORT

H. 879 ANNUITY LUMP SUM DEATH BENEFIT: EXCLUSION FROM STATE TAXABLE INCOME - (Reported in Bulletins 12-005, 12-010.) - Amend by the Senate to reword the new language. Passed the Senate on February 24, 2012 and sent to the House for concurrence. Passed the House on February 28, 2012 and is now eligible for governor's signature. Position: MONITOR

H. 1139 CREDIT FOR REINSURANCE: ADOPTION OF NAIC PROVISIONS - (Reported in Bulletins 12-009, 12-013.) - Passed the Senate on February 23, 2012. To the governor on March 1, 2012. Position: MONITOR

### WASHINGTON

### Legislative Developments

S. 6095 INSURANCE CODE: TECHNICAL AMENDMENTS: GENDER BASED TERMS - (Reported in Bulletins 12-010.) - Passed the Senate on January 27 and the House on February 29, 2012. Eligible for the governor's desk. Position: MONITOR

S. 6354 STATE AGENCY FILINGS: ELECTRONIC SUBMISSIONS - Passed the Senate on February 9 and the House on March 1, 2012. Eligible for the governor's desk. Would require state agencies that require certain submissions from businesses in paper format, also provide the business with the option to submit electronically. Would provide for certain exemptions. Position: MONITOR

H. 2523 INSURANCE COMMISSIONERS TECHNICAL BILL: BIOGRAPHICAL REPORTS: RISK BASED CAPITAL: CHARITABLE GIFT ANNUITIES - (Reported in Bulletins 12-005, 12-011.) - Passed the Senate on March 1, 2012 and is eligible for the governor's desk. Position: MONITOR

### WEST VIRGINIA

### Legislative Developments

H. 4256 CAPTIVE INSURANCE: LIMITATIONS ON RISK RETENTION GROUPS - (Reported in Bulletins 12-009.) - Passed the House on February 29, 2012 and sent to Senate Judiciary Committee on March 1, 2012. Position: MONITOR

H. 4261 LEGISLATIVE RULE-MAKING REVIEW PROCESS - (Reported in Bulletins 12-011.) - Passed the House on February 29, 2012 and sent to Senate Judiciary Committee. Position: MONITOR

H. 4390 UNIFORM POWER OF ATTORNEY - (Reported in Bulletins 12-013.) - Passed the House on February 15, 2012 and sent to Senate Judiciary Committee. Position: MONITOR

### WYOMING

### Legislative Developments

H. 5 LIFE AND HEALTH GUARANTY ASSOCIATION: INCREASE IN DISABILITY INCOME, LONG-TERM CARE AND ANNUITY COVERAGE LIMITS - (Reported in Bulletins 12-003, 12-013.) - Passed the Senate on March 2 and has been referred to the governor for signature. Would amend the life and health guaranty association statutes to increase coverage limits on disability income and long-term care insurance from $100,000 to $300,000 and increase annuity coverage limits from $100,000 to $250,000, among other things. Would be effective July 1, 2012. Position: SUPPORT ACTIVELY

H. 16 INSURANCE DEPARTMENT NAIC ACCREDITATION: PROVISIONS FROM THE NAIC HAZARDOUS FINANCIAL CONDITION MODEL REGULATION: RISK BASED CAPITAL REQUIREMENTS: FINANCIAL SOLVENCY: CERTIFICATES OF AUTHORITY: JUDICIAL REVIEW: COMMISSIONER'S - (Reported in Bulletins 12-003, 12-014.) - Passed the Senate on March 2 and has been referred to the governor for his signature. Would amend the insurance code to maintain NAIC accreditation with respect to judicial review; suspension and revocation of certificate of authority; commissioner's authority; company action level event; and risk based capital reports. Would contain provisions from the NAIC Hazardous Financial Condition Model Regulation. Would be effective July 1, 2012. Position: MONITOR

H. 50 FRAUD: IMMUNITY FROM LIABILITY FOR DELIVERING INFORMATION TO LAW ENFORCEMENT OR GOVERNMENT AGENCIES ESTABLISHED TO DETECT AND PREVENT FRAUD - (Reported in Bulletins 12-011, 12-014.) - Passed the Senate on March 2. Would provide immunity from liability for delivery of information to a law enforcement agency or governmental agency established to detect and prevent fraud. Would modify current provision regarding attorney fees and costs to extend to certain persons who are immune from liability for providing information to certain law enforcement or governmental agencies. Would be effective on July 1, 2012. Position: MONITOR

---

contact: Lisha Hanna, 202-624-2047

posted: 3/7/2012
identifier: LB12-015

**Issues** | **Take Action** | **Compliance** | **Committees** | **Research & Publications** | **Newsroom** | **Events** | **About ACLI**

**Personalize** your ACLI WebDirect e-mail.
**Questions** and comments are welcome at webadmin@acli.com
**Unsubscribe** ACLI WebDirect e-mail
**Privacy** information regarding ACLI Web services is available at Privacy Statement.

**Copyright American Council of Life Insurers, 101 Constitution Avenue, NW, Washington, DC 20001–2133**

**To:** Kirkley, Keith[Keith.Kirkley@protective.com]
**From:** publications@acli.com
**Sent:** Wed 8/15/2012 6:10:25 PM
**Subject:** Webdirect - Legislative Bulletin

---

**Register today for ACLI's 2012 Annual Conference, Oct. 21-23 in Washington, D.C.** View program updates and access registration online.

8/15/2012

This Bulletin contains information on the following states:
California, Illinois, New Jersey, New York

### CALIFORNIA

### Legislative Developments

A. 53 INSURERS: PROCUREMENT CONTRACTS - (Reported in Bulletins 11-001, 11-017, 11-026, 11-100, 12-005, 12-046, 12-057.) - As amended in the Senate on August 13, 2012 would provide that the civil penalty imposed for insurers not submitting a report on its minority, women and disabled veteran-owned business procurement efforts be enforced by the commissioner. To third reading. Position: OPPOSE

A. 1747 LIFE INSURANCE: NONPAYMENT OF PREMIUM: GRACE PERIOD - (Reported in Bulletins 12-013, 12-015, 12-029, 12-034, 12-049.) - As amended in the Senate on August 14, 2012, would prohibit a notice of pending lapse and termination from being effective unless mailed by the insurer to the named policy owner, a named designee for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy at least 30 days prior to the effective date of termination if termination is for nonpayment of premium. To second reading. Position: NEUTRAL

### ILLINOIS

### Legislative Developments

H. 1577 HEALTH BENEFIT EXCHANGE: STUDY - (Reported in Bulletins 12-015, 12-046.) - Signed by the governor on August 14, 2012. Creates an Illinois Health Benefits Exchange Legislative Study Committee within the Commission on Government Forecasting and Accountability to conduct a study regarding State implementation and establishment of the Illinois Health Benefits Exchange. Effective August 14, 2012. Position: MONITOR

### NEW JERSEY

### Legislative Developments

S. 1562 PREMIUM TAX CREDITS: URBAN TRANSIT HUB AND GROW NEW JERSEY TAX CREDITS: INCREASE IN TOTAL ALLOWABLE CREDITS - (Reported in Bulletins 12-013, 12-043, 12-055.) - Signed by the governor on August 7, 2012. Increases the maximum amount of tax credits eligible to be issued under the Urban Transit Hub Tax and Grow New Jersey tax credit programs (both applicable to premium tax liabilities). (Same as A. 2442.) Effective August 7, 2012. (ACLI edited text of law will be available through Council's Advance Law Service.) Position: MONITOR

### NEW YORK

### Legislative Developments

S. 5461 DATA MATCH: EXPANSION OF DATA MATCH SYSTEM - (Reported in Bulletins 12-009.) - Substituted by A. 7764. Would expand the current New York City data match system to apply to financial institutions doing business in the state of New York. Would require companies to develop and operate data match systems to facilitate the identification and seizure of nonexempt financial assets of tax debtors identified by the commissioner or the commissioner's authorized designee. would permit a financial institution to use an existing, approved child support enforcement program data match system. The current data match rule defines "financial institution" as any financial institution authorized or required to participate in a financial institution data match system or program for child support enforcement purposes under federal or state law.

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007381

Position: MONITOR

S. 6608 PRIVACY: USE OF SOCIAL SECURITY NUMBERS - (Reported in Bulletins 12-021.) - Substituted by A. 8992. Would prohibit private businesses from requiring individuals to disclose their Social Security number. Exemptions to the prohibition would include: use consented to by the individual; use expressly required under federal or state law; to verify fraud; any business function allowed under GLB; use with a deposit account or investment; credit transactions initiated by the consumer; use in employment; use in tax compliance; use in child support collection; among others. Position: MONITOR

S. 7306 DERIVATIVES: DEFINITION OF QUALIFIED COUNTERPARTY IN DERIVATIVE TRANSACTIONS - (Reported in Bulletins 12-031, 12-055.) - Substituted by A. 10532. Would amend the definition of qualified counterparty under insurance law to permit additional counterparties in insurer transactions. Would add the definitions of "over the counter derivative instrument", "clearinghouse" and "master agreement" to the insurance derivatives law. Position: SUPPORT

S. 7567 TELEMARKETING PRACTICES - Substituted by A. 10569. Would amend the telemarketing statutes to prohibit prerecorded telemarketing messages if the recipient has not expressly consented to receive such calls; that prerecorded messages have an opt-out keypress at the beginning of the call; and, that prerecorded messages offer an 800 number with information on how to get on the do-not-call list. Would apply the telemarketing law to out-of-state telemarketers. Position: MONITOR

S. 7638 HEALTH INSURANCE: DOMESTIC VIOLENCE: ALTERNATIVE ADDRESS - Would require health insurers, including those offering accident and health policies, to accommodate a reasonable request to send billing and claim information to an alternative address if disclosure of the information could endanger the person requesting the use of an alternative address. The insurer may require the request to be in writing. (Substituted for A. 10624.) Position: MONITOR

A. 7764 DATA MATCH: EXPANSION OF DATA MATCH SYSTEM - (Reported in Bulletins 12-009, 12-021.) - Sent to governor August 6, 2012. Would expand a New York City data match system to require financial institutions doing business in the state of New York to develop and operate a data match system to facilitate the identification and seizure of nonexempt financial assets of tax debtors identified by the commissioner or the commissioner's authorized designee. Would permit a financial institution to use an existing, approved child support enforcement program data match system. The current data match rule defines "financial institution" as any financial institution authorized or required to participate in a financial institution data match system or program for child support enforcement purposes under federal or state law. (Substituted for S. 5461.) Position: MONITOR

A. 8992 PRIVACY: USE OF SOCIAL SECURITY NUMBERS - (Reported in Bulletins 12-021.) - Signed by the governor on August 14, 2012. Prohibits private businesses from requiring individuals to disclose their Social Security number. Exemptions to the prohibition include: use consented to by the individual; use expressly required under federal or state law; to verify fraud; any business function allowed under GLB; use with a deposit account or investment; credit transactions initiated by the consumer; use in employment; use in tax compliance; use in child support collection, among others. (Similar to S. 6608.) Effective December 12, 2012 (120 days after passage). Position: MONITOR

A. 9607 GUARANTY ASSOCIATION: INCREASE IN THE ASSESSMENT CAP - (Reported in Bulletins 12-018, 12-041, 12-055.) - Substituted by S. 6507. Would increase the Article 77 life guaranty association assessment cap from $500 million to $558 million. The increase in the assessment cap pertains solely to the Executive Life of New York insolvency. The amendment would permit the superintendent to reduce the amount of the assessment if the obligations of the liquidation can be met at an amount lower than $558 million. Position: SUPPORT

A. 10532 DERIVATIVES: DEFINITION OF QUALIFIED COUNTERPARTY IN DERIVATIVE TRANSACTIONS - (Reported in Bulletins 12-044, 12-055.) - Transferred from the Assembly to the Governor on August 6. Substituted for S. 7306. Would amend the definition of qualified counterparty under insurance law to permit additional counterparties in insurer transactions. Would add the definitions of "over the counter derivative instrument", "clearinghouse" and "master agreement" to the insurance derivatives law. Position: SUPPORT

A. 10569 TELEMARKETING PRACTICES - Signed by the governor on August 14, 2012. Amends the telemarketing statutes to prohibit prerecorded telemarketing messages if the recipient has not expressly consented to receive such calls; that prerecorded messages have an opt-out keypress at the beginning of the call; and, that prerecorded messages offer an 800 number with information on how to get on the do-not-call list. Applies the telemarketing law to out-of-state telemarketers. (Substituted for S. 7567.) Effective November 12, 2012 (90 days after passage). Position: MONITOR

A. 10624 HEALTH INSURANCE: DOMESTIC VIOLENCE: ALTERNATIVE ADDRESS - Would require health insurers, including those offering accident and health policies, to accommodate a reasonable request to send billing and claim information to an

alternative address if disclosure of the information could endanger the person requesting the use of an alternative address. The insurer may require the request to be in writing. (Substituted by S. 7638.) Position: MONITOR

*ACLI's position on bills included in the Legislative Bulletin is a benefit that is used to help our members distinguish between those bills we are actively lobbying versus those we are not. Below are a list and an explanation of each of the options used in our Legislative Tracking System:*

- *Support Actively - ACLI strongly supports, and is actively seeking enactment of the legislation.*
- *Support - ACLI supports the legislation.*
- *Support Conditionally - ACLI supports the legislation on the condition that certain provisions are amended to address ACLI's concerns.*
- *Do Not Oppose - ACLI does not oppose the legislation. We do not support, but certain standards are met and we are not in opposition.*
- *Monitor - ACLI is monitoring this legislation because of its general interest to member companies.*
- *Neutral - ACLI has reviewed the legislation and has determined to remain neutral.*
- *Pending - ACLI's position is yet to be ascertained. Once a position is determined, it is changed accordingly in LTS.*
- *Oppose - ACLI opposes the legislation.*
- *Oppose Conditionally - ACLI opposes the legislation unless and until certain provisions are amended to address ACLI's concerns.*
- *Oppose Actively - ACLI strongly opposes, and is actively seeking defeat of the legislation.*

---

contact: Lisha Hanna, 202-624-2047

posted: 8/15/2012
identifier: LB12-074

**Issues** | **Take Action** | **Compliance** | **Committees** | **Research & Publications** | **Newsroom** | **Events** | **About ACLI**

**Follow** ACLI on Twitter
**Like** us on Facebook

**Personalize** your ACLI WebDirect e-mail.
**Questions** and comments are welcome at webadmin@acli.com
**Unsubscribe** ACLI WebDirect e-mail
**Privacy** information regarding ACLI Web services is available at Privacy Statement.

**Copyright American Council of Life Insurers, 101 Constitution Avenue, NW, Washington, DC 20001-2133**

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007383

**To:** Kirkley, Keith[Keith.Kirkley@protective.com]
**From:** publications@acli.com
**Sent:** Wed 8/29/2012 7:20:33 PM
**Subject:** Webdirect **-** Legislative Bulletin

---

8/29/2012

This Bulletin contains information on the following states:
California, Illinois

### CALIFORNIA

### Legislative Developments

S. 1140 MARRIAGE SOLEMNIZATION - (Reported in Bulletins 12-013, 12-015, 12-022, 12-025, 12-029, 12-049.) - Passed Assembly on August 28, 2012. To Senate for concurrence. Position: MONITOR

S. 1170 ADVERTISEMENT: SENIORS: SENIOR DESIGNATIONS - (Reported in Bulletins 12-013, 12-015, 12-023, 12-029, 12-031.) - Passed Assembly and enrolled. To governor on August 28, 2012. Position: NEUTRAL

S. 1208 CORPORATE GOVERNANCE: PUBLICLY TRADED COMPANIES: RETIRED EXECUTIVE BENEFITS - (Reported in Bulletins 12-014, 12-015, 12-021, 12-022, 12-029, 12-031, 12-041.) - Failed to pass Assembly on third reading. Motion to reconsider on August 21, 2012. Position: MONITOR

S. 1216 CERTIFICATE OF AUTHORITY TO TRANSACT REINSURANCE: CREDIT FOR REINSURANCE FOR FOREIGN CEDING INSURER - (Reported in Bulletins 12-014, 12-015, 12-021, 12-029, 12-031, 12-036, 12-076.) - To governor on August 24, 2012. Position: SUPPORT

S. 1448 HOLDING COMPANIES - (Reported in Bulletins 12-014, 12-018, 12-023, 12-029, 12-041, 12-046, 12-055, 12-076.) - Senate concurred in Assembly amendments on August 22, 2012. Enrolled and sent to governor. Position: SUPPORT

A. 53 INSURERS: PROCUREMENT CONTRACTS - (Reported in Bulletins 11-001, 11-017, 11-026, 11-100, 12-005, 12-046, 12-057, 12-074, 12-076.) - Assembly concurred in Senate Amendments on August 22, 2012. Enrolled on August 27, 2012. Position: OPPOSE

A. 999 LONG-TERM CARE INSURANCE: DISCLOSURE: PREMIUM RATES - (Reported in Bulletins 11-009, 11-018, 11-024, 11-028, 11-030, 11-035, 11-038, 11-100.) - As amended in the Senate, would provide that if the premiums in any rate revision filing calculated pursuant to those criteria produce a lifetime expected loss ratio that is less than the highest lifetime expected loss ratio for the policy form in the initial filing or for requested premium rates in any filing made after January 1, 2013, the insurer is required to reduce the premiums in that filing such that the current lifetime expected loss ratio is equal to or greater than the highest of the filed loss ratio as specified. Would set forth criteria for calculating the margin in the determination of a lifetime expected loss ratio. Would delete the language that would have limited premium rate scheduled increases to no more than one in any five-year period, with regard to individual or group long-term care insurance policies issued before the approval of premium rate schedules by the Insurance Commissioner. Would eliminate existing law that prohibits an approval for an increase in the premium schedule from being granted unless the actuary performing the review for the Insurance Commissioner certifies that if the requested premium rate schedule increase is implemented and the underlying assumptions, which reflect moderately adverse conditions, are realized, no further premium rate schedule increases are anticipated. Would, instead, authorize an insurer to request a premium rate schedule increase that is lower than the rate increase necessary to provide the required certification or a series of premium rate schedule increases with a present value of not more than the rate increase necessary to provide that certification. Would authorize the Insurance Commissioner to approve this request if, in his or her opinion, accepting the lower premium rate schedule increase or increases is in the best interest of California policyholders, and other conditions are satisfied, as specified. To third reading on August 24, 2012. Position: NEUTRAL

A. 1634 ESCHEAT: UNCLAIMED FUNDS - (Reported in Bulletins 12-017, 12-018, 12-025, 12-046.) - As amended in the Senate on August 24, 2012, would delete all language relating to unclaimed funds. Would now relate to the California Integrated Waste Management Act of 1989. Position: MONITOR

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007388

A. 1747 LIFE INSURANCE: NONPAYMENT OF PREMIUM: GRACE PERIOD - (Reported in Bulletins 12-013, 12-015, 12-029, 12-034, 12-049, 12-074, 12-076.) - Assembly concurred in Senate amendments on August 22, 2012. Enrolled on August 27, 2012. Position: NEUTRAL

A. 1844 SOCIAL MEDIA: EMPLOYER USE - (Reported in Bulletins 12-059, 12-076.) - As amended in the Senate on August 22, 2012, would provide that the Labor Commissioner is not required to investigate or determine any violation of a provision of this bill. To Assembly for concurrence on August 28, 2012. Position: MONITOR

A. 2099 TEACHER'S RETIREMENT PLANS: DEFERRED COMPENSATION: TAX SHELTERED ANNUITIES: 403(b) PLANS: PILOT PROJECT - As originally introduced, legislation related to wage and hour violations. As amended in the Senate on August 24, 2012, would, until January 1, 2018, authorize a pilot project that would allow the Los Angeles Unified School District and the Los Angeles Community College District to select specific 403(b) products offered by four or more vendors of tax-deferred retirement investment products as described in Section 403(b) of the Internal Revenue Code or establish a list of preferred vendors that are recommended to employees, through a due diligence and competitive review process, as specified. Read second time in Senate on August 27, 2012. Re-referred to Senate Committee on Rules. Position: NEUTRAL

A. 2138 INSURANCE FRAUD: ANNUAL ASSESSMENT - (Reported in Bulletins 12-015, 12-025, 12-041, 12-072.) - Passed Senate and sent to Assembly for concurrence on August 22, 2012. Assembly concurred in Senate amendments on August 27, 2012. To enrollment. Position: MONITOR

A. 2160 FOREIGN INVESTMENTS: ENERGY SECTOR OF IRAN - (Reported in Bulletins 12-014, 12-017, 12-029, 12-034, 12-041, 12-072, 12-076.) - Assembly concurred in Senate amendments on August 22, 2012. Enrolled on August 27, 2012. Position: OPPOSE

A. 2374 CREDIT REPORTS: SECURITY FREEZE - (Reported in Bulletins 12-021, 12-023, 12-034, 12-041.) - As amended in the Senate, would prohibit a consumer credit reporting agency from charging any fee upon a consumer 65 years of age or older for placing an initial security freeze. Would allow a consumer credit reporting agency to continue to charge a consumer 65 years of age or older a fee of no more than $5 for lifting, removing, or replacing a security freeze. Passed Senate on August 22 and Assembly concurred in Senate amendments on August 27, 2012. To enrollment. Position: MONITOR

## ILLINOIS

### Legislative Developments

H. 5478 INSURANCE DEPARTMENT: PUBLIC RECORDS: INFORMATION PRACTICES - Signed by the governor on August 17, 2012. Provides for an exception regarding public inspection of records, books and papers of the office of the Director of Insurance for information exempt from disclosure on the Freedom of Information Act. Effective August 17, 2012. (ACLI edited text of law will be available through Council's Advance Law Service.) Position: MONITOR

*ACLI's position on bills included in the Legislative Bulletin is a benefit that is used to help our members distinguish between those bills we are actively lobbying versus those we are not. Below are a list and an explanation of each of the options used in our Legislative Tracking System:*

- *Support Actively - ACLI strongly supports, and is actively seeking enactment of the legislation.*
- *Support - ACLI supports the legislation.*
- *Support Conditionally - ACLI supports the legislation on the condition that certain provisions are amended to address ACLI's concerns.*
- *Do Not Oppose - ACLI does not oppose the legislation. We do not support, but certain standards are met and we are not in opposition.*
- *Monitor - ACLI is monitoring this legislation because of its general interest to member companies.*
- *Neutral - ACLI has reviewed the legislation and has determined to remain neutral.*
- *Pending - ACLI's position is yet to be ascertained. Once a position is determined, it is changed accordingly in LTS.*
- *Oppose - ACLI opposes the legislation.*
- *Oppose Conditionally - ACLI opposes the legislation unless and until certain provisions are amended to address ACLI's concerns.*
- *Oppose Actively - ACLI strongly opposes, and is actively seeking defeat of the legislation.*

contact: Lisha Hanna, 202-624-2047

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007389

posted: 8/29/2012
identifier: LB12-078

**Issues** | **Take Action** | **Compliance** | **Committees** | **Research & Publications** | **Newsroom** | **Events** | **About ACLI**

**Follow** ACLI on Twitter
**Like** us on Facebook

**Personalize** your ACLI WebDirect e-mail.
**Questions** and comments are welcome at webadmin@acli.com
**Unsubscribe** ACLI WebDirect e-mail
**Privacy** information regarding ACLI Web services is available at Privacy Statement.

**Copyright American Council of Life Insurers, 101 Constitution Avenue, NW, Washington, DC 20001-2133**

**To:**       Kirkley, Keith[Keith.Kirkley@protective.com]
**From:**     publications@acli.com
**Sent:**     Wed 8/22/2012 6:34:54 PM
**Subject:**  Webdirect **-** Legislative Bulletin

---

8/22/2012

This Bulletin contains information on the following states:
California, Delaware, Michigan, New York

### CALIFORNIA

### Legislative Developments

S. 1184 SENIOR INSURANCE: VETERANS BENEFITS - (Reported in Bulletins 12-014, 12-015, 12-022, 12-029, 12-034.) - Passed Assembly on August 16, 2012. Enrolled. Position: MONITOR

S. 1216 CERTIFICATE OF AUTHORITY TO TRANSACT REINSURANCE: CREDIT FOR REINSURANCE FOR FOREIGN CEDING INSURER - (Reported in Bulletins 12-014, 12-015, 12-021, 12-029, 12-031, 12-036.) - Passed Assembly on August 20, 2012. To enrollment. Position: SUPPORT

S. 1234 RETIREMENT SAVINGS: STATE PLAN: PRIVATE EMPLOYERS - (Reported in Bulletins 12-014, 12-018, 12-022, 12-025, 12-031, 12-041, 12-046, 12-055.) - As amended in the Assembly on August 20, 2012, would add the definition of "vendor" to mean a registered investment company or admitted life insurance company qualified to do business in California that provides retirement investment products. "Vendor" would also include a company that is registered to do business in California that provides payroll services or recordkeeping services and offers retirement plans or payroll deposit IRA arrangements using products of regulated investment companies and insurance companies qualified to do business in California. "Vendor" would not include individual registered representatives, brokers, financial planners, or agents. Would require the Board to remove a vendor from the registry if investments offered by the vendor are products of a regulation investment company or insurance company that is not licensed or has had its license revoked by the Financial Industry Regulatory or the Department of Insurance for engaging in conduct prohibited by those entities. Would authorize the California Secure Choice Retirement Savings Investment Board to establish a Gain and Loss Reserve Account within the program fund. Would allow the Board to, among other things, appoint a program administrator, with costs to be paid out of funds held in the trust and not attributed to the administrative costs of the board in operating the trust. Would further give the board the power and authority to, among other things, allow participating employers to use the program to remit employees' contributions to their individual accounts on their employees' behalf and allow participating employers to make their own contributions to their employees' individual retirement accounts. Would require the Board to ensure that an insurance, annuity, or other funding mechanism is in place at all times that protects the value of individuals' accounts. The funding mechanism would be required to protect, indemnify, and hold the state harmless at all times against any and all liability in connection with funding retirement benefits pursuant to this title. Would require the costs of the funding mechanism to be paid out of the funds held in the trust and not be attributed to the administrative costs of the board in operating the trust. Would require the opt-out form distributed by the Employment Development Department to be used to create an option for employees to elect to opt-out of the program, as specified. The Board, upon sufficient funds being made available through a nonprofit or private entity or federal funding, would be required to conduct a market analysis to determine whether the necessary conditions for implementation can be met. The state, and any of the funds of the state, would have no obligation for payment of the benefits arising from these provisions. Would prohibit the program if the IRA arrangements offered fail to qualify for the favorable federal income tax treatment ordinarily accorded to IRAs under the Internal Revenue Code, or if it is determined that the program is an employee benefit plan under ERISA. To second reading. Position: OPPOSE

S. 1448 HOLDING COMPANIES - (Reported in Bulletins 12-014, 12-018, 12-023, 12-029, 12-041, 12-046, 12-055.) - Passed Assembly on August 20, 2012. To Senate for concurrence. Position: SUPPORT

A. 53 INSURERS: PROCUREMENT CONTRACTS - (Reported in Bulletins 11-001, 11-017, 11-026, 11-100, 12-005, 12-046, 12-057, 12-074.) - Passed Senate on August 20, 2012. To Assembly for concurrence. Position: OPPOSE

A. 1747 LIFE INSURANCE: NONPAYMENT OF PREMIUM: GRACE PERIOD - (Reported in Bulletins 12-013, 12-015, 12-029, 12-

*Schmidt v. Protective*
Protective_007391

034, 12-049, 12-074.) - Passed Senate on August 20, 2012. To Assembly for concurrence. Position: NEUTRAL

A. 1844 SOCIAL MEDIA: EMPLOYER USE - (Reported in Bulletins 12-059.) - As amended in the Senate on August 20, 2012, would not allow an employer to require or request an employee or applicant for employment to divulge any personal social media, unless the employer believes the information is believed to be relevant to an investigation of allegations of employee misconduct or employee violation of applicable laws and regulations, provided that the social media is used solely for purposes of that investigation or a related proceeding. To second reading. Position: MONITOR

A. 2160 FOREIGN INVESTMENTS: ENERGY SECTOR OF IRAN - (Reported in Bulletins 12-014, 12-017, 12-029, 12-034, 12-041, 12-072.) - Passed Senate on August 20, 2012. To Assembly for concurrence. Position: OPPOSE

A. 2625 EXCESS TAX LIABILITY: CREDIT TO COLLEGE SAVINGS PROGRAM - (Reported in Bulletins 12-021, 12-022, 12-023, 12-025, 12-029, 12-041, 12-072.) - Held in Senate Committee on Appropriations on August 16, 2012. Position: OPPOSE

### DELAWARE

### Legislative Developments

S. 22 HEALTH INSURANCE: AUTISM SPECTRUM DISORDER COVERAGE - (Reported in Bulletins 11-020, 11-077, 12-044.) - Signed by the governor on August 13, 2012. Requires all individual health benefit plans and all group and blanket health benefit plans to provide coverage for the screening and diagnosis of autism spectrum disorders and the treatment of autism spectrum disorders in individuals less than 21 years of age. Does not include long-term care or disability income insurance. Effective 120 days after enactment (December 11, 2012). Position: MONITOR

S. 185 LOBBYIST: DISCLOSURE AND REGISTRATION - (Reported in Bulletins 12-022, 12-031, 12-036.) - Signed by the governor on August 15, 2012. Provides that lobbyists only need to disclose that they are having direct communications with a public official or public employee and not the name of the official or employee. Requires lobbyists to disclose the bill, or resolution on which they are lobbying by making an electronic filing with the Public Integrity Commission within five business days of contact with a relevant public official, or by June 29 of each year, whichever is earlier. Also requires lobbyists to make a report to the Commissioner relating to a regulation no later than the end of the 5th business day after the date on which the first direct communications takes place. Requires the Commission, in coordination with others, to make the reports available on the Internet in a manner in which they can easily be viewed by bill, resolution, lobbyist or employer. Requires lobbyists to file registration forms and financial disclosure forms electronically. Effective January 1, 2013. Position: MONITOR

### MICHIGAN

### New Introductions

H. 5818 UNIFORM SECURITIES ACT: FILING FEE REVISIONS (BROKER-DEALERS AND INVESTMENT ADVISER REPRESENTATIVES) - Would modify various filing fees contained under the uniform securities act including those for registration as a broker-dealer and investment adviser representative. Position: MONITOR

HR. 305 HOUSE RESOLUTION: LIFE INSURANCE AWARENESS MONTH - House Resolution which declares September 2012 as Life Insurance Awareness Month in the state. Passed the House on August 15, 2012. Position: SUPPORT

### NEW YORK

### Legislative Developments

S. 2704 PRODUCER LICENSING: TERM OF LICENSE FOR NEW APPLICANTS - (Reported in Bulletins 12-021, 12-49a, 12-072.) - Signed by the governor on August 17, 2012. Permits the Superintendent to issue an insurance license to a new applicant for a term of up to 30 months. Licenses must be renewed every 24 months and expire on a producer's birthday. Effective 90 days after it becomes law. (Substituted for A. 6435.) (ACLI edited text of law will be available through Council's Advance Law Service.) Position: SUPPORT

A. 7764 DATA MATCH: EXPANSION OF DATA MATCH SYSTEM - (Reported in Bulletins 12-009, 12-021, 12-074.) - Signed by the governor on August 17, 2012. Expands a New York City data match system to require financial institutions doing business in the state of New York to develop and operate a data match system to facilitate the identification and seizure of nonexempt financial assets of tax debtors identified by the commissioner or the commissioner's authorized designee. Permits financial institutions to use an existing, approved child support enforcement program data match system. The former data match rule defined "financial institution" as any financial institution authorized or required to participate in a

financial institution data match system or program for child support enforcement purposes under federal or state law. (Substituted for S. 5461.) Effective August 17, 2012. (ACLI edited text of law will be available through Council's Advance Law Service.) Position: MONITOR

A. 9224 IRAN DIVESTMENT: PROHIBITION ON CERTAIN INVESTMENTS MADE AND CONTRACTS ENTERED INTO BY PUBLIC AUTHORITIES - Signed by the governor on July 17, 2012. Expands the Iran Divestment Act adopted in January 2012 to restrict state and local authorities from entering in to contracts with persons listed as engaging in prohibited investment activities in Iran. Prohibited activities include contributing 20 million or more in goods and services or investments, including the extension of credit, to the energy sector of Iran. Effective 90 days after it becomes law. (ACLI edited text of law available through Council's Advance Law Service.) Position: NEUTRAL

A. 10532 DERIVATIVES: DEFINITION OF QUALIFIED COUNTERPARTY IN DERIVATIVE TRANSACTIONS - (Reported in Bulletins 12-044, 12-055, 12-074.) - Signed by the governor on August 17, 2012. Amends the definition of qualified counterparty under insurance law to permit additional counterparties in insurer transactions. Adds the definitions of "over the counter derivative instrument", "clearinghouse" and "master agreement" to the insurance derivatives law. Effective August 17, 2012. (Substituted for S. 7306.) (ACLI edited text of law will be available through Council's Advance Law Service.) Position: SUPPORT

*ACLI's position on bills included in the Legislative Bulletin is a benefit that is used to help our members distinguish between those bills we are actively lobbying versus those we are not. Below are a list and an explanation of each of the options used in our Legislative Tracking System:*

- *Support Actively - ACLI strongly supports, and is actively seeking enactment of the legislation.*
- *Support - ACLI supports the legislation.*
- *Support Conditionally - ACLI supports the legislation on the condition that certain provisions are amended to address ACLI's concerns.*
- *Do Not Oppose - ACLI does not oppose the legislation. We do not support, but certain standards are met and we are not in opposition.*
- *Monitor - ACLI is monitoring this legislation because of its general interest to member companies.*
- *Neutral - ACLI has reviewed the legislation and has determined to remain neutral.*
- *Pending - ACLI's position is yet to be ascertained. Once a position is determined, it is changed accordingly in LTS.*
- *Oppose - ACLI opposes the legislation.*
- *Oppose Conditionally - ACLI opposes the legislation unless and until certain provisions are amended to address ACLI's concerns.*
- *Oppose Actively - ACLI strongly opposes, and is actively seeking defeat of the legislation.*

---

contact: Lisha Hanna, 202-624-2047

posted: 8/22/2012
identifier: LB12-076

**Issues** | **Take Action** | **Compliance** | **Committees** | **Research & Publications** | **Newsroom** | **Events** | **About ACLI**

**Follow** ACLI on Twitter
**Like** us on Facebook

**Personalize** your ACLI WebDirect e-mail.
**Questions** and comments are welcome at webadmin@acli.com
**Unsubscribe** ACLI WebDirect e-mail
**Privacy** information regarding ACLI Web services is available at Privacy Statement.

**Copyright American Council of Life Insurers, 101 Constitution Avenue, NW, Washington, DC 20001-2133**

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007393

**To:**       Kirkley, Keith[Keith.Kirkley@protective.com]
**From:**     publications@acli.com
**Sent:**     Thur 9/6/2012 7:33:11 PM
**Subject:**  Webdirect - Legislative Bulletin

9/6/2012

This Bulletin contains information on the following states:
California

## CALIFORNIA

## Legislative Developments

S. 923 RETIREMENT SAVINGS PLANS: INVESTMENT BOARD - As originally introduced, bill related to worker's compensation. As amended in the Assembly on August 31, 2012, would, contingent upon the enactment of Senate Bill 1234, expand the California Secure Choice Retirement Savings Investment Board from seven members to nine members, as specified. Would also prohibit the board from opening the trust program for enrollment without a subsequent authorizing statute. Senate concurred in Assembly amendments. To enrollment. Position: DO NOT OPPOSE

S. 1140 MARRIAGE SOLEMNIZATION - (Reported in Bulletins 12-013, 12-015, 12-022, 12-025, 12-029, 12-049, 12-078.) - Senate concurred in Assembly amendments and sent to enrollment on August 29, 2012. Enrolled on August 31, 2012. Position: MONITOR

S. 1184 SENIOR INSURANCE: VETERANS BENEFITS - (Reported in Bulletins 12-014, 12-015, 12-022, 12-029, 12-034, 12-076.) - Signed by the governor on August 29, 2012. Prohibits an insurance broker or agent from participating in, being associated with, or employing any party that participates in, or is associated with, the obtaining of veterans benefits for a senior, unless the insurance agent or broker maintains procedural safeguards designed to ensure that the agent or broker transacting insurance has no direct financial incentive to refer the policyholder or prospective policyholder to any veterans benefits program offered through the government. Effective January 1, 2013. (ACLI edited text of law will be available through Council's Advance Law Service.) Position: MONITOR

S. 1449 LIFE INSURANCE: ACCELERATED DEATH BENEFITS: DISABILITY INSURANCE: ANNUITIES: SURRENDER CHARGES - (Reported in Bulletins 12-015, 12-018, 12-021, 12-025, 12-029, 12-041, 12-049, 12-072.) - Passed Assembly on August 27 and Senate on August 29, 2012. Enrolled on August 31, 2012. Position: SUPPORT ACTIVELY

A. 53 INSURERS: PROCUREMENT CONTRACTS - (Reported in Bulletins 11-001, 11-017, 11-026, 11-100, 12-005, 12-046, 12-057, 12-074, 12-076, 12-078.) - To governor on August 30, 2012. Position: OPPOSE

A. 999 LONG-TERM CARE INSURANCE: DISCLOSURE: PREMIUM RATES - (Reported in Bulletins 11-009, 11-018, 11-024, 11-028, 11-030, 11-035, 11-038, 11-100, 12-078.) - Assembly concurred in Senate amendments on August 30, 2012. To enrollment. Position: NEUTRAL

A. 1248 PUBLIC EMPLOYEES: DEFINED BENEFIT PLANS: CITY OF SAN DIEGO - (Reported in Bulletins 11-009, 11-018, 11-020, 11-028, 11-038, 11-071, 11-100, 12-034, 12-036.) - Passed Senate on August 27 and Assembly concurred in Senate amendments on August 29, 2012. To enrollment. Position: MONITOR

A. 1747 LIFE INSURANCE: NONPAYMENT OF PREMIUM: GRACE PERIOD - (Reported in Bulletins 12-013, 12-015, 12-029, 12-034, 12-049, 12-074, 12-076, 12-078.) - To governor on August 30, 2012. Position: NEUTRAL

A. 1844 SOCIAL MEDIA: EMPLOYER USE - (Reported in Bulletins 12-059, 12-076, 12-078.) - Assembly concurred in Senate amendments on August 29, 2012. To enrollment. Position: MONITOR

A. 1963 PERSONAL INCOME TAX: STATE SALES AND USE TAX REDUCTION - (Reported in Bulletins 12-023, 12-029, 12-041.) - As amended in the Senate, would require the Legislative Analyst's Office to submit a report on or before July 1, 2013, assessing potential changes to existing law that imposes taxes based upon taxable income, at specified rates, and imposes state sales and use tax on retailers and on the storage, use, or other consumption of tangible personal property in

*Schmidt v. Protective*
Protective_007394

the state, in order to reduce revenue volatility. Would also repeal obsolete provisions requiring a report by the Legislative Analyst to the Legislature in 2004. Assembly concurred in Senate amendments on August 30, 2012. To enrollment. Position: OPPOSE

A. 2010 REVERSE MORTGAGES: COUNSELING - (Reported in Bulletins 12-015, 12-016, 12-025, 12-029, 12-034.) - To governor on August 20, 2012. Position: MONITOR

A. 2160 FOREIGN INVESTMENTS: ENERGY SECTOR OF IRAN - (Reported in Bulletins 12-014, 12-017, 12-029, 12-034, 12-041, 12-072, 12-076, 12-078.) - To governor on August 30, 2012. Position: OPPOSE

A. 2303 INSURANCE DEPARTMENT: OMNIBUS BILL: LIQUIDATION: VARIABLE CONTRACT TRANSACTIONS: HOLOCAUST CLAIMS - (Reported in Bulletins 12-017, 12-025, 12-046.) - To governor on August 30, 2012. Position: MONITOR

*ACLI's position on bills included in the Legislative Bulletin is a benefit that is used to help our members distinguish between those bills we are actively lobbying versus those we are not. Below are a list and an explanation of each of the options used in our Legislative Tracking System:*

- *Support Actively - ACLI strongly supports, and is actively seeking enactment of the legislation.*
- *Support - ACLI supports the legislation.*
- *Support Conditionally - ACLI supports the legislation on the condition that certain provisions are amended to address ACLI's concerns.*
- *Do Not Oppose - ACLI does not oppose the legislation. We do not support, but certain standards are met and we are not in opposition.*
- *Monitor - ACLI is monitoring this legislation because of its general interest to member companies.*
- *Neutral - ACLI has reviewed the legislation and has determined to remain neutral.*
- *Pending - ACLI's position is yet to be ascertained. Once a position is determined, it is changed accordingly in LTS.*
- *Oppose - ACLI opposes the legislation.*
- *Oppose Conditionally - ACLI opposes the legislation unless and until certain provisions are amended to address ACLI's concerns.*
- *Oppose Actively - ACLI strongly opposes, and is actively seeking defeat of the legislation.*

contact: Lisha Hanna, 202-624-2047

posted: 9/6/2012
identifier: LB12-079

Issues | Take Action | Compliance | Committees | Research & Publications | Newsroom | Events | About ACLI

**Follow** ACLI on Twitter
**Like** us on Facebook

**Personalize** your ACLI WebDirect e-mail.
**Questions** and comments are welcome at webadmin@acli.com
**Unsubscribe** ACLI WebDirect e-mail
**Privacy** information regarding ACLI Web services is available at Privacy Statement.

**Copyright American Council of Life Insurers, 101 Constitution Avenue, NW, Washington, DC 20001-2133**

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*

Protective_007395

# EXHIBIT C

**To:**       Kirkley, Keith[Keith.Kirkley@protective.com]
**From:**     publications@acli.com
**Sent:**     Thur 9/27/2012 7:29:44 PM
**Subject:**  Webdirect - State News Weekly

---

9/27/2012

| | |
|---|---|
| Hot Topics: | 2001 CSO Mortality Tables |
| | Speed to Market |
| | |
| Activity by State: | California, New York, Texas, Wyoming |
| | |
| Week-at-a-Glance: | ACLI Meetings/Calls on State Issues |
| | State Legislative/Regulatory Activity |

---

**HOT TOPICS**

**2001 CSO Mortality Tables:**

**New York:** The Department of Financial services has proposed regulations amending the smoker/nonsmoker mortality tables (11 NYCRR 57). Proposed Regulation 113 would prohibit insurers from classifying an insured as a smoker unless the insured actually smokes or uses tobacco. The proposed regulation also requires insurers to provide notice of intent to seek reclassification of risks. Comments are due by October 13, 2012 to Dennis Lauzon, Assistant Chief Life Actuary, New York Department of Financial Services, One Commerce Plaza, Albany, New York 12257 or email: dennis.lauzon@dfs.ny.gov. **Contact: Kate Kiernan x2463**

**Speed to Market:**

**California:** Governor Jerry Brown has signed S. 1449, a bill sponsored by ACLI and Association of California Life and Health Insurance Companies (ACLHIC) that would speed the approval of life and annuity product filings containing valuable consumer benefits that are currently available in most other states. Senate Bill 1449 was introduced as the Interstate Compact, but was scaled back after resistance from the Department of Insurance (CDI).

Senate Bill 1449 will clear the way for the CDI to approve provisions that waive premiums if someone becomes totally disabled and that waive surrender charges in the event of various triggers related to a disability, medical condition or need for long-term care. ACLI and ACLHIC worked cooperatively with CDI's policy review bureau to address concerns that these provisions constitute health insurance and long-term care insurance. The bill ensures that the insurance commissioner retains authority to review contracts, including waiver of premium or surrender charges, to ensure they are clearly worded and are not unfair to the owner, insured, or annuitant. A separate provision allowing the acceleration of a life insurance death benefit in the event of various triggers related to disability, medical condition or need for long-term care was opposed by the CDI and did not advance. However, ACLI plans to revive this provision, and perhaps the full Interstate Compact, in 2013. **Contact: John Mangan 202-577-7813**

---

**ACTIVITY BY STATE**

**California**
**Iran Investments:** ACLI has learned that the Department of Insurance will be sending letters today (September 27) to licensed insurers who have investments in companies on their Iran Investment list, notifying the insurers that there names will soon be posted on the department's website. This process was described in the settlement agreement reached between the department, ACLI and four other insurance trade associations in January of this year. The settlement eliminated several unauthorized rules imposed by the department, including quarterly reporting of Iran investments and denial of statement

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

*Schmidt v. Protective*
Protective_007366

credit, but allowed for the department to maintain a list of companies with investments in Iran and post the names of insurers who have such investments. **Contact: John Mangan** 202-577-7813

**California**
**Life Insurance Grace Periods:** ACLI and ACLHIC representatives will be meeting next week with the CDI's legislative and policy approval teams to address compliance questions raised by the passage of A. 1747. The bill requires that every life insurance policy issued or delivered in the state contain a provision for a grace period of not less than 60 days from the premium due date and that the policy remain in force during the 60 day grace period. In addition, the bill states that an individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The CDI will review questions from the trades and help craft specific compliance guidelines in advance of the bill's effective date on January 1, 2013. Our initial assessment is that the law will be applied to current policies, but that filing requirements will be applied prospectively. Please forward any questions or comments to John Mangan. **Contact: John Mangan** 202-577-7813

**New York**
**Annuity Suitability:** The Department of Financial Services readopted Emergency Regulation 187 - Suitability in Annuity Transactions on September 7. Regulation 187 was first issued by the department in December of 2010 in response to requirements under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010. The regulation continues to be published as an emergency regulation with no opportunity for comment. Regulation 187 is a compilation of the National Association of Insurance Commissioners' Suitability in Annuity Transactions Model Regulation ("NAIC Model") and the National Association of Securities Dealers ("NASD") Rule 2310 for securities. It is hoped that the department will issue permanent regulations in the near future. **Contact: Kate Kiernan** x2463

**New York**
**Franchise Taxes:** The New York Department of Taxation and Finance has promulgated regulations which would amend regulation 20 NYCRR 33 to clarify the circumstances under which certain transactions among related corporations would require filing franchise taxes on a combined basis. Comments are due by October 27, 2012 to John W. Bartlett, Tax Regulations Specialist 4, Department of Taxation and Finance, Taxpayer Guidance Division, Building 9, W.A. Harriman Campus, Albany, NY 12227, or email: tax.regulations@tax.ny.gov. **Contact: Kate Kiernan** x2463

**New York**
**Senior Designations:** The Department of Financial Services has promulgated permanent regulations codifying the use of senior specific classifications and professional designations. The proposed rule will replace Emergency Regulation 119 which has been in place since December 2010 and which was just readopted September 7, 2012. Proposed permanent Regulation 199 follows the NAIC Model Regulation on the Use of Senior-Specific Certifications and Professional Designations in the Sale of Life Insurance and Annuities. Comments are due by October 6, 2012. **Contact: Kate Kiernan** x2463

**New York**
**Unfair Claims Settlement Practices:** The Department of Financial Services has proposed regulations which would set forth minimum provisions that an insurer must include in a release if the insurer requires the execution of a release, and prohibit certain other provisions in such a release. Comments are due by October 13 to Joana Lucashuk, New York State Department of Financial Services, 25 Beaver Street, New York, NY 10004 or email: joana.lucashuk@dfs.ny.gov. **Contact: Kate Kiernan** x2463

**Texas**
**Child Support Data Match:** ACLI has submitted written comments to the Texas Office of Attorney General's (TX OAG) proposed amendments to the child support data match rules. We have also formally requested a public hearing in order to delay implementation of the proposed amended rules, which by law could have become effective at the end of September. In addition to a public hearing, ACLI, Texas Association of Life and Health Insurers (TALHI) and other local industry stakeholders have requested a meeting with the TX OAG staff to have the opportunity for discussion of the myriad of questions and need for clarity on the scope and applicability of these proposed amendments. Updates on our efforts will be provided in future editions of this publication. **Contact: Brenda Nation** 512-394-0049

**Wyoming**
**Replacements:** *Update:* After receiving a number of comments from member companies, ACLI had a discussion with the Insurance Department attorney and staff about the direction the department was taking with the proposed amendments to their replacement regulation (*see* August 30 State News Weekly). Department staff indicated that the proposed amendments were in response to a number of calls received from state residents who were confused and upset about surrender periods and charges contained in annuity products they purchased. ACLI staff advocated heavily for the

department to adopt the NAIC Model language, pointing out that the proposed amendments were regressive to changes made by the NAIC in the 1980s to remove calculations and comparison forms from the model requirements and that the course the department was taking was out of step with other states. Department staff was adamant that their proposal was the right solution for their state residents. ACLI staff explained how the NAIC addressed these type concerns in the development of the NAIC Suitability in Annuity Transactions and Annuity Disclosure Model Regulations and suggested that Wyoming consumers would instead benefit from the adoption of these models. According to staff, the department is reviewing these models, but they indicated it would be another 1-1/2 years before anything would be adopted. They were, however, willing to discuss specific concerns with the proposed amendments, and ACLI staff offered several suggestions based on member company comments. These suggestions were taken under advisement with a plan to discuss again with ACLI staff next week. The deadline for written comments is October 8, which leaves a little time to continue informal discussion with Department staff. Updates will be posted to this publication. **Contact: Brenda Nation 512-394-0049**

---

**WEEK-AT-A-GLANCE**

**ACLI Meetings/Calls on Issues in the States**

*Monday, October 1, 2012*

- Joint Trades Conference Call: 11:00 AM Eastern, Steve Clayburn x2197

*Tuesday, October 2, 2012*

- ACLI Disability and Legislative Regulatory Issues Group, 2:00 PM Eastern, Steve Clayburn x2197 *see* Agenda

**State Legislative/Regulatory Hearings**

*Monday, October 1, 2012*

- Colorado: Proposed Regulation 3 CO ADC Ins 3-1-7: Regulation To Define Standards And Commissioner's Authority For Companies Deemed To Be In Hazardous Financial Condition
- Colorado: Proposed Regulation 3 CO ADC INS 4-2-31: Annual Health Reporting And Data Retention Requirements
- Colorado: Proposed Repeal Of Regulation 3 ADC INS 3-2-7: Definition Of Instrumentality And Investments In Mortgage-Backed Securities

*Thursday, October 4, 2012*

- Tennessee: Proposed Repeal And Readoption of Rule 0780-01-41+: Tennessee Captive Insurance Companies

---

**RESOURCES**

**Get Bill Texts on ACLI's Legislative Tracker:** Search ACLI's Web-based Legislative Tracker database for the text, digest and legislative history of the bills mentioned above. (*Please note:* if you are prompted to log in, use your ACLI User ID and Password to do so, then click on this Tracker link again to access the database.) **Open the Tracker.**

**ACLI 2012 State Issues Tracking Matrix:** At-a-glance chart tracking state legislative and regulatory activity on a selected number of ACLI's priority issues, including Retained Asset Accounts, Guaranty Association Activity/Netting, Evidence of Insurance, Taxation, Annuity Sales Practices/Senior Designations, STOLI/STOA, and Privacy. **Go to the Matrix**.

**ACLI Weekly State Legislative Bulletin:** View the most recent Legislative Bulletin, providing legislative updates in the following states: *California, Michigan, New Jersey, Ohio*

**ACLI State Adjournment Bulletins:** The Delaware Adjournment Bulletin was posted on September 18, 2012

**Comprehensive Calendar:** View Calendar of ACLI events scheduled through 2012.

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

**Federal Tax Challenges Member Company Toolkit**

ACLI has developed resources for member companies to communicate with and educate grassroots advocates about the potential legislative tax threats that could impact the life insurance industry. The toolkit contains sample communications and articles for advocates (employees, agents, and retirees), infographics to help visually represent key industry data, as well as other general resources. The toolkit also contains social media materials, including sample tweets and suggestions about what companies can do to join in the industry's social media activities. Resources will be added to this toolkit as the campaign progresses and legislative developments warrant. *View* the entire toolkit. **Contact: Vanessa CdeBaca at x2449**

NOTE: Staff telephone numbers are extensions of the (202) 624-xxxx prefix. E-mail is the first and last name plus a common suffix: johndoe@acli.com.

---

contact: Lisha Hanna, 202-624-2047; Bradley Rawls, 202-624-2341

posted: 9/27/2012
identifier: SW12-036
keywords: annuities, child support, claim, data match, Dodd-Frank, foreign operations, grace period, insurance department, investment, life insurance, long-term care insurance, mortality tables, NAIC model regulation, NASD, policy, producer regulation, replacement, senior designations, senior-specific certifications, speed to market, suitability, taxes, unfair trade practices

**Issues** | **Take Action** | **Compliance** | **Committees** | **Research & Publications** | **Newsroom** | **Events** | **About ACLI**

**Follow** ACLI on Twitter
**Like** us on Facebook

**Personalize** your ACLI WebDirect e-mail.
**Questions** and comments are welcome at webadmin@acli.com
**Unsubscribe** ACLI WebDirect e-mail
**Privacy** information regarding ACLI Web services is available at Privacy Statement.

**Copyright American Council of Life Insurers, 101 Constitution Avenue, NW, Washington, DC 20001-2133**

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

# EXHIBIT D

**To:**       Cunningham, Nancy[Nancy.Cunningham@protective.com]; Bryant,
Sallie[Sallie.Bryant@protective.com]
**Cc:**       Britton, Kathy[Kathy.Britton@protective.com]
**From:**     Kirkley, Keith
**Sent:**     Sat 10/13/2012 9:12:02 PM
**Subject:**  CA - new requirement
CA-A1747 Bill Text.mht

**California – Bill 1747 – Effective January 1, 2013 –** Requires that every life insurance policy issued or delivered in the state contain a provision for a grace period of not less than 60 days from the premium due date and that the policy remain in force during the grace period.  The regulation also states that a life insurance policy shall not be issued or delivered until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium and shall notify the policy owner annually of the right to change the designation or designate one or more persons.  (Can we add CA to our secondary addressee process for annual notifications, along with the other 4 states?)

There was a meeting between the ACLI and the CA DOI on Friday (10/12) to address compliance questions raised by the passage of AB 1747.  The CA DOI has reviewed company questions and will be seeking specific compliance guidelines in advance of the bill's effective date on January 1, 2013.  (I'll keep you posted on developments.)

This requirement would not impact our UL business because we have 61-day grace period in our UL contracts.  The only impact to UL would be the notice requirements (which I think we already meet) and the designee notification.

It will impact Term and NPWL **–** we have 31 days in those contracts, but we can modify this without a filing.  The challenge is that we're set up to process everything in systems around the 31-day grace.

Kathy **–** This will affect the Liberty Life business as well (for conversions).  Their FPWL policies also contain a 31-day grace period.  Re designation of the third party, we may be able to do this through a separate administrative form that could be implemented without having to coordinate with Athene to file for approval in CA.

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

# EXHIBIT E

**To:**      Britton, Kathy[Kathy.Britton@protective.com]; Bryant, Sallie[Sallie.Bryant@protective.com]; Cunningham, Nancy[Nancy.Cunningham@protective.com]
**From:**   Kirkley, Keith
**Sent:**    Tue 10/23/2012 3:17:08 PM
**Subject:**  CA - AB 1747 (update)

Below is additional guidance that has been issued from the ACLI on this bill.

Good news – the CA DOI has agreed that this will apply <u>prospectively</u> for both the grace and alternative designee provisions.  This will only apply to new issues so the statute won't impact our closed blocks, except for conversions.  Also, the designation of a third party can be done through a separate administrative form without having to file for approval in CA.

**California**
**Life Insurance Policy Payment: Grace Periods:** On October 12, 2012, ACLI and Association of California Life & Health Insurance Companies (ACLHIC) representatives met by phone with the California Department of Insurance (CDI) Legislative Office (Michael Martinez); the Policy Approval Bureau (PAB) (Leslie Tick and Nancy Hom); and the Financial Analysis Division (Perry Kupfermann, Sarv Samra) to discuss compliance questions regarding A. 1747. Feedback from the CDI responded to a carefully crafted set of questions (PDF) posed by the trades, emphasizing the prospective nature of the bill, which becomes effective on January 1, 2013.

The CDI agreed that the 60-day grace period and alternate designee provisions will be applied prospectively, and will only apply to those policies issued or delivered on or after January 1, 2013.

According to the CDI, the Policy Approval Bureau (PAB) will not require re-filing of whole life policies because these are not ordinarily required to be filed unless the non-forfeiture provisions are changing. Variable and group products will be the subject of re-filing, and CDI is encouraging this be done by simple endorsement to your existing approved policy form (a generic sample is attached). The cover letter and filing submission form should clearly indicate that the endorsement is being filed to comply with A. 1747.

The CDI agrees with our recommendation that, in order to make the change to existing policy forms before January 1, 2013, the new 60-day grace period requirement (for group life and individual variable life) should be applied by filing a simple endorsement through the System for Electronic Rate and Form Filing (SERFF) for previously approved policies that will be issued on or after January 1, 2013. Insurers may also submit the entire contract filing and but should clearly indicate that the only change is the highlighted 60-day grace period.

The alternate designation form may be separate from the contract or application, and if it is, will not be subject to filing or review. If the language is included in an application used with policies subject to filing approval, then the application must be re-filed in accordance with the usual process.

The PAB staff will monitor these special SERFF filings and tag them for expedited treatment. We emphasized that companies will need to get their endorsements approved by December 31, 2012 in order to start selling compliant products on January 1, 2013. The alternate designee form/notice does not need to be filed unless it is being made part of an application that is subject to filing (e.g. an application for variable or group coverage). In the meantime, the simplest method to provide the third-party notification option to individual life insurance applicants and policyowners is to issue it as a stand-alone page during the application process. In this way, it will not need prior approval by CDI, and will only be subject to market conduct review to ensure it complies with the new law.

At this stage, CDI is not planning to issue a bulletin or any specific guidance, other than its response to our questions. There will be no extension of the compliance date in the legislation.

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

# EXHIBIT F

**To:**     Britton, Kathy[Kathy.Britton@protective.com]; Bryant, Sallie[Sallie.Bryant@protective.com]; Cunningham, Nancy[Nancy.Cunningham@protective.com]; McGill, Cindy[Cindy.McGill@protective.com]; Head, Tyrene[Tyrene.Head@protective.com]; Majewski, Carol[Carol.Majewski@protective.com]
**From:**   Kirkley, Keith
**Sent:**   Fri 11/2/2012 7:47:02 PM
**Subject:**  UPDATE - CA grace period

See below the additional guidance that was published this week.

We cannot provide the third party notice electronically.  We are filing an endorsement to change the Grace Period provisions of the NPWL and Term products.

**SNW 10-25 CALIFORNIA: Grace Periods:** On October 24, ACLI, ACLHIC and the Policy Approval Bureau (PAB) met to discuss further questions on the implementation of A. 1747, which changes life insurance grace periods and allows policyowners to designate an alternate contact for lapse notices. The PAB provided the following guidance:

1.  For life policies which are not subject to prior approval, a revised policy form filing via endorsement is only required if nonforfeiture provisions in the policy form are being changed. This same approach would also apply to term policies which are currently subject to filing under the nonforfeiture statute. The general rule is that if a contract is currently required to be filed, then a revised filing of the new grace period provision will be required.
2.  Notice of an alternate third party designee to receive lapse notices may not be done electronically. The CDI interprets CIC Sections 385 and 185.1 as not allowing electronic communications for notices involving life insurance policies.

In answer to our question whether the insurer could, with permission, send copies of regular billings to the alternate designee, the DOI recommends that only the notice of lapse go to the third party designee. They believe that sending the designee other company communications may dilute the attention to and impact of the lapse notice.

---

**From:** Kirkley, Keith
**Sent:** Thursday, October 25, 2012 9:38 PM
**To:** Britton, Kathy; Bryant, Sallie; Cunningham, Nancy; McGill, Cindy; Head, Tyrene; Majewski, Carol
**Subject:** CA grace period

**California**
**Grace Periods:** On October 24, ACLI, ACLHIC and the Policy Approval Bureau (PAB) met to discuss further questions on the implementation of A. 1747, which changes life insurance grace periods and allows policyowners to designate an alternate contact for lapse notices. The PAB provided the following guidance:

1.  For life policies which are not subject to prior approval, a revised policy form filing via endorsement is only required if nonforfeiture provisions in the policy form are being changed. This same approach would also apply to term policies which are currently subject to filing under the nonforfeiture statute. The general rule is that if a contract is currently required to be filed, then a revised filing of the new grace period provision will be required.

2.  Notice of an alternate third party designee to receive lapse notices may not be done electronically. The CDI interprets CIC Sections 385 and 185.1 as not allowing electronic communications for notices involving life insurance policies.

3.  In answer to our question whether the insurer could, with permission, send copies of regular billings to the alternate designee, the DOI recommends that only the notice of lapse go to the third party designee. They believe that sending the designee other company communications may dilute the attention to and impact of the lapse notice.

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

# EXHIBIT G

**To:**       Kirkley, Keith[Keith.Kirkley@protective.com]
**From:**     publications@acli.com
**Sent:**     Tue 10/23/2012 8:04:55 PM
**Subject:**  Webdirect - ACLI Digest

---

10/23/2012

| | |
|---|---|
| Board of Directors Meeting/Annual Conference | Annual Conference, FHLB Proposal Approved, Board of Directors Elected, Committee Reports |
| Federal Activity | Basel III Standards, Data Call |
| State Activity | Policy Payment Grace Period, Replacements, Tax Credits, Unclaimed Property, Valuation of Mortgage-Backed Securities |
| International Activity | Global Federation of Insurance Associations |
| What's New at ACLI | New Law Survey, ACLI's Grassroots Portal |

---

### Board of Directors Meeting, October 21; Annual Conference, October 21-23

The 2012 Annual Conference; *Challenging Issues, Creative Solutions, Positive Results;* highlighted legislative, regulatory and marketplace issues facing the life insurance industry in a rapidly changing world. More than 500 participants heard ACLI President and CEO Dirk Kempthorne address the ongoing need for life insurers' products among families and retirees. Governor Kempthorne noted that lifespans are increasing, and many Americans can expect to spend 20 years or more in retirement. They will have to rely on annuities to guarantee an adequate income for life. In addition, Governor Kempthorne said that the 75 million families who rely life insurance are less likely to look to the government for financial assistance should they suffer the loss of a loved one, he said.

During the conference, nationally-renowned economist Douglas Holtz-Eakin, former director of the Congressional Budget Office, discussed the economic outlook for the nation. Stuart Rothenberg, one of the nation's most astute poltical observers and publisher of *The Rothenberg Political Report*, analyzed the outcome of the November 6 elections. Jeffrey Toobin, senior analyst with CNN and best-selling author, shared his insights on the inner workings of the United States Supreme Court. Life insurance consultant Colin Devide identified challenges and opportunities for life insurers.

#### 2013 Board of Directors Elected
Jim Morris (Pacific Life) was elected chairman of the ACLI Board of Directors during the business meeting at the Annual Conference. Mr. Morris will serve for one year. Theodore Mathas (New York Life) becomes immediate past chairman. John D. Johns (Pacific Life) was named Chairman-Elect. Roger Crandall (MassMutual) was named Chairman-Elect designate. The 2013 Board of Directors was also elected during the conference. David Turner x2311

#### Board Approves Resolution Supporting FHLB Proposal
The Board of Directors on October 21 voted to support a proposal advanced by the Federal Home Loan Bank (FHLB) of Pittsburgh that would provide additional protection under state receivership statutes for collateral held by FHLBs that relate to loans made to insurance companies. In addition, the Board voted to assist the FHLBs in advancing the proposal in the states. Wayne Mehlman x2135; Robbie Meyer x2184

#### Committee Reports

#### Executive Task Force on Global Solvency
Jim Morris (Pacific Life) reported to the Board that ACLI is continuing its discussions with NAIC on Principle-Based Reserving. CEOs are meeting with NAIC leadership in October to address the pace of progress on several outstanding issues. In addition, Mr. Morris reported that ACLI has had several education sessions with Treasury and the Internal Revenue Service on PBR. Turning to Own Risk and Solvency Assessment, Mr. Morris noted that the pilot project is wrapping up, and ACLI is

CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER

awaiting any possible changes to the Guidance Manual. Mr. Morris also reported that the timeline for the Joint Insurance Contract Project of the International Accounting Standards Board and Financial Accounting Standards Board has been pushed back, and the likely effective date is now 2017. In addition, Mr. Morris reported that ACLI staff is now in communication with the Interstate Insurance Product Regulatory Commission to discuss espedited applications on new product designs as a result of Actuarial Guideline 38. Paul Graham x2164

### Steering Committee on Retirement and Financial Security
Gary Bhojwani (Allianz) reported to the Board that proposals to create government-backed retirement plans, such as S. 1234 in California, represent are fiscally unsound and unnecessarily compete with the private retirement system. While ACLI's lobbying efforts effectively turned S. 1234 into a study, other proposals are likely in other states, and in Congress. Mr. Bhojwani said that ACLI has developed an advocacy plan to defend the private retirement system. In addition, a CEO task force will discuss possible ways to improve the system. Walter Welsh x2157; Jim Szostek x2378

### CEO Task Force on Federal Tax Challenges
Roger W. Crandall (MassMutual) reported to the Board that ACLI is "ahead of the curve" in preparing for the tax reform and debt reduction debate next year, but significant work remains. Mr. Crandall said that polling research from Bill McInturff shows that there is greater opposition to taxing cash value of life insurance and annuities than to other tax reform proposals. The Task Force reviewed campaign plans for economic research and steps are being taken to grow our advocacy base of agents and voters. Mike Murphy, the campaign manager, showed several television spots that test well. Plans are to begin airing a spot during lame duck, targeting policymakers with a select national cable television buy and a D.C. broadcast buy. Shawn Hausman x2438; Mo Goff x2013

### Steering Committee on Financial Services
John D. Johns (Protective Life) reported to the Board that ACLI's new Global Risk Management Committee has completed a first draft of principles on insurance group supervision that could serve as a framework for ACLI's response to proposals to expand oversight of insurance groups. The draft is now being circulated to other ACLI committees and working groups. Turning to capital standards under the Dodd-Frank Act, Mr. Johns noted that ACLI has stepped up efforts to educate federal regulators and key members of Congress on why bank-centric standards, such as Basel III, are fundamentally wrong for life insurers. ACLI is urging federal officials to rely on insurance risk-based capital standards to assess life insurer capital adequacy. Gary Hughes x2120

## Federal Activity

### 24 Senators Urge Federal Regulators to Exempt Insurance Enterprises from Basel III Standards
Twenty-four members of United States Senate urged federal banking regulators October 18 to exempt insurance enterprises from the Basel III regulatory capital reforms developed by the Basel Committee on Banking Supervision. In a joint letter, the senators said that applying a bank-focused regime to insurance companies would unintentionally harm policyholders, savers and retirees. Some of the proposed reforms do not take into account the distinct nature of the insurance business or existing risk-based capital requirements. The letter added that in enacting the Dodd-Frank Act, Congress did not intend for regulators to discard the state risk-based capital system in favor of a bank-oriented system. Of the 24 senators signing the letter, 14 are Democrats and 10 are Republicans. The letter was developed by Sens. Sherrod Brown (D-Ohio) and Mike Johanns (R-Neb.). Seaver Sowers x2445

ACLI also urged the Federal Reserve Board not to apply, even in modified form, the Basel III capital framework on bank holding companies or savings and loan holding companies that are predominantly insurance enterprises, in an October 12 letter to the Fed. The letter responded to three June 7 notices of proposed rulemaking regarding implementation of the Basel III regulatory capital reforms. ACLI emphasized that the current insurer risk-based capital system is best suited to capture the capital needs of insurance companies. It is therefore the best tool available to the Fed to assess the capital adequacy of insurance companies. The Basel III rules are a poor fit for insurance companies, ACLI said. Julie Spiezio x2194

### SLHCs Affiliated With Insurance Companies Should Not Be Subject to Data Call, ACLI Tells Fed
It is neither appropriate nor necessary to impose proposed data collection requirements on savings and loan holding companies (SLHCs) affiliated with life insurance companies, ACLI said in October 11 comments to the Federal Reserve Board. As the Fed's proposal noted, the data call is intended to assist the Basel Committee on Banking Supervision identify whether a financial institution is a systemically-important bank. Therefore, the data call is inherently inappropriate for an insurance institution. Moreover, the proposed data call is based on a bank-centric model. Not only would this data call be unduly burdensome for SLHCs affiliated with life insurers, it would be duplicative of other currently pending regulatory requests on insurance enterprises. Moreover, the Fed proposal significantly underestimates the cost of compliance for

CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER

SLHCs. Julie Spiezio x2194

---

## State Activity

**Policy Payment Grace Period**
**California:** ACLI and Association of California Life & Health Insurance Companies representatives met by phone on October 12 with the California Department of Insurance (CDI) officials to discuss compliance questions regarding A. 1747. The legislation requires a 60-day grace period from the time a payment is due during which the policy must remain in force. Feedback from the CDI responded to a set of questions posed by life insurers, emphasizing the prospective nature of the bill, which becomes effective on January 1, 2013. CDI agreed that the 60-day grace period and alternate designee provisions will be applied prospectively, and will only apply to those policies issued or delivered on or after January 1, 2013. CDI said the Policy Approval Bureau will not require re-filing of whole life policies because these are not ordinarily required to be filed unless the non-forfeiture provisions are changing. Variable and group products will be subject to re-filing, and CDI is encouraging this be done by simple endorsement to existing approved policy forms. The cover letter and filing submission form should clearly indicate that the endorsement is being filed to comply with A. 1747. John Mangan 202-577-7813

**Replacements**
**Wyoming:** ACLI submitted written comments to the Insurance Department on October 8 regarding its proposed amendments to the Chapter 12 "Regulation Governing Replacement of Life Insurance Policies and Annuities." Based on informal discussions with Insurance Department staff, ACLI does not anticipate that the department will fully adopt the revised NAIC Life Insurance and Annuities Replacement Model Regulation (NAIC Model). The staff has indicated it will extend the free look period to 30 days and require a return of account value rather than premiums paid for variable products, consistent with the NAIC Model. ACLI staff will continue informal discussions with department staff to further address specific concerns outlined in our written comments. Brenda Nation 512-394-0049

**Tax Credits**
**North Carolina:** The Office of Administrative Hearings published in the North Carolina Register on October 15 draft amendments to the 2013 Low-Income Housing Tax Credit Allocation Plan, which is a credit available to insurers. Curt Leonard 850-386-6668 x224

**Unclaimed Property**
**Illinois:** ACLI submitted a joint comment letter on October 15 with the Illinois Life Insurance Council (ILIC) in response to Proposed Rule 760.21, regarding the reporting of de minimus amounts due on any unclaimed property reports, and the type of information that a life insurance company must submit on its annual unclaimed property reporting form. ACLI and ILIC believe these proposed revisions are contrary to the terms of the Illinois Uniform Disposition of Unclaimed Property Act and have proposed suggested changes that would allow a life insurance company to report dormancy much more accurately than provided for in the current reporting form. Bruce Ferguson x2385

**Valuation of Mortgage-Backed Securities**
**NAIC:** Proposed NAIC methodology for the valuation of mortgage-backed securities for year-end 2012 goes beyond prudence and would result in an unwarranted increase in capital charges for the vast majority of securities, ACLI said in an October 15 letter to NAIC's Valuation of Securities Task Force. ACLI said it understands and agrees with NAIC's goal to better capture the at-risk nature of certain bonds, called "cuspy" bonds. ACLI noted that "cuspy" bonds represent a relatively small subset of both commercial mortgage-backed securities (CMBS) and residential mortgage-backed securities (RMBS). However, ACLI said, NAIC's proposed methodology is negatively skewed for both CMBS and RMBS, even though the housing market is starting to recover. ACLI urged NAIC to apply the negative skew only to "cuspy" bonds. Mike Monahan x2324

---

## International Activity

**ACLI A Founding Member of the Global Federation of Insurance Associations**
ACLI President and CEO Dirk Kempthorne served as presiding officer October 9 at the creation of the Global Federation of Insurance Associations (GFIA), an alliance of 31 insurance trade groups from around the world that will promote effective and globally-consistent supervision of the insurance industry. ACLI hosted the inaugural meeting of GFIA at ACLI's offices. Governor Kempthorne called formation of GFIA "a historic day." "Regulation of the insurance industry is increasingly being

set internationally, and ACLI looks forward to working with our GFIA partners to advocate for industry perspectives on a broad range of issues affecting the international insurance industry, including systemic risk, the Common Framework for the Supervision of Globally Active Insurance Groups (ComFrame), market conduct and trade," Governor Kempthorne said. ACLI will be a strong voice within GFIA, and can exercise a veto over any policy proposals it does not fully support. GFIA came into being following decade-long leadership by ACLI to establish a global industry coalition on regulatory standards for insurance, reinsurance and private pensions. Brad Smith x2180; Lauren Scott x2042

---

## What's New at ACLI

### NEW Law Survey

ACLI is pleased to introduce a NEW Law Survey: Agent Commission Assignment. This multi-state survey identifies states that have enacted the provision of the NAIC Producer Licensing Model Act allowing an agent to assign commissions or other compensation to an insurance agency or other unlicensed person. ACLI Law Surveys contain live links to the Westlaw database where you can view the text of the laws, regulations, and bulletins cited in the surveys. Paula Witt x2382

### ACLI's Grassroots Portal Provides Valuable Resources for Member Companies

Visit the grassroots portal for resources and tools to help member companies build and strengthen their grassroots programs, as well as communicate with employee and agent advocates. Information also includes recent call-to- action materials, election resources and voter registration information, conference call and webinar information, and much more. Vanessa CdeBaca x2449

NOTE: Staff telephone numbers are extensions of the (202) 624-xxxx prefix. E-mail is the first and last name plus a common suffix: johndoe@acli.com.

---

contact: Brostoff, Steven (202) 624-2419

posted: 10/23/2012
identifier: DG12-021
keywords: accounting, actuarial, Bank Holding Company Act, capital and surplus requirements, Federal Reserve, grassroots, international accounting standards, international regulatory standards, international trade, regulation, replacement, risk based capital requirements, securities, SIFI, solvency, statutory accounting, taxes, unclaimed property

**Issues** | **Take Action** | **Compliance** | **Committees** | **Research & Publications** | **Newsroom** | **Events** | **About ACLI**

**Follow** ACLI on Twitter
**Like** us on Facebook

**Personalize** your ACLI WebDirect e-mail.
**Questions** and comments are welcome at webadmin@acli.com
**Unsubscribe** ACLI WebDirect e-mail
**Privacy** information regarding ACLI Web services is available at Privacy Statement.

**Copyright American Council of Life Insurers, 101 Constitution Avenue, NW, Washington, DC 20001-2133**

CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER

# EXHIBIT H

**To:**     Britton, Kathy[Kathy.Britton@protective.com]; Bryant, Sallie[Sallie.Bryant@protective.com];
Cunningham, Nancy[Nancy.Cunningham@protective.com]
**From:**   Kirkley, Keith
**Sent:**   Tue 10/23/2012 3:17:08 PM
**Subject:** CA - AB 1747 (update)

Below is additional guidance that has been issued from the ACLI on this bill.

Good news – the CA DOI has agreed that this will apply <u>prospectively</u> for both the grace and alternative
designee provisions.  This will only apply to new issues so the statute won't impact our closed blocks, except
for conversions.  Also, the designation of a third party can be done through a separate administrative form
without having to file for approval in CA.

**California**
**Life Insurance Policy Payment: Grace Periods:** On October 12, 2012, ACLI and Association of California Life & Health
Insurance Companies (ACLHIC) representatives met by phone with the California Department of Insurance
(CDI) Legislative Office (Michael Martinez); the Policy Approval Bureau (PAB) (Leslie Tick and Nancy Hom); and the
Financial Analysis Division (Perry Kupfermann, Sarv Samra) to discuss compliance questions regarding A. 1747. Feedback
from the CDI responded to a carefully crafted set of questions (PDF) posed by the trades, emphasizing the prospective
nature of the bill, which becomes effective on January 1, 2013.

<mark>The CDI agreed that the 60-day grace period and alternate designee provisions will be applied prospectively, and will
only apply to those policies issued or delivered on or after January 1, 2013.</mark>

According to the CDI, the Policy Approval Bureau (PAB) will not require re-filing of whole life policies because these are
not ordinarily required to be filed unless the non-forfeiture provisions are changing. Variable and group products will be
the subject of re-filing, and CDI is encouraging this be done by simple endorsement to your existing approved policy
form (a generic sample is attached). The cover letter and filing submission form should clearly indicate that the
endorsement is being filed to comply with A. 1747.

The CDI agrees with our recommendation that, in order to make the change to existing policy forms before January 1,
2013, the new 60-day grace period requirement (for group life and individual variable life) should be applied by filing a
simple endorsement through the System for Electronic Rate and Form Filing (SERFF) for previously approved policies that
will be issued on or after January 1, 2013. Insurers may also submit the entire contract filing and but should clearly
indicate that the only change is the highlighted 60-day grace period.

<mark>The alternate designation form may be separate from the contract or application, and if it is, will not be subject to filing
or review.</mark> If the language is included in an application used with policies subject to filing approval, then the application
must be re-filed in accordance with the usual process.

The PAB staff will monitor these special SERFF filings and tag them for expedited treatment. We emphasized that
companies will need to get their endorsements approved by December 31, 2012 in order to start selling compliant
products on January 1, 2013. The alternate designee form/notice does not need to be filed unless it is being made part of
an application that is subject to filing (e.g. an application for variable or group coverage). In the meantime, the simplest
method to provide the third-party notification option to individual life insurance applicants and policyowners is to issue it
as a stand-alone page during the application process. In this way, it will not need prior approval by CDI, and will only be
subject to market conduct review to ensure it complies with the new law.

At this stage, CDI is not planning to issue a bulletin or any specific guidance, other than its response to our questions.
There will be no extension of the compliance date in the legislation.

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE
ORDER**

*Schmidt v. Protective*
Protective_007414

**To:**     McGill, Cindy[Cindy.McGill@protective.com]
**From:**  Kirkley, Keith
**Sent:**   Wed 10/24/2012 3:56:37 AM
**Subject:** FW: CA - AB 1747 (update)

I meant to send this to you instead of Nancy…sorry.  Tyrene can give you a download on our meeting today.

---

**From:** Kirkley, Keith
**Sent:** Tuesday, October 23, 2012 10:54 AM
**To:** Cunningham, Nancy; Head, Tyrene
**Subject:** FW: CA - AB 1747 (update)

Additional info…

---

**From:** Kirkley, Keith
**Sent:** Tuesday, October 23, 2012 10:17 AM
**To:** Britton, Kathy; Bryant, Sallie; Cunningham, Nancy
**Subject:** CA - AB 1747 (update)

Below is additional guidance that has been issued from the ACLI on this bill.

Good news – the CA DOI has agreed that this will apply <u>prospectively</u> for both the grace and alternative designee provisions.  This will only apply to new issues so the statute won't impact our closed blocks, except for conversions.  Also, the designation of a third party can be done through a separate administrative form without having to file for approval in CA.

**California**
**Life Insurance Policy Payment: Grace Periods:** On October 12, 2012, ACLI and Association of California Life & Health Insurance Companies (ACLHIC) representatives met by phone with the California Department of Insurance (CDI) Legislative Office (Michael Martinez); the Policy Approval Bureau (PAB) (Leslie Tick and Nancy Hom); and the Financial Analysis Division (Perry Kupfermann, Sarv Samra) to discuss compliance questions regarding <u>A. 1747</u>. Feedback from the CDI responded to a carefully crafted set of <u>questions</u> (PDF) posed by the trades, emphasizing the prospective nature of the bill, which becomes effective on January 1, 2013.

<mark>The CDI agreed that the 60-day grace period and alternate designee provisions will be applied prospectively, and will only apply to those policies issued or delivered on or after January 1, 2013.</mark>

According to the CDI, the Policy Approval Bureau (PAB) will not require re-filing of whole life policies because these are not ordinarily required to be filed unless the non-forfeiture provisions are changing. Variable and group products will be the subject of re-filing, and CDI is encouraging this be done by simple endorsement to your existing approved policy form (a generic sample is attached). The cover letter and filing submission form should clearly indicate that the endorsement is being filed to comply with A. 1747.

The CDI agrees with our recommendation that, in order to make the change to existing policy forms before January 1, 2013, the new 60-day grace period requirement (for group life and individual variable life) should be applied by filing a simple endorsement through the System for Electronic Rate and Form Filing (SERFF) for previously approved policies that will be issued on or after January 1, 2013. Insurers may also submit the entire contract filing and but should clearly indicate that the only change is the highlighted 60-day grace period.

<mark>The alternate designation form may be separate from the contract or application, and if it is, will not be subject to filing or review.</mark> If the language is included in an application used with policies subject to filing approval, then the application must be re-filed in accordance with the usual process.

The PAB staff will monitor these special SERFF filings and tag them for expedited treatment. We emphasized that companies will need to get their endorsements approved by December 31, 2012 in order to start selling compliant products on January 1, 2013. The alternate designee form/notice does not need to be filed unless it is being made part of an application that is subject to filing (e.g. an application for variable or group coverage). In the meantime, the simplest method to provide the third-party notification option to individual life insurance applicants and policyowners is to issue it

as a stand-alone page during the application process. In this way, it will not need prior approval by CDI, and will only be subject to market conduct review to ensure it complies with the new law.

At this stage, CDI is not planning to issue a bulletin or any specific guidance, other than its response to our questions. There will be no extension of the compliance date in the legislation.

**CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER**

# EXHIBIT I

## SERFF Instructions for Complying with AB1747

The following instructions will assist filers in complying with the requirements of AB 1747, effective 1/1/13:

**1.  60-DAY GRACE PERIOD.  *All* life insurance policies issued or delivered in California on or after 1/1/2013 must contain a grace period of at least 60 days.  Cal. Ins. Code § 10113.71.**

a. For life insurance subject to prior approval (variable life and group life, including blanket life):

Life insurance policy forms filed for approval after 1/1/13 must contain a grace period of at least 60 days.

Life insurance policy forms approved by the Department before 1/1/13 must be revised to contain a grace period of at least 60 days before they are used to issue or deliver a new policy on or after 1/1/13.

If the grace period is the only change being made, instead of revising and refiling the entire policy form, the Department encourages insurers to revise these policy forms by: endorsement, rider, insert page, text cell insert, or (if the grace period was previously marked as a variable) a statement of variability that specifies the new grace period for policies issued or delivered on or after 1/1/13.  The endorsement, rider, insert page, text cell insert, or statement of variability must have its own unique form number.  Cal. Code Regs. tit. 10, § 2211.

Under existing law (Bulletin 87-3) all flexible premium variable life insurance policies must contain a 61-day grace period.  Assuming that these policies are already in compliance with the 61-day grace period requirement, they need not be amended by endorsement, rider, etc., to comply with AB 1747.

b. For life insurance not subject to prior approval but required to be filed by California's standard nonforfeiture laws (Cal. Ins. Code § 10159.1 et seq.):

Life insurance policy forms filed after 1/1/13 pursuant to California's nonforfeiture laws must contain a grace period of at least 60 days.

Life insurance policy forms filed pursuant to California's nonforfeiture laws and acknowledged by the Department before 1/1/13 must be revised to contain a grace period of at least 60 days before those forms are used to issue or deliver a new policy in California on or after 1/1/13.

- The Department encourages insurers to revise these policy forms by endorsement, rider, insert page, text cell insert, or (if the grace period was previously marked as a variable) a statement of variability that specifies the new grace period for policies issued or delivered on or after 1/1/13, instead of revising and refiling the entire policy when only the grace period is being changed.

11/1/2012
**Schmidt v. Protective**

Protective_007864

- *If the revised grace period does not affect or impact the policy's nonforfeiture provisions, the form containing the revised grace period should not be filed with the Department.*

- If the revised grace period affects or impacts the policy's nonforfeiture provisions, both the policy and the form containing the revised grace period (or a revised policy form containing the revised grace period) must be filed with the Department's Actuarial Office for review.  The endorsement, rider, insert page, text cell insert, statement of variability, or revised policy must have its own unique form number.  Cal. Code Regs. tit. 10, § 2211.

c. <u>For life insurance not subject to any California filing requirements</u>:

Life insurance policy forms that are not required to be filed with the Department must be revised to contain at least a 60-day grace period before they are used to issue or deliver a policy on or after 1/1/13.  Grace period revisions to these forms are not required to be filed with the Department, and the forms are not required to have form numbers because they are not required to be filed with the Department.  Cal. Code Regs. tit. 10, § 2211.

**2.  <u>NOTICE OF LAPSE DESIGNEE</u>.  An individual life insurance policy shall not be issued or delivered in California on or after 1/1/13 until the applicant has been given the right to designate at least one person in addition to himself/herself to receive notice of lapse or termination of a policy for nonpayment of premium.  The insurer shall provide the applicant with a form to make the designation.  Cal. Ins. Code § 10113.72(a).**

The form required by § 10113.72(a) ("designation form") may be included in an application or it may be a stand-alone document.  If the designation form is included in an application, the revised application is subject to any prior approval or filing requirements in existing law.  If the application is required to be filed with the Department it must have a new form number.  Cal. Code Regs. tit. 10, § 2211.  If the designation form is a stand-alone document it does not need to be filed with the Department before it is used, and it is not required to have a form number.  Cal. Code Regs. tit. 10, § 2211.

**3.  <u>RIGHT TO CHANGE DESIGNEE</u>. The insurer must notify the policy owner at least annually of his right to change the designee.  Cal. Ins. Code § 10113.72(b).**

The notification may be made in a notice mailed separately or in a notice that accompanies an annual premium bill or statement of policy.  The notice should not be filed with the Department.  The notification may not be made electronically.  Cal. Ins. Code §§ 38.5, 1851(b).

**4.  <u>SERFF's General Information/Filing Description</u>.**

To expedite the processing of form filings made *solely* to comply with AB 1747, please type "AB 1747 amendment and no other changes" in the General Information/ Filing Description section of SERFF.

#750405v1

# EXHIBIT J

**DEPARTMENT OF INSURANCE**
MARKET CONDUCT DIVISION
FIELD RATING AND UNDERWRITING BUREAU
300 CAPITOL MALL, 16TH FLOOR
SACRAMENTO, CA 95814
(916)492-3630
Gus.Constantinou@insurance.ca.gov
www.insurance.ca.gov



December 4, 2017

**VIA ELECTRONIC MAIL DELIVERY**
Laura.Bagby@protective.com

Ms. Laura Bagby
Director Market Conduct Examinations
Protective Life Corporation
P O Box 2606
Birmingham,  AL 35202

Re: <u>California  Rating and Underwriting  Examination</u>
    Protective Life Corporation  NAIC Group  0458
    MONY Life Insurance Company #66370
    Protective Life and Annuity  Insurance Company NAIC # 88536
    Protective Life Insurance Company NAIC # 68136
    West Coast Insurance Company NAIC # 70335

Dear Ms. Bagby:

Thank you for your June 23, 2017 response to our notice of examination.   This letter is in reference
to the rating and underwriting  based market conduct examination  of the Protective Life
Corporation.   I will be conducting  the examination  with Associate Insurance Rate Analyst Courtney
Bellmer.  Any correspondence prior to the beginning  of the exam may be sent to me at the address
shown above.

The examination  will be conducted principally  at our Sacramento, California office. We will start
our examination  on Monday February 26, 2018. To expedite the examination  and reduce costs,
**please have the requested records, information and materials available for the analysts prior
to our start date**.

The attached Coordinator's  Guide has been prepared in order to expedite the exam.  Company
cooperation  with the analysts will allow the exam to run as quickly  and efficiently  as possible.

Included in the Coordinator's Guide  is a list of the information  and materials required to begin the
exam, a description  of the examination  process, and information  concerning exam administration.  I
encourage you to distribute copies of this material to those company representatives who will be
involved  in the examination.   Please note that the specific data requested on the "Information
Requirements" page should address only the lines of business that are listed as subject to this exam.

*Insurance Protection for All Californians*
**Consumer Hotline (800) 927-4357 (HELP) * Licensing Hotline (800) 967-9331**

*Schmidt v. Protective*
Protective 007178

Ms. Bagby
December 4, 2017
Page Two

A sample of policy files will be reviewed which were issued, renewed or terminated during the period of **October 1, 2017 through December 31, 2017**.

Most of the information requested in the "Information Requirements" section of the attached Coordinator's Guide should be provided by the start of the file review portion of the examination. However, items 1, 3, 5, 6, 7, 8, 9 and 31 [should be provided by [January 15, 2018]. With this information, I will be able to provide you a list of the files that I will be reviewing so that policy/underwriting files may be available for my review at the start of the examination.

In preparation for the upcoming examination, **please maintain all declinations for all lines of business written, especially those which are the subject of this examination**, from the date of receipt of this correspondence throughout the examination period. Please contact me if this will be more than 100 declinations for a single type of insurance product.

At the end of our time, we will provide you with information on issues we have noted during our review, and will provide you with an accounting of those items for which we are expecting a response from your company along with due dates and instructions for getting responses to us. Once we have received answers to all of our questions, we will provide you the opportunity to meet with us to discuss all issues we have identified, either in person or via a teleconference, before a draft report is sent to the Company.

If you have any questions, or if you would like to discuss the exam at any point during the process, please do not hesitate to contact Ms. Bellmer or myself. My e-mail address and phone numbers are listed on the letterhead above.


Sincerely,

*Gus Constantinou*

Gus Constantinou
Associate Insurance Rate Analyst
Field Rating and Underwriting Bureau


CC: Courtney Bellber, FRUB

Enclosure

*Schmidt v. Protective*
Protective 007179

<u>**CALIFORNIA DEPARTMENT OF INSURANCE**</u>

**MARKET CONDUCT EXAMINATION**

**OF THE RATING & UNDERWRITING PRACTICES OF THE**

**PROTECTIVE LIFE CORPORATION**

<u>**COORDINATOR'S INFORMATION GUIDE**</u>

Prepared for:

Ms. Laura Bagby
Director Market Conduct Examinations
Protective Life Corporation
P O Box 2606
Birmingham, AL 35202

December 4, 2017

*Schmidt v. Protective*
**Protective 007180**

CALIFORNIA DEPARTMENT OF INSURANCE
**FIELD RATING & UNDERWRITING BUREAU**

**RATING & UNDERWRITING EXAMINATION**

INFORMATION REQUIREMENTS – **Life**

The following information must be supplied to the analysts at the start of the examination.
This is an extensive list, so we encourage you to begin gathering the data right away. For many of
these items, the applicable provision of the California Insurance Code (CIC) or California Code of
Regulations (Title 10) (CCR) is identified for your reference. Please be as complete as possible in
your response to each request and include information on each of the following coverage types:

- Individual Life Insurance
- Group Life Insurance
- Individual Annuities
- Group Annuities

**Please advise us if any change occurs during the examination to your rules, rates,
underwriting practices, forms, etc.**

1. Life and Disability Products: Briefly outline all life and disability insurance products or
   programs that are part of the above referenced operations or divisions.
   A product/program includes any set of coverages for which the insurer has developed a separate
   rating or marketing plan. Please include all life and disability products, including, but not
   limited to: individual and group term life, whole life, variable life, universal life, annuities, credit
   life, burial expense, industrial life, corporate-owned life, health insurance (identified by
   grandfathered and non-grandfathered), long term care, disability, student policies and any other
   specific products. Indicate the number of policies and premium volume in California **for the
   most recent calendar year** for each type of product written by company.

2. Insurer Operations: Provide a brief overview of the company's structure and method of doing
   business.

   Distribution System(s): Describe the distribution systems or production methods used to
   generate business (e.g. exclusive agents, general agents, direct mail, Internet). If different
   distribution systems are used for different products or affiliates, please indicate which system
   matches which product or division. Indicate the total number of agents and any other
   administrators appointed in California for each product or line of business. If annuity products
   are sold, indicate which products are sold by Financial Industry Regulatory Authority (FINRA)
   broker-dealers and which products are sold by non FINRA producers.

3. Group Program Description: Describe any mass or group marketed programs. Identify each
   program and describe how it is sold (i.e., master policy/certificate, individual policies, payroll
   deductions, point-of-purchase, et cetera.).

   If the company markets insurance to members of an association, please state the name of the

*Schmidt v. Protective*
Protective 007181

association, the type of insurance sold, and list any solicitation, negotiation, or "effecting of insurance contract" functions that the association performs on behalf of the company. If the association performs solicitation, negotiation, or "effecting of insurance contract" functions on behalf of the company and the company has not filed a notice of agency appointment for the association (California Insurance Code §§1622, 1631, and 1704), please identify the CIC §1635 licensing exemptions that apply. Also, please state the commission percentage, if any, that the company pays the association for soliciting, negotiating, or effecting insurance contracts. In addition, please list any administrative or other functions that the company performs on behalf of the associations.

4. <u>Financial Annual Statement</u>: Provide a copy of the State Page Exhibit for California of the financial Annual Statement for the most recent three complete years for each member of your insurer group.

5. <u>Policy Run – New Business Declinations</u>: Please provide a .csv delimited spreadsheet of all new business submissions that were <u>declined</u> by the Company during **October 1, 2017 through December 31, 2017**. Please see attachment IR5 for headers required for the .csv delimited spreadsheet. The spreadsheet should include cases that were not issued due to a refusal or "postponement" by the Company. Do not include cases that are currently in the underwriting process or cases that are incomplete, such as cases under medical review. If annuities are subject to examination, please indicate in the number of total submissions for the timeframe and the total number of submissions declined by the Company for suitability reasons.

6. <u>Policy Runs – In-Force and Terminations</u>: Please provide a .csv delimited spreadsheet containing the fields in attachment IR6. The timeframe to be covered is the three month window of **October 1, 2017 through December 31, 2017**. The examiner should be able to sort the spreadsheet by policy action (e.g., whether the policy is new, renewed, lapsed, non-renewed, fully surrendered, etc). The list should include each product/program or set of coverages for which the insurer has developed a separate rating or marketing plan for the lines of business subject to review (specified on page 1 of the Coordinator's Guide). If a requested field is not applicable to a certain line of business or product, please indicate so in the Company's response.

7. <u>All Rescinded Policies: Please provide a .csv delimited spreadsheet</u> for the **two-year period through December 31, 2017** prior to the start of this examination containing all policies in which the insurer took action to rescind coverage. Please see attachment IR7 for the headers requested.

8. <u>Lapsed or Surrendered Policies</u>: For each of the **last five years through December 31, 2017**, indicate the number of applications received, number of policies issued, and number of policies lapsed and surrendered.

9. <u>All Policies on the Replacement Register (internal and external)</u>: indicate the number of policies issued and the total number of these that were either internal replacements or external replacements, and the total number of replacements involving the sale of the Accelerated Death Benefit for each of the **last five years through December 31, 2017**.

10. <u>Underwriting Manuals and Rates</u>: Provide the underwriting rules, eligibility guidelines, and premium determination manuals/cards/fee schedules **which correspond to the various policies selected for review by the examiner(s).** Provide one copy of the policy contract and any riders and endorsements that correspond with the files selected. Include any revised manual pages or

rate cards. Include any medical underwriting manuals and the breakdown of debits used in assessing any medical ratings. <u>Please provide a paper or electronic copy of all materials</u>.

11. <u>Applications</u>: Please provide a spreadsheet which lists all applications, supplemental applications and medical questionnaires used for the products subject to this examination. Please indicate for which product(s) each application is used.

12. <u>Mandatory Notice Requirements</u>: Please provide copies of the notices, disclaimers, and disclosure forms used as required by the following California Insurance Code provisions. Also provide information on how the delivery of these notices, disclaimers, and disclosure forms to the applicant or policyholder is documented. If this is a group of insurers and these notices, disclaimers, and disclosure forms apply to all companies in the same manner, then only one response is needed.

    a. <u>Consumer Assistance Disclosure</u> - CIC §510: Please provide a copy of the Consumer Services Division disclosure advising a new insured of the Department's address, toll-free telephone number, and internet web-site address.

    b. <u>CLHIGA</u> - CIC §1067.17: Requires delivery of California Life and Health Insurance Guarantee Fund summary document to policyholders covered by the Fund and a disclaimer to those who are not. Please provide a copy of the form used.

13. <u>Electronic Notices:</u> Please describe the Company's procedures for electronic transmission of records for all lines of business subject to examination including electronic delivery of life insurance policies and annuity contracts (as described under CIC §101) pursuant to CIC §38.6(b):

    a. Describe how the Company acquires the consent of the person to opt-in to receiving the records by electronic transmission. CIC §38.6(b)(1) If the consent is acquired verbally, does the Company confirm consent in writing or electronically? Does the Company have a procedure in place to retain the record of consent to electronic transmission with the policy information so that it is retrievable upon request by the Department while the policy is in force and for five years thereafter? For existing customers who are receiving electronic transmissions will the company secure a consent form compliant with CIC §38.6(b).

    b. Provide a sample of the opt-in consent disclosure [CIC §38.6(b)(2)]. Does the Company provide this disclosure either in writing or electronic form? Is the opt-in consent disclosure part of the application or in a separate document that is part of the policy [CIC §38.6(b)(3)?

    c. Provide the SERFF filing number under which the opt-in consent disclosure was filed.

    d. Provide a sample of an annual statement for a policyholder delivered within the review period who has consented to opt-in to electronic transmissions. [CIC §38.6(b)(4)]

    e. Describe the Company's procedure to comply with CIC §38.6(b)(5).

    f. Demonstrate the method by which the Company verifies delivery of a record when the Company has transmitted a record electronically for those records required to be transmitted by first class mail, regular mail, or does not specify a method of delivery, or is a record that is required to be provided pursuant to Article 6.6 Insurance Information And Privacy Protection Act (commencing with CIC §791), and is not otherwise prohibited from electronic transmission under CIV §1633.8, in compliance with CIV §§1633.15 and

3

*Schmidt v. Protective*

Protective 007183

1633.16. [CIC §38.6(b)(6)]  Provide a list of the records currently transmitted by the Company using this method.

g.  Describe the process or system utilized to demonstrate proof of delivery and actual receipt when the Company has transmitted a record electronically, for those provisions of the code that require a record to be sent by return receipt, registered mail, certified mail, signed written receipt of delivery, or other method of delivery evidencing actual receipt by the person. [CIC §38.6(b)(7)]  Provide a list of the records currently transmitted electronically by the Company for which it tracks proof of delivery and actual receipt of the record by the person consistent with CIC §38.6(b)(7)(A) through (D).

h.  Does the Company utilize an electronic address accessible to the person as a method of delivery of electronic policy records?  Provide a copy of the communication sent to the electronic address designated by that person which describes the record, informs that person that it is available at another location, and provides instructions to the person as to how to obtain the record. [CIC §38.6(b)(9)]  Provide a list of the records currently transmitted by this method of delivery.

i.  If the Company received information indicating that the record sent by electronic transmission was not received by the person, explain the steps taken by the Company to complete delivery and provide five sample files from the review period.  [CIC §38.6(b)(10)]

j.  Is there any price difference for policies or contracts purchased by person who opt-in as opposed to those who decline to receive electronic records? [CIC §38.6(b)(11)]

k.  Explain the Company's procedure to verify a person's email address via paper writing when sent by regular mail when more than 12 months have elapsed since the Company's last electronic communication.  [CIC §38.6(b)(12)]

14.  <u>Predictive Modeling</u>:  For all life products issued by the Company, has the Company utilized predictive modeling and data analytics for underwriting, risk selections, rating/pricing, tier placement, to expedite the underwriting process, etc. within the last five years?  If yes, or if a model is being tested or in a pilot program, please provide the following:

a.  Describe the Model process and provide any materials, including flowcharts, to help explain the process.
b.  If third-party vendor(s) are utilized, please provide the name of each vendor. If the Model is proprietary, who was it purchased from?
c.  Please advise the specific date implemented (or will be implemented).
d.  Please advise which products utilize the Model.
e.  Identify which applications are subject to the Model, listing all characteristics evaluated.
f.  At which step in the underwriting process is the Model used (ex: Eligibility, evaluation of data, rating, etc.)?
g.  Is the Model used to streamline the underwriting process? If so, how?
h.  What data elements/data points are evaluated by the Model? From which data sources is information collected?
i.  Are applicants aware/put on notice that the Model is used? Is a specific disclosure provided to applicants when the Model is used? If so, please provide a copy.
j.  Is a numerical score calculated for each application?  If so, provide a key demonstrating how scores are developed and then used (i.e. to underwrite, place a risk in a rate classification,

determine eligibility, etc.). If a method other than a numerical score is used, please describe.

k.  Is there a threshold that moves the application into another underwriting path? Please describe.

l.  If the Model's results are used to decline a risk, what information is the consumer provided with regarding the declination?

m.  If the Model uses data protected by the Fair Credit Reporting Act, please provide a copy of the disclosure provided to applicants.

n.  Of the active policies selected for review by the examiners, please identify any policies that were evaluated by the Model, the results of the evaluation, and how use of the Model impacted underwriting. Of the terminated policies selected, please identify any that were declined or terminated based on the Model's results.

15.  <u>Genetic Testing</u>: Please indicate whether genetic testing is used to determine insurability. As they pertain to CIC §§10148 and 10149, please outline your procedures related to the purpose of genetic testing, informed consent, cost of the test, and privacy protection provisions.


**<u>Individual Life and Annuities</u>**

16.  <u>Policy Forms, Riders, Endorsements and Filings  - Individual Life Insurance and Individual Annuities</u>:  Please provide a spreadsheet which lists all policy forms, contracts, certificates, supplemental benefits, and riders including amendments or endorsements for each of your products by name and form number. List each product marketed/sold during the three month review period of **October 1, 2017 through December 1, 2017** and below each product list every form, rider and endorsement applicable to that product. The spreadsheet is to include the corresponding filing numbers for the listed policy forms, contracts, certificates, supplemental benefits, and riders including amendments and endorsements for the examination review period that were filed with the Department for each product subject to review in this exam. If separate forms, endorsements, or riders are used for Senior Citizens, please indicate.

17.  <u>Policy Form Compliance  –Individual Life Insurance and Individual Annuities</u>: Identify the Company's top two grossing products for Individual Life and top two grossing products for Individual Annuities during the **most recent calendar year**. Provide the forms associated with those products and highlight the sections of the forms which comply with the following California Insurance Code provisions

   a.  <u>Incontestability</u>  - CIC §10113.5(a): An individual life insurance policy delivered or issued for delivery in California shall contain a provision that it is incontestable after it has been in force, during the lifetime of the insured, for a period of not more than two years after its date of issue, except for nonpayment of premiums and except for any of the supplemental benefits described in CIC §10271.

   b.  <u>Surrender Request</u> - CIC §10164.2: This section outlines the maximum elements that can be required in a surrender request. A notice or endorsement can satisfy this section. If a notice is used please provide a copy of the notice form.

   c.  <u>Required Life Provisions</u> - CIC §10160: Outlines several provisions required on all life products except as provided in CIC §10165. These provisions include but are not limited to nonforfeiture benefit, cash value, selection of benefits, cash value of paid-up policy, statement of tables, interest, and methods used in the calculation of cash surrender values.

   d.  <u>Nonforfeiture Benefits</u> - CIC §10167.5: Notice of implementation of

nonforfeiture benefit; options; applicability. Whenever a nonforfeiture benefit is implemented by a life insurer in connection with a defaulting policy owner, the insurer shall provide a notice to the policy owner which explains that action and refers the policy owner to the other available options, if any, under the provisions of the policy.

   e. <u>Nonforfeiture Law</u> – CIC §10168.4: For an individual deferred annuity contract issued or delivered on or after January 1, 2016, to persons age 65 or older, the death benefit shall be at least equal to the annuity cash value or accumulation value and shall exclude any surrender charges or penalties upon death.

   f. <u>Maturity Date</u> – CIC §10168.6: For the purpose of determining the benefits calculated under CIC §§10168.4 and 10168.5, how does the Company assign the fixed maturity date and/or allow election at optional maturity dates for both new and existing contracts?

   g. <u>60-day Grace Period</u> - CIC §§10113.71(a) and 10295.14(a): Every individual life policy issued or delivered on or after January 1, 2013, and every Accelerated Death Benefit shall contain a provision for a grace period of not less than 60-days from the premium due date.

18. <u>Illustrations</u>: Please provide a sample copy of the basic illustrations used for products filed as marketed with illustrations (CIC §§10509.954, 10509.956 and 10509.957). In addition provide a copy of the basic illustrations, including the cover sheet or sticker used for delivery to senior citizens per CIC §10127.11. Also pursuant to Section 10127.11, provide a copy of the wording, cover sheet, or sticker used with nonpreprinted illustrations of nonguaranteed values delivered to senior citizens.

19. <u>Annual Statements and Illustrations</u>: Please provide a copy of the annual statement used for each product for policies designated as one for which illustrations will be used in accordance with CIC §10509.959. In addition, please provide sample copies of life and annuity annual statements for senior citizen policyholders per CIC §10127.12. This code requires that the annual report include current accumulation value and current cash surrender value.

20. <u>Mandatory Notice Requirements</u>: Please provide copies of the notices, disclaimers, and disclosure forms used as required by the following California Insurance Code provisions. Also provide information on how the delivery of these notices, disclaimers, and disclosure forms to the applicant or policyholder is documented. If this is a group of insurers and these notices, disclaimers, and disclosure forms apply to all companies in the same manner, then only one response is needed.

   a. <u>Buyer's Guide</u> – CIC §10509.975: Requires that a buyer's guide be provided a prospective buyer or policyholder. Please provide a copy of the guide.

   b. <u>Senior Surrender Charge</u> – CIC §10127.13(a) and (b): All individual life insurance policies and individual annuity contracts for senior citizens, which contain a charge for surrender, partial surrender, excess withdrawal, or surrender penalties shall disclose the location of the charge, the charge time period, the charge information, and any associated penalty information on the front of the policy jacket or on the single cover page. Please show how the Company is in compliance on each product subject to this code section.

   c. <u>Elder Disclosure</u> – CIC §789.8(b) – Sale or liquidation of any stock, bond, IRA, annuity, or any other asset to fund the purchase of a life or annuity product may have tax consequences, penalties, or other costs.

   d. <u>In-home Senior Visit</u> – CIC §789.10(b) – Written 24-hour advance notice to senior when a meeting will take place in the senior's home.

*Schmidt v. Protective*

Protective 007186

21. <u>Policy Delivery</u>: For life policies in which delivery is required to start the period during which the owner may exercise a statutory right to return the policy, how does the Company(ies) deliver the policy and document proof of delivery per CIC §10113.6?

22. <u>Premium Increase Notice – Individual Life</u>: For each company subject to this examination, please explain the procedure used to notify an individual life policyholder of an increase in premium. Provide a copy of the premium increase notice that is sent per CIC §10113.7.

23. <u>Additional Designees</u>: For any individual life insurance policy issued on or after January 1, 2013:
    a. Does the Company give the applicant the option to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for non-payment of premium? [CIC §10113.72(a)]
    b. Provide a copy of the form that is given to an applicant to make the designation allowed above. [CIC §10113.72(a)]
    c. Does the Company notify the policy owner on an annual basis of the right to change or add a designee? [CIC §10113.72(b)] Explain how this is communicated and provide a sample(s).
    d. Is a notice of lapse sent to the policy owner and any additional designees 30-days prior to the effective date of the lapse or termination and within 30-days after a premium is due and unpaid? [CIC §10113.72(c)]

24. <u>Notice of Paid Up Nonforfeiture Benefit</u>: In the event that a policy of Life Insurance comes paid up pursuant to a paid up nonforfeiture benefit does the Company send a notice to the owner of the policy not later than six months after the date the nonforfeiture benefit becomes effective and once every five years thereafter? Does the notice advise the owner of the policy that the owner, within six months after the date of the notice, may request that the Company send notices to all direct beneficiaries named in the policy? Provide a copy of the notice. [CIC §10192]

25. <u>Advertising Compliance Certification</u>: Please provide us with a copy of the certificate required by CCR §2547.9 (b), which requires insurers to file with the Annual Statement a certificate of compliance that verifies the advertisements which were disseminated by or on behalf of the insurer in this State during the preceding year complied with the insurance laws of California.

26. <u>Annuity Suitability</u>:
    a. Provide a copy of the suitability forms utilized by the Company and its agents to comply with CIC §10509.910 et al.
    b. Describe the Company's supervision system as required by CIC §10509.914(f)(1), or if the Company relies solely on FINRA broker-dealers please advise how the Company ensures FINRA rule 2330 is followed.
    c. Confirm if the Company verifies that an insurance producer has completed the annuity training required under CIC §10509.915 before allowing a producer to sell an annuity product for the Company. Describe the method used to satisfy the Company's responsibility under the law.

## **Group Life and Group Annuities**

V 04-26-17

*Schmidt v. Protective*
Protective 007187

27. Policy Forms, Riders, Endorsements and Filings  - Group Life and Group Annuities:  Please provide a spreadsheet which lists all policy forms, contracts, certificates, supplemental benefits and riders including amendments or endorsements for each of your products by name and form number. List each product marketed/sold during the three month review period of **October 1, 2017 through December 31, 2017** and below each product list every form, rider and endorsement applicable to that product. The spreadsheet is to include the corresponding filing numbers for the listed policy forms, contracts, certificates, supplemental benefits, and riders including amendments and endorsements for the examination review period that were filed with the Department for each product subject to review in this exam. If separate forms, endorsements, or riders are used for Senior Citizens please list those on the spreadsheet as well.

28. Notice of Paid Up Nonforfeiture Benefit: In the event that a policy of Life Insurance comes paid up pursuant to a paid up nonforfeiture benefit does the Company send a notice to the owner of the policy not later than six months after the date the nonforfeiture benefit becomes effective and once every five years thereafter?  Does the notice advise the owner of the policy that the owner, within six months after the date of the notice, may request that the Company send notices to all direct beneficiaries named in the policy?  Provide a copy of the notice. [CIC §10192]

29. Policy Form Compliance  – Group Life: Identify the Company's top two grossing products for Group Life and the top two grossing products for Group Annuities during the **most recent calendar year**. Provide the forms associated with those products and highlight the sections of the forms, which comply with the following  California  Insurance Code provisions.
    a. CIC §10203.4(a) and (b)  - Amended definition  of "dependent"
    b. CIC §10206     - Incontestability clause for group life policies.
    c. CIC §10208     - Misstatement of age.
    d. CIC §10207     - Insurance Contract and Certain Representations.
    e. CIC §10209     - Individual  Certificates.
    f. CIC §10210     - New Employees
    g. CIC §§10113.71(a) and 10295.14(a) - 60-day Grace Period from the premium  due date for group  life policies  issued or delivered  on or after January 1, 2013, and every Accelerated Death Benefit for policies  issued or delivered  on or after January 1, 2014.

## Advertising

30. Advertising  Materials: Provide a spreadsheet listing all advertising and marketing materials utilized  by the Company to make its products available to the public during the review period of **October 1, 2017 through December 31, 2017**. This should  include  materials developed by the Company and the producers for distribution  (e.g. interest cards, television,  radio and print advertisements, social media postings such as Twitter, Facebook, Linkedin).  Within the spreadsheet include  a description  of each item, the date of implementation  and the expiration date (if applicable).  Please advise us of your procedures for monitoring  the development  and use of advertising  material including  the use of social media websites by your agents. Does the Company offer smart phone applications?  Please outline  the information  or services provide by these applications.

31. Sales Training  Material and Communications:  Provide a copy (if the number of materials is over 100, please provide  a spreadsheet listing  all materials  from with the examiner  may make a selection) of all sales training  material and a copy of any sales communication  given to your

*Schmidt v. Protective*
Protective 007188

agents during the **previous twelve months through December 31, 2017** for the lines of business subject to this review. Include information on your use of the Internet as a means of communication with agents and customers, and provide all Internet addresses for the Company. Include a copy of all training presentations, handouts, updates, bulletins, sales techniques, missives, letters, and information regarding sales seminars/meetings including the frequency, location of seminar/meeting and topics covered.

## Agents and Brokers

32. Agent Licensing and Appointments:  Please describe your procedures for the following:
    a) How does the Company verify that all persons authorized by and on behalf of your company to transact all classes of insurance in California are licensed as an insurance broker-agent and/or a life agent [CIC §§1621, 1622, 1625, 1626].  The response should clearly describe the Company's procedure prior to appointing the agent and for periodically verifying agent license status.
    b) How does the Company verify that all agents who it has appointed to sell annuities have completed the training required by CIC §1749.8?
    c) How does the Company verify that all agents who transact variable annuity contracts are registered to sell securities in California in accordance with the rules of the United States Securities and Exchange Commission or FINRA required by CIC §1758.3?

33. Oversight and Disciplinary Actions:  Please explain how the Company monitors the sales practices of the agents/brokers who sell the lines of business subject to this review. Does the Company audit the sales practices of its agents/brokers, and sales training staff and with what frequency? Provide a copy of criteria evaluated in the audits. Please provide a copy of any audits completed by the Company over the **last twelve months through December 31, 2017.**  What are the Company's procedures for corrective actions when an agent/broker's practices are not in line with that of the Company? Please provide the number of agents or brokers that have been terminated in the **last twelve months through December 31, 2017,** the reason for which they were terminated and from which office the agent or broker was employed.

## Consumer Complaints

34. Insurer Complaint Handling Procedures: Please provide us with the following:
    a) Consumer complaint handling procedure.
    b) List (log) of California complaint filed by consumers.
    c) List (log) of California complaints filed by the Department of Insurance.

## Privacy

35. Privacy Protections:  The following are mandatory provisions concerning an insured's nonpublic personal information that each insurer, agent, or insurance-support organization must comply with as required by the California Insurance Code.  Please provide us with a written description of the insurer's compliance with each section of the code listed below. Also, provide us with samples of the mandated provisions or disclosures to confirm the insurer's compliance with these laws.  If this is a group of insurers and these provisions and disclosures apply to all insurers in the same manner, then the questionnaire may be answered only once.  Otherwise, the questionnaire must be answered for each insurer, individually.   Please indicate (N/A) when the item is not applicable.

V 04-26-17

*Schmidt v. Protective*
Protective 007189

a. CIC §791.03: Pretext Interviews. No insurance institution, agent, or insurance-support organization shall use or authorize the use of pretext interviews to obtain information in connection with an insurance transaction.

b. CIC §791.04: Notice of information practices to all applicants or policyholders in connection with insurance transactions.

c. CIC §791.05: Questions designed solely for marketing or research purpose. An insurance institution or agent shall clearly specify those questions designed to obtain information solely for marketing or research purposes from an individual in connection with an insurance transaction.

d. CIC §791.06: Disclosure authorization forms; requirements for forms or statements.

e. CIC §791.07: Investigative consumer reports; information concerning interviews and copies of reports.

f. CIC §791.08: Response to request for access to recorded personal information; medical record information; fee.

g. CIC §791.09: Correction, amendment, or deletion of recorded personal information; notice; statement of individual.

h. CIC §791.10: Adverse underwriting decisions; specific reasons for decision.

i. CIC §791.11: Prohibited information concerning previous adverse underwriting decisions or previous insurance coverage.

j. CIC §791.12: Adverse underwriting decision; prohibited grounds.

k. CIC §791.13: Requisites to disclosure of personal or privileged information; authorization; persons to whom disclosure may be made.

l. California Code of Regulations (CCR) §§2689.2 through 2689.22: Governs the treatment of nonpublic personal information about individuals who obtain or are claimants or beneficiaries of products or services primarily for personal, family or household purposes. Please explain the Company's compliance with the above mentioned code sections. For each product or program, provide us with samples of the provisions or disclosures to confirm the Company's compliance with the law.

m. California Civil Code (CCC) §1798.85: Provides for mandatory provisions concerning the use of an individual's Social Security Number. Please explain the Company's compliance with the above mentioned code and each subsection of the code. For each product or program, provide us with samples of the provisions or disclosures to confirm the Company's compliance with the law.

n. Financial Code §4053(a): Prohibits an insurer from sharing a consumer's nonpublic personal information with any non-affiliated third party unless the consumer has provided written consent for the insurer to share the information ("opt-in"). The written consent must comply with the provisions of Financial Code §4053(a)(2).

o. Financial Code §4053(b): Prohibits an insurer from sharing a consumer's nonpublic personal information with any affiliate unless the insurer is given the opportunity annually in writing to request that his information not be shared in this manner ("opt-out"), and that information is only shared regarding consumers who did not "opt-out." (The insurer may also choose to use an "opt-in" procedure for sharing of information with affiliates.) The notification and "opt-in" form must comply with the provisions of Financial Code §4053(d).

p. Financial Code §4053(c)(3): Prohibits an insurer from disclosing medical record information to either affiliates or non-affiliated third parties unless the insurer allow the consumer to "opt-out" of sharing with an affiliate, or "opt-in" prior to sharing with a non-affiliate.

V 04-26-17

*Schmidt v. Protective*

Protective 007190

## BUDGET AND STAFF PROJECTION

### Protective Life Corporation

The California rating and underwriting examination of the Protective Life Corporation will begin on February 26, 2018. The exam will be conducted at our office in Sacramento, California. The examination is expected to last no more than 50 working days.

The examination team will include the following analysts:

> Mr. Gus Constantinou, Examiner in Charge and Associate Insurance Rate Analyst
> Ms. Courtney Bellmer, Associate Insurance Rate Analyst

The insurer under examination is responsible for paying the costs of the examination, including billing and travel expenses. All costs will be billed to your company. The billing rate for each analyst is $164 per hour, plus expenses. Supervisory time and time spent by Don McKinley (Senior Market Analyst) preparing pre-exam analysis information for the exam team will also be billed as applicable.

The number of days allocated for this exam is based on the assumption that all materials are made available to the analysts in a timely manner. Significant delays of materials or responses may lengthen the exam and lead to significant increases in exam costs.

11

*Schmidt v. Protective*
Protective 007191

## RATING AND UNDERWRITING EXAMINATION FOCUS

The California Rating and Underwriting Examination of Protective Life Corporation will focus on the following products:

**Individual Life Insurance Products**
**Group Life Products**
**Annuities**

The review will include analysis of the following information:

I. COMPANY PROFILE

    1. Organization and operation of the company
    2. Method(s) of doing business
    3. Authorized lines of business
    4. Distribution of premiums and loss experience
    5. Advertising materials
    6. Consumer complaint trends

II. UNDERWRITING PROCEDURES

    1. Description of programs written
    2. Adopted rules, rates and forms

III. RATING PRACTICES

    1. Policies Reviewed:
        Active Policies including new business, renewal business, and replacements
        Quoted, but Not Issued or Contracts Not Taken
        Declined policies
        Lapsed, surrendered, or withdrawn policies
        Rescinded
        Non Renewal policies

    2. Application of adopted rules, rates, and forms

    3. Underwriting results per program

V 04-26-17

*Schmidt v. Protective*
**Protective 007192**

## EXAMINATION CHRONOLOGY

1. <u>Notification of Examination</u>: Letter informing company of impending exam.

2. <u>Coordinator Contact</u>: Delivery of coordinator's information guide, and scheduling of examination.

3. <u>Examination Process</u>: Introductory contact with the company by the exam team, followed by the examination process which is described in the Rating and Underwriting Examination attachment.

4. <u>Exit Meeting</u>: At the end of the on-site examination, the exam team will summarize findings and outstanding issues to company representatives. If additional questions need to be answered after the exam team is no longer on-site, written correspondence following up on these items will be sent. Once all questions are answered, the insurer has the opportunity to meet with the exam team either or in person or by telephone to go over the items that will appear in the examination report.

5. <u>Examination Report</u>: Once all outstanding issues are resolved, the exam team will write and submit the Report of Examination to the company. The report should be submitted within 30 days of the conclusion of the exam. This is a preliminary draft of the report.

6. <u>Company Review</u>: Upon receipt of the preliminary draft of the Report of Examination, the company has 30 days to review the report. If no response is received from the company at the end of this time, the report will be considered officially adopted by the Department. If, upon review, the company disagrees with any of the contents of the report, a letter of response must be submitted to the examination team. Once a resolution to the matter is developed, the company will be given additional time to review the revised report.

7. <u>Adopted Report</u>: Once the report has been adopted by our Department, an official copy is sent to the insurer via certified mail. If the insurer would like to submit a response to the final report, it may do so within 10 days.

If the examination develops criticisms which require legal action to be resolved, the following steps may be taken:

8. <u>Notice of Non-Compliance</u>: The insurer is formally advised that it is in violation of California law.

9. <u>Formal Hearing</u>: Failure to resolve the issues cited in the Notice may lead to a formal public hearing. Final regulatory action will be determined by the Commissioner of Insurance for the State of California.

10. <u>Penalties</u>: The Department of Insurance may levy fines or other penalties in accordance with the provisions of the California Insurance Code.

V 04-26-17

*Schmidt v. Protective*

Protective 007193

## PREPARING FOR THE RATING & UNDERWRITING EXAMINATION

The following are suggested steps the insurance company can take in preparing for the rating and underwriting examination:

1. **Provide** all requested information at the start of the exam, especially policy lists and complete, current underwriting manuals. The examiners must receive all manuals, underwriting guidelines, procedures, and coverage forms that were in effect for all of the files to be reviewed in the policy sample.

   We also ask that during the course of the examination, and until the examination report is officially filed with the Insurance Commissioner, that the company advise us of any changes in its underwriting and rating practices. Such changes include, but are not limited to: procedural changes; company re-organization; revision of underwriting or rating manuals; revision of underwriting guidelines or practices; and revision of forms or applications used for consideration of coverage, as they pertain to the period of time and company being examined.

2. **Designate** an Examination Coordinator who is technically knowledgeable for the type of exam to be conducted and who is familiar with regulatory requirements and the audit process. The Coordinator should know where policy files are maintained and should be generally familiar with the company's products and procedures. The Coordinator should have either the authority to respond to examination issues, or have ready access to those with such authority. All exam correspondence should be directed through the designated Examination Coordinator.

3. **Inform** staff of the priority status of the examiner's requests for files and other information and assign relevant duties accordingly. This preparation should be done for all branch offices, as applicable to the examination. A procedure for copying and shipping files for the examination should be established with each branch (or agent) prior to the start of the exam.

   When copies of the policies (new and renewal) and files (declined or not taken) are provided to the examiners, they must be complete file copies, containing all relevant information. A complete file copy includes, but is not limited to: Correspondence to and from the applicant and agent; Applications and Questionnaires; Policy Illustrations; Rating Worksheets; Underwriter Notes and all other supporting documentation, including Referral to other areas of the company; Policy Replacement documents; signed Authorization and Disclosure Forms; and any pertinent documentation printed from the Computer System to support the company's underwriting review and decisions.

V 04-26-17

*Schmidt v. Protective*
Protective 007194

## HOW TO AVOID CRITICISMS AND PENALTIES

### RESPONDING TO THE EXAMINERS

The following are suggestions on steps that the company can take when responding to audit inquiries and criticisms of insurer practices:

1. Respond to all questions and criticisms promptly.

2. The company must be complete in its responses to all audit questions and criticisms, both as they relate to individual policy files and to general company practices. Responses should be clear and focused. If there are multiple questions or criticisms for a particular file or procedure, address each of the criticisms in the response. Attach copies of company guidelines, rating manual pages, underwriter or agent notes, and any other supporting information to the response. If it is apparent that an extended period of time will be necessary to prepare a response, advise the examiners of the expected timeframe.

3. Responses delivered through the designated Examination Coordinator are most efficient.

4. When discussing prior approval issues, such as form changes, refer to specific filings by California Department of Insurance filing number.

5. Provide step-by-step, labeled manual rating calculations when responding to questions about rating or premium development. Include the resulting premium difference for all errors, regardless of whether an overcharge or undercharge has occurred. (Overcharges should be refunded, undercharges should be corrected at policy anniversary.) If an error resulted in overcharges for multiple terms, calculate the return premium back to the inception of the error, but no further than the past three years.

6. When the company's response indicates a general, procedural, or system problem, as revealed in an individual file criticism, the company should take the initiative of stating how the company will prevent the error from recurring in the future, on other files. The company should also indicate what steps will be taken to identify and correct other in-force policies containing the error. The response should be comprehensive and specific enough to be incorporated into the Examination Report as both a response to the criticism and as a plan for corrective action. The response should be clear enough so that the issue can be reviewed, at a later date or future exam, to verify that the company took the corrective action as indicated in its response.

7. Provide the date that each corrective action will be, or was, implemented by the company. If the implementation is delayed, please provide an explanation of the reason(s) for the delay.

*Schmidt v. Protective*
Protective 007195

## MODIFYING INTERNAL AUDIT PROCEDURES

As a long-term approach to avoiding criticism in the future and demonstrating a commitment to regulatory compliance, the company should consider including the following suggestions in its use of internal audit procedures:

1.   Conduct rating spot checks, calculating premiums manually.

2.   Verify compliance with all underwriting guidelines in the in-force policy files.

3.   Verify that all new guidelines are consistent with the company's adopted plans/procedures.

4.   Verify that all impacted branches and agents receive revisions to rates and underwriting guidelines with implementation dates that are clearly stated. Remember that rate or classification changes must be implemented on one uniform policy effective date, for both new and renewal business.

5.   Review company rules, guidelines and procedures for possible ambiguities or inconsistencies, as seen from the perspective of fairness to diverse insurance risks.

6.   Verify the consistency of rating, underwriting, and processing procedures between offices.

7.   Verify compliance with statutes and regulations, particularly new regulations (review the rating plan, eligibility guidelines, underwriting rules, etc.).

In order to accomplish these tasks efficiently and effectively, the company should also consider the following suggestions:

8.   Create a Compliance Unit or designate a Compliance Coordinator with authority to challenge or change underwriting policy/procedures and to participate in product development. This unit/person will act as the central resource for form filing and compliance questions, for all branches and the Home Office of the company.

9.   Create internal procedures for the forwarding and distribution of new regulations to the Compliance Unit or Compliance Coordinator.

10.   The Compliance Unit/Coordinator should approve new programs, and revisions to existing programs, before the company's implementation of such programs.

11.   Make regulatory compliance easy for the underwriters, raters and agents. This can be done by utilizing applications, questionnaires, inspection reports, etc. that provide all information necessary to implement the rating and classification plans. Make underwriting guidelines clear to ensure consistent receipt of the required supporting information. Use checklists when possible and allow space for written documentation on all forms that require narrative information.

V 04-26-17

*Schmidt v. Protective*
Protective 007196

### EMPHASIS OF RATING & UNDERWRITING EXAMINATIONS

The following are suggestions for the most important areas to keep in mind for rating and underwriting examinations of life and disability insurers:

**Disclosures and Policy Provisions**: The exam team will seek to verify that the insurer is fulfilling all legal obligations to disclose information to consumers, and that all timelines for such disclosures are being met. The examiners will also review policy contracts and endorsements / riders, to ensure that legal requirements are being met regarding content or restrictions on the insurance contract.

**Advertising and Marketing Practices**: The exam team will review the insurer's marketing and advertising materials, including a review of internet web sites, to verify that all requirements are met regarding disclosure of insurer and Department addresses and phone numbers, options available to the insurer, correct rating and underwriting provisions and restrictions, and other related legal requirements.

**Consistency**: Insurers use their vast technical knowledge and experience in developing underwriting guidelines. To make this effort worthwhile, the insurer must make sure that these guidelines are followed down to the individual file level. Inconsistencies in the application of rates and underwriting guidelines are unfairly discriminatory to the consumer and negate the purpose and intent of the insurer's classifications and rating plans.

**Documentation**: Insurers must document all subjective areas in the rating and underwriting process. Thus, when creating a new program, or changing an existing program, the insurer must remember that the less specific the guidelines are, the more judgment that will be allowed by the underwriter. Consequently, the more judgment that is used, the greater the requirement for file documentation to support the action taken on the case.

In the era of the "Paper-Free" workplace, the insurer must consider underwriter documentation requirements when developing its automated systems. It is generally cheaper to build in an area for underwriting notes while the automated system is developed, rather than re-program it later. Also, keep in mind that the underwriting notes must be dated, and the originating and supportive source identified. The examiners must be able to verify that the insured was sold the coverage, plan and classification that was requested. Additionally, the examiners must be able to verify that the rating used was based on the case's actual risk characteristics and in accordance with the company's guidelines.

V 04-26-17

*Schmidt v. Protective*

Protective 007197

# EXHIBIT K

CALIFORNIA DEPARTMENT OF INSURANCE
**FIELD RATING & UNDERWRITING BUREAU**

**RATING & UNDERWRITING EXAMINATION**

**#23:  Additional Designees:** For any individual life insurance policy issued on or after **January 1, 2013**:

Company Response – PLICO:

a.    Does the Company give the applicant the option to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for non-payment of premium? [CIC §10113.72(a)]    Yes

b.    Provide a copy of the form that is given to an applicant to make the designation allowed above. [CIC §10113.72(a)].   See attached, 3rd Party Designee letter.

c.    Does the Company notify the policy owner on an annual basis of the right to change or add a designee? [CIC §10113.72(b)]   Explain how this is communicated and provide a sample(s). See attached letter regarding 3rd Party Designee.

d.    Is a notice of lapse sent to the policy owner and any additional designees 30-days prior to the effective date of the lapse or termination and within 30-days after a premium is due and unpaid? [CIC §10113.72(c)]   Yes

The CA 3rd party designee letter is CATPD.  It is generated on the policy anniversary for the following criteria:
Issue State = CA.
Issue Date 1/1/2013 or later.
PLOB 20, 21 or 23 i.e. life policies only.

See Attached for sample letters:
3rd Party Designee Letter for CA for PL

NOTE:
WCL ceased writing new business as of 12/1/2011
MONY ceased writing new business as of 12/31/2005

*Schmidt v. Protective*
Protective 007198

**Protective Life Insurance Company**
Life and Health Insurance Administration
Post Office Box 12687
Birmingham, AL 35202-6687



August 5, 2016

66310
█████████████████
███████████████
ANAHEIM CA 92804-6741



Re: Policy Number: ███████████
    Insured: ███████████████

NOTIFICATION OF RIGHT TO NAME A THIRD PARTY DESIGNEE

Under California law, you have the right to designate a third party to receive copies of notices affecting your insurance coverage (such as notices of lapse and cancellation).

We will remind you annually of this right to ensure that you have an opportunity to take advantage of your rights under California law.

If you wish to designate a third party to receive copies of notices affecting insurance coverage, please provide us with the information below and return this form to Protective Life Insurance Company.  The designation will be effective no later than 10 business days from the date received by us.  The law requires that the person so designated sign below and indicate his or her acceptance.  If you have any questions, please call us at 1-800-866-9933.

PLEASE DESIGNATE THIRD PARTY AS FOLLOWS:

Name: _____

Address: _____

00682

ACCEPTANCE BY THIRD PARTY DESIGNEE:

I agree to act as the Third Party Designee:


Signature of Third Party


_____

# EXHIBIT L

[THIS ENTIRE REPORT MAY BE MADE PUBLIC IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA INSURANCE CODE SECTIONS 735.5(a), (b) and (c)]

## REPORT OF THE MARKET CONDUCT EXAMINATION OF THE RATING AND UNDERWRITING PRACTICES, AS THEY RELATE TO LAWS OTHER THAN CIC § 790.03, OF THE

# PROTECTIVE LIFE CORPORATION
### (NAIC GROUP #0485)

## AS OF DECEMBER 31, 2017

## ADOPTED ON SEPTEMBER 17, 2019

## STATE OF CALIFORNIA



## CALIFORNIA DEPARTMENT OF INSURANCE
## MARKET CONDUCT DIVISION
## FIELD RATING AND UNDERWRITING BUREAU

Format 735.5 ed. 7-1-16

*Schmidt v. Protective*
Protective 007302

# NOTICE REGARDING CONFIDENTIALITY

The provisions of Section 735.5(a), (b), and (c) of the California Insurance Code describe the Commissioner's authority and exercise of discretion in the use and/or publication of any final or preliminary examination report or other associated documents.  Section 12938(b)(1) of the California Insurance Code requires the publication of certain legal documents and examination reports.

Format 735.5 ed. 7-1-16

*Schmidt v. Protective*
Protective 007303

## **FOREWORD**

This report is written in a "report by exception" format. This report does not present a comprehensive overview of the subject insurer's practices. The report contains only a summary of pertinent information about the lines of business examined and of the non-compliant or problematic activities or results that were discovered during the course of the examination, along with the insurer's proposals for correcting the deficiencies.

This report contains only alleged violations of laws other than CIC § 790.03 that were alleged during the examination. While this report contains alleged violations of law that were cited by the examiner, violations of CIC § 790.03 or other laws not cited in this report may also apply to any or all of the non-compliant or problematic activities that are described herein. All unacceptable or non-compliant activities may not have been discovered. Failure to identify, comment on, or criticize non-compliant activities in this state or other jurisdictions does not constitute acceptance of such practices.

Alleged violations identified in this report, any criticisms of practices, and the Companies' responses, if any, have not undergone a formal administrative or judicial process.

1

Format 735.5 ed. 7-1-16

*Schmidt v. Protective*
Protective 007304

## SCOPE OF THE EXAMINATION

Under the authority granted by California Insurance Code (CIC) Part 2, Chapter 1, Article 4, Sections 730, 733, and 736 and Article 6.5, Section 790.04, an examination was conducted of the rating and underwriting practices and procedures in California of the **PROTECTIVE LIFE CORPORATION** (NAIC Group #0458), comprised in California of the:

MONY LIFE INSURANCE COMPANY (NAIC #66370, CDI #0124-8),

PROTECTIVE LIFE AND ANNUITY INSURANCE COMPANY (NAIC #88536, CDI #2351-5),

PROTECTIVE LIFE INSURANCE COMPANY (NAIC #68136, CDI #2068-5)

and the

WEST COAST LIFE INSURANCE COMPANY (NAIC #70335, CDI #0448-1)

hereinafter referred to individually as MONY, PLAIC, PLIC, and WCLIC, and collectively as Protective Life, the Companies, or the Group.  The California Department of Insurance will be referred to as the Department.

The examination covered the rating and underwriting practices of PLIC's life line of business during the period of October 1, 2017 through December 31, 2017.  The examination was made to discover, in general, if these and other operating procedures of PLIC conform to provisions of the California Insurance Code (CIC), the California Code of Regulations (CCR), and other applicable insurance law. In addition, the examination included a review of specific information provided by MONY, WCLIC and PLAIC during the period between January 1, 2017 and December 31, 2017.

2

Format 735.5 ed. 7-1-16

*Schmidt v. Protective*
Protective 007305

To accomplish the foregoing, the examination included:

1.  A review of the rates, rating plans, and underwriting rules made or adopted by PLIC for use in California, including a review of records of data, statistics, or information maintained by PLIC in support of or relating to such rates and rules.

2.  A review of the application of such rates and rules by means of an examination of policy files and related records, including forms, to evaluate rating, underwriting, and risk selection practices.

3.  A review of PLIC's advertising materials, which consisted of print advertisements distributed through direct mail, product brochures that are available in the offices of PLIC's appointed agents, and the Companies' internet site at www.protective.com.

4.  A review of the Department's market analysis results, a review of any consumer complaints and inquiries received by the Department about these Companies in the year prior to the start of the examination, a review of prior market conduct examination reports on these Companies, and a review of any prior enforcement actions by the Department regarding these Companies.

The examination was conducted principally at the Department's office in

Sacramento, California.

Format 735.5 ed. 7-1-16

*Schmidt v. Protective*
Protective 007306

## EXECUTIVE SUMMARY

This examination included a review of policies that were in-force or were declined or terminated during the period of October 1, 2017 through December 31, 2017 referred to as the "review period," and a review of the Protective Life Insurance Company's general practices and procedures related to rating, underwriting, advertising and marketing, and risk selection.  The examiners reviewed 136 in-force policies and 136 terminated and declined policies.  In addition, the examination included a review of specific information provided by MONY, WCLIC, and PLAIC. These companies were no longer marketing or selling new business in California. MONY ceased writing new business as of December 31, 2005, WCLIC ceased writing new business as of December 1, 2011, and PLAIC was acquired by Protective Life Insurance Company in 1983 and did not market or sell policies in California during the review period.

Within the scope of this report, four general practices were alleged as being in violation of California law.  No premium has been returned to consumers as a result of this examination.

The areas of non-compliance identified in this examination included deficiencies in certain notices provided to senior citizens on individual variable life insurance products and failure to maintain documentation of all relevant suitability questions. Details regarding the examination results are provided in the final section of this report.

*Schmidt v. Protective*
Protective 007307

## <u>METHOD OF DOING BUSINESS</u>

Protective Life Insurance Company distributes individual life insurance and annuities through direct internet sales, independent agents and through financial advisors. PLIC sells term life, universal life policies and annuities through independent agents. Currently, there are approximately 33,212 appointed independent agents for Protective Life Insurance Company.

5

*Schmidt v. Protective*
Protective 007308

## AUTHORIZED CLASSES OF BUSINESS

The Companies are authorized to transact the following classes of business in California:

| Class No. | Class Of | MONY | PLAIC | PLIC | WCLI |
|---|---|---|---|---|---|
| 1. | Life | X | X | X | X |
| 2. | Annuities | X | | X | |
| 6. | Disability | X | X | X | X |

6

*Schmidt v. Protective*
Protective 007309

## LIFE INSURANCE PREMIUMS AND ANNUITY CONSIDERATIONS, AND ACCIDENT AND HEALTH INSURANCE CLAIMS EXPERIENCE STUDY

Life Insurance Premiums and Annuity Considerations

The following tables show Protective Life Corporation's California life insurance premiums and annuity considerations for calendar year 2016 based on data from the Annual Statements filed with the California Department of Insurance.  The "Protective Life Corporation, Consolidated" table shows premium writings and annuity considerations for all Protective Life Corporation.

PROTECTIVE LIFE CORPORATION, CONSOLIDATED
California Life Insurance Premiums and Annuity Considerations for Calendar Year 2016

| Description | Premiums and Annuities |
|---|---|
| Life Insurance<br>Ordinary<br>Group | $356,701,671<br>679,245 |
| Annuity Considerations<br>Ordinary<br>Group | 107,170,401<br>727,736 |
| Deposit-type Funds<br>Ordinary<br>Group | 4,120,404<br>0 |
| Other Considerations<br>Ordinary<br>Group | 0<br>0 |
| TOTALS | $469,399,458 |

Format 735.5 ed. 7-1-16

*Schmidt v. Protective*
Protective 007310

MONY LIFE INSURANCE COMPANY
California Life Insurance Premiums and Annuity Considerations for Calendar Year 2016

| Description | Premiums and Annuities |
|---|---|
| Life Insurance<br>  Ordinary<br>  Group | $11,217,386<br>26,195 |
| Annuity Considerations<br>  Ordinary<br>  Group | 6,281 |
| Deposit-type Funds<br>  Ordinary<br>  Group | 0<br>0 |
| Other Considerations<br>  Ordinary<br>  Group | 0<br>0 |
| TOTALS | $11,249,863 |

PROTECTIVE LIFE AND ANNUITY INSURANCE COMPANY
California Life Insurance Premiums and Annuity Considerations for Calendar Year 2016

| Description | Premiums and Annuities |
|---|---|
| Life Insurance<br>  Ordinary<br>  Group | $108,998<br>0 |
| Annuity Considerations<br>  Ordinary<br>  Group | 0<br>0 |
| Deposit-type Funds<br>  Ordinary<br>  Group | 0<br>0 |
| Other Considerations<br>  Ordinary<br>  Group | 0<br>0 |
| TOTALS | $108,998 |

8

*Schmidt v. Protective*
Protective 007311

### PROTECTIVE LIFE INSURANCE COMPANY
<u>California Life Insurance Premiums and Annuity Considerations for Calendar Year 2016</u>

| Description | Premiums and Annuities |
|---|---|
| Life Insurance<br>Ordinary<br>Group | $255,137,484<br>653,050 |
| Annuity Considerations<br>Ordinary<br>Group | 107,149,067<br>727,736 |
| Deposit-type Funds<br>Ordinary<br>Group | 4,120,404 |
| Other Considerations<br>Ordinary<br>Group | 0<br>0 |
| TOTALS | $367,787,741 |

### WEST COAST LIFE INSURANCE COMPANY
<u>California Life Insurance Premiums and Annuity Considerations for Calendar Year 2016</u>

| Description | Premiums and Annuities |
|---|---|
| Life Insurance<br>Ordinary<br>Group | $90,237,803<br>0 |
| Annuity Considerations<br>Ordinary<br>Group | 15,053<br>0 |
| Deposit-type Funds<br>Ordinary<br>Group | 0<br>0 |
| Other Considerations<br>Ordinary<br>Group | 0<br>0 |
| TOTALS | $90,252,856 |

9

Format 735.5 ed. 7-1-16

*Schmidt v. Protective*
Protective 007312

Accident and Health Insurance

The following tables show the California accident and health premium and claims experience for each company for calendar year 2016, based on data from the Annual Statement filed with the Department. The "Protective Life Corporation, Consolidated" table includes combined California premium and loss experience for all companies. No tables are shown for PLAIC or WCLIC, as there were no accident and health figures reported for these insurers. The loss ratio for each line is calculated by dividing Direct Losses Incurred by Direct Premiums Earned.

PROTECTIVE LIFE CORPORATION, CONSOLIDATED
California Premium and Loss Experience for Accident and Health for the Year 2016

| Accident and Health Coverage Category | Direct Premiums Written ($) | Direct Premiums Earned ($) | Direct Losses Incurred ($) | Loss Ratio (%) |
|---|---|---|---|---|
| Group Policies | $167,449 | $170,809 | $166,448 | 97% |
| Other Individual Policies | 2,343,832 | 2,485,016 | 3,488,940 | 141% |
| TOTALS | $2,511,281 | $2,655,825 | $3,655,388 | 138% |

MONY LIFE INSURANCE COMPANY
California Premium and Loss Experience for Accident and Health for the Year 2016

| Accident and Health Coverage Category | Direct Premiums Written ($) | Direct Premiums Earned ($) | Direct Losses Incurred ($) | Loss Ratio (%) |
|---|---|---|---|---|
| Group Policies | $158,776 | $162,136 | $166,448 | 103% |
| Other Individual Policies | 2,196,986 | 2,337,850 | 3,485,882 | 149% |
| TOTALS | $2,355,762 | $2,499,986 | $3,652,330 | 164% |

PROTECTIVE LIFE INSURANCE COMPANY
California Premium and Loss Experience for Accident and Health for the Year 2016

| Accident and Health Coverage Category | Direct Premiums Written ($) | Direct Premiums Earned ($) | Direct Losses Incurred ($) | Loss Ratio (%) |
|---|---|---|---|---|
| Group Policies | $8,673 | $8,673 | $0 | 0% |
| Other Individual Policies | 146,846 | 147,166 | 3,058 | 2% |
| TOTALS | $155,519 | $155,839 | $3,058 | 2% |

10

Format 735.5 ed. 7-1-16

*Schmidt v. Protective*
Protective 007313

## LINES OF BUSINESS REVIEWED

The Protective Life Insurance Company examination included a review of the following lines of business.

## LIFE INSURANCE

All life insurance policies and annuities are issued in PLIC.  The examination focused on the following:

Life Insurance Policies

- Term Insurance – The individual term life insurance policy provides level protection for the term of the policy.  At the end of the term, policyholders may apply for a new policy subject to evidence of insurability.  The Company offers ten-year, fifteen-year, twenty-year, twenty-five year and thirty year term policies.
- Life Protection Plus – This is an individual life insurance policy that combines pure life insurance protection with option to continue without increase to premium.
- UL - This is an individual universal life insurance policy.  It combines annual renewable term insurance and a cash value account in a universal life concept.
- VUL – This product blends protection, flexibility and investment options for cash value growth.
- SPVL – This policy is a single premium that ensures a greater death benefit, 10% free withdrawal during a 9 years surrender period and ensures growth and protection.

Annuities

Individual annuities are offered on a fixed, indexed, and variable basis.  PLIC offers the ProSaver, Protective Asset, and Flex Premium fixed annuities.  In addition, variable annuities, including the Protective VA Investor Series and ADV2 Bond are offered.

11

*Schmidt v. Protective*
**Protective 007314**

## DETAILS OF THE CURRENT EXAMINATION

The examination included a review of a sample of in-force and terminated PLIC policies and declined risks to evaluate rating, underwriting, and risk selection practices. This section of the report provides summary information regarding the examination, and regarding the statutes and regulations that were cited, or to which reference was made.

## SUMMARY OF POLICY SAMPLE REVIEWED

The policies reviewed were selected at random from the Companies' listing of policies issued or in-force, and terminated or declined during the period of October 1, 2017 through December 31, 2017.

The In-Force Policies Reviewed table shows the number of policies reviewed by line of business and the Termination Transactions Reviewed table shows the number of termination transactions reviewed by line of business, and by termination transaction type (declined, lapsed, surrendered, free look, and death claims).

PROTECTIVE LIFE INSURANCE COMPANY

In-Force Policies Reviewed

| Program | No. of Policies Reviewed |
|---|---|
| Life Insurance | |
| Term Life | 33 |
| Universal Life | 8 |
| Variable Life | 27 |
| Annuities | 68 |
| **TOTALS** | **136** |

12

*Schmidt v. Protective*
Protective 007315

PROTECTIVE LIFE INSURANCE COMPANY

Terminated Transactions Reviewed

| Program | No. of Policies Reviewed |
|---|---|
| Life Insurance | |
| Individual Life | |
| Declined | 13 |
| Surrendered | 7 |
| Death Claims | 5 |
| Lapsed | 43 |
| Annuities | |
| Surrendered | 28 |
| Free Look | **20** |
| Not-taken | 20 |
| TOTALS | 136 |

## DATA REQUEST REVIEW RESULTS

In addition, the examination included a review of specific practices and procedures by means of a review of MONY, WCLIC and PLAIC's responses to the Department's data request. No non-compliant practices were noted as a result of this review.

13

*Schmidt v. Protective*
Protective 007316

## SUMMARY OF RELEVANT LAWS

The table below identifies the provisions of the California Insurance Code (CIC), the California Code of Regulations (CCR), or other pertinent law for which violations were alleged or to which reference was made during the examination.  A total of four laws were cited based on the insurer's practices as observed during the examination.  Each law listed on the following table may be due to a general practice which affects many policyholders.  One practice can also violate multiple laws or occur across multiple companies within an insurer group.

| | Code Citation | Description of Law |
|---|---|---|
| 1. | CIC § 10127.10(a) | Every individual life insurance and annuity contract issued to a senior shall have printed on the front of the policy jacket or on the cover page a notice stating that, after receipt of the policy, the policy may be returned by the owner and shall be clearly stated in the notice and this period shall be not less than 30 days |
| 2. | CIC § 10127.13(a) | All individual life insurance policies and individual annuity contracts for senior shall contain a notice, in bold 12-point type, on the front of the policy jacket or on the cover page of the policy disclosing the location of all of the charge, the charge time period, the charge information, and any associated penalty of a surrender, partial surrender, excess withdrawal, or penalties upon surrender. |
| 3. | CIC § 10509.6(b) | Every life insurer or annuity sale shall, where a replacement is involved, send written communication to the existing life insurance or annuity to be replaced. |
| 4. | CIC § 10509.913(i)(14) | Information that is reasonably appropriate to determine the suitability of a recommendation includes whether or not the consumer intends to apply for means-tested government benefits, including, but not limited to, Medi-Cal or the veterans' aid and attendance benefit. |

14

*Schmidt v. Protective*
Protective 007317

## SUMMARY OF EXAMINATION RESULTS

During the Protective Life Insurance Company examination, and based on the review of the sample of inforce and terminated PLIC policies, four general practices were alleged as being in violation of California law within the scope of this report.  In response to each of the Department's allegations of non-compliance, the Companies were required to identify remedial or corrective action that was or will be taken to correct the deficiency.  Regardless of actions taken or proposed by the insurer in this report, it is the insurer's obligation to ensure that compliance with California law is maintained continuously.  Any non-compliant practice identified in this report may extend to other jurisdictions.  The Companies should address corrective action for other jurisdictions where applicable.

No premium has been returned to consumers as a result of this examination.

INDIVIDUAL LIFE

1.  PLIC's external Life Insurance replacements did not consistently include written communications to notify existing insurers of the replacement or proposed replacement as required by California law.
    CIC 10509.6(b)

    Summary of Insurer Response: It was determined that a PLIC processor handling these cases was incorrectly handling some replacement situations.

    The processor is no longer employed by PLIC and immediate feedback was provided to the existing team, along with revisions to the training material effective April 15, 2018. To provide additional clarity to and to help prevent future issues all new team members undergo training with specific instructions on proper procedures.

2.  PLICO's, PROTECTIVE SURVIVOR UL policy provides seniors with a surrender charge disclosure that is not compliant. The notice was not in bold 12-point type and on the front of the policy jacket or on the cover page of the policy disclosing the location of the charge, the charge time period, the charge information, and any associated penalty information.
    CIC Section 10127.13(a)

15

*Schmidt v. Protective*
Protective 007318

Summary of Insurer Response: The Company acknowledges that the policy did not contain the notice in bold font as set forth in Section 10127.13(a).  However, these customers did receive the information required by Section 10127.13(a) in an approved standalone form entitled "California Notice – Life Insurance for Senior Citizens. The Company reviewed its procedures and forms and took steps to ensure that the requisite language / font are included pursuant to Section 10127.13(a).

## ANNUITIES

3.  PLIC was issuing its Single Premium Immediate Annuity Form number IPD-2112 5/12 with conflicting information regarding the senior free look period. The language in this form indicates 10 days to cancel the contract for refund of purchase payment. In a separate disclosure form CA-DIS "Important Information to All California Annuitants Age 60 or over" PLIC was indicating that the policy may be returned within 30 days from the date received for a refund of the policy's account value. The CA-DIS disclosure is neither on the front of the policy jacket nor on the coverage page.
CIC 10127.10(a)

Summary of Insurer Response: The Company acknowledges the Department's position with respect to the disclosure alerting seniors that they have up to 30 days for their cancellation period. To resolve this item, the Company completed a project on December 6, 2018 to have the clients' bound contract document pages reordered to move the CA-DIS to position as the first page of the contract rather than as an attachment.

4. The examiners noted that the annuity suitability questionnaire on some files did not address the question required to determine if the consumer intended to apply for means-tested government benefits, including, but not limited to, MediCal or the veterans' aid and attendance benefit. Although PLIC provided a copy of form LAD-1243 CA that was effective 5/2017 and used in some files, other files were observed in which a different version of the questionnaire was used and were non-compliant.
CIC Section 10509.913(i)(14)

Summary of Insurer Response: The suitability form was revised in May 2017, however a six month period was provided to allow for communicating, agent training and implementation of the transition from the existing form to the revised form.  PLIC states that its current form and process comply with California law and have been required since late 2017.

16

Format 735.5 ed. 7-1-16

Schmidt v. Protective
Protective 007319

# EXHIBIT M

State of California                                 Department of Insurance
                                                   Consumer Services and Market Conduct Branch

# AUDIT RESPONSE

FRU-001 B
Revised: (12/15/05)

| COMPANY NAME: | PLICO | | OFFICE: | Sacramento | DATE: | March 13, 2018 |
|---|---|---|---|---|---|---|
| INSURED: | Redacted | | POLICY NO.: | B00858709 | LINE: | Life - Active |
| REVIEWER: | | | PREMIUM: | 535 | TYPE: | Term Life |

**QUESTION(S):**

1. CIC 10113.72 requires that the applicant be given the right to designated at least one person to receive notice of lapse, but I don't see that on the application anywhere. Is there a separate form that is missing?

   **COMPANY RESPONSE(S):** Please answer each question and be as complete as possible. When applicable, attach copies of underwriting guidelines, manual pages, rating worksheets, or other documentation to support your response. For rating errors or if requested by the analyst, please re-rate and indicate the amount of the additional premium or return premium that would have applied if the account had been rated correctly. As respects return premiums, the policy should be re-rated back to the inception of the error or three years, whichever is less and the premium returned to the named insured.

PREMIUM ADJUSTMENT:        $_____  ADDITIONAL PREMIUM

                           $_____  RETURN PREMIUM

**RESPONSE(S):  1.** CA-SA (Notification of Right to Name a Secondary Addressee) is a required form that prints with the application packet, see attached transmittal (used for instructional purposes) and a copy of the form.

SIGNED: _____        DATED: _____4/12/18_____



Protective Life Insurance Company
P.O. Box 830619
Birmingham, AL 35283-0619

**INDIVIDUAL LIFE INSURANCE APPLICATION PACKET - INSTRUCTIONS**

### *These forms are required on all cases submitted.*

| FORM NUMBER | FORM NAME | INSTRUCTIONS |
|---|---|---|
| • DIP-CA | • Description of Information Practices | • This notice MUST be given to the Proposed Insured on all cases submitted. |
| • PL-400-TLR | • Individual Life Insurance Application | • Protective Life can only accept or service an application from an applicant who speaks English or Spanish.  Spanish speaking applicants must go through our TeleLife process.<br><br>• Complete each question in the Application for Insurance.  If completing by hand, please use a pen with black ink.<br><br>• If applying for any riders see instructions for Rider Worksheet on Page 2. |
| • PL-701-CA | • Supplement to Life Insurance Application | • Must complete on ALL cases being submitted.<br><br>• **NEW – Signa            ng now required.** |
| • PL-HIPAA | • Authorization to Obtain and Disclose Information (HIPAA) | • Must comple      ll cases being submitted.<br>    • Leave a copy of this form with the applicant.<br>    <u>**Signature and date is required.**</u> |
| • PLX-408 | • Broker/Representative Report | • Correct Broker/Representative PLICO Contract Number must be included in order to ensure commissions are paid correctly.  Include Split Share Percentage. |
| • PL-406A | • Continuation of Information Form | • Use this form if additional space is needed for Information. |
| • U-592-CA | • Notice and Consent Form for AIDS (HIV) Testing | • Must complete on all cases being submitted.<br>    • Leave a copy of this form with the applicant |
| • U-645 CA | • Notice to Applicants Age 65 or Older | • If applicant is age 65 or older and elects the sale or liquidation of any stock, bond, IRA, certificate of deposit, mutual fund, annuity or other asset to fund the purchase of this life insurance product.<br>    • Leave this notice with the applicant. |
| • CA-SA | • Notification of Right to Name a Secondary Addressee | • Must complete on all cases being submitted<br>    • Leave this notice with the applicant. |
| • U-588-CA | • NAIC No Illustration | • Only required for illustrated UL products when an illustration is not obtained.<br>    • Illustrations are required prior to issue. |

### *NOT FOR USE WITH VARIABLE UNIVERSAL LIFE PRODUCTS*

*Schmidt v. Protective*
Application Packet - Page 720/2049
Protective 007202

*These forms may be required if circumstances apply.*

| FORM NUMBER | FORM NAME | INSTRUCTIONS |
|---|---|---|
| • PL-403 | • Rider Worksheet | • If applying for any additional benefits or riders, must complete the Rider Worksheet. In addition, the following riders require these supplemental application forms, which can be found online at protectivelifebrokerage.com.<br>• Leave a copy of each form with the applicant.<br>  • If applying for Children's Term Rider, Complete form # PL-404R-CA.<br>  • If applying for Income Provider Option, Complete form # P-U-437R. |
| • PL-104 | • Pre-Authorized Withdrawal Agreement | • Use in cases where the client elects to have premium payments drafted. |
| • PL-TLR for CA | • Temporary Life Insurance Receipt | • If payment is submitted with the application, must complete and sign the Temporary Life Receipt.<br>  • Leave a copy of this form with the applicant. |
| • A-2043 | • Replacement Form | • Must complete and sign regarding existing coverage.<br>  • Leave a copy of this form with the Proposed Insured. |
| • F-LAD-277 | • Assignment/Transfer of Ownership (Section 1035 Exchange) | • Must complete on 1035 Exchange/Transfer cases.<br>  • Leave a copy of this form with the owner. **Send the Original to the Home Office.** |
| • PL-405 | • Confidential Financial Statement | • Required if the Proposed Insured is under age 65 and the face amount is $3,000,000 or greater OR the Proposed Insured is 65 or older and the face amount is $1,000,000 or greater. |
| • PL-402 | • Part 1A-Supplemental Application (Medical Declarations) | • If the Proposed Insured is NOT being examined, this form must be completed. |

**E-mail Address:  NBApps@protective.com**
If e-mailing the application, you do not need to send the original application.  However, we will need the original 1035 paperwork and assignment forms (if applicable).

**Mailing Addresses:**

**Home Office – Regular Mail**
Protective Life Insurance Company
ATTN:  New Business
P.O. Box 830619
Birmingham, Alabama 35283-0619
Telephone:  (800) 366-9378
Fax:  (205) 268-5807

**Home Office - Overnight**
Protective Life Insurance Company
ATTN:  New Business
2801 Highway 280 South
Birmingham, Alabama 35223
Telephone:  (800) 366-9378
Fax:  (205) 268-5807

*Schmidt v. Protective*
Application Packet - Page 2 of 49
Protective 002049



**Protective Life Insurance Company**
**P.O. Box 830619**
**Birmingham, AL 35283-0619**

**NOTIFICATION OF RIGHT TO NAME A SECONDARY ADDRESSEE**

Under California law, you have the right to designate a secondary addressee to receive a notice concerning the potential lapse of your policy. The notice to the secondary addressee will be sent when the policy is in danger of lapsing.

If you wish to name a secondary addressee, please call us at 1-800-366-9378, or fax us at 1-205-268-5807, or write us at P.O. Box 830619, Birmingham, Alabama 35283-0619.

Please Print the Following Information:

_____

Policy Number (if known)

_____

Policy Owner's Name

_____

Insured's Name

Secondary Addressee:

_____

Name

_____

Street Address or P.O. Box

_____

City, State, Zip Code

CA-SA                                                                                           04/2016

*Schmidt v. Protective*
Application Packet - Page 170 of 249
Protective 9072044

# EXHIBIT N

State of California

Department of Insurance
Consumer Services and Market Conduct Branch

# AUDIT RESPONSE

FRU-001 B
Revised: (12/15/05)

| COMPANY NAME: | PLICO | | OFFICE: | Sacramento | DATE: | March 13, 2018 |
|---|---|---|---|---|---|---|
| INSURED: | Redacted | | | T00003258 | LINE: | Life - Active |
| REVIEWER: | | | PREMIUM: | $ 220.8 | TYPE: | Variable Life |

**QUESTION(S):**

1. The annual right to appoint an additional designee pursuant to 10113.72(b) was not attached to the file.

**COMPANY RESPONSE(S):** Please answer each question and be as complete as possible. When applicable, attach copies of underwriting guidelines, manual pages, rating worksheets, or other documentation to support your response. For rating errors or if requested by the analyst, please re-rate and indicate the amount of the additional premium or return premium that would have applied if the account had been rated correctly. As respects return premiums, the policy should be re-rated back to the inception of the error or three years, whichever is less and the premium returned to the named insured.

PREMIUM ADJUSTMENT:       $_____  ADDITIONAL PREMIUM

$_____  RETURN PREMIUM

**RESPONSE(S):** The policy number is T000032585 or Redacted This policy was issued prior (3/14/2002) to the effective date (1/1/2013) of CIC 10113.72.

SIGNED:_____       DATED: ___4/12/18_____

*Schmidt v. Protective*

Protective 007209

# EXHIBIT O

State of California

Department of Insurance
Consumer Services and Market Conduct Branch

# AUDIT RESPONSE

FRU-001 B
Revised: (12/15/05)

| COMPANY NAME: | PLICO | | OFFICE: | Sacramento | DATE: | March 13, 2018 |
|---|---|---|---|---|---|---|
| INSURED: | Redacted | | | T00003258 | LINE: | Life - Active |
| REVIEWER: | | | PREMIUM: | $ 220.8 | TYPE: | Variable Life |

**QUESTION(S):**

1. The annual right to appoint an additional designee pursuant to 10113.72(b) was not attached to the file.

**COMPANY RESPONSE(S):** Please answer each question and be as complete as possible. When applicable, attach copies of underwriting guidelines, manual pages, rating worksheets, or other documentation to support your response. For rating errors or if requested by the analyst, please re-rate and indicate the amount of the additional premium or return premium that would have applied if the account had been rated correctly. As respects return premiums, the policy should be re-rated back to the inception of the error or three years, whichever is less and the premium returned to the named insured.

PREMIUM ADJUSTMENT:     $_____   ADDITIONAL PREMIUM

$_____   RETURN PREMIUM

**RESPONSE(S):** The policy number is T000032585 or Redacted This policy was issued prior (3/14/2002) to the effective date (1/1/2013) of CIC 10113.72.

SIGNED:_____          DATED: ___4/12/18_____

State of California

Department of Insurance
Consumer Services and Market Conduct Branch

# AUDIT RESPONSE

FRU-001 B
Revised: (12/15/05)

| COMPANY NAME: | PLICO | | OFFICE: | Sacramento | DATE: | March 13, 2018 |
|---|---|---|---|---|---|---|
| INSURED: | Redacted | | POLICY NO.: | T000021224 | LINE: | Life - Active |
| REVIEWER: | | | PREMIUM: | $ 7371.62 | TYPE: | Variable Life |

**QUESTION(S):**

1. The annual right to appoint an additional designee pursuant to 10113.72(b) was not attached to the file.

**COMPANY RESPONSE(S):** Please answer each question and be as complete as possible. When applicable, attach copies of underwriting guidelines, manual pages, rating worksheets, or other documentation to support your response. For rating errors or if requested by the analyst, please re-rate and indicate the amount of the additional premium or return premium that would have applied if the account had been rated correctly. As respects return premiums, the policy should be re-rated back to the inception of the error or three years, whichever is less and the premium returned to the named insured.

PREMIUM ADJUSTMENT:       $_____ ADDITIONAL PREMIUM

$_____ RETURN PREMIUM

**RESPONSE(S):** 1. This policy was issued 11/11/1999, prior to the effective date of CIC 10113.72 (b).

SIGNED:_____       DATED:___4/12/18_____

*Schmidt v. Protective*
Protective 007218

State of California          Department of Insurance
                                             Consumer Services and Market Conduct Branch

# AUDIT RESPONSE

FRU-001 B
Revised: (12/15/05)

| COMPANY NAME: | PLICO | OFFICE: | Sacramento | DATE: | March 13, 2018 |
|---|---|---|---|---|---|
| INSURED: | Redacted | POLICY NO.: | R000004330 | LINE: | Life - Active |
| REVIEWER: | | PREMIUM: | $ 360 | TYPE: | Variable Life |

**QUESTION(S):**

1. The annual right to appoint an additional designee pursuant to 10113.72(b) was not attached to the file.

**COMPANY RESPONSE(S):** Please answer each question and be as complete as possible. When applicable, attach copies of underwriting guidelines, manual pages, rating worksheets, or other documentation to support your response. For rating errors or if requested by the analyst, please re-rate and indicate the amount of the additional premium or return premium that would have applied if the account had been rated correctly. As respects return premiums, the policy should be re-rated back to the inception of the error or three years, whichever is less and the premium returned to the named insured.

PREMIUM ADJUSTMENT:      $_____ ADDITIONAL PREMIUM

                                  $_____ RETURN PREMIUM

**RESPONSE(S):** 1. This policy was issued 6/6/2002, prior to the effective date of CIC 10113.72 (b).

SIGNED:_____         DATED: ____4/12/18_____

*Schmidt v. Protective*
**Protective 007228**

State of California

Department of Insurance
Consumer Services and Market Conduct Branch

# AUDIT RESPONSE

FRU-001 B
Revised: (12/15/05)

| COMPANY NAME: | PLICO | OFFICE: | Sacramento | DATE: | March 13, 2018 |
|---|---|---|---|---|---|
| INSURED: | Redacted | POLICY NO.: | R000005144 | LINE: | Life - Active |
| REVIEWER: | | PREMIUM: | $ 18104.74 | TYPE: | Variable Life |

**QUESTION(S):**

1. The annual right to appoint an additional designee pursuant to 10113.72(b) was not attached to the file.

**COMPANY RESPONSE(S):** Please answer each question and be as complete as possible. When applicable, attach copies of underwriting guidelines, manual pages, rating worksheets, or other documentation to support your response. For rating errors or if requested by the analyst, please re-rate and indicate the amount of the additional premium or return premium that would have applied if the account had been rated correctly. As respects return premiums, the policy should be re-rated back to the inception of the error or three years, whichever is less and the premium returned to the named insured.

PREMIUM ADJUSTMENT:     $_____ ADDITIONAL PREMIUM

$_____ RETURN PREMIUM

**RESPONSE(S):** 1. This policy was issued 1/2/2003, prior to the effective date of CIC 10113.72.

SIGNED:_____     DATED: _____4/12/18_____

*Schmidt v. Protective*
Protective 007234

State of California

Department of Insurance
Consumer Services and Market Conduct Branch

# AUDIT RESPONSE

FRU-001 B
Revised: (12/15/05)

| COMPANY NAME: | PLICO | OFFICE: | Sacramento | DATE: | March 13, 2018 |
|---|---|---|---|---|---|
| INSURED: | Redacted | POLICY NO.: | T000021224 | LINE: | Life - Active |
| REVIEWER: | | PREMIUM: | $ 7371.62 | TYPE: | Variable Life |

**QUESTION(S):**

1. The annual right to appoint an additional designee pursuant to 10113.72(b) was not attached to the file.

**COMPANY RESPONSE(S):** Please answer each question and be as complete as possible. When applicable, attach copies of underwriting guidelines, manual pages, rating worksheets, or other documentation to support your response. For rating errors or if requested by the analyst, please re-rate and indicate the amount of the additional premium or return premium that would have applied if the account had been rated correctly. As respects return premiums, the policy should be re-rated back to the inception of the error or three years, whichever is less and the premium returned to the named insured.

PREMIUM ADJUSTMENT:     $_____  ADDITIONAL PREMIUM

$_____  RETURN PREMIUM

**RESPONSE(S):** 1. This policy was issued 11/11/1999, prior to the effective date of CIC 10113.72.

SIGNED:_____          DATED:____4/12/18_____

*Schmidt v. Protective*
Protective 007235

State of California

Department of Insurance
Consumer Services and Market Conduct Branch

# AUDIT RESPONSE

FRU-001 B
Revised: (12/15/05)

| COMPANY NAME: | PLICO | | OFFICE: | Sacramento | DATE: | March 13, 2018 |
|---|---|---|---|---|---|---|
| INSURED: | Redacted | | POLICY NO.: | T000021352 | LINE: | Life - Active |
| REVIEWER: | | | PREMIUM: | $ 215 | TYPE: | Variable Life |

**QUESTION(S):**

1. The annual right to appoint an additional designee pursuant to 10113.72(b) was not attached to the file.

**COMPANY RESPONSE(S):** Please answer each question and be as complete as possible. When applicable, attach copies of underwriting guidelines, manual pages, rating worksheets, or other documentation to support your response. For rating errors or if requested by the analyst, please re-rate and indicate the amount of the additional premium or return premium that would have applied if the account had been rated correctly. As respects return premiums, the policy should be re-rated back to the inception of the error or three years, whichever is less and the premium returned to the named insured.

PREMIUM ADJUSTMENT:   $_____ ADDITIONAL PREMIUM

                           $_____ RETURN PREMIUM

**RESPONSE(S):** 1.This policy was issued 10/12/1999, prior to the effective date of CIC 10113.72.

SIGNED:_____     DATED:___4/12/18_____

State of California                              Department of Insurance
                                                Consumer Services and Market Conduct Branch

# AUDIT RESPONSE

FRU-001 B
Revised: (12/15/05)

| COMPANY NAME: | PLICO | OFFICE: | Sacramento | DATE: | March 13, 2018 |
|---|---|---|---|---|---|
| INSURED: | Redacted | POLICY NO.: | T000014398 | LINE: | Life - Active |
| REVIEWER: | | PREMIUM: | $ 154.63 | TYPE: | Variable Life |

**QUESTION(S):**

1. The annual right to appoint an additional designee pursuant to 10113.72(b) was not attached to the file.

**COMPANY RESPONSE(S):** Please answer each question and be as complete as possible. When applicable, attach copies of underwriting guidelines, manual pages, rating worksheets, or other documentation to support your response. For rating errors or if requested by the analyst, please re-rate and indicate the amount of the additional premium or return premium that would have applied if the account had been rated correctly. As respects return premiums, the policy should be re-rated back to the inception of the error or three years, whichever is less and the premium returned to the named insured.

PREMIUM ADJUSTMENT:     $_____  ADDITIONAL PREMIUM

                        $_____  RETURN PREMIUM

**RESPONSE(S):** 1.This policy was issued 10/29/1998, prior to the effective date of CIC 10113.72.

SIGNED:_____          DATED:____4/12/18____

State of California

Department of Insurance
Consumer Services and Market Conduct Branch

# AUDIT RESPONSE

FRU-001 B
Revised: (12/15/05)

| COMPANY NAME: | PLICO | OFFICE: | Sacramento | DATE: | March 13, 2018 |
|---|---|---|---|---|---|
| INSURED: | Redacted | POLICY NO.: | R000001248 | LINE: | Life - Active |
| REVIEWER: | | PREMIUM: | $ 178 | TYPE: | Variable Life |

**QUESTION(S):**

1. The annual right to appoint an additional designee pursuant to 10113.72(b) was not attached to the file.

**COMPANY RESPONSE(S):** Please answer each question and be as complete as possible. When applicable, attach copies of underwriting guidelines, manual pages, rating worksheets, or other documentation to support your response. For rating errors or if requested by the analyst, please re-rate and indicate the amount of the additional premium or return premium that would have applied if the account had been rated correctly. As respects return premiums, the policy should be re-rated back to the inception of the error or three years, whichever is less and the premium returned to the named insured.

PREMIUM ADJUSTMENT:     $_____ ADDITIONAL PREMIUM

$_____ RETURN PREMIUM

**RESPONSE(S):** 1. This policy was issued 12/5/2000, prior to the effective date of CIC 10113.72.

SIGNED:_____     DATED:_____4/12/18_____